No. 26-5013

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

MUSCOGEE (CREEK) NATION,

*Plaintiff/Appellant*,

v.

STEVE KUNZWEILER, et al.,

*Defendants/Appellees*.

Appeal from the United States District Court
for the Northern District of Oklahoma,
Case No. 4:25-cv-00075-GKF-JFJ (Hon. Gregory K. Frizzell)

## APPENDIX TO APPELLANT'S OPENING BRIEF
Volume I, Pages 1 to 288

Geraldine Wisner
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447

O. Joseph Williams
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447

Riyaz A. Kanji
David A. Giampetroni
Joshua C. Handelsman
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com

Philip H. Tinker
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103

*Counsel for Appellant Muscogee (Creek) Nation*

## TABLE OF CONTENTS

District Court Docket Sheet ..................................................................................1

Complaint
    Dkt. 2
    Filed February 13, 2025.................................................................................10

Motion of the Muscogee (Creek) Nation for Temporary Restraining Order and
Preliminary Injunction and Opening Brief in Support
    Dkt. 4
    Filed February 13, 2025.................................................................................21

Declaration of Attorney General Geraldine Wisner [with exhibits]
    Dkt. 5
    Filed February 13, 2025.................................................................................53

Motion To Dismiss and Brief in Support by Defendant Vic Regalado
    Dkt. 38
    Filed April 7, 2025.......................................................................................74

Defendant Steve Kunzweiler's Motion To Dismiss Plaintiff's Complaint and
Brief in Support
    Dkt. 40
    Filed April 7, 2025.....................................................................................107

Defendant Steve Kunzweiler's Response to the Muscogee (Creek) Nation's Motion
for Temporary Restraining Order and Preliminary Injunction and Opening Brief
in Support
    Dkt. 41
    Filed April 8, 2025.....................................................................................136

Defendant Regalado and Defendant Tulsa County's Response in Opposition to
Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction
    Dkt. 42
    Filed April 8, 2025.....................................................................................166

Nation's Combined Reply Brief in Support of Its Motion for Temporary Restraining Order and Preliminary Injunction
        Dkt. 51
        Filed April 21, 2025.................................................................172

Opinion and Order [regarding motion for temporary restraining order]
        Dkt. 54
        Filed April 23, 2025.................................................................195

Muscogee (Creek) Nation's Combined Response to Defendants' Motions to Dismiss
        Dkt. 57
        Filed April 28, 2025.................................................................200

Defendant Steve Kunzweiler's Reply in Support of Motion To Dismiss Plaintiff's Complaint and Brief in Support
        Dkt. 67
        Filed May 12, 2025.................................................................234

Defendant Regalado's Reply in Support of Motion To Dismiss
        Dkt. 68
        Filed May 12, 2025.................................................................247

Order [regarding Defendant Regalado's motion to dismiss]
        Dkt. 75
        Filed August 7, 2025.................................................................255

Defendant Steve Kunzweiler's Answer and Affirmative Defenses
        Dkt. 78
        Filed August 26, 2025.................................................................258

Opinion and Order [regarding motion for preliminary injunction]
        Dkt. 87
        Filed November 7, 2025 .................................................................270

Order for Joint Status Report
        Dkt. 88
        Filed December 2, 2025.................................................................282

Joint Status Report of the Muscogee (Creek) Nation and District Attorney
Steve Kunzweiler
    Dkt. 89
    Filed December 29, 2025...............................................................283

Judgment
    Dkt. 90
    Filed December 30, 2025...............................................................286

Notice of Appeal
    Dkt. 91
    Filed January 28, 2026...................................................................288

Dated: April 29, 2026

Geraldine Wisner
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447

O. Joseph Williams
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
Joshua C. Handelsman
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com

Philip H. Tinker
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103

*Counsel for Appellant Muscogee (Creek) Nation*

APPEAL,CLOSED,DISCREF

# U.S. District Court
# U.S. District Court for the Northern District of Oklahoma (Tulsa)
## CIVIL DOCKET FOR CASE #: 4:25-cv-00075-GKF-JFJ

Muscogee (Creek) Nation v. Steve Kunzweiler
Assigned to: Judge Gregory K Frizzell
Referred to: Magistrate Judge Jodi F Jayne
Case in other court:  10th Circuit, 25-05062 (#58)
                  10th Circuit, 25-05064 (#60)
                  10th Circuit, 26-05013(#91)
Cause: 28:1362 Indian Tribal Controversy

Date Filed: 02/13/2025
Date Terminated: 12/30/2025
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Muscogee (Creek) Nation**
*a federally recognized Indian tribe*

represented by    **David A Giampetroni**
Kanji & Katzen, PLLC
PO Box 3971
Ann Arbor, MI 48106
734-769-5400
Email: dgiampetroni@kanjikatzen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Josh Handelsman**
Kanji & Katzen, PLLC
PO Box 3971
Ann Arbor, MI 48106
603-397-7670
Email: jhandelsman@kanjikatzen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olin Joseph Williams**
PO BOX 1131
OKMULGEE, OK 74447
918-752-0020
Fax: 918-894-6664
Email: jwilliams@williamslaw-pllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip H Tinker**
Kanji & Katzen, PLLC
811 1st Ave
Suite 630
Seattle, WA 98104
206-344-8100
Email: ptinker@kanjikatzen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**

Appellate Case: 26-5013    Document: 25-1    Date Filed: 04/29/2026    Page: 7

Kanji & Katzen, PLLC
PO Box 3971
Ann Arbor, MI 48106
734-769-5400
Email: rkanji@kanjikatzen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Rush**
Kanji & Katzen, PLLC
PO Box 2579
Sapulpa, OK 74067
734-769-5400
Email: vrush@kanjikatzen.com
*TERMINATED: 09/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geri Wisner**
Muscogee (Creek) Nation
PO Box 580
Okmulgee, OK 74447
918-295-9720
Fax: 918-756-2445
Email: gwisner@mcnag.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Board of County Commissioners, The**
*County of Tulsa*
*TERMINATED: 04/23/2025*

represented by **Johnathan Louis Rogers**
Hall, Estill, Hardwick, Gable, Golden &
Nelson, P.C.
521 East 2nd Street
Suite 1200
Tulsa, OK 74120
918-594-0686
Email: jrogers@hallestill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Wilkes**
Hall, Estill, Hardwick, Gable, Golden &
Nelson
521 East 2nd Street
Suite 1200
Tulsa, OK 74120
918-594-0709
Fax: 918-594-0505
Email: kwilkes@hallestill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steve Kunzweiler**
*in his official capacity as District Attorney for*

represented by **Grant M Lucky**
Ryan Whaley Coldiron Shandy PLLC
119 N ROBINSON RM 900

MCN Appendix Page 2

Appellate Case: 26-5013    Document: 25-1    Date Filed: 04/29/2026    Page: 8

*the Fourteenth Prosecutorial District of Oklahoma*

OKLAHOMA CITY, OK 73102
405-239-6040
Fax: 405-239-6766
Email: glucky@ryanwhaley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Ray Pearce , Jr.**
Ryan Whaley Coldiron Shandy PLLC
119 N ROBINSON RM 900
OKLAHOMA CITY, OK 73102
405-239-6040
Fax: 405-239-6766
Email: rpearce@ryanwhaley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip Gardner Whaley**
Ryan Whaley Coldiron Shandy PLLC
119 N ROBINSON RM 900
OKLAHOMA CITY, OK 73102
405-239-6040
Fax: 918-239-6766
Email: pwhaley@ryanwhaley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor S Pemberton**
Office of Governor J. Kevin Stitt
2300 N. Lincoln
Room 212
Oklahoma City, OK 73105
405-501-5054
Email: trevor@pembertonlawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Vic Regalado**
*in his official capacity as Tulsa County Sheriff*
*TERMINATED: 08/07/2025*

represented by **Johnathan Louis Rogers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Wilkes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/13/2025 | 1 | CIVIL COVER SHEET by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 02/13/2025) |
| 02/13/2025 | 2 | COMPLAINT against Steve Kunzweiler, Vic Regalado, Tulsa County, Oklahoma (paid $405 filing fee; receipt number AOKNDC-3157263) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 02/13/2025) |

Appellate Case: 26-5013    Document: 25-1    Date Filed: 04/29/2026    Page: 9

| | | |
|---|---|---|
| 02/13/2025 | 3 | ATTORNEY APPEARANCE by Riyaz A. Kanji on behalf of Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 02/13/2025) |
| 02/13/2025 | 4 | MOTION for Preliminary Injunction *and Brief in Support* by Muscogee (Creek) Nation (Kanji, Riyaz) Modified on 4/14/2025 - this is a multi-part motion, see Dkt. # 45 for the additional motion part.(kjp, Dpty Clk). (Entered: 02/13/2025) |
| 02/13/2025 | 5 | DECLARATION *of AG Geraldine Wisner* (Re: 4 MOTION for Preliminary Injunction *and Brief in Support* ) by Muscogee (Creek) Nation (With attachments) (Kanji, Riyaz) (Entered: 02/13/2025) |
| 02/13/2025 | 6 | ATTORNEY APPEARANCE by David A Giampetroni on behalf of Muscogee (Creek) Nation [Note: Attorney David A Giampetroni added to party Muscogee (Creek) Nation(pty:pla).] (Giampetroni, David) (Entered: 02/13/2025) |
| 02/13/2025 | 7 | ATTORNEY APPEARANCE by Philip H Tinker on behalf of Muscogee (Creek) Nation [Note: Attorney Philip H Tinker added to party Muscogee (Creek) Nation(pty:pla).] (Tinker, Philip) (Entered: 02/13/2025) |
| 02/13/2025 | 8 | ATTORNEY APPEARANCE by Stephanie Rush on behalf of Muscogee (Creek) Nation [Note: Attorney Stephanie Rush added to party Muscogee (Creek) Nation(pty:pla).] (Rush, Stephanie) (Entered: 02/13/2025) |
| 02/13/2025 | 9 | ATTORNEY APPEARANCE by Geri Wisner on behalf of Muscogee (Creek) Nation [Note: Attorney Geri Wisner added to party Muscogee (Creek) Nation(pty:pla).] (Wisner, Geri) (Entered: 02/13/2025) |
| 02/13/2025 | 10 | ATTORNEY APPEARANCE by Olin Joseph Williams on behalf of Muscogee (Creek) Nation [Note: Attorney Olin Joseph Williams added to party Muscogee (Creek) Nation(pty:pla).] (Williams, Olin) (Entered: 02/13/2025) |
| 02/13/2025 | 11 | NOTICE OF ASSIGNMENT OF CASE TO A UNITED STATES MAGISTRATE JUDGE AND DECLINATION OF CONSENT FORM. **ACTION REQUIRED:** This case has been randomly assigned to a United States magistrate judge for all purposes, including trial, final entry of judgment, and direct review by the Tenth Circuit Court of Appeals. **Each party will be deemed to have knowingly and voluntarily consented to proceed before the assigned Magistrate Judge, if the attached form is not signed and returned within the applicable deadline. The plaintiff or removing party must serve a copy of this notice upon all other parties to this action.** (cjb, Dpty Clk) (Entered: 02/13/2025) |
| 02/13/2025 | 12 | MINUTE ORDER by Court Clerk , directing Muscogee (Creek) Nation to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (cjb, Dpty Clk) (Entered: 02/13/2025) |
| 02/13/2025 | 45 | MOTION for Temporary Restraining Order *(Submitted as part of Dkt. # 4* by Muscogee (Creek) Nation (kjp, Dpty Clk) (Entered: 04/14/2025) |
| 02/14/2025 | 13 | SUMMONS Issued by Court Clerk as to All Defendants (atn, Dpty Clk) (Entered: 02/14/2025) |
| 02/14/2025 | 14 | MINUTE ORDER by Court Clerk , assigning this case to a district judge. Assigning case to District Judge Gregory K Frizzell and Magistrate Judge Jodi F Jayne, changing case number to 25-cv-75-GKF-JFJ (This entry is the Official Order of the Court. No document is attached.) (sdc, Dpty Clk) (Entered: 02/14/2025) |
| 02/19/2025 | 15 | SUMMONS Returned Executed re: Steve Kunzweiler (Re: 2 Complaint ) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 02/19/2025) |
| 02/19/2025 | 16 | SUMMONS Returned Executed re: Vic Regalado (Re: 2 Complaint ) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 02/19/2025) |
| 02/19/2025 | 17 | SUMMONS Returned Executed re: Tulsa County, Oklahoma (Re: 2 Complaint ) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 02/19/2025) |

Appellate Case: 26-5013     Document: 25-1     Date Filed: 04/29/2026     Page: 10

| | | |
|---|---|---|
| 02/28/2025 | 18 | MOTION to Intervene by Charles C Tiger (dla, Dpty Clk) (Entered: 02/28/2025) |
| 02/28/2025 | 19 | DISCLOSURE STATEMENT by Charles C Tiger (dla, Dpty Clk) (Entered: 02/28/2025) |
| 02/28/2025 | 20 | MOTION to Intervene by Jimmy Glenn Hendrix (dla, Dpty Clk) (Entered: 02/28/2025) |
| 02/28/2025 | 21 | DISCLOSURE STATEMENT by Jimmy Glenn Hendrix (dla, Dpty Clk) (Entered: 02/28/2025) |
| 03/04/2025 | 22 | MINUTE ORDER by Court Clerk , directing Charles C Tiger and Jimmy Glenn Hendrix to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (dla, Dpty Clk) (Entered: 03/04/2025) |
| 03/05/2025 | 23 | ATTORNEY APPEARANCE by Trevor S Pemberton on behalf of Steve Kunzweiler [Note: Attorney Trevor S Pemberton added to party Steve Kunzweiler(pty:dft).] (Pemberton, Trevor) (Entered: 03/05/2025) |
| 03/05/2025 | 24 | MOTION for Extension of Time to Answer , MOTION for Extension of Time to Respond to Motion (Re: 2 Complaint, 4 MOTION for Preliminary Injunction *and Brief in Support* ) by Steve Kunzweiler (Pemberton, Trevor) (Entered: 03/05/2025) |
| 03/05/2025 | 25 | ATTORNEY APPEARANCE by Keith A Wilkes on behalf of Vic Regalado, Tulsa County, Oklahoma [Note: Attorney Keith A Wilkes added to party Vic Regalado(pty:dft), Attorney Keith A Wilkes added to party Tulsa County, Oklahoma(pty:dft).] (Wilkes, Keith) (Entered: 03/05/2025) |
| 03/05/2025 | 26 | ATTORNEY APPEARANCE by Phillip Gardner Whaley on behalf of Steve Kunzweiler [Note: Attorney Phillip Gardner Whaley added to party Steve Kunzweiler(pty:dft).] (Whaley, Phillip) (Entered: 03/05/2025) |
| 03/05/2025 | 27 | ATTORNEY APPEARANCE by Grant M Lucky on behalf of Steve Kunzweiler [Note: Attorney Grant M Lucky added to party Steve Kunzweiler(pty:dft).] (Lucky, Grant) (Entered: 03/05/2025) |
| 03/05/2025 | 28 | ATTORNEY APPEARANCE by Patrick Ray Pearce, Jr on behalf of Steve Kunzweiler [Note: Attorney Patrick Ray Pearce, Jr added to party Steve Kunzweiler(pty:dft).] (Pearce, Patrick) (Entered: 03/05/2025) |
| 03/05/2025 | 29 | ORDER by Judge Gregory K Frizzell ; setting/resetting deadline(s)/hearing(s): ( Miscellaneous Deadline set for 3/28/2025); granting 24 Motion for Extension of Time to Answer; granting 24 Motion for Extension of Time to Respond to Motion (Re: 4 MOTION for Preliminary Injunction *and Brief in Support* ) (kjp, Dpty Clk) (Entered: 03/05/2025) |
| 03/05/2025 | 30 | MOTION for Extension of Time to Answer *or Otherwise Plead and to Respond* (Re: 2 Complaint ) by Vic Regalado, Tulsa County, Oklahoma (Wilkes, Keith) (Entered: 03/05/2025) |
| 03/06/2025 | 31 | MINUTE ORDER by Judge Gregory K Frizzell , striking/withdrawing document(s) (Re: 29 Order,, Setting/Resetting Deadline(s)/Hearing(s),,,, Ruling on Motion for Extension of Time to Answer,, Ruling on Motion for Extension of Time to Respond to Motion, ) (Documents Terminated: 29 Order,, Setting/Resetting Deadline(s)/Hearing(s),,,, Ruling on Motion for Extension of Time to Answer,, Ruling on Motion for Extension of Time to Respond to Motion, ) (This entry is the Official Order of the Court. No document is attached.) (alg, Dpty Clk) (Entered: 03/06/2025) |
| 03/06/2025 | 32 | ORDER by Judge Gregory K Frizzell *granting in part and denying in part the Motions for Extension of Time to Respond to Plaintiff Muscogee (Creek) Nations Complaint and Motion for Temporary Restraining Order and Preliminary Injunction of defendants Steve Kunzweiler [Doc. 24] and Vic Regalado [Doc. 30]* ; setting/resetting deadline(s)/hearing(s): ( Miscellaneous Deadline set for 4/7/2025, Responses due by 4/8/2025); granting in part and denying in part 30 Motion for Extension of Time to Answer (Re: 4 MOTION for Preliminary Injunction *and Brief in Support* ) (alg, Dpty Clk) (Entered: 03/06/2025) |
| 03/07/2025 | 33 | MINUTE ORDER by Court Clerk , directing Tulsa County, Oklahoma, Steve Kunzweiler and Vic Regalado to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1-1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This |

Appellate Case: 26-5013     Document: 25-1     Date Filed: 04/29/2026     Page: 11

| | | |
|---|---|---|
| | | entry is the Official Order of the Court. No document is attached.) (dla, Dpty Clk) (Entered: 03/07/2025) |
| 03/17/2025 | 34 | DISCLOSURE STATEMENT by Jimmy Glenn Hendrix (cjb, Dpty Clk) (Entered: 03/17/2025) |
| 03/18/2025 | 35 | DISCLOSURE STATEMENT by Charles C Tiger (cjb, Dpty Clk) (Entered: 03/18/2025) |
| 03/21/2025 | 36 | RESPONSE in Opposition to Motion (Re: 18 MOTION to Intervene ) by Steve Kunzweiler ; (Whaley, Phillip) (Entered: 03/21/2025) |
| 03/21/2025 | 37 | RESPONSE in Opposition to Motion (Re: 20 MOTION to Intervene ) by Steve Kunzweiler ; (Whaley, Phillip) (Entered: 03/21/2025) |
| 04/07/2025 | 38 | MOTION to Dismiss for Failure to State a Claim *and Brief in Support* by Vic Regalado (Wilkes, Keith) (Entered: 04/07/2025) |
| 04/07/2025 | 39 | MOTION to Dismiss for Failure to State a Claim *and Brief in Support* by Tulsa County, Oklahoma (Wilkes, Keith) (Entered: 04/07/2025) |
| 04/07/2025 | 40 | MOTION to Dismiss *and Brief in Support* by Steve Kunzweiler (Whaley, Phillip) (Entered: 04/07/2025) |
| 04/08/2025 | 41 | RESPONSE in Opposition to Motion (Re: 4 MOTION for Preliminary Injunction *and Brief in Support* ) by Steve Kunzweiler ; (Whaley, Phillip) (Entered: 04/08/2025) |
| 04/08/2025 | 42 | RESPONSE in Opposition to Motion (Re: 4 MOTION for Preliminary Injunction *and Brief in Support* ) by Vic Regalado, Tulsa County, Oklahoma ; (Wilkes, Keith) (Entered: 04/08/2025) |
| 04/11/2025 | 43 | ATTORNEY APPEARANCE by Johnathan Louis Rogers on behalf of Vic Regalado, Tulsa County, Oklahoma [Note: Attorney Johnathan Louis Rogers added to party Vic Regalado(pty:dft), Attorney Johnathan Louis Rogers added to party Tulsa County, Oklahoma(pty:dft).] (Rogers, Johnathan) (Entered: 04/11/2025) |
| 04/11/2025 | 44 | ORDER by Judge Gregory K Frizzell ; denying 18 Motion to Intervene; denying 20 Motion to Intervene (alg, Dpty Clk) (Entered: 04/11/2025) |
| 04/14/2025 | 46 | ORDER by Judge Gregory K Frizzell , setting/resetting deadline(s)/hearing(s): ( Miscellaneous Deadline set for 4/18/2025) (kjp, Dpty Clk) (Entered: 04/14/2025) |
| 04/16/2025 | 47 | MOTION to Intervene by Jimmy Glenn Hendrix (cjb, Dpty Clk) (Entered: 04/16/2025) |
| 04/16/2025 | 48 | MINUTE ORDER by Judge Gregory K Frizzell *The [second] Motion to Intervene [Doc. 47] by Jimmy Glenn Hendrix is denied, for the reasons set forth in the Order entered April 11, 2025 [Doc. 44] denying his previous motion to intervene.* ; denying 47 Motion to Intervene (This entry is the Official Order of the Court. No document is attached.) (jdb, Chambers) (Entered: 04/16/2025) |
| 04/16/2025 | 49 | Consent MOTION for Leave to Exceed Page Limitation by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 04/16/2025) |
| 04/17/2025 | 50 | ORDER by Judge Gregory K Frizzell ; granting 49 Motion for Leave to Exceed Page Limitation (kjp, Dpty Clk) (Entered: 04/17/2025) |
| 04/21/2025 | 51 | REPLY to Response to Motion (Re: 45 MOTION for Temporary Restraining Order *(Submitted as part of Dkt. # 4* , 4 MOTION for Preliminary Injunction *and Brief in Support* ) by Muscogee (Creek) Nation ; (Kanji, Riyaz) (Entered: 04/21/2025) |
| 04/23/2025 | 52 | STIPULATION of Dismissal, dismissing Tulsa County, OK, dismissing Count 1 of Plaintiff's Complaint, (Re: 2 Complaint ) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 04/23/2025) |
| 04/23/2025 | 53 | MINUTE ORDER by Judge Gregory K Frizzell *Pursuant to the Joint Stipulations 52 filed today, The Board of County Commissioners of the County of Tulsa is hereby substituted for "Tulsa County, Oklahoma" as a named defendant in this action, and the motion to dismiss the Board of County Commissioners of the County of Tulsa is granted* ; granting 39 Motion to Dismiss for |

MCN Appendix Page 6

| | | |
|---|---|---|
| | | Failure to State a Claim (This entry is the Official Order of the Court. No document is attached.) (GKFJ, Judge) (Entered: 04/23/2025) |
| 04/23/2025 | 54 | OPINION AND ORDER by Judge Gregory K Frizzell ; setting/resetting deadline(s)/hearing(s): *Boulder Building, Courtroom 3* ( Scheduling Conference set for 4/28/2025 at 02:00 PM before Judge Gregory K Frizzell); denying 45 Motion for Temporary Restraining Order (kjp, Dpty Clk) (Entered: 04/23/2025) |
| 04/24/2025 | 55 | Consent MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *re Scheduling Conference Date* (Re: 54 Opinion and Order,, Setting/Resetting Deadline(s)/Hearing(s),, Ruling on Motion for Temporary Restraining Order, ) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 04/24/2025) |
| 04/24/2025 | 56 | ORDER by Judge Gregory K Frizzell ; setting/resetting deadline(s)/hearing(s): *Boulder Building, Courtroom 3* ( Scheduling Conference set for 5/5/2025 at 01:30 PM before Judge Gregory K Frizzell); granting 55 Motion to Accelerate/Extend/Reset Hearing(s)/Deadline(s) (kjp, Dpty Clk) (Entered: 04/24/2025) |
| 04/28/2025 | 57 | RESPONSE in Opposition to Motion (Re: 38 MOTION to Dismiss for Failure to State a Claim *and Brief in Support*, 40 MOTION to Dismiss *and Brief in Support* ) by Muscogee (Creek) Nation ; (Kanji, Riyaz) (Entered: 04/28/2025) |
| 04/28/2025 | 58 | NOTICE OF APPEAL to Circuit Court (Re: 44 Order, Ruling on Motion to Intervene, ) by Jimmy Glenn Hendrix (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/28/2025 | 60 | NOTICE OF APPEAL to Circuit Court (Re: 44 Order, Ruling on Motion to Intervene, ) by Charles C Tiger (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/29/2025 | 59 | PRELIMINARY RECORD Sent to Circuit Court (Re: 58 Notice of Appeal to Circuit Court ) (With attachments) (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/29/2025 | 61 | PRELIMINARY RECORD Sent to Circuit Court (Re: 60 Notice of Appeal to Circuit Court ) (With attachments) (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/29/2025 | 62 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 25-5062 (#58) (Re: 58 Notice of Appeal to Circuit Court ) (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/29/2025 | 63 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 25-5064 (#60) (Re: 60 Notice of Appeal to Circuit Court ) (dla, Dpty Clk) (Entered: 04/29/2025) |
| 05/05/2025 | 64 | MINUTES of Proceedings - held before Judge Gregory K Frizzell: Scheduling Conference held on 5/5/2025 , striking/terminating deadline(s)/Hearing(s) (Re: 38 MOTION to Dismiss for Failure to State a Claim *and Brief in Support*, 40 MOTION to Dismiss *and Brief in Support*, 4 MOTION for Preliminary Injunction *and Brief in Support* ) (Court Reporter: Brian Neil) (kjp, Dpty Clk) (Entered: 05/05/2025) |
| 05/09/2025 | 65 | MOTION for Leave to Exceed Page Limitation by Steve Kunzweiler (Pemberton, Trevor) (Entered: 05/09/2025) |
| 05/09/2025 | 66 | ORDER by Judge Gregory K Frizzell ; granting 65 Motion for Leave to Exceed Page Limitation (kjp, Dpty Clk) (Entered: 05/09/2025) |
| 05/12/2025 | 67 | REPLY to Response to Motion (Re: 40 MOTION to Dismiss *and Brief in Support* ) by Steve Kunzweiler ; (Whaley, Phillip) (Entered: 05/12/2025) |
| 05/12/2025 | 68 | REPLY to Response to Motion (Re: 38 MOTION to Dismiss for Failure to State a Claim *and Brief in Support* ) by Vic Regalado ; (Wilkes, Keith) (Entered: 05/12/2025) |
| 05/23/2025 | 69 | DECISION from Circuit Court Dismissing Appeals (awaiting mandate) (Re: 58 Notice of Appeal to Circuit Court and 60 Notice of Appeal to Circuit Court) (cjb, Dpty Clk) Modified on 10/9/2025 to correct entry (kjp, Dpty Clk). (Entered: 05/23/2025) |
| 05/23/2025 | 70 | MANDATE from Circuit Court (Re: 69 Decision from Circuit Court )(Re: 58 Notice of Appeal to Circuit Court )(cjb, Dpty Clk) Modified on 10/14/2025 to add link to # 58 (cjb, Dpty Clk). |

| | | |
|---|---|---|
| | | (Entered: 05/23/2025) |
| 07/11/2025 | 71 | Joint MOTION to Stay *by Steve Kunzweiler and Vic Regalado* by Steve Kunzweiler (With attachments) (Whaley, Phillip) (Entered: 07/11/2025) |
| 07/18/2025 | 72 | RESPONSE in Opposition to Motion (Re: 71 Joint MOTION to Stay *by Steve Kunzweiler and Vic Regalado* ) by Muscogee (Creek) Nation ; (Kanji, Riyaz) (Entered: 07/18/2025) |
| 07/23/2025 | 73 | REPLY to Response to Motion (Re: 71 Joint MOTION to Stay *by Steve Kunzweiler and Vic Regalado* ) by Steve Kunzweiler ; (Whaley, Phillip) (Entered: 07/23/2025) |
| 07/24/2025 | 74 | ORDER by Judge Gregory K Frizzell ; denying 71 Motion to Stay (kjp, Dpty Clk) (Entered: 07/24/2025) |
| 08/07/2025 | 75 | ORDER by Judge Gregory K Frizzell ; terminating party Vic Regalado (in his official capacity as Tulsa County Sheriff) ; granting 38 Motion to Dismiss for Failure to State a Claim (kjp, Dpty Clk) (Entered: 08/07/2025) |
| 08/12/2025 | 76 | ORDER by Judge Gregory K Frizzell ; denying 40 Motion to Dismiss (crp, Dpty Clk) (Entered: 08/12/2025) |
| 08/13/2025 | 77 | MINUTE ORDER by Judge Gregory K Frizzell *Setting the Motion for Preliminary Injunction [Doc. 4] for hearing on Thursday, October 9, 2025 at 10:30 a.m.*, setting/resetting deadline(s)/hearing(s): *Boulder Building, Courtroom 3* ( Motion Hearing set for 10/9/2025 at 10:30 AM before Judge Gregory K Frizzell) (Re: 4 MOTION for Preliminary Injunction *and Brief in Support* ) (This entry is the Official Order of the Court. No document is attached.) (kjp, Dpty Clk) (Entered: 08/13/2025) |
| 08/26/2025 | 78 | ANSWER (Re: 2 Complaint ) by Steve Kunzweiler (Whaley, Phillip) (Entered: 08/26/2025) |
| 09/10/2025 | 79 | NOTICE of Withdrawal of Counsel for Stephanie R. Rush by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 09/10/2025) |
| 09/10/2025 | 80 | ATTORNEY APPEARANCE by Josh Handelsman on behalf of Muscogee (Creek) Nation [Note: Attorney Josh Handelsman added to party Muscogee (Creek) Nation(pty:pla).] (Handelsman, Josh) (Entered: 09/10/2025) |
| 09/17/2025 | 81 | TRANSCRIPT of Proceedings (Unredacted) of Scheduling Conference held on 5/5/2025 before Judge Gregory K Frizzell (Court Reporter: Brian Neil) (Pages: 1-21). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 64 Minutes of Scheduling Conference,, Striking/Terminating Deadline(s)/Hearing(s),,, ) (bpn, CrtRptr) Modified on 12/16/2025 to remove transcript access restriction (cjb, Dpty Clk). (Entered: 09/17/2025) |
| 09/18/2025 | 82 | MOTION to Withdraw Attorney(s) *Stephanie R. Rush* by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 09/18/2025) |
| 09/19/2025 | 83 | Amended MOTION to Withdraw Attorney(s) *Stephanie R. Rush* by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 09/19/2025) |
| 09/19/2025 | 84 | ORDER by Judge Gregory K Frizzell ; terminating attorney Stephanie Rush ; finding as moot 82 Motion to Withdraw Attorney(s); granting 83 Motion to Withdraw Attorney(s) (kjp, Dpty Clk) (Entered: 09/19/2025) |
| 10/09/2025 | 85 | MINUTES of Proceedings - held before Judge Gregory K Frizzell: Evidentiary Hearing held on 10/9/2025 , striking/terminating deadline(s)/Hearing(s) (Re: 4 MOTION for Preliminary Injunction *and Brief in Support* ) (Court Reporter: Brian Neil) (With attachments) (kjp, Dpty Clk) (Entered: 10/10/2025) |
| 11/03/2025 | 86 | TRANSCRIPT of Proceedings (Unredacted) of Preliminary Injunction Hearing held on 10/9/2025 before Judge Gregory K Frizzell (Court Reporter: Brian Neil) (Pages: 1-215). NOTICE RE |

| | | |
|---|---|---|
| | | REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 85 Minutes of Evidentiary Hearing,, Striking/Terminating Deadline(s)/Hearing(s),,, ) (bpn, CrtRptr) Modified on 2/2/2026 to remove transcript access restriction. (atn, Dpty Clk). (Entered: 11/03/2025) |
| 11/07/2025 | 87 | OPINION AND ORDER by Judge Gregory K Frizzell ; denying 4 Motion for Preliminary Injunction (kjp, Dpty Clk) (Entered: 11/07/2025) |
| 12/02/2025 | 88 | ORDER by Judge Gregory K Frizzell , directing parties to file joint status report ( Status Report due by 12/31/2025) (kjp, Dpty Clk) (Entered: 12/02/2025) |
| 12/29/2025 | 89 | JOINT STATUS REPORT by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 12/29/2025) |
| 12/30/2025 | 90 | JUDGMENT by Judge Gregory K Frizzell , entering judgment in favor of Defendant Steve Kunzweiler (terminates case) (kjp, Dpty Clk) (Entered: 12/30/2025) |
| 12/30/2025 | | ***Civil Case Terminated (mm, Dpty Clk) (Entered: 12/31/2025) |
| 01/28/2026 | 91 | NOTICE OF APPEAL to Circuit Court (paid $605 appeal fee; receipt number AOKNDC-3338355) (Re: 90 Judgment, Entering Judgment ) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 01/28/2026) |
| 01/29/2026 | 92 | PRELIMINARY RECORD Sent to Circuit Court (Re: 91 Notice of Appeal to Circuit Court ) (With attachments) (cjb, Dpty Clk) (Entered: 01/29/2026) |
| 01/29/2026 | 93 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 26-5013(#91) (Re: 91 Notice of Appeal to Circuit Court ) (cjb, Dpty Clk) (Entered: 01/29/2026) |
| 02/11/2026 | 94 | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file ) (Re: 91 Notice of Appeal to Circuit Court ) by Muscogee (Creek) Nation (Kanji, Riyaz) (Entered: 02/11/2026) |
| 02/11/2026 | 95 | ORDER from Circuit Court *Notice due that record is complete by 02/17/2026 for Heidi D. Campbell* (Re: 91 Notice of Appeal to Circuit Court ) (mm, Dpty Clk) (Entered: 02/11/2026) |
| 02/17/2026 | 96 | CLERK'S RECORD on Appeal Sent to Circuit Court (Re: 91 Notice of Appeal to Circuit Court ) (mm, Dpty Clk) (Entered: 02/17/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/21/2026 14:11:06 | | |
| **PACER Login:** | cnhall0426 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** 4:25-cv-00075-GKF-JFJ |
| **Billable Pages:** 9 | | **Cost:** 0.90 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| (1) MUSCOGEE (CREEK) NATION,<br>   a federally recognized Indian tribe,<br><br>   *Plaintiff*,<br><br> v.<br><br> (1) TULSA COUNTY, OKLAHOMA;<br> (2) STEVE KUNZWEILER, in his official<br>   capacity as District Attorney for the<br>   Fourteenth Prosecutorial District of<br>   Oklahoma; and<br> (3) VIC REGALADO, in his official capacity<br>   as Tulsa County Sheriff,<br><br>   *Defendants*. | Case No. 25-cv-00075-JFJ |

**COMPLAINT**

MCN Appendix Page 10

Plaintiff the Muscogee (Creek) Nation ("Nation"), a federally recognized tribal government, by and through counsel, states as follows:

**INTRODUCTION**

1.      In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the United States Supreme Court affirmed that in a series of treaties between the 1830s and the 1860s, Congress established a federally protected reservation for the Nation. *Id*. at 899–902. It further affirmed that Congress has never disestablished the Creek Reservation and that, accordingly, the Reservation today remains Indian country under 18 U.S.C. § 1151(a). *Id*. at 902–13.

2.      Within Indian country (which includes federal Indian reservations), criminal jurisdiction over Indians is shared between the federal government and tribal governments, exclusive of state jurisdiction. "The policy of leaving Indians free from state jurisdiction and control is deeply rooted in this Nation's history." *Id*. at 928 (citation omitted). Accordingly, neither states nor their political subdivisions may exercise criminal jurisdiction over Indians within Indian country absent "a clear expression of the intention of Congress" to authorize such jurisdiction. *Id*. at 929 (citation omitted); *see also, e.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) ("[U]nless Congress provides an exception to the rule[,] … states possess 'no authority' to prosecute Indians for offenses in Indian country." (quoting *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980))).

3.      In *McGirt*, the Supreme Court confirmed that "Oklahoma cannot come close to satisfying this standard," because Congress has never granted it jurisdiction to prosecute Indians for conduct arising in Indian country. 591 U.S. at 929.

1

MCN Appendix Page 11

4.      That holding applies equally to Oklahoma county governments, because the only criminal powers that those counties possess necessarily derive from Oklahoma's authority. *See Large v. Fremont Cnty.*, 670 F.3d 1133, 1146 (10th Cir. 2012) ("[C]ounties are created by the State as convenient agencies for exercising such of the governmental powers *of the state* as may be entrusted to them." (quotation marks and citation omitted)); *Herndon v. Anderson*, 25 P.2d 326, 329 (Okla. 1933) (a county "has no inherent powers but derives [its] powers solely from the state").

5.      *McGirt* therefore put Defendants Tulsa County, its District Attorney, and its Sheriff (collectively "the County") on clear notice that they lack criminal jurisdiction over Indians within the exterior boundaries of the Creek Reservation and that prosecuting Indians under color of such jurisdiction absent the assent of Congress violates federal law.

6.      Nevertheless, the County has announced its intention to continue prosecuting Indians for conduct arising within the Creek Reservation after *McGirt*. It claims, despite a wealth of controlling precedent to the contrary, that the State of Oklahoma (and therefore its county governments) enjoys criminal jurisdiction over non-member Indians within the Creek Reservation based on the Oklahoma Court of Criminal Appeals' recent decision in *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024).[1]

7.      The County's prosecution of Indians for conduct occurring within the Creek Reservation constitutes an ongoing violation of federal law and irreparably harms the Nation's sovereignty by subjecting non-member Indians within the Creek Reservation to laws and a

---

[1] Erin Conrad, *Oklahoma Court Rules Some Tribal Members Can Be Prosecuted in State Court*, News on 6 (Jan. 6, 2025), https://bit.ly/3X10JV8.

2

MCN Appendix Page 12

criminal justice system other than the laws and system maintained by the Nation. Doing so impermissibly interferes with the Nation's federally protected rights of self-government.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362. The Nation maintains a government-to-government relationship with the United States and has a governing body duly recognized by the United States Department of the Interior. The Nation asserts claims arising under the principles of federal Indian law governing federal, tribal, and state authority within Indian country.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and the District Attorney principally discharges his official duties in this District.

## PLAINTIFF

10. Plaintiff the Muscogee (Creek) Nation is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 99,899-01, 99,901 (Dec. 11, 2024). The Nation exercises sovereign powers of self-governance and jurisdiction over the Creek Reservation, which was guaranteed to the Nation and defined by Congress in the Treaty with the Creeks, 7 Stat. 366 (1832); Treaty with the Creeks, 7 Stat. 417 (1833); Treaty with the Creeks and Seminole, 11 Stat. 699 (1856); and Treaty with the Creeks, 14 Stat. 785 (1866). *See McGirt*, 591 U.S. at 899–902.

11. The Nation, through its Attorney General, Lighthorse police, tribal court system, and comprehensive criminal code, provides for criminal law enforcement "over all Indians

3

MCN Appendix Page 13

alleged to have committed in Muscogee (Creek) Nation Indian Country a criminal offense enumerated and defined by any law or statute of the Muscogee (Creek) Nation insofar as not prohibited by federal law." MCN Code tit. 27, § 1-102(C).[2] To ensure coordinated law enforcement and public safety, the Nation has incorporated into its criminal code "any criminal offense prescribed by" other governments within the Nation's Reservation boundaries, including Tulsa County. NCA 22-048 (codified at MCN Code tit. 14, § 2-114(B)).[3] Likewise, the Nation revised its traffic code in 2020 to mirror Oklahoma's traffic code (which includes criminal provisions). NCA 20-087 (codified at MCN Code tit. 14, ch. 3).[4]

## DEFENDANTS

12.    Defendant Tulsa County is a county government organized under the laws of the State of Oklahoma. The County is located wholly within the exterior boundaries of the State of Oklahoma, and approximately sixty-seven percent of Tulsa County is located within the Creek Reservation and the remaining thirty-three percent is located within the exterior boundaries of the Cherokee Reservation.

13.    Defendant Steve Kunzweiler is the District Attorney ("District Attorney") for the Fourteenth Prosecutorial District of Oklahoma, which encompasses Tulsa County, and is sued in his official capacity.

14.    Defendant Vic Regalado is the Tulsa County Sheriff ("Sheriff") and is sued in his official capacity.

## STANDING

15.    The County's policy, as stated and enforced by the District Attorney and the

---

[2] https://bit.ly/42tVIry.
[3] https://bit.ly/40NwUtn.
[4] https://bit.ly/3PTjhTd.

4

MCN Appendix Page 14

Sheriff, of pursuing prosecutions against Indians for conduct within the Creek Reservation is causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation. *See Ute Indian Tribe*, 790 F.3d at 1005–06 (stating that there is "just no room to debate" that state and county prosecution of an Indian within a tribe's Indian country absent the assent of Congress is an "infringement on tribal sovereignty" and causes "irreparable injury" to the tribe).

16.    The District Attorney's and Sheriff's stated policies to pursue such prosecutions demonstrate that, absent judicial intervention, the County will persist with this unlawful conduct.

17.    This Court can redress the injury that the County is inflicting on the Nation and its right to self-government by issuing a declaratory judgment that the County lacks criminal jurisdiction over Indians within the Creek Reservation absent the assent of Congress, and by enjoining the County from prosecuting Indians except where authorized by Congress going forward.

**THE SUPREME COURT'S DECISION IN *McGIRT v. OKLAHOMA***

18.    In *McGirt*, the United States Supreme Court affirmed that in treaties entered between 1832 and 1866, Congress established and defined a federally protected Indian reservation for the Nation. 591 U.S. at 899–902. The Court further affirmed that, since 1866, Congress has never disestablished the Creek Reservation and that it remains Indian country today under 18 U.S.C. § 1151(a). *Id*. at 902–13.

19.    *McGirt*'s holding that the Creek Reservation is Indian country confirms

5

MCN Appendix Page 15

that the settled jurisdictional rules that allocate state, tribal, and federal criminal jurisdiction within Indian country apply within the Creek Reservation. Among those rules is that "within Indian country, generally only the federal government or an Indian tribe may prosecute Indians for criminal offenses," and that "unless Congress provides an exception to the rule[,] … states possess no authority to prosecute Indians for offenses in Indian country." *Ute Indian Tribe*, 790 F.3d at 1003–04 (quotation marks omitted). *McGirt* concluded that "Oklahoma cannot come close to" showing that Congress has ever authorized it to exercise criminal jurisdiction over Indians within reservation boundaries. 591 U.S. at 929.

20.     Because the County possesses only those powers derived from the State of Oklahoma, the rule reiterated in *McGirt* and *Ute Indian Tribe* applies to it as it does to Oklahoma. *See Ute Indian Tribe*, 790 F.3d at 1006 (rule against state criminal jurisdiction over Indians in Indian country applies to "a state and its subdivisions").

**THE COUNTY'S CONTINUED CLAIM TO CRIMINAL JURISDICTION OVER INDIANS FOR CONDUCT WITHIN THE CREEK RESERVATION AFTER *McGIRT***

21.     On January 6, 2025, the District Attorney announced that, pursuant to the Oklahoma Court of Criminal Appeals' decision in *O'Brien*, the County enjoys jurisdiction to prosecute defendants who "are Indians but non-tribal members" of the tribe in whose Indian country the charged conduct occurred—i.e., "non-member Indians."[5]

22.     The Nation is aware of multiple such prosecutions for conduct occurring within the Creek Reservation, including five in which the County has very recently opposed the non-member Indian Defendant's motion to dismiss the prosecution and the Tulsa County District Court has authorized the prosecutions to proceed in spite of those motions.

---

[5] *Supra* note 1.

6

23. The County brought each of these five prosecutions in the district court of Tulsa County, Oklahoma. These cases are styled *Oklahoma v. Bohanan*, No. CM-2022-108 (filed January 10, 2022);[6] *Oklahoma v. Hess*, No. CM-2024-2951 (filed Aug. 8, 2024);[7] *Oklahoma v. Mason*, No. CM-2024-4510 (filed Nov. 27, 2024);[8] *Oklahoma v. Neafus*, No. CM-2024-1222 (filed Apr. 3, 2024);[9] and *Oklahoma v. Morris*, No. CM-2024-4494 (filed Nov. 26, 2024).[10]

24. In each case, the charged conduct occurred within the boundaries of the Creek Reservation.

25. In each case, the Indian defendant challenged the prosecution based on the long-settled law, reaffirmed in *McGirt*, that states and their political subdivisions lack criminal jurisdiction over Indians in Indian country absent the assent of Congress.

26. In each case, the County asserted that the prosecution was justified on the basis of the Oklahoma Court of Criminal Appeals' decision in *O'Brien*.

27. And in each case, the District Court in and for Tulsa County, Oklahoma, accepted the County's arguments, denied the Indian defendant's motion to dismiss, and permitted the prosecution to move forward.

28. The Tulsa County Sheriff has additionally adopted a policy of booking and classifying inmates and asserting criminal jurisdiction over non-member Indians in light of *O'Brien*. In a memorandum that the Sheriff's Department provided to the Nation on January 24, 2025, the Sheriff stated that "tribal members will be charged by tribal courts only if they are a

---

[6] https://bit.ly/40S33il.
[7] https://bit.ly/4hXWPV7.
[8] https://bit.ly/3WXNJiY.
[9] https://bit.ly/42RpFls.
[10] https://bit.ly/40YX7Eg.

MCN Appendix Page 17

member of the tribe in which the criminal offense took place…. Any other tribal citizens will not be booked or charged into tribal courts but rather STATE court and booked into [the David L. Moss Criminal Justice Center] as any other citizen."

29.     The David L. Moss Criminal Justice Center is operated by the Sheriff.[11]

30.     Although the County purports to justify its policies and decisions on the basis of the Oklahoma Court of Criminal Appeals' decision in *O'Brien*, that case does not alter the longstanding Supreme Court and Tenth Circuit precedents prohibiting state criminal prosecution of Indians for conduct within Indian country absent the assent of Congress. *See Hewitt v. Parker*, No. 08-CV-227, 2012 WL 380335, at *4 (N.D. Okla. Feb. 6, 2012) ("this Court owes no deference to the OCCA's adjudication of" questions of federal law); *see also, e.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016) ("[I]t is beyond cavil that we are not bound by a state court interpretation of federal law." (citation omitted)). Those precedents remain binding.

31.     The County accordingly lacks all authority to depart from the jurisdictional framework reaffirmed in *McGirt* and *Ute Indian Tribe* and to instead apply a contrary rule on the basis of a state court decision. Doing so is a flagrant violation of controlling federal law and the Supremacy Clause in the United States Constitution and inflicts irreparable harm on the Nation's sovereignty.

**COUNT 1**

32.     The Nation restates, realleges, and incorporates by reference all preceding paragraphs and allegations.

33.     The Creek Reservation is Indian country under 18 U.S.C. § 1151(a).

34.     Within its Reservation, the Creek Nation and the United States possess

---

[11] *See* Tulsa County Sheriff's Office, *Jail Information*, https://bit.ly/3X0nRTH.

8

MCN Appendix Page 18

criminal jurisdiction over Indians exclusive of the State of Oklahoma and its political subdivisions, which are prohibited under federal law from asserting any such jurisdiction absent the assent of Congress. Congress has not authorized such jurisdiction here.

35.     The County continues to assert criminal jurisdiction over Indians for conduct occurring within the Creek Reservation despite the lack of congressional authorization. The County's actions directly contravene federal law.

36.     The District Attorney and Sheriff have announced that it is the County's policy to continue asserting criminal jurisdiction over Indians for conduct within the Creek Reservation absent judicial intervention.

### PRAYER FOR RELIEF

WHEREFORE, the Nation respectfully requests that this Court:

A.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of the Nation that the County lacks criminal jurisdiction over Indians for conduct occurring within the Creek Reservation and that the County's continued assertion of that jurisdiction violates federal law.

B.     Enter a noticed temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) prohibiting the County from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

C.     Preliminarily and permanently enjoin the District Attorney from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

D.     Award the Nation its reasonable attorney fees and costs.

E.     Award the Nation such other relief as the Court deems just and appropriate.

MCN Appendix Page 19

Dated: February 13, 2025

Geraldine Wisner, OBA No. 20128
Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com


O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Respectfully submitted,

*/s/Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com


Philip H. Tinker
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

10

MCN Appendix Page 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe, *Plaintiff*, v. (1) TULSA COUNTY, OKLAHOMA; (2) STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma; and (3) VIC REGALADO, in his official capacity as Tulsa County Sheriff, *Defendants*. | Case No. 25-cv-00075-JFJ |

**MOTION OF THE MUSCOGEE (CREEK) NATION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AND OPENING BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ..................................................................................................................3

I.      Allocation of Criminal Jurisdiction on the Creek Reservation...........................3

II.     The County's Assertion of Criminal Jurisdiction over Non-Member Indians After
        *City of Tulsa v. O'Brien* ......................................................................................4

ARGUMENT .......................................................................................................................5

I.      The Nation Has Standing To Bring This Action. .................................................5

II.     The Nation Amply Satisfies the Four-Factor Test for a Temporary Restraining
        Order and a Preliminary Injunction. ....................................................................6

        A.      The Nation Is Likely To Succeed on the Merits. .....................................7

                1.      Under Long-Settled Supreme Court Precedent, States Lack Criminal
                        Jurisdiction over *All* Indians in Indian Country Absent Congressional
                        Assent...........................................................................................7

                2.      Congress Likewise Recognizes No Distinction Between Member and
                        Non-Member Indians for Purposes of State Criminal Jurisdiction in
                        Indian Country. ..........................................................................10

                3.      *Castro-Huerta* Repeatedly Disclaims Any Intent To Alter Settled
                        Precedents Addressing State Criminal Jurisdiction over Indians. ............12

                4.      *Castro-Huerta*'s Constitutional Foundation Forecloses Any Distinction
                        Between Member and Non-Member Indians...........................................13

                5.      *O'Brien* Does Nothing To Undermine the Nation's Likelihood of
                        Success on the Merits..................................................................17

        B.      The Nation Will Suffer Irreparable Harm Without a Preliminary Injunction. .......20

        C.      The Balance of Harms and the Public Interest Strongly Favor a Temporary
                Restraining Order and Preliminary Injunction.........................................22

CONCLUSION....................................................................................................................25

MCN Appendix Page 22

## TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
521 U.S. 203 (1997) ................................................................................................ 18

*Baker v. USD 229 Blue Valley*,
979 F.3d 866 (10th Cir. 2020) ................................................................................. 5

*Bosse v. Oklahoma*,
360 P.3d 1203 (Okla. Crim. App. 2015) ................................................................ 19

*Bosse v. Oklahoma*,
580 U.S. 1 (2016) ............................................................................................. 18, 19

*Brassfield v. Oklahoma*,
544 P.3d 938 (Okla. 2024) ....................................................................................... 8

*City of Tulsa v. O'Brien*,
Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024) ............ passim

*Conover v. Oklahoma*,
933 P.2d 904 (Okla. Crim. App. 1997) .................................................................. 19

*Denver Homeless Out Loud v. Denver*,
32 F.4th 1259 (10th Cir. 2022) ................................................................................ 6

*Dick v. United States*,
208 U.S. 340 (1908) ............................................................................................... 20

*Duro v. Reina*,
495 U.S. 676 (1990) ................................................................................... 10, 11, 12

*Fisher v. District Court*,
424 U.S. 382 (1976) ............................................................................................... 22

*Garcia v. San Antonio Metropolitan Transit Authority*,
469 U.S. 528 (1985) ......................................................................................... 15, 20

*Haaland v. Brackeen*,
599 U.S. 255 (2023) ............................................................................................... 14

*Hagen v. Utah*,
510 U.S. 399 (1994) ............................................................................................. 7, 9

*Herndon v. Anderson*,
25 P.2d 326 (Okla. 1933) .......................................................................................... 7

ii

*Herrera v. Wyoming*,
   587 U.S. 329 (2019) ............................................................................ 19, 20

*Hewitt v. Parker*,
   No. 08-CV-227, 2012 WL 380335 (N.D. Okla. Feb. 6, 2012) ..................... 18

*Kansas v. Garcia*,
   589 U.S. 191 (2020) ...................................................................................... 17

*Large v. Fremont County*,
   670 F.3d 1133 (10th Cir. 2012) ...................................................................... 7

*Ledbetter v. Oklahoma*,
   933 P.2d 880 (Okla. Crim. App. 1997) ......................................................... 19

*Little v. Budd Co., Inc.*,
   955 F.3d 816 (10th Cir. 2020) ....................................................................... 18

*Mallory v. Norfolk Southern Railway Co.*,
   600 U.S. 122 (2023) ...................................................................................... 18

*Maricopa County v. Valley National Bank of Phoenix*,
   318 U.S. 357 (1943) ...................................................................................... 15

*McGirt v. Oklahoma*,
   591 U.S. 894 (2020) ............................................................................... passim

*Means v. Navajo Nation*,
   432 F.3d 924 (9th Cir. 2005) ..................................................................... 9, 10

*Muscogee (Creek) Nation v. Ballard*,
   Case No. 4:25-cv-00050-CVE-JFJ (N.D. Okla. filed Jan. 29, 2025) ............. 2

*Muscogee (Creek) Nation v. Iski*,
   Case No. 6:25-cv-00028-CVE (E.D. Okla. filed Jan. 28, 2025) ..................... 2

*Oklahoma v. Bohanan,*
   No. CM-2022-108 (Tulsa Cnty. Dist. Ct. filed Jan. 10, 2022) ........................ 5

*Oklahoma v. Castro-Huerta,*
   597 U.S. 629 (2022) ............................................................................... passim

*Oklahoma v. Hess,*
   No. CM-2024-2951 (Tulsa Cnty. Dist. Ct. filed  Aug. 8, 2024) ...................... 5

*Oklahoma v. Mason,*
   No. CM-2024-4510 (Tulsa Cnty. Dist. Ct. filed Nov. 27, 2024) ..................... 5

MCN Appendix Page 24

*Oklahoma v. Morris*,
   No. CM-2024-3928 (Tulsa Cnty. Dist. Ct. filed Oct. 14, 2024)....................................................5

*Oklahoma v. Neafus*,
   No. CM-2024-1222 (Tulsa Cnty. Dist. Ct. filed Apr. 3, 2024)......................................................5

*Payne v. Tennessee*,
   501 U.S. 808 (1991) ................................................................................... 19

*Pollard v. Hagan*,
   44 U.S. 212 (1845) .................................................................................... 15

*Prairie Band of Potawatomi Indians v. Pierce*,
   253 F.3d 1234 (10th Cir. 2001) ............................................................. 6, 21

*Prairie Band watomi Nation v. Wagnon*,
   476 F.3d 818 (10th Cir. 2007) ...................................................................25

*Puerto Rico Department of Consumer Affairs v. Isla Petroleum Corp.*,
   485 U.S. 495 (1988) ................................................................................... 17

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
   490 U.S. 477 (1989) ................................................................................... 18

*Seminole Tribe of Florida v. Florida*,
   517 U.S. 44 (1996) ..................................................................................... 14

*Skiriotes v. Florida*,
   313 U.S. 69 (1941) ..................................................................................... 15

*Sturges v. Crowninshield*,
   17 U.S. (4 Wheat.) 122 (1819) ............................................................ 15, 16

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
   460 U.S. 533 (1983) ................................................................................... 18

*Torres v. Texas Department of Public Safety*,
   597 U.S. 580 (2022) ................................................................................... 16

*United States v. Ballard*,
   Case No. 4:24-cv-00626-CVE-SH (N.D. Okla. filed Dec. 23, 2024)........................................ 2

*United States v. Comstock*,
   560 U.S. 126 (2010) ................................................................................... 15

*United States v. Iski*,
   Case No. CIV-24-493-CVE (E.D. Okla. filed Dec. 23, 2024) ................................................... 2

**MCN Appendix Page 25**

*United States v. Kagama,*
    118 U.S. 375 (1886) ................................................................................ 17

*United States v. Lara,*
    541 U.S. 193 (2004) ..................................................................... passim

*United States v. Maloid,*
    71 F.4th 795 (10th Cir. 2023) ................................................................ 18

*United States v. Pink,*
    315 U.S. 203 (1942) ............................................................................... 16

*U.S. Term Limits, Inc. v. Thornton,*
    514 U.S. 779 (1995) ............................................................................... 15

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence,*
    22 F.4th 892 (10th Cir. 2022) ................................................................ 16

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah,*
    790 F.3d 1000 (10th Cir. 2015) ..................................................... passim

*Vietti v. Welsh & McGough, PLLC,*
    Case No. 21-CV-58-JFH-SH, 2022 WL 1288314 (N.D. Okla. Apr. 30, 2022) .......................... 6

*Ward v. Race Horse,*
    163 U.S. 504 (1896) ............................................................................... 19

*Williams v. Lee,*
    358 U.S. 217 (1959) ................................................................................. 9

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) .................................................................................... 6

*Wyandotte Nation v. Sebelius,*
    443 F.3d 1247 (10th Cir. 2006) ............................................................. 20

**Constitutional Provisions and Statutes**

25 U.S.C. § 1301(1) ........................................................................... 11, 12

25 U.S.C. § 1301(2) ........................................................................ 4, 5, 24

Act of Mar. 3, 1885, ch. 341, 23 Stat. 362 ................................................ 17

Act of Aug. 15, 1953, Pub. L. No. 83-280, 67 Stat. 588 .......................... 11, 12

**MCN Appendix Page 26**

Muscogee (Creek) Nation Code tit. 14 ................................................................ 22

Muscogee (Creek) Nation Code tit. 16 ................................................................ 22

Muscogee (Creek) Nation Code tit. 27 ................................................................ 22

Muscogee (Creek) Nation Const. art. VII ............................................................22

U.S. Const. amend. X................................................................................ 13, 14, 19

**Legislative Material**s

H.R. Conf. Rep. No. 101-938, 1990 WL 201576 (1990).................................... 12

H.R. Conf. Rep. No. 102-261, 1991 WL 218024 (1991).................................... 12

H.R. Rep. No. 102-61 (1991).............................................................................. 12

**Other Authorities**

*Cohen's Handbook of Federal Indian Law* (Nell Jessup Newton ed., 2012) ............................... 16

Erin Conrad, *Oklahoma Court Rules Some Tribal Members Can Be Prosecuted in State Court*, News on 6 (Jan. 6, 2025)............................................................................... 1

*Katie Hallum, Tulsa Prosecutor Takes On Case of Cherokee Citizen on Muscogee Land After Criminal Appeals Court Decision*, KOSU (Jan. 9, 2025) ............................... 1, 4

Restatement of the Law of American Indians § 71........................................... 10

William C. Canby, Jr., *American Indian Law in a Nutshell* (7th ed. 2020)................................. 10

vi

**INTRODUCTION**

The Muscogee (Creek) Nation ("Nation") respectfully moves this Court for a temporary restraining order (which it seeks with full notice to the Defendants) and a preliminary injunction prohibiting Defendants Tulsa County, Oklahoma; Steve Kunzweiler, District Attorney for Oklahoma's Fourteenth Prosecutorial District (which encompasses Tulsa County); and Vic Regalado, Tulsa County Sheriff (collectively the "County"), from asserting criminal jurisdiction over Indians within the boundaries of the Muscogee (Creek) Reservation. Pursuant to the United States Constitution and bedrock principles of federal Indian law, Oklahoma and its political subdivisions may exercise criminal jurisdiction over Indians within the Reservation only with the assent of Congress. "Nor has Congress ever passed a law conferring jurisdiction on Oklahoma." *McGirt v. Oklahoma*, 591 U.S. 894, 932 (2020).

The County nevertheless asserts that it enjoys authority to prosecute certain Indians for conduct within the Creek Reservation and is presently undertaking such prosecutions. It contends that, under the authority of *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), and the recent decision of the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024), Oklahoma and its political subdivisions enjoy criminal jurisdiction within Indian country over defendants who "are Indians but non-tribal members" of the tribe in whose Indian country the charged conduct occurred (hereafter "non-member Indians").[1]

---

[1] Katie Hallum, *Tulsa Prosecutor Takes On Case of Cherokee Citizen on Muscogee Land After Criminal Appeals Court Decision*, KOSU (Jan. 9, 20205), https://bit.ly/3WDmNEZ; *see also* Erin Conrad, *Oklahoma Court Rules Some Tribal Members Can Be Prosecuted in State Court*, News on 6 (Jan. 6, 2025), https://bit.ly/3ECoYTd. The County has reiterated these assertions in briefs filed in its own courts. *See, e.g.*, State's Response Objecting to Defendant's Motion to Dismiss, *Oklahoma v. Bohanan*, Case No. CM-2022-108 (Dist. Ct. Tulsa Cnty. Jan. 27, 2025), https://bit.ly/4gGPacH.

1

The County is wrong. *O'Brien* premises its analysis on *Castro-Huerta*, and that reliance is entirely misplaced. *Castro-Huerta* repeatedly disavows any intent to address state criminal jurisdiction over Indians in Indian country. *See* 597 U.S. at 650 n.6 (referring to "crimes committed by an Indian" and stating that "[w]e express no view on state jurisdiction over a criminal case of that kind"); *id*. at 655 n.9 ("To reiterate, we do not take a position on that question."). *Castro-Huerta* instead confines its holding to state jurisdiction over *non*-Indians, which it upholds as a matter of state power reserved by the Tenth Amendment—and long-settled Supreme Court precedent confirms that the Tenth Amendment reserves to states no measure of criminal jurisdiction over any Indians in Indian country.

The Nation accordingly has a strong likelihood of success on the merits of this suit, as further evidenced by the fact that the United States is in full accord with the Nation's position. On December 23, 2024, the United States filed suit in this Court against the District Attorney for Rogers, Craig, and Mayes Counties, and in the Eastern District of Oklahoma against the District Attorney for McIntosh and Okmulgee Counties, for unlawfully prosecuting non-member Indians and seeking preliminary and permanent injunctive relief. *United States v. Ballard*, Case No. 4:24-cv-00626-CVE-SH (N.D. Okla. filed Dec. 23, 2024); *United States v. Iski*, Case No. CIV-24-493-CVE (E.D. Okla. filed Dec. 23, 2024). The Nation has likewise filed suit against those District Attorneys. *Muscogee (Creek) Nation v. Ballard*, Case No. 4:25-cv-00050-CVE-JFJ (N.D. Okla. filed Jan. 29, 2025); *Muscogee (Creek) Nation v. Iski*, Case No. 6:25-cv-00028-CVE (E.D. Okla. filed Jan. 28, 2025). The United States and the Nation concur as to the requirements of federal law that control the outcome of their respective suits. *Compare, e.g.*, United States' Motion for Preliminary Injunction and Opening Brief in Support, *United States v. Ballard* ("U.S. Br."), *with*

MCN Appendix Page 29

Motion of Muscogee (Creek) Nation for Preliminary Injunction and Opening Brief in Support, *Muscogee (Creek) Nation v. Ballard*.

The other requirements for a noticed temporary restraining order and preliminary injunction are likewise satisfied here. The County's unlawful assertion of criminal jurisdiction over Indians within the Creek Reservation irreparably harms the Nation's sovereignty, as repeated decisions of the Tenth Circuit confirm. Permitting the County to continue asserting such jurisdiction during the pendency of this action would only compound that harm. And the balance of the equities and the public interest tip decisively in favor of putting a prompt end to the County's unceasing violation of federal law. In addition to direct impairment of the Nation's sovereignty, assertions of criminal jurisdiction over non-member Indians by counties within the Creek Reservation have contributed to "intolerable jurisdictional chaos" in Oklahoma Indian country, and "if allowed to stand would seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide," U.S. Br. 2–3. A temporary restraining order and preliminary injunction should issue.

## BACKGROUND

### I.    Allocation of Criminal Jurisdiction on the Creek Reservation

In *McGirt*, the Supreme Court affirmed that in treaties entered between 1832 and 1866, Congress established a federally protected Indian reservation for the Nation, 591 U.S. at 899–902, and that Congress has never disestablished the Reservation, such that it remains Indian country today, *see id*. at 902–913. Accordingly, the settled rules governing state, tribal, and federal criminal jurisdiction within Indian country govern within the Creek Reservation. These include the cardinal principle that "a clear expression of the intention of Congress" is required before states may prosecute Indians within Indian country. *Id*. at 929 (citation omitted); *see also,*

3

*e.g.*, *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000, 1003 (10th Cir. 2015) ("[U]nless Congress provides an exception to the rule[,] … states possess no authority to prosecute Indians for offenses in Indian country." (quotation marks omitted)). *McGirt* confirms, moreover, that "Oklahoma cannot come close" to establishing that Congress has authorized it to exercise criminal jurisdiction over Indians in Indian country. 591 U.S. at 929.

**II.     The County's Assertion of Criminal Jurisdiction over Non-Member Indians After** ***City of Tulsa v. O'Brien***

On January 6, 2025, Defendant District Attorney Kunzweiler announced publicly that the County would rely on the OCCA's decision in *O'Brien* to prosecute defendants who "are Indians but non-tribal members" of the tribe in whose Indian country the charged conduct occurred.[2] Defendant Sheriff Regalado, in a written statement announcing a new County policy in light of *O'Brien*, additionally instructed his department that going forward, "tribal members will be charged by tribal courts only if they are a member of the tribe in which the criminal offense took place…. Any other tribal citizens will not be booked or charged into tribal courts but rather the STATE court and booked into [the Tulsa County Jail] as any other citizen." Decl. of Att'y Gen. Geraldine Wisner ¶ 5, Ex. 2.

Moreover, the County's new jail policy, which it provided to the Nation on January 24, 2025, *see* Wisner Decl. ¶ 5, not only purports to authorize its criminal jurisdiction over non-member Indians within the Creek Reservation, it reflects the County's intent to undermine *the Nation's* authority to assert jurisdiction over such Indians, despite the fact that such jurisdiction is guaranteed by federal law.[3] Under the policy, for Indian conduct occurring within the Creek

---

[2] Hallum, *supra* note 1.

[3] *See* 25 U.S.C. § 1301(2) (tribal "'powers of self-government'" include "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians");

4

Reservation, "[t]he *only tribal arrests that will take place* will be Creek Citizens .... All others will be booked into [the Tulsa County Jail] and charged in Tulsa Co. District Court." *Id.* ¶ 5, Ex. 2. (emphasis added).

Exemplary of the new policy, the Tulsa County District Court held hearings on January 31, 2025, in five prosecutions brought by the County against non-member Indians for conduct within the Creek Nation. In each case, the non-member Indian defendant challenged the County's jurisdiction based on his or her Indian status and the Indian country status of the Creek Reservation and relied explicitly on *McGirt*. In each case, the County opposed the jurisdictional challenge under the authority of *Castro-Huerta* and *O'Brien*. And in each case, the Tulsa County District Court rejected the jurisdictional challenge and allowed the prosecutions to proceed.[4]

The County is knowingly prosecuting these and other defendants with full knowledge of their Indian status and the Indian country status of the Creek Reservation. Its public statements, prosecutorial conduct, and court filings confirm the County's full intent to continue doing so going forward.

**ARGUMENT**

**I.     The Nation Has Standing To Bring This Action.**

Standing requires "(1) ... an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (citation omitted). These elements are satisfied here. The County is prosecuting numerous Indians for conduct within the

---

*United States v. Lara*, 541 U.S. 193, 198 (2004) (tribes' inherent criminal jurisdiction extends to "'*all* Indians,' including nonmembers" (quoting 25 U.S.C. § 1301(2))).

[4] *Oklahoma v. Bohanan*, https://bit.ly/4gFfkwc; *Oklahoma v. Hess*, https://bit.ly/4hXWPV7; *Oklahoma v. Mason*, https://bit.ly/3WXNJiY; *Oklahoma v. Neafus*, https://bit.ly/42RpFls; *Oklahoma v. Morris*, https://bit.ly/3CLmhhA.

MCN Appendix Page 32

Creek Reservation and has publicly proclaimed and demonstrated its intent to continue to do so going forward as a matter of settled County policy. These assertions of jurisdiction constitute an invasion of the Nation's own sovereignty and right of self-government. The Tenth Circuit has repeatedly found such conduct by non-tribal governments to constitute unlawful interference with tribal self-government. *See infra* Section II.B. A decision in the Nation's favor would put an end to that interference. Article III standing obtains under these circumstances. *See, e.g.*, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001).

**II.      The Nation Amply Satisfies the Four-Factor Test for a Temporary Restraining Order and a Preliminary Injunction.**

"Except as to notice and duration, the legal standards governing a temporary restraining order … and a preliminary injunction are the same." *Vietti v. Welsh & McGough, PLLC*, Case No. 21-CV-58-JFH-SH, 2022 WL 1288314, at *2 (N.D. Okla. Apr. 30, 2022). The plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of [the requested] relief, that the balance of equities tips in his favor, and that [the relief] is in the public interest." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these factors weighs strongly in favor of a temporary restraining order and preliminary injunction.

The Nation seeks a noticed temporary restraining order in addition to a preliminary injunction given the important time sensitivities involved. Since the OCCA's decision in December, Tulsa County has aggressively pursued the prosecution of non-member Indian defendants and has announced new policies and practices designed to undermine the Nation's ability to exercise its own inherent, congressionally affirmed jurisdiction over those Defendants. Nor is the County alone in such efforts. *See supra* p. 2.

6

In November 2023, the Nation filed suit and sought a preliminary injunction against similar practices by the City of Tulsa. As of December 2024, when the parties sought a stay of that matter (which is pending in front of a different district court judge) in order to negotiate an end to the City's practices, the district court had not yet ruled on the Nation's motion for a preliminary injunction. The Nation is anxious to avoid a delay of that duration in the vindication of its sovereign rights here.

### A.    The Nation Is Likely To Succeed on the Merits.

Oklahoma counties possess only those criminal powers that they derive from Oklahoma. *See Large v. Fremont Cnty.*, 670 F.3d 1133, 1146 (10th Cir. 2012) ("[C]ounties are created by the State as convenient agencies for exercising such of the governmental powers *of the state* as may be entrusted to them." (quotation marks and citation omitted)); *Herndon v. Anderson*, 25 P.2d 326, 329 (Okla. 1933) (a county "has no inherent powers but derives [its] powers solely from the state"). Thus, if Oklahoma lacks criminal jurisdiction over non-member Indians in Indian country, then so does the County—and that is precisely the case.

### 1.    Under Long-Settled Supreme Court Precedent, States Lack Criminal Jurisdiction over *All* Indians in Indian Country Absent Congressional Assent.

When the Supreme Court issued its decision in *Castro-Huerta*, the law was crystal clear that "State courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country'" absent "a clear expression of the intention of Congress." *McGirt*, 591 U.S. at 898, 929 (citations omitted); *see also, e.g.*, *Hagen v. Utah*, 510 U.S. 399, 401–02, 408 (1994) (because "Congress has not granted criminal jurisdiction to … Utah to try crimes committed by Indians in Indian country," only if the locus of the crime "is not in Indian country" did Utah "properly exercise[] criminal jurisdiction over petitioner, an Indian" (quotation marks omitted); *accord Ute Indian Tribe*, 790 F.3d at 1003 ("[U]nless Congress provides an exception to the rule[,] … states

7

MCN Appendix Page 34

possess no authority to prosecute Indians for offenses in Indian country." (quotation marks omitted)).

The County does not contest the controlling force of this rule with respect to member Indians. Nor does the State of Oklahoma or the Oklahoma Supreme Court. In *Brassfield v. Oklahoma*, 544 P.3d 938 (Okla. 2024), the Oklahoma Supreme Court recently confirmed that an Oklahoma county lacks criminal jurisdiction over a Cherokee citizen for conduct occurring within the Cherokee Reservation "because the State of Oklahoma lacks jurisdiction." *Id*. at 939. The State of Oklahoma concurred with this principle in its briefing to the Court. *See* Brief in Chief of Appellee Oklahoma State Bureau of Investigation at 5, *Brassfield v. Oklahoma* (No. 119,998), 2022 WL 4236254, at *5 ("Oklahoma did not have jurisdiction to prosecute this matter …. That jurisdiction would be with either the Federal Government or the Cherokee Nation in accordance with … *McGirt v. Oklahoma*[.]").

Instead, the County asserts that the presumptive prohibition against state criminal jurisdiction over Indians in Indian country does not apply to state jurisdiction over non-member Indians. However, the prohibition recognizes no distinction between member and non-member Indians. *McGirt*, after all, involved a non-member Indian defendant. *See* 591 U.S. at 898 (stating that defendant "is an enrolled member of the Seminole Nation of Oklahoma and his crimes took place on the Creek Reservation"). Yet the Court readily affirmed the applicability of the general rule. *See id*. at 898, 929, 932 (holding that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country'" absent "a clear expression of the intention of Congress," and "Oklahoma cannot come close to satisfying this standard" in the case before the Court because Congress had not "ever passed a law conferring jurisdiction on Oklahoma" (citation omitted). These statements of governing law would have had no conceivable relevance

8

in the case if the non-member Indian defendant was, as the County contends, not subject to them.[5]

*McGirt* is the latest in a long line of precedent making plain that "when Congress has wished" states to enjoy criminal authority over Indians, "it has expressly granted them the jurisdiction[.]" *Williams v. Lee*, 358 U.S. 217, 221 (1959). And like *McGirt*, those precedents do not distinguish between member and non-member Indians. For example, in *Hagen*, the Court addressed a challenge to Utah's jurisdiction to prosecute a drug offense committed by a "member of the Little Shell Band of Chippewa Indians of Montana," Petitioner's Brief, *Hagen* (No. 92-6281), 1993 WL 384821, at *4, on land alleged to be part of the Uintah Reservation in Utah. And contrary to the District Attorney's position, the *Hagen* Court applied the rule that pertains to Indians generally: if the locus of the offense was Indian country, the Court reasoned, Utah lacked jurisdiction over the non-member Indian defendant—whom the Court referred to as simply "an Indian"—because Congress had not authorized the prosecution. *See* 510 U.S. at 401–02, 408 (because "Congress has not granted criminal jurisdiction to … Utah to try crimes committed by Indians in Indian country," only if the locus of the crime "is not in Indian country" did Utah "properly exercise[] criminal jurisdiction over petitioner, an Indian" (quotation marks omitted).

In sum, the Supreme Court has never distinguished between member and non-member Indians for purposes of state criminal jurisdiction. And the lower federal courts have adhered to the Supreme Court's controlling rule. In *Means v. Navajo Nation*, 432 F.3d 924 (9th Cir. 2005),

---

[5] The *McGirt* dissenters (each of whom joined, and one of whom authored, the *Castro-Huerta* majority opinion) did not dispute the applicability of these governing rules to the non-member Indian defendant, *see* 591 U.S. at 938–73 (Roberts, C.J., dissenting). They simply disagreed with the majority as to whether Congress had, in fact, provided the requisite statutory assent, *see id*. at 958–59 (discussing the "progression of major statutes" by which Congress allegedly conferred the disputed criminal jurisdiction on Oklahoma).

9

MCN Appendix Page 36

for example, the Ninth Circuit rejected a claim of state criminal jurisdiction within the Navajo Reservation over a defendant "who is not a member of the [Navajo] tribe, but who is an enrolled member of another Indian tribe," because "Arizona, like the majority of states, does not have jurisdiction to try Indians for offenses committed on a reservation[.]" *Id.* at 927, 933; *see also, e.g.*, Restatement of the Law of American Indians § 71 cmt. b ("Absent federal authorization, states have no jurisdiction over crimes committed by *an Indian* in Indian country." (emphasis added)); William C. Canby, Jr., *American Indian Law in a Nutshell* 215 (7th ed. 2020) ("[T]ribes … have jurisdiction over crimes by nonmember Indians in Indian country and the state does not.").

### 2. Congress Likewise Recognizes No Distinction Between Member and Non-Member Indians for Purposes of State Criminal Jurisdiction in Indian country.

In *Duro v. Reina*, 495 U.S. 676 (1990), the Supreme Court addressed whether tribes possess criminal jurisdiction over non-member Indians, and in so doing drew a sharp distinction between member and non-member Indians for purposes of tribal criminal jurisdiction. While acknowledging tribes' inherent criminal jurisdiction over member Indians, it concluded (in a ruling subsequently rejected by Congress) that "inherent tribal jurisdiction extends to tribe members only." *Id.* at 691.

However, nowhere did the *Duro* Court even hint that if tribes lack criminal jurisdiction over non-member Indians, states must therefore possess it. *See id.* at 684–96. To the contrary, the Court recognized that by holding that tribes lack criminal jurisdiction over non-member Indians, a jurisdictional gap would arise because of the corresponding lack of state authority. As the dissent put it:

> [T]he Court today creates a jurisdictional void …. Because of the Indian-against-Indian exception in 18 U.S.C. § 1152, federal courts have no jurisdiction over

10

> such crimes…. [and] *States do not have power* to exercise criminal jurisdiction over crimes involving Indians on the reservation…. Thus, under the Court's holding today, the tribe, the Federal Government, and *the State* each lack jurisdiction to prosecute the [non-member Indian] crime involved in this case.

*Id.* at 704–05 & n.3 (Brennan, J., dissenting) (emphasis added).

The *Duro* majority did not dispute that such a jurisdictional void would result from its ruling but deemed that an inadequate "policy … basis for finding tribal jurisdiction," *id*. at 698, in part because, under Public Law 280, states can assume the jurisdiction they otherwise lack: "States may, *with the consent of the tribes*, assist in maintaining order on the reservation by punishing minor crime. Congress has provided a mechanism by which the *States now without jurisdiction* in Indian country may assume criminal jurisdiction through Pub.L. 280." *Id*. at 697 (emphases added) (citation omitted). Again, the Court made these statements specifically in reference to state criminal jurisdiction over non-member Indians.

In other words, for purposes of *state* criminal jurisdiction in Indian country, both the majority and the dissent in *Duro* recognized that non-member Indians, like Indians generally, are subject to the rule that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in Indian country" absent "a clear expression of the intention of Congress," *McGirt*, 591 U.S. at 898, 929 (quotation marks and citation omitted).

The *Duro* Court invited Congress to address the jurisdictional void it had acknowledged, noting that "[i]f the present jurisdictional scheme proves insufficient to meet the practical needs of reservation law enforcement, then the proper body to address the problem is Congress, which has the ultimate authority over Indian affairs." 495 U.S. at 698. Congress subsequently did just that, restoring to tribes the inherent criminal jurisdiction over non-member Indians that *Duro* had denied. *See* 25 U.S.C. § 1301(1) ("*Duro* fix"); *see United States v. Lara*, 541 U.S. 193 (2004)

11

(affirming constitutionality of *Duro* fix). And Congress did so precisely to fill the jurisdictional

void resulting from the absence of state criminal jurisdiction over non-member Indians:

> [T]he states do not have jurisdiction to try Indians for criminal offenses
> committed within Indian reservations except in those few instances in which
> Congress has conferred such authority upon them. Thus, *Duro*'s holding that
> tribes lack criminal jurisdiction over *non-member Indians* has created a void in
> the preservation of law and order on many reservations.

H.R. Rep. No. 102-61, at 3–4 (1991) (emphases added); *see also* H.R. Conf. Rep. No. 102-261,

at 5, 1991 WL 218024, at *5 (1991) (stating that unless jurisdiction is assumed under Public Law

280, "a state cannot exercise jurisdiction over crimes committed by non-tribal member Indians");

H.R. Conf. Rep. No. 101-938, 1990 WL 201576, at *104 (1990) ("[U]nless the Congress acts to

fill this jurisdictional void, [non-member Indians] … may come onto an Indian reservation,

commit a criminal misdemeanor, and know that there is *no governmental entity that has the*

*jurisdiction to prosecute them* for their criminal acts. Such is the situation across Indian country

since the Court's ruling[.]" (emphasis added)).[6]

*    *    *

In sum, neither the Supreme Court nor Congress has recognized any distinction between

member and non-member Indians for purposes of state criminal jurisdiction over Indians in

Indian country. As discussed next, *Castro-Huerta* does nothing to change that.

> **3.    *Castro-Huerta* Repeatedly Disclaims Any Intent To Alter Settled
> Precedents Addressing State Criminal Jurisdiction over Indians.**

*Castro-Huerta*, which involves state criminal jurisdiction over *non*-Indians, does not

disturb the long-settled precedents of the Supreme Court directly addressing state jurisdiction

---

[6] Dissenting on unrelated grounds in *Lara*, Justices Souter and Scalia (who was part of the *Duro* majority) agreed that "the principal object" of the *Duro* fix "was to close the jurisdictional void created by *Duro*[.]" 541 U.S. at 231 (Souter, J., and Scalia, J., dissenting) (quotation marks omitted).

12

**MCN Appendix Page 39**

over Indians. To the contrary, it refers to the issue of state jurisdiction over crimes by non-Indians in Indian country as "the narrow jurisdictional issue in this case" and distinguishes it from the question of state jurisdiction "over other crimes committed in Indian country, such as crimes committed by Indians," 597 U.S. at 648; *see also* U.S. Br. 9 (discussing same). And the Court repeatedly disclaimed any intent to address the latter issue. *See, e.g.*, 597 U.S. at 639 n.2 (describing state jurisdiction "over crimes committed by Indians in Indian country" as "a question not before us"); *id.* at 650 n.6 ("We express no view on state jurisdiction over a criminal case of that kind."); *id.* at 655 n.9 ("To reiterate, we do not take a position on that question.").

*Castro-Huerta* contains not a word distinguishing between member and non-member Indians or otherwise suggesting that non-member Indians are somehow swept up within its holding when "Indians" in general are so emphatically excluded from it. Indeed, as addressed next, *Castro-Huerta*'s constitutional underpinnings in fact preclude any such distinction.

### 4. *Castro-Huerta*'s Constitutional Foundation Forecloses Any Distinction Between Member and Non-Member Indians.

*Castro-Huerta* holds that states have jurisdiction concurrent with the federal government to prosecute *non*-Indians for crimes committed against Indians in Indian country. *Id.* at 655. The Court premised its conclusion explicitly on the Tenth Amendment:

> [T]he Constitution allows a State to exercise jurisdiction in Indian country…. [A]s a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country. **See U.S. Const., Amdt. 10**. As this Court has phrased it, a State is generally "entitled to the sovereignty and jurisdiction over all the territory within her limits." *Lessee of Pollard v. Hagan*, 3 How. 212, 228, 11 L.Ed. 565 (1845).

*Id.* at 636 (emphasis added). Accordingly,

> under the Constitution and this Court's precedents, the default is that States may exercise criminal jurisdiction within their territory[, **s]ee Amdt. 10** [,]… unless that jurisdiction is *preempted*.

13

*Id*. at 653 (emphasis added.

The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Under *Castro-Huerta*, since criminal authority over non-Indians in Indian country was not delegated exclusively to the United States by the Constitution, or prohibited by it to the states, a measure of that jurisdiction was reserved to the states by the Tenth Amendment, such that states enjoy "concurrent jurisdiction with the Federal Government to prosecute crimes committed by non-Indians against Indians in Indian country." 597 U.S. at 635.

This reasoning does not support state jurisdiction over crimes by Indians, given two central, undeniable propositions. First, as the Supreme Court underscored just this past Term: "In a long line of cases, we have characterized Congress's power to legislate with respect to the Indian tribes as 'plenary and exclusive.'" *Haaland v. Brackeen*, 599 U.S. 255, 272 (2023) (quotation marks and citation omitted) (collecting cases). That exclusive "power to legislate with respect to Indians …. includ[es] criminal law," *id*. at 275, extends to "Indians as individuals," *id*. at 278, and derives squarely from the Constitution, *see id.* at 273–74 (locating the grant of exclusive federal "authority to regulate Indians" in various constitutional provisions); *accord Lara*, 541 U.S. at 200 ("the Constitution grants Congress broad general powers to legislate in respect to Indian tribes" that are "plenary and exclusive" (citation omitted)). As a result, the Constitution places Indians in Indian country "under the exclusive control of the Federal Government," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 62, 72 (1996); *see also* U.S. Br. 7 (stating that "the U.S. Constitution assigns Congress 'plenary and exclusive' responsibility over … the regulation of relationships with Indian tribes and people …. including criminal law").

14

Second, the Tenth Amendment reserves to states only "that residuum of sovereignty not delegated to the United States by the Constitution[.]" *Skiriotes v. Florida*, 313 U.S. 69, 77 (1941) (citation omitted). Thus, where the Constitution grants a power *exclusively* to Congress, no "residuum" of state authority remains because states retain sovereignty under the Tenth Amendment "*only to the extent* that the Constitution has not … transferred those powers to the Federal Government," *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 549 (1985) (emphasis added). In other words, where "Congress … has under the Constitution exclusive authority" over a matter, it falls outside of "the powers 'reserved to the States' under the Tenth Amendment." *Maricopa Cnty. v. Valley Nat'l Bank of Phoenix*, 318 U.S. 357, 361 (1943).[7] This has been well understood since the Founding. Chief Justice Marshall explained that when the Constitution grants a power to be "exercised exclusively by congress, the subject is … completely taken from the state[s] … as if they had been expressly forbidden to act on it," and no "concurrent power" is retained by the states. *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 193 (1819). And it has remained the understanding ever since. *See, e.g.*, *United States v. Comstock*, 560 U.S. 126, 144 (2010) ("Virtually by definition, these powers [delegated to Congress by the Constitution] are not powers that the Constitution 'reserved to the States.'"); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801 (1995) (Tenth Amendment

---

[7] Oklahoma agrees and said so in its briefing in *Castro-Huerta*. *See* Petitioner's Brief at 16, *Castro-Huerta* (No. 21-429), 2022 WL 628282, at *16 (stating that states retain "that residuum of sovereignty not delegated to the United States by the Constitution itself" (quoting *Skiriotes*, 313 U.S. at 77). The United States agrees as well. *See* U.S. Br. 24 (because Congress's constitutional authority to regulate the conduct of Indians in Indian country is plenary and exclusive, "[t]he states … do not and cannot enjoy that responsibility under the structure of the U.S. Constitution"). Indeed, while *Castro-Huerta* quotes *Pollard v. Hagan*, 44 U.S. 212, 228 (1845), for the proposition that "a State is generally 'entitled to the sovereignty and jurisdiction over all the territory within her limits,'" 597 U.S. at 636, *Pollard* states that those "rights of sovereignty and jurisdiction" are *subject to the rights surrendered by the Constitution to the United States*," 44 U.S. at 229 (emphasis added).

MCN Appendix Page 42

"unambiguously confirms" that states retained no rights of sovereignty over matters that the Constitution "*exclusively* delegated to the United States"); *United States v. Pink*, 315 U.S. 203, 233 (1942) (a power "vested in the national government exclusively" is "not shared by the States"); *Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 612 (2022) (Thomas, J., dissenting, joined by Alito, J., Gorsuch, J., and Barrett, J.) ("Our precedents teach that whenever a power is 'exercised exclusively by Congress, the subject is as completely taken from the State Legislatures, *as if they had been expressly forbidden to act on it*.'" (quoting *Sturges*, 17 U.S. (4 Wheat.) at 193)).[8]

Taken together, the two principles lead to an inescapable conclusion. Because the Constitution vests criminal authority over Indians in Indian country exclusively in the federal government, the Tenth Amendment reserves no residuum of that authority to the states. *See Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*, 22 F.4th 892, 899–900 (10th Cir. 2022) ("[T]he federal government's plenary and exclusive constitutional authority to legislate in respect to Indian tribes … leav[es] Indians free from state jurisdiction and control." (quotation marks omitted)), *cert. denied*, 143 S.Ct. 273 (2022).

Accordingly, as *McGirt* reaffirms, states lack that authority unless and until Congress confers it explicitly. *See, e.g.*, *Lara*, 541 U.S. at 211 (Stevens, J., concurring) ("Congress can authorize the States to exercise—as *their own*—inherent powers that the Constitution has otherwise placed off limits[.]"); *Cohen's Handbook of Federal Indian Law* § 6.03[1][a], at 512 (Nell Jessup Newton ed., 2012) (the Constitution "vests exclusive authority over Indian affairs in the federal government .… vis-à-vis the states … unless Congress legislates to the contrary").

---

[8] The *Torres* majority did not dispute this principle; it focused on other issues to resolve the case.

16

MCN Appendix Page 43

Once again, these principles allow for no distinction between member and non-member Indians. Congress's first criminal statute applicable to Indians in Indian country, the 1885 Major Crimes Act, provided for federal criminal prosecution of "*all Indians* … committing … the following crimes … within the limits of *any* Indian reservation[.]" Act of Mar. 3, 1885, ch. 341, § 9, 23 Stat. 362, 385 (emphases added). In upholding the constitutionality of that act, the Supreme Court confirmed that Congress's exclusive authority to prosecute Indians for an offense within a specific tribe's reservation requires only that the defendant be "an Indian of *some* tribe"—i.e., "the offending Indian shall belong to that *or some other* tribe," *United States v. Kagama*, 118 U.S. 375, 383 (1886) (emphasis added)); *see also id*. at 384–85 (that authority "never has existed" in the states, and the federal government "alone" possesses it).

*Castro-Huerta*'s declaration that "unless preempted, States have jurisdiction over crimes committed in Indian country," 597 U.S. at 638, accordingly defeats rather than supports the County's position. State criminal jurisdiction over all Indians—members and non-members—is indeed preempted by the Constitution's delegation of exclusive authority to Congress. *See Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (preemption may arise "from … *the Constitution itself*" (emphasis added) (citing *P.R. Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988))). The United States again agrees. *See* U.S. Br. 8 (Congress's exclusive constitutional power to regulate Indians in Indian country operates "to preempt the operation of state law over Indians in Indian country").

> **5.**      ***O'Brien* Does Nothing To Undermine the Nation's Likelihood of Success on the Merits.**

On December 5, 2024, the OCCA upheld the City of Tulsa's efforts to prosecute non-member Indians for criminal offenses within the Creek Reservation. *See O'Brien*, 2024 WL 5001684. As noted, the County has invoked *O'Brien* as the warrant for the sea-change it seeks to

MCN Appendix Page 44

effect in Tulsa County's approach to criminal jurisdiction over non-member Indians. But *O'Brien* does nothing to undermine the Nation's likelihood of success on the merits because *O'Brien*—to which "this Court owes no deference" on questions of federal law, *Hewitt v. Parker*, No. 08-CV-227, 2012 WL 380335, at \*4 (N.D. Okla. Feb. 6, 2012)—stands in direct defiance of that law.

To begin, the OCCA acknowledged *McGirt*'s affirmation of the bedrock rule that states lack criminal jurisdiction over Indians in Indian country absent congressional assent. *See O'Brien*, 2024 WL 5001684, at \*6 n.4. It concluded, however, that the rule no longer controls because "[t]his portion of *McGirt* … was undermined by *Castro-Huerta*[.]" *Id*. In so holding, the OCCA flatly violated the principle repeatedly stated by the Supreme Court that its "decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (citation omitted). Thus, "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). "Until that occurs, [prior precedent] is the law," *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983), "even if the lower court thinks the [prior] precedent is in tension with" the later decision, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (same); *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023) (same), *cert. denied*, 144 S.Ct. 1035 (2024); *Little v. Budd Co., Inc.*, 955 F.3d 816, 824–25 (10th Cir. 2020) (same); U.S. Br. 9–10 (same).

This clear limitation on the authority of lower courts is at its zenith where the later Court precedent limits its holding to a specific issue, as does *Castro-Huerta*. *See Bosse*, 580 U.S. at 2

18

(where later case states that it is "limited to" a given issue, lower court was prohibited from finding that it "*implicitly* overruled" prior precedent on different issue (citations omitted)). Yet the OCCA ignored the limitation, deeming *Castro-Huerta* to have implicitly undermined *McGirt*'s clear reiteration of the presumptive rule against state criminal jurisdiction over Indians.

But of all courts, the OCCA should know better. In *Bosse*, the Supreme Court struck down three decisions in which the OCCA had concluded that a Supreme Court decision—*Payne v. Tennessee*, 501 U.S. 808 (1991)—"*implicitly* overruled" prior Supreme Court precedent on a specific issue, despite the fact that *Payne* (like *Castro-Huerta*) stated that its "holding was expressly 'limited to'" a different issue. *Bosse*, 580 U.S. at 2 (citations omitted).[9] The Supreme Court admonished the OCCA that "[i]t is this Court's prerogative alone to overrule one of its precedents," *id.* at 3 (citation omitted), and that *Payne*'s express disclaimer regarding the reach of its holding "should have ended [the OCCA's] inquiry …; the [OCCA] was wrong to go further and conclude that *Payne* implicitly overruled" prior case law, *id*. So too here. The OCCA lacked authority to decline to follow *McGirt* on the theory that *Castro-Huerta* "undermined" *McGirt* on the very issue that the *Castro-Huerta* Court expressly declined to reach.

*O'Brien* is equally infirm on the substance of its Tenth Amendment discussion. It quotes *Herrera v. Wyoming*, 587 U.S. 329 (2019), for the proposition that "Oklahoma's authority to exercise its sovereign criminal jurisdiction over all its territory, including Indian country, extends from the doctrine 'that new States are admitted to the Union on an "equal footing" with existing States.'" 2024 WL 5001684, at *6. However, in the passage quoted by the OCCA, the *Herrera* Court was simply describing the holding of *Ward v. Race Horse*, 163 U.S. 504 (1896). The Court

---

[9] Abrogating *Conover v. Oklahoma*, 933 P.2d 904 (Okla. Crim. App. 1997), and *Ledbetter v. Oklahoma*, 933 P.2d 880 (Okla. Crim. App. 1997), and vacating *Bosse v. Oklahoma*, 360 P.3d 1203 (Okla. Crim. App. 2015).

19

MCN Appendix Page 46

went on to explain, in language nowhere acknowledged in *O'Brien*, that it has "entirely rejected the 'equal footing' reasoning applied in *Race Horse*." 587 U.S. at 339. The OCCA erred gravely in cherry-picking from the *Herrera* opinion in a way that so plainly distorts its meaning.

The OCCA's equal footing argument is also a non sequitur. All states enter the Union on an equal footing. But the limitations of the Tenth Amendment are a central component of that footing, including the limitation that states retain powers under the Amendment "only to the extent that the Constitution has not … transferred those powers to the Federal Government," *Garcia*, 469 U.S. at 549; *see supra* Section II.A.4. Indeed, *O'Brien* invokes *Dick v. United States*, 208 U.S. 340 (1908), but *Dick* is clear that "a state, upon its admission into the Union, … has full and complete jurisdiction over all persons and things within its limits, *except as it may be restrained by the provisions of the Federal Constitution*," *id*. at 353 (emphasis added).

In sum, *O'Brien* lacks both binding and persuasive force and accordingly does nothing to undermine the Nation's likelihood of success on the merits.

**B.      The Nation Will Suffer Irreparable Harm Without a Preliminary Injunction.**

The County's efforts confirm that it will continue to prosecute Indians within the Creek Reservation until the courts instruct it to stop. This constitutes a direct invasion of the Nation's sovereignty. The Tenth Circuit has "repeatedly stated that … an invasion of tribal sovereignty can constitute irreparable injury," *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006), and has found actions like those at issue here to represent the very sort of invasion warranting a preliminary injunction, *see* U.S. Br. 22–23 (discussing same).

In *Ute Indian Tribe*, 790 F.3d 1000, for example, Utah and a Utah county were prosecuting Indians for traffic offenses within a tribe's Indian country. The Tenth Circuit held that this was "itself an infringement on tribal sovereignty," *id*. at 1005, one compounded by the

20

defendants' "disregard of [the Circuit's] decisions," *id.*, as demonstrated by their efforts to relitigate in the "friendlier forum" of state courts issues already decided by the Tenth Circuit, *id.* at 1003 (citation omitted). Under these circumstances, the Circuit concluded, "the harm to tribal sovereignty in this case is perhaps as serious as any to come our way in a long time." *Id.* at 1005.

This case is no different. The County continues to prosecute Indians in state courts for conduct within the Creek Reservation despite the rule against such prosecutions (absent congressional assent) long adhered to by the Supreme Court and the Tenth Circuit. Just as in *Ute Indian Tribe*, the County's prosecution of Indian defendants alone constitutes "an infringement on tribal sovereignty" in direct "disregard of [the Circuit's] decisions."

Under these circumstances, "there's just no room to debate whether the defendants' conduct 'create[s] the prospect of significant interference with [tribal] self-government' that this court has found sufficient to constitute 'irreparable injury.'" *Ute Indian Tribe*, *id.* at 1006 (brackets in original) (quoting *Prairie Band*, 253 F.3d at 1250–51).

In *Prairie Band*, the Tenth Circuit likewise found a state's enforcement of its vehicle licensing and registration provisions against Indians to constitute irreparable injury to tribal sovereignty because the tribe had enacted its own such provisions—which the Court described as "a traditional governmental function"—and thus "the threat of continued citation by the state [of owners of vehicles licensed by the tribe] created the prospect of significant interference with [tribal] self-government." 253 F.3d at 1250 (brackets in original) (quotation marks omitted). Under these circumstances, "the injury to the tribe was 'certain and great' and more than 'merely serious or substantial.'" *Id.*

The Nation's sovereignty is no less threatened by the County's actions. The Nation has enacted its own criminal and traffic laws. It maintains tribal courts and a Lighthorse Police

21

MCN Appendix Page 48

Department to enforce them against all Indians within its boundaries. *See* MCN Const. art. VII (Judicial Branch);[10] MCN Code tit. 14 (Crimes and Punishments), tit. 16 (Executive Branch), and tit. 27 (Judicial Procedures).[11] These are core governmental functions, and they are impaired when the County asserts authority to enforce its own criminal laws against those same Indians, subjecting them to a criminal justice system other than the Nation's own and purporting to deny the Nation's own inherent jurisdiction over those offenses. *Compare Fisher v. Dist. Ct.*, 424 U.S. 382, 387–88 (1976) ("State-court jurisdiction plainly would interfere with the powers of self-government" by subjecting Indians in Indian country "to a forum other than the one they have established for themselves."), *with Castro-Huerta*, 597 U.S. at 650 (stating that state criminal jurisdiction over non-Indians in Indian country "would not deprive the tribe of any of its prosecutorial authority …. because … tribes [ordinarily] lack criminal jurisdiction to prosecute crimes committed by non-Indians" and because "a state prosecution of a non-Indian does not involve the exercise of state power over any Indian").

> **C.    The Balance of Harms and the Public Interest Strongly Favor a Temporary Restraining Order and Preliminary Injunction.**

Where a case involves competing claims of jurisdiction, the Tenth Circuit analyzes the balance of harms and public interest factors together. *See Ute Indian Tribe*, 790 F.3d at 1007. In assessing analogous circumstances in *Ute Indian Tribe*, the Circuit declared that

> there's no question who has the better of it. On the Tribe's side of the ledger [is] … the "paramount federal policy" of ensuring that Indians do not suffer interference with their efforts to "develop ... strong self-government." *Seneca-Cayuga Tribe v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir.1989); *see also Prairie Band*, 253 F.3d at 1253. Against this, the State and Wasatch County argue an injunction would impede their ability to ensure safety on public rights-of-way. But this concern "is not as portentous as [they] would have it." *Prairie Band*, 253 F.3d at 1253…. [N]othing in the requested temporary

---

[10] https://bit.ly/4jPAASZ.
[11] https://bit.ly/40xxCts.

MCN Appendix Page 49

> injunction would prevent the State and County from patrolling roads like the ones on which Ms. Jenkins was stopped, from stopping motorists suspected of traffic offenses to verify their tribal membership status, from ticketing and prosecuting non-Indians for offenses committed on those roads, from referring suspected offenses by Indians to tribal law enforcement, or from adjudicating disputes over the Indian status of accused traffic offenders when meaningful reasons exist to question that status. Instead, the temporary injunction would simply prohibit the State and County from prosecuting Ms. Jenkins and perhaps other tribal members for offenses in Indian country—something they have no legal entitlement to do in the first place. In this light, the defendants' claims to injury should an injunction issue shrink to all but "the vanishing point." *Seneca-Cayuga*, 874 F.2d at 716.

*Id.* (second ellipsis and second brackets in original).

The same reasoning applies here. Any law enforcement concerns the County may invoke will surely not be as portentous as it may assert. The Nation and the County have in place a comprehensive cross-deputization agreement that memorializes the very practices the Tenth Circuit concluded in *Ute Indian Tribe* would allay public safety concerns. See Wisner Decl. ¶ 2, Ex. 1.

On the Nation's side of the ledger, while the County has no legally cognizable interest in continuing to carry out unlawful prosecutions during the pendency of this litigation, the irreparable harm to the Nation's sovereignty and self-government and to the Indian residents of the Nation's Reservation are compounded by the day. Absent a temporary restraining order and injunctive relief by this Court, the County's strategy of re-litigating foundational rules of federal Indian law in the friendlier forum of the state courts will only be rewarded, with the *O'Brien* decision providing the OCCA's blessing for that approach.

Additionally, the County is not alone in unlawfully asserting state criminal jurisdiction over non-member Indians within the Nation's Reservation. The District Attorneys for Rogers, Mayes, Craig, Muskogee, McIntosh and Okmulgee Counties—all or parts of which lie within the Creek Reservation and account for approximately forty-four percent of its land area—are

23

likewise choosing to prosecute non-member Indians in the Creek Reservation.[12] But Tulsa County stands alone in the extent of its aggressive disregard of governing federal law. The County's approach under *O'Brien* not only purports to assert jurisdiction foreclosed by federal law but also seeks to undermine the Nation's *own* jurisdiction to prosecute non-member Indians by declaring that, within the Creek Reservation "[t]he *only tribal arrests* that will take place will be Creek Citizens …. All others will be booked into [the Tulsa County Jail] and charged in Tulsa Co. District Court." Wisner Decl. ¶ 5, Ex. 2 (emphasis added). This policy is patently at war with the statutory command of Congress as affirmed by the Supreme Court. *See* 25 U.S.C. § 1301(2) (tribes' "'powers of self-government'" include "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians"); *Lara*, 541 U.S. at 198 (tribes' "'powers of self-government'" include inherent criminal jurisdiction over "'*all* Indians,' including nonmembers" (quoting 25 U.S.C. § 1301(2)).[13]

Finally, the harm from the County's conduct reaches beyond the Nation to the public at large. As the United States asserts, "the balance of equities and the public interest weigh heavily in favor of stopping Defendant's clear violations of federal law." U.S. Br. 2. This is so in part because assertions by counties of criminal jurisdiction over non-member Indians within the Creek Reservation and others, particularly as they are premised on distortions of Supreme Court precedent, have resulted in "intolerable jurisdictional chaos" in Oklahoma Indian country, and "if allowed to stand would seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide." U.S. Br. 2–3. The

---

[12] *See supra* p. 2 (Rogers, Mayes, McInosh, and Okmulgee Counties); *see also*, *e.g.*, https://bit.ly/3WWtaTS (Muskogee County).

[13] As both the text of § 1301(2) and *Lara* make clear, any argument by the County that the Nation's sovereign rights of self-government do not extend to non-member Indians is dead on arrival.

24

MCN Appendix Page 51

Tenth Circuit is emphatic that, as a matter of federal law repeatedly reaffirmed by the Supreme Court, Congress, and the Executive Branch, the protection of tribal sovereignty and self-government is of paramount public importance, *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 824 n.9 (10th Cir. 2007) (collecting authorities), and that protection is squarely in play here.

## CONCLUSION

The Nation respectfully requests that the Court temporarily restrain and preliminarily enjoin the County from any further assertion of criminal jurisdiction over Indians within the Creek Reservation pending final resolution of this action.

Dated: February 13, 2025

Respectfully submitted,

*/s/ Riyaz A. Kanji*

Geraldine Wisner, OBA No. 20128
Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Philip H. Tinker
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| (1) MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe, *Plaintiff*, v. (1) TULSA COUNTY, OKLAHOMA; (2) STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma; and (3) VIC REGALADO, in his official capacity as Tulsa County Sheriff, *Defendants*. | Case No. 25cv-00075-JFJ |

**DECLARATION OF ATTORNEY GENERAL GERALDINE WISNER**

I, Geraldine Wisner, declare the following on the basis of personal knowledge to which I am competent to testify:

1.     I have served as the Attorney General for the Muscogee (Creek) Nation ("Nation") since March 2022. In total, I have more than twenty years of experience as an Attorney General and prosecutor for Tribal Nations. Before my tenure as Attorney General for the Nation, I served as Attorney General for the Kickapoo Tribe of Oklahoma. I have also served as a prosecutor for the Iowa Tribe of Oklahoma and the Citizen Potawatomi Nation of Oklahoma, among others.

1

MCN Appendix Page 53

**The Nation-Tulsa County Cross-Deputization Agreement and Referral Process**

2.      In July 2020, the Nation and Tulsa County entered into a cross-deputization agreement. A true and correct copy of this agreement is attached as **Exhibit 1** to this Declaration.

3.      The purpose of this Agreement is to "[a]uthorize commissioned Officers [from both the Nation and Tulsa County] to react immediately to observed violations of the law and other emergency situations regardless of whether such occurrences violate the criminal statutes of the [Nation], the United State[s], and/or the State of Oklahoma[.]" Ex. 1 § 1(3).

4.      The Agreement does not authorize Tulsa County to prosecute any Indian offenders for on-Reservation offenses. Rather, under the Agreement, cross-commissioned Tulsa County law enforcement personnel may stop, detain, investigate, issue citations to, and arrest Indian offenders within the Reservation, with those offenders then referred to the Nation for prosecution. Likewise, the Nation's Lighthorse police officers may stop, investigate, issue citations to, and arrest non-Indian offenders within the Reservation but will refer those offenders to the proper State law enforcement agencies, including Tulsa County, where the Nation lacks jurisdiction to prosecute their offenses.

**Tulsa County Sheriff's Department Jail Policies**

5.      On January 24, 2025, a representative of the Tulsa County Sheriff's Department informed an officer with the Nation's Lighthorse Police Department of a new policy regarding the incarceration and prosecution of defendants who are tribal

members but not citizens of the tribal Nation on whose Reservation the alleged

offense occurred, and he handed a copy of that new policy to the Lighthorse

officer. Attached as **Exhibit 2** is a true and correct photographic copy of this

policy, taken by the Nation's Lighthorse Police officer on January 24, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 13, 2025

*/s/ Geraldine Wisner*
Geraldine Wisner

3

# EXHIBIT 1

MCN Appendix Page 56

## INTERGOVERNMENTAL CROSS-DEPUTIZATION AGREEMENT
## BETWEEN THE UNITED STATES,
## THE MUSCOGEE (CREEK) NATION,
## AND POLITICAL SUBDIVISIONS
## OF THE STATE OF OKLAHOMA

**FILED**

**MAY 3 0 2024**

OKLAHOMA SECRETARY
OF STATE

## RECITALS

WHEREAS, the United States Congress has authorized the Secretary of the Interior, acting through the Bureau of Indian Affairs, to enter into agreements with Indian tribes to aid in the enforcement or carrying out in Indian country the laws of either the United States and/or Indian tribe, pursuant to the Indian Law Enforcement Reform Act, 25 U.S.C. §§ 2801, *et seq.*, Public Law 101-379, 104 Stat. 473; and

WHEREAS, the Muscogee (Creek) Nation has enacted legislation authorizing the Nation to enter into cross-deputization agreements with federal, state and tribal governments pursuant to NCA 92-15 § 108; and

WHEREAS, the Legislature of the State of Oklahoma has authorized the State and its political subdivisions to enter into cooperative agreements with the State and its political subdivisions, the federal government and Indian tribal governments in accordance with the Oklahoma Inter-local Cooperation Act, 74 O.S. §§ 1221 *et seq.* (1985); and

WHEREAS, it is in the best interest of the United States of America, the Muscogee (Creek) Nation, the State of Oklahoma, and political subdivisions of the State of Oklahoma, that the parties hereto declare and agree that each government and agency under this Agreement shall fully cooperate with the other to provide efficient, effective and thorough law enforcement and crime prevention to all residents located on or near Indian lands within the Muscogee (Creek) Nation.

## AGREEMENT

NOW, THEREFORE, the Muscogee (Creek) Nation, the United States Department of Interior by the through the Bureau of Indian Affairs, the County of **Tulsa**, and any other county or municipality which subsequently becomes a party hereto, do hereby enter into this Intergovernmental Cross-deputization Agreement (hereinafter "Agreement").

Section 1.    Purpose

The Purposes of Agreement are to:

(1.)    Provide for the cross-deputization of Officers employed by the various governmental agencies which are or shall become parties hereto; and

(2.)    Authorize commissioned Officers to provide law enforcement services and make lawful arrest on or near Indian country within the geographic area of the Muscogee (Creek) Nation reservation; and

(3.)    Authorize commissioned Officers to react immediately to observed violations of the law and other emergency situations regardless of whether such occurrences violate the criminal statutes of the Muscogee (Creek) Nation, the United State, and/or the State of Oklahoma; and

(4.)    Provide for efficient, effective and cooperative law enforcement efforts on or near Indian country in the geographic area of the Muscogee Nation within the State of Oklahoma; and

(5.)    Eliminate the uncertainties which have caused reluctance among various law enforcement agencies to provide services on or near Indian country for fear of being subjected to tort or civil rights suits as a consequence of the good-faith errors of Officers making arrests or quelling disturbances in Indian country; and

(6.)    Provide comprehensive law enforcement protection to citizens of the State of Oklahoma and the Muscogee Nation whether they be on or off of Indian country within the geographic area of the Muscogee (Creek) Nation including but not limited to responding to observed violations of the law, effecting arrests, responding to calls for assistance, performing investigations and providing other assistance such as dispatching and detention.

Section 2.    Definitions

A.    "Agency" wherever used herein shall mean the government, department, or political subdivision which is or subsequently becomes a party to this Agreement.

B.    "Agreement" wherever used herein shall mean this Intergovernmental Cross-deputization Agreement between the Bureau of Indian Affairs, the Muscogee (Creek) Nation, and signatory political divisions of the State of Oklahoma.

C.    "Applicant Agency" wherever used herein shall mean the agency requesting a commission of its Officers.

D.    "BIA" wherever used herein shall mean the Bureau of Indian Affairs.

02

E.  "Commissioning Agency" wherever used herein shall mean that the agency which is a party hereto and which issues a law enforcement commission to an Officer of an Applicant Agency.

F.  "Indian country" wherever used herein shall mean Indian country as defined by 18 U.S.C. § 1151 located within the boundaries of Muscogee (Creek) Nation as described in the Treaty of 1866, 14 Stat. 785.

G.  "Nation" wherever used herein shall refer to Muscogee (Creek) Nation.

H.  "Officer" wherever used herein shall mean law enforcement officers and criminal investigators.

I.  "State" OR "State Agency" wherever used herein shall mean Agency which is a political subdivision of the State of Oklahoma, including counties and municipalities, and may include the State of Oklahoma when and if it becomes a party to this Agreement.

Section 3.   Addition of Parties: Termination of Earlier Agreements

A.  The BIA will initially enter into this Agreement with one or more of the following:

(1.)  The Nation; and/or

(2.)  A State Agency as defined by Section 2 (I) of this Agreement; provide that if the Nation is not yet a party to this Agreement, the BIA will notify the Nation by certified mail, return receipt requested, of its intent to negotiate and enter into this Agreement with a State Agency and offer the Nation an opportunity to consult with the BIA as required by 25 U.S.C. § 2804 (c) during which time the Nation may offer comments concerning the proposed Agreement.

B.  By entering into this Agreement, each party to this Agreement expressly authorizes any other political subdivisions of the State of Oklahoma, including the State of Oklahoma, to become a party to this Agreement after this Agreement goes into effect. The State of Oklahoma or other political subdivisions of the State of Oklahoma may become parties to this Agreement by executing addendum forms substantially similar to those attached hereto as Exhibits A, B or C.

C.  The subsequent addition of parties to this Agreement shall not require any separate or additional approval by existing parties and signatories to this Agreement. The parties hereby agree to extend the provisions of and to be

03

mutually bound by this Agreement with each party to the Agreement, whether an original party or a new party.

D.    This Agreement, when effective as to a specific State Agency, shall replace and supersede any pre-existing intergovernmental cross-deputization agreement between said State Agency and the Nation, and when effective as between the BIA and Nation, shall replace and supersede any pre-existing government cross-deputization agreement between the BIA and the Nation. The parties shall take any steps necessary to formally terminate any such pre-existing agreement and to issue replacement commission of Officers commissioned under the pre-existing agreement.

Section 4.    Term; Withdrawal; Amendments

A.    The initial term of this Agreement shall be for a period of two (2) years commencing on the Effective Date as provided in Section 15 hereof. Thereafter, this Agreement shall be automatically renewed for each party for successive one-year periods commencing on the anniversary of the Effective Date hereof unless prior to a renewal any party gives written notice to all other parties that the Agreement shall not be renewed as to the non-renewing party.

B.    Notwithstanding the foregoing, any Agency may withdraw as a party to this Agreement, with or without cause, upon giving the other parties sixty (60) days' within notice of intent to withdraw. Such notice shall be served by certified mail and shall be deemed served on the date the notice is deposited, postage prepaid, in the U.S. mail. Withdrawal from this Agreement by any Agency shall not terminate this Agreement as to Agencies which continue to be parties hereto.

C.    With the exception of the addition of Agencies to the Agreement, this Agreement shall not be amended unless such amendment is in writing and executed by each party hereto. It is expressly agreed by the parties to this Agreement without the requirement of approval by the existing parties hereto.

Section 5.    Coordination; Supervision; Status of Parties

A.    No separate legal or administrative entity is created by this Agreement.

B.    The provisions of this Agreement shall be administered by a board comprised of the Chief of the Nation's Police Department, the District Commander of the Office of Law Enforcement Services of the BIA and the Chief Law Enforcement Officer of each State Agency which is or subsequently may become a party of this Agency.

0 4

MCN Appendix Page 60

C.      Notwithstanding any other provision in this Agreement, the respective Commissioning Agencies of the Nation, State and BIA, including their agents, employees and insurers, shall not have any authority or right whatsoever to control in any manner the day to day discharge of the duties and/or activities of the Officers of the other Agencies who have been commissioned pursuant to this Agreement except when an Officer is acting under a commission issued under the authority of the Agreement, No provision of this Agreement shall impair of affect the existing status of each Agency nor the sovereignty of each government as established under the Laws of the Muscogee (Creek) Nation, the United States, and the State of Oklahoma.

Section 6.      Commissions

A.      Each Agency which is a party hereto may, in its discretion, issue special Law Enforcement Commissions to Law Enforcement Officers of the other Agencies which are to subsequently shall be parties hereto upon the application for such by the Applicant Agency. Such commissions issued hereunder shall be in writing and grant to the Officers the same Law Enforcement authority as that of Officers of the Commissioning Agency unless expressly limited by the terms if the commission.

B.      All Officers of the law enforcement Agencies which are or subsequently become parties of the Agreement shall not become automatically cross-deputized by virtue of the execution of this Agreement but must be commissioned on an individual basis, upon application by the Officer's employer Agency and approval of same by the Commissioning Agency.

C.      A commission granted by a Commissioning Agency to an Officer of another Agency pursuant to previously existing intergovernmental agreement authorizing the cross-deputization of Officers in effect on date of execution of this Agreement shall remain valid, unless suspended or revoked by the Commissioning Agency or unless the commission is returned to the Commissioning Agency as required by Section 7 (I) of this Agreement.

Section 7.      Qualifications for Commission; Commission Cards; Suspension or Revocation of Commission

A.      A commission shall not be granted by the BIA or State to any Officer of an Applicant Agency unless the Officer meets all of the prerequisites for appointment as an Officer as set forth in 40 IAM and the applicable portions of

0 5

MCN Appendix Page 61

the BIA Law Enforcement Handbook, as well as any other specific requirements of the BIA, which shall include the following minimum prerequisites:

(1.)    United State citizenship, be at least 21 years of age and possess a valid driver's license;

(2.)    A high school diploma or its equivalent;

(3.)    The Officer has not ever been convicted of a felony; has not, within the one year period immediately preceding the issuance of the commission, been convicted of a misdemeanor offense, with the exception of minor traffic offenses; has not been convicted of a misdemeanor charge of domestic violence preventing the Officer from possessing a firearm in accordance with the Gun Control Act of 1968; and has not been the subject of a court order prohibiting him or her from possessing a firearm;

(4.)    Within the period immediately preceding the issuance of the commission, the Officer has passed his or her department's firearms qualifications and continues to be certified semi-annually;

(5.)    A finding that the applicant is free of any physical, emotional, or mental condition which might adversely affect his or her performance as an Officer.

(6.)    The Officer meets State or Federal Peace Officer Standards and Training ("POST") requirements for certification as a bona fide full-time peace officer and has written proof of such certification.

B.    Upon the approval of such application by the BIA, the BIA, as the Commissioning Agency, will issue Deputy Special Officer ("DSO") commissions from the BIA to the selected Officer.

C.    A commission shall not be granted by the Muscogee (Creek) Nation unless an Officer meets with each of the six minimum prerequisites set forth in subsection A (1-6) of this section, and complies with any other specific requirements of the Muscogee (Creek) Nation.

D.    Upon the approval of such application by the Nation, the Nation, as the Commissioning Agency will issue commissions from the Nation to the selected Officers.

E.    Upon the approval of such application by the State Agency, the State Agency, as the Commissioning Agency, will issue commissions from the State Agency to the selected Officers.

06

F.    The Applicant Agency shall provide a National Crime Information Center background check on each Officer for whom a commission is requested in the application.

G.    The Commissioning Agency shall notify the Applicant Agency of the names of the Officers receiving commissions hereunder.

H.    Commission cards shall be issued to qualified Officers who are full-time employees of the Applicant Agency and who must agree in writing to return his or her commission card to the Commissioning Agency within ten (10) days following the occurrence of one or more of the following conditions:

    (1.)    The Officer terminates employment as a full-time Officer of the Agency for any reason; or

    (2.)    The Officer transfers to an area or jurisdiction outside of the jurisdiction area of the Nation in the case of the Nation's Officers or outside of the jurisdictional area of District 2, Law Enforcement Services, BIA, in the case of a BIA Officer, or in the case of a State Officer to an agency which is not party to this Agreement.

    (3.)    The Officer is suspended or terminated by his or her employing Agency for any reason; or

    (4.)    The Officer is indicted in state or federal court, or otherwise charged in tribal, federal or state court, with crime other than a minor traffic offense; or

    (5.)    The commission expires; or

    (6.)    This Agreement is terminated as to such Officer's Agency for any reason pursuant to Section 4 above; or

    (7.)    The commission is suspended or revoked pursuant to subsection J; or

    (8.)    If the Commissioning Agency ceases to have law enforcement powers under the law.

I.    The Commissioning Agency may at any time, with or without cause, suspend or revoke an Officer's commission for reasons solely within the Commissioning Agency's discretion. In such event:

    (1.)    The Commission Agency shall notify Officer's Agency in writing of the suspension or revocation and the reasons therefore, if any; and

07

MCN Appendix Page 63

(2.)    Within ten (10) days after such notification the receiving Agency shall return the commission card and any other evidence of the commission to the Commissioning Agency.

J.    The Commissioning Agency shall send written notice to the Applicant Agency if a commission is denied, suspended or revoked as provided herein with a reason stated therein. The decision of the Commissioning Agency to suspend a commission whether temporarily, indefinitely, or permanently shall be final. A commission hereunder shall carry no property right; rather, commissions issued pursuant to this Agreement shall be a privilege extended at the sole discretion of the Commissioning Agency, and may be modified, suspended, revoked at any time by the Commissioning Agency, in which event neither the Officer's Agency shall have any right of review or appeal.

K.    The BIA, the Nation and the State may independently or jointly evaluate the effectiveness of the use of the special law enforcement commissions provided for herein. The BIA, Nation and State shall cooperate in the investigation of any allegation that an Officer of the Nation, BIA or State commissioned pursuant to this Agreement exceeded the authority given to the Officer by the Commission.

L.    If an Officer's Agency possesses any information bearing on the Officer's fitness or eligibility to hold a commission issued hereunder, it shall immediately notify all other Commissioning Agencies.

Section 8.    Scope of Powers Granted

A.    Officers of the BIA and State who receive commissions from the Nation shall have authority to respond to observed violation of the Nation's Criminal Code, and upon request by Officers of the Nation, investigate offenses and enforce the criminal laws enumerated in the Nation's Criminal Code and/or other criminal laws of the Nation.

B.    Officers from the Nation and the State who receive commissions from the BIA shall have authority to perform any activity authorized under 25 U.S.C. § 2803. Such Officers shall have the authority to assist the BIA and other federal law enforcement officials in the prevention, detection, and investigation of any federal offense committed within the Nation's Indian country. Such authority shall include the following activities: conducting preliminary investigations, reporting potential crimes, apprehending alleged offenders, detaining and delivering alleged offenders to appropriate authorities, securing crime scenes, contacting appropriate authorities, assisting any federal, tribal, state, or local law enforcement agency upon request, and notifying the Criminal Investigator of the BIA and the Federal Bureau of Investigation of activities relating to the enforcement of such federal laws and regulations. Officers of any other federally recognized tribe who have

entered into cross-deputization agreement with the BIA and who have received commissions from the BIA pursuant to their agreement shall have the authority to perform all federal law enforcement activities described in this sub-section within the Nation's jurisdiction, provided the Nation has consented to the assistance of such tribal officers by way of duly enacted ordinance or tribal resolution and has notified the BIA of such consent in writing.

C. Officers if the Nation and the BIA who receive commissions from the State shall have authority to react to observed violations of the State's criminal laws, and upon request by Officer's of a State Agency, investigate offenses and enforce the criminal laws enumerated in the Oklahoma Statutes and/or other laws of the State.

D. The parties hereto acknowledge the applicability of Muscogee, federal and state laws in Indian country may depend on whether the suspect or victim is an Indian person and that state laws have been generally held to be inapplicable to Indians in Indian country. Furthermore, the parties agree that nothing in this Agreement shall make any law applicable to a certain person or to certain conduct where it would not otherwise be applicable. Accordingly, the purpose of this Agreement is to vest cross-deputized or commissioned Officers with authority to enforce only the applicable law(s).

E. The Agencies which are or which subsequently become parties hereto agree to cooperate and share criminal information among themselves to the extent authorized by law.

F. Nothing herein shall alter or convey any judicial jurisdictional, including the authority to issue warrants for arrest or search and seizure or to issue service of process. Similarly, nothing herein is intended to impair, limit or diminish that status of any Agency or the sovereignty of any government of which such Agencies are a part.

Section 9.   Arrest Procedure and Facilities; Transportation: Medical Treatment

A. After lawful arrest by an Officer commissioned pursuant to this Agreement, the prisoner shall be turned over to a responsible official of the United States, the BIA, the State or the Nation for purposes of detention and processing as provided by agreement. Prisoners arrested under federal authority shall be detained in a facility administrator unless otherwise provided by agreement. Prisoners arrested under federal authority shall be detained in a facility approved by the BIA for said prisoners. The Nation and any State Agency may enter into a written agreement for the detention of any Indian prisoners in custody for violation of the Nation's criminal laws.

09

MCN Appendix Page 65

B.    The official determination of the correct jurisdictional authority for purposes of prosecution shall be made by the United States Attorney, a Bureau of Indian Affairs Court of Indian Offenses prosecutor, a State prosecutor, and/or the Nation's Attorney General. Any necessary transfer of custody of the prisoner resulting from such determination shall be made at the earliest applicable time. All evidence and investigatory reports and products shall be turned over to the proper prosecuting authority at the earliest practicable time. The prisoner shall be taken before a judge of the appropriate jurisdiction within forty-eight hours after the time of arrest.

C.    In the event that an Indian prisoner is arrested by an Officer of a State Agency exercising his authority under a commission from the Nation of BIA and requires medical treatment, the Officers of said Agency shall have the power and authority to transport such prisoner to the nearest Indian Health Service or Muscogee (Creek) Nation health care facility to avoid any significant medical expenses.

D.    In cases of extreme emergency where it is not feasible or practicable to take the Indian prisoner to an HIS or tribal facility, the Indian prisoner may be treated at the appropriate local, federal or state health care facilities as emergency needs dictate. In such emergency cases, a sick or disabled Indian, or an individual or agency acting on behalf of the Indian, or the medical care provider shall, within 72 hours after the beginning of the treatment for the condition or after admission to a health care facility, notify the nearest HIS facility if the fact of the admission or treatment together with information necessary to determine the relative medical need for the services and the eligibility of the Indian prisoner for the services.

E.    In the event it becomes necessary to provide guard security for an Indian prisoner subject to federal or tribal court jurisdiction at a health facility or any place other than jail facilities, Officers of the BIA and the Nation shall have the power and authority to provide such service.

F.    In the event of an emergency mental or psychiatric condition arises with an Indian prisoner who has been arrested by a State Officer under a commission issued pursuant to this Agreement, the Officers of the BIA and the Nation shall have the power and authority to immediately take custody of said prisoner for appropriate action pursuant to applicable law.

Section 10.    <u>Orientation, Technical Assistance and Training</u>

A.    Each party is responsible for providing to its full-time Officers a thorough orientation regarding the authority conferred by a commission issued pursuant to this Agreement.

10

MCN Appendix Page 66

B.    The Nation, BIA and State shall ensure that each of its Officers is qualified in the field of law enforcement and is well trained on and knowledgeable of arrest procedures, rules of evidence, crime scene search, preservation of evidence, writing reports, testifying in court and related police and detention functions.

C.    The Chief of the Nation's police department, the District Commander of the Office of Law Enforcement Services of the BIA and the chief law enforcement officer of each State Agency shall determine what other training or technical assistance is or may be required for commissioned Officers, particularly in the areas if jurisdiction and tribal, federal and state criminal laws and procedures.

D.    The BIA may provide technical assistance and assist in providing in-house training to Officers of the Nation, administrative personnel and others, depending upon the availability of resources.

Section 11.    <u>Property</u>

No real or personal property is to be acquired or held under this Agreement. When personal property is loaned from one Agency to another Agency it shall be returned as soon as possible upon request of the owner-Agency.

Section 12.    <u>Reimbursement</u>

Activities of the parties will be financed by the primary Agency of each of the commissioned Officers except as expressly provided herein, or pursuant to a subsequent agreement for which a particular assignment is executed.

Section 13.    <u>Conduct</u>

Each Officer who is issued a commission pursuant to this Agreement shall follow the law enforcement code of conduct prescribed by the Commissioning Agency. The code will establish specific guidelines concerning conflicts of interest, employee conduct both on and off duty, impartiality and thoroughness in performance of duty, and acceptance of gifts or favors. Each Officer will acknowledge in writing that he or she has received and understand the code of conduct. The acknowledgement will remain in the file with the employing Agency as long as the Officer is employed with the Agency. Additionally, each Agency is responsible to see that training will be conducted in the code of conduct and ethics issues at least once a year in accordance with 25 CFR § 12.51 or corollary state or local requirements.

**11**

Section 14    <u>Liabilities and Immunities</u>

A.    Officers of the Nation or State holding a commission from the BIA while performing any official act in Indian country under authority of said commission shall be afforded all protection afforded by applicable tribal, federal and state laws, and by the Indian Law Enforcement Reform Act, 25 U.S.C. § 2804, including coverage under the Federal Tort Claims Act or other applicable Federal law. Officers of the BIA or State holding a commission from the Nation while performing any official act in Indian country under authority of said commission shall be afforded all protection afforded all protection afforded by applicable tribal, federal and state law. Officers of the Nation or BIA holding a commission from the State while performing any official act in the State under authority of said commission shall be afforded all protections afforded by applicable tribal, federal and state laws.

B.    It is understood and agreed that the Nation, the BIA and the State, their agents, employees and insurers (if any), do not, by virtue of this Agreement, assume any responsibility or liability for the action of Officers commissioned pursuant to this Agreement which are performed outside the scope of authority granted by the commission under which they are acting. Each Agency agrees to be responsible for any and all employer obligations to its own Officers regardless of whether the Officer is acting on behalf of his or her employer-Agency or under a commission issued to him or her by another Agency pursuant to this Agreement. By way of example, and not limitation, these employer obligations include salary, taxes, workers compensation insurance, liability insurance, disability, insurance and retirement benefits. In no event shall a Commission Agency be responsible for another Agency's obligations as an employer to its own employee Officers.

C.    Nothing in this Agreement shall be read as waiving or limiting any defenses to claims of liability otherwise available to law enforcement Officers, including without limitation the defense of qualified immunity afforded under tribal, federal and/or state law.

D.    Nothing in this Agreement shall be construed as a waiver of any government's sovereign immunity.

Section 15.    <u>Effective Date</u>

A.    This Agreement shall become effective on the last date of execution, after execution by all officials set forth on the following signature pages.

MCN Appendix Page 68

B.    With respect to Agencies which become parties hereto subsequent to the Effective Date set forth above, this Agreement shall become effective as to such subsequent Agencies on the date of execution of an Addendum to this Agreement by the appropriate officials of any such Agency.

[The remainder of this page is deliberately left blank.]

13

MCN Appendix Page 69

**EXHIBIT A**

**ADDENDUM**

## ADDITION OF POLITICAL SUBDIVISIONS OF THE STATE OF OKLAHOMA TO THE INTERGOVERNMENTAL CROSS-DEPUITZATION AGREEMENT BETWEEN THE UNITED STATES, THE MUSCOGEE (CREEK) NATION AND POLITICAL SUBDIVISIONS OF THE STATE OF OKLAHOMA

The County of Tulsa, Oklahoma, hereby enters into and agrees to be mutually bound by the terms of the Intergovernmental Cross-Deputization Agreement between the United States, the Muscogee (Creek) Nation, and Political Subdivisions of the State of Oklahoma pursuant to Section 3 of said Agreement.

Effective this __22__ day of July, 2020

Approved:

_____          7/22/20
Chairman, Board of County Commissioners          Date
Of the County of Tulsa

Approved:

_____          07-22-20
Sheriff, Tulsa County          Date

Approved:

_____          _____
Sheriff, Tulsa County          Date

**14**

MCN Appendix Page 70

## SIGNATURE PAGE FOR THE MUSCOGEE (CREEK) NATION

## INTERGOVERNMENTAL CROSS-DEPUTIZATION AGREEMENT BETWEEN THE UNITED STATES, THE MUSCOGEE (CREEK) NATION, AND POLITICAL SUBDIVISIONS OF THE STATE OF OKLAHOMA

Approved:

_____          July 16, 2020
Attorney General                          Date
Muscogee (Creek) Nation

Approved:

_____          20 July 2020
Lighthorse Chief of Police                Date

Approved:

_____          20 July 2020
Chairman                                  Date
Muscogee Nation Lighthorse Commission

[Notary Seal: ANGELA JONES, NOTARY PUBLIC, # 17003796, EXP 6-23-21, IN AND FOR STATE OF OKLAHOMA]

# 17003796
Exp 06-23-2021

Angela Jones

# EXHIBIT 2

MCN Appendix Page 72

All,

Please send out to all your supervisors and deputies the updated information regarding tribal arrests and jurisdiction as it pertains to tribe member.

Due to recent Court of Criminal Appeals decision, tribal members will be charged by tribal courts only if they are a member of the tribe in which the criminal offense took place. For example, if John Doe is a Cherokee citizen and they are north of admiral and in Cherokee Nation territory, and commit a crime, they will be booked and charged in Cherokee tribal courts. If John Doe is a Creek citizen and south of Admiral or west Tulsa Co. and commits a crime he will be charged in Creek tribal court, booked into DLM with HOLD/Creek nation as the charge. Any other tribal citizens will not be booked or charged into tribal courts but rather STATE court and booked into DLM as any other citizen.

Now, if John Doe is a Cherokee citizen and commits a crime in Creek Nation, he will be booked into DLM on state charges as any other non-tribal individual. This also goes for John Doe, Creek Citizen committing a crime in Cherokee Nation. He will also be booked into DLM on state charges as any other individual.

Tulsa County only includes the Creek and Cherokee Nations so those are the only tribal members that are affected by this change. **All other tribes will be booked into DLM on state charges regardless of the tribal boundaries.**

The only tribal arrests that will take place will be Creek Citizens arrested in Creek Nation, Cherokee Citizens arrested in Cherokee Nation. All others will be booked into DLM and charged in Tulsa Co. District Court.

If you have any questions, please reach out to me, Major Morrison, Sgt. Huss or Deputy Isenberg.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MUSCOGEE (CREEK) NATION,

      Plaintiff,

v.

TULSA COUNTY, OKLAHOMA, et al.,,

      Defendants.

CASE NO. 25-cv-00075-GKF-JFJ

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT
## BY DEFENDANT VIC REGALADO

---

**Keith A. Wilkes, OBA No. 16750**
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
**521 East 2nd Street, Suite 1200**
**Tulsa, Oklahoma  74120-1855**
**Telephone: (918) 594-0400**
**Facsimile: (918) 594-0505**

**ATTORNEYS FOR DEFENDANTS,**
**TULSA COUNTY AND VIC REGALADO**

**MCN Appendix Page 74**

## TABLE OF CONTENTS

BRIEF IN SUPPORT OF MOTION TO DISMISS ................................................................ 1

    I.   INTRODUCTION ................................................................................................... 1

    II.   UNDERLYING PROSECUTIONS AT-ISSUE ........................................................ 2

    III.   MOTION TO DISMISS STANDARD ................................................................... 5

PROPOSITION ONE ................................................................................................... 6

    PLAINTIFF CANNOT PREVAIL AGAINST SHERIFF REGALADO UNDER EXISTING LAW ........... 6

PROPOSITION TWO ................................................................................................ 10

    PLAINTIFF LACKS STANDING ................................................................................ 10

    A.  Plaintiff Has Not Suffered An Injury in Fact. ............................................. 11

    B.  Plaintiff Cannot Demonstrate Redressability. ............................................ 13

PROPOSITION THREE ............................................................................................. 15

    THE COURT SHOULD DISMISS UNDER THE *YOUNGER* ABSTENTION DOCTRINE .................... 15

    A.  Introduction to *Younger.* ......................................................................... 15

    B.  Threshold Consideration to *Younger* Analysis. ........................................ 17

    C.  The First *Younger* Element. .................................................................... 19

    D.  The Second *Younger* Element. ................................................................ 19

    E.  The Third *Younger* Element. ................................................................... 19

    F.  There are No Applicable Exceptions. ......................................................... 20

    G.  *Younger* Abstention Applies to Future Prosecutions. ................................. 21

PROPOSITION FOUR ............................................................................................... 22

    PLAINTIFF'S COMPLAINT FAILS TO IDENTIFY A FEDERAL LAW VIOLATION BY SHERIFF REGALDAO ........... 22

PROPOSITION FIVE ................................................................................................ 24

    THE COLORADO RIVER ABSTENTION DEMANDS DISMISSAL .................................... 24

CONCLUSION .......................................................................................................... 24

i

TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
449 U.S. 90, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980) .................................................. 19

*Am. Fed'n of State, County and Municipal Employees v. Tristano*,
898 F.2d 1302 (7th Cir. 1990) ........................................................................ 17

*Amanatullah v. Colo. Bd. of Med. Exam'rs*,
187 F.3d 1160 (10th Cir. 1999) ...................................................................... 15

*Arbaugh v. Y&H Corp.*,
546 U.S. 500, (2006) ................................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................................ 5

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
861 F.3d 1081, (10th Cir. 2017) ...................................................................... 5

*Carpenter v. State*,
1996 OK CR 56, 929 P.2d 988, ....................................................................... 23

*City of Tulsa v. O'Brien*,
2024 OK CR 31 ...................................................................... 8, 9, 10, 12

*Columbia Basement Apartment Assoc. v. City of Pasco*,
268 F.3d 791 (9th Cir. 2001) ......................................................................... 17

*D.L., et al. v. Unified Sch. Dist. No. 497*,
392 F.3d 1223, (10th Cir. 2004) ...................................................................... 15

*Denezpi v. United States*,
596 U.S. 591 (2022) ................................................................................. 13

*Deo v. Parish*,
2023 OK CR 20, 541 P.3d 833 (Okla. Crim. App. 2023) .............................................. 7

Doran v. Salem Inn, Inc.,
422 U.S. 922, (1975); ............................................................................... 21

*Ellis v. Morzelewski*,
2:21-CV-639-TC, 2022 WL 3645850, (D. Utah Aug. 24, 2022) ......................................... 21

i

*FW/PBS, Inc.* v. *Dallas*,
493 U. S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) ................................................11

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
130 F.3d 1381, (10th Cir. 1997) ....................................................................................... 5

*Grayson* v. *State*,
2021 OK CR 8, ¶10, 485 P. 3d 250, ................................................................................. 7

*Herrera v. City of Palmdale*,
918 F.3d 1037, (9th Cir. 2019) ....................................................................................... 21

*Hicks v. Miranda*,
422 U.S. 332, (1975) ....................................................................................................... 21

*Hogner v. State*,
2021 OK CR 4, 500 P.3d 629, (Okla. Crim. App. 2021) ................................................. 7

*Hooper v. City of Tulsa*,
71 F.4th 1270, (10th Cir. 2023) ....................................................................................... 9

*Huffman v. Pursue, Ltd.*,
420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975) ......................................... 16, 18

*Inverarity v. Zumwalt*,
1953 OK CR 148, 262 P.2d 725, 730 .............................................................................. 15

*J.B. ex rel. Hart v. Valdez*,
 186 F.3d 1280, (10th Cir. 1999) ................................................................................... 16

*Jackson v. Alexander*,
465 F.2d 1389, (10th Cir. 1972) ...................................................................................... 6

*Juidice v. Vail*,
430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) ........................................... 16, 20

*Kelly v. Robinson*,
479 U.S. 36, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986) .................................................. 19

*Lujan* v. *Defenders of Wildlife*,
504 U. S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ............................................11

*Marks v. Stinson*,
19 F.3d 873, (3d Cir. 1994) ............................................................................................ 17

ii

*McClanahan v. State Tax Comm'n of Arizona*,
411 U.S. 164 (1973)............................................................................................... 10

*McGirt v. Oklahoma*,
591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020)................................. 2, 4, 6, 7

*Middlesex County Ethics Comm.*,
457 U.S. 423, 73 L. Ed. 2d 116, 102 S. Ct. 2515........................................................ 18

*Mitchum v. Foster*,
407 U.S. 225, (1972).............................................................................................. 20

*Murphy v. Royal*,
875 F.3d 896, (10th Cir. 2017) ................................................................................ 7

*N. Mill St., LLC v. City of Aspen*,
6 F.4th 1216, (10th Cir. 2021).................................................................................11

*Nova Health Sys. v. Gandy*,
416 F.3d 1149, (10th Cir. 2005). ............................................................................ 14

*Ohio Civil Rights Comm'n*,
477 U.S. 619, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986)............................................. 17

*Oklahoma v. Castro-Huerta*,
597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022)................................... 2, 4, 7, 8

*Pennzoil Co. v. Texaco Inc.*,
481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)............................................. 16, 19

*Phelps v. Hamilton*,
122 F.3d 885, (10th Cir. 1997) ............................................................................... 20

*Railroad Retirement Bd. v. Fritz*,
449 U.S. 166, 101 S. Ct. 453, 66 L. Ed. 2d 368 (1980)........................................... 9, 24

*Raines* v. *Byrd*,
521 U. S. 811, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) ........................................11

*Rappaport v. Norlar, Inc.*,
1994 U.S. Dist. LEXIS 5754, Civ.A.No.93-4756, 1994 WL 167959, (E.D. Pa. April 29, 1994) 17,
18

*Rienhardt v. Kelly*,
164 F.3d 1296, (10th Cir. 1999) ............................................................................. 15

iii

*Seneca-Cayuga Tribe v. Oklahoma*,
874 F.3d 709, (10th Cir. 1989) ................................................................... 16

*Sharp v. Murphy*,
591 U.S. 977, 140 S. Ct. 2412, 207 L. Ed. 2d 1043 (2020) ....................... 6, 7

*Special Souvenirs, Inc. v. Town of Wayne*,
56 F. Supp. 2d 1062, (E.D. Wis. 1999) ..................................................... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ........................ 13

*State ex rel. Matloff v. Wallace*,
2021 OK CR 21, 497 P. 3d 686, 689 .......................................................... 7

*State ex rel. Stout v. Craytor*,
1996 OK CR 79, 753 P.2d 1365, 1368 ........................................................ 23

*State v. Bohanan*,
CM-2022-108 (Dist. Ct. Tulsa Co.) ...................................................... 2, 20

*State v. Brester*,
2023 OK CR 10, 531 P.3d 125 .................................................................. 7

*State v. Davis*,
1913 OK CR 80, 130 P. 962, 964 ............................................................ 15

*State v. Hess*,
CM-2024-2951 (Dist. Ct. Tulsa Co.) ........................................................ 3

*State v. Mason*,
CM-2024-4510 (Dist. Ct. Tulsa Co.) ...................................................... 3, 4

*State v. Morris*,
CM-2024-4494 (Dist. Ct. Tulsa Co., Nov. 26, 2024) ................................ 4, 5

*State v. Neafus*,
CM-2024-1222 (Dist. Ct. Tulsa Co., April 3, 2024) ................................... 4

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ................11, 14

*Stitt v. City of Tulsa*,
2025 OK CR 5 ...................................................................................... 21

iv

*Stone v. Powell*,
428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976) ........................................................ 19

*Taylor v. Jacquez*,
126 F.3d 1294, (10th Cir. 1997). ...................................................................................... 17, 19

*Trackwell v. Kansas*,
2001 U.S. Dist. LEXIS 8301, 2001 WL 709366, (D. Kan. May 10, 2001) .................................. 18

*United States v. Lanza*,
260 U.S. 377, (1922) ........................................................................................................... 13

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
454 U. S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) ........................................................ 11

*Warth* v. *Seldin*,
422 U. S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ........................................................ 11

*Weitzel v. Div. of Occupational & Prof'l Licensing*,
240 F.3d 871, (10th Cir. 2001) ................................................................................... 17, 19, 20

*White Mountain Apache Tribe v. Bracker*,
448 U.S. 136, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980) ....................................................... 8, 9

*Younger v., Harris*,
401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ................................................. 1, 12, 15 ,16, 19

**Statutes**

18 U.S.C. § 1151 ................................................................................................................ 6
18 U.S.C. § 1153(a) .......................................................................................................... 2, 6
74 O.S. § 18(A)(3) ............................................................................................................. 14
74 O.S. §  18b(A)(1) .......................................................................................................... 14
OKLA. STAT. tit. 19, § 513 .................................................................................................... 1
OKLA. STAT. tit. 20, § 40 .................................................................................................... 15
OKLA. STAT. tit. 21, § 1541.1 ................................................................................................ 2
OKLA. STAT. tit. 21, § 1731 ................................................................................................... 4
OKLA. STAT. tit. 21, § 533 ................................................................................................... 1
OKLA. STAT. tit. 21, § 540 ................................................................................................... 3
OKLA. STAT. tit. 47, § 11-902(A)(2) ........................................................................................ 3
OKLA. STAT. tit. 74, § 6 ..................................................................................................... 14

**MCN Appendix Page 80**

**Other Authorities**

1906 Oklahoma Enabling Act ................................................................................... 10

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 &
    n. 13 (2d ed. 1990)). ......................................................................................... 6

Public Law 280 ...................................................................................................... 10

**Rules**

10th Cir. R. 32.1 .................................................................................................. 21

FED R. CIV. P. 12(b) ............................................................................................... 8

Federal Rule of Civil Procedure 12(B)(6) ........................................................... 4, 8

LCvR7-1(b) .......................................................................................................... 4

**Constitutional Provisions**

OKLA. CONST. art. 6, § 8 ...................................................................................... 14

OKLA. CONST. art. 7, § 7(a). .................................................................................. 15

MCN Appendix Page 81

## MOTION TO DISMISS AND BRIEF IN SUPPORT
## BY DEFENDANT VIC REGALADO

Defendant Vic Regalado, in his official capacity as Tulsa County Sheriff ("Sheriff Regalado"), moves the Court to enter an order dismissing Plaintiff Muscogee (Creek) Nation's ("Nation") Complaint [Doc. 2] against Sheriff Regalado for failure to state a claim upon which relief can be granted against the movant. FED. R. CIV. P. 12(b)(6). Pursuant to LCvR7-1(b), Sheriff Regalado provides the following brief in support.

### BRIEF IN SUPPORT OF MOTION TO DISMISS

**I.      INTRODUCTION.**

There are multi-faceted fatal flaws in the Nation's complaint that should result in early dismissal of Sheriff Regalado.

Sheriff Regalado does not make the decision to file criminal charges or prosecute an accused regardless of an individual's race, ethnicity, or status as a Member (or non-Member) of any tribe. Amongst the duties and responsibilities he does have, Sheriff Regalado is statutorily entrusted with "the charge and custody of the jail of his county, and all the prisoners in the same . . . ." OKLA. STAT. tit. 19, § 513. In his role as having the "charge and custody of the jail," if Sheriff Regalado were to refuse to receive a person into custody at the county jail, he could be charged— by the district attorney on behalf of the State—with a misdemeanor crime. OKLA. STAT. tit. 21, § 533. Yet, the Nation's suit against Sheriff Regalado is for doing his constitutionally created job and performing his statutory mandated duties by following existing state and federal law. Furthermore, the Nation is unable to establish either an injury-in-fact or redressability to have standing to bring this action against Sheriff Regalado or any defendant. Based upon principles of federalism and comity, the court should refuse to interfere with ongoing state criminal prosecutions under the *Younger* abstention doctrine, and dismissal is proper under the *Colorado River* abstention doctrine.

1

## II.    UNDERLYING PROSECUTIONS AT-ISSUE.

In its Complaint, Plaintiff references five (5) state court criminal prosecutions which the Nation incorrectly alleges were brought by the "County." The Court can take judicial notice that state court criminal prosecutions are brought on behalf of the State of Oklahoma, by the state's prosecutor, District Attorney Kunzweiler. As to the "State" criminal actions referenced here, all involved conduct occurring in Tulsa County, Oklahoma, within the historical boundaries of the Cherokee Nation or Muscogee (Creek) Nation (the "State Prosecutions"). Complaint [Doc. 2, ¶35]. All of the State Prosecutions have at least three common themes: 1) each defendant is a member of a tribe other than the Muscogee (Creek) Nation; 2) each non-Member[1] was charged with committing a general crime, and not a crime defined in the Major Crimes Act, 18 U.S.C. § 1153(a); and 3) each general crime was allegedly committed by a defendant within the historical boundaries of a tribe in which he or she is not a member. The State Prosecutions are as follows.

*State v. Bohanan*, CM-2022-108 (Dist. Ct. Tulsa Co.).[2] Defendant Kunzweiler filed charges on behalf of the State of Oklahoma and a warrant was issued for the arrest of Ky Wolf Bohanan, a Choctaw Nation member, for creating a bogus check under $1,000. OKLA. STAT. tit. 21, § 1541.1. After his arrest more than 2 ½ years later, Bohanan challenged the court's jurisdiction, raising similar arguments as those in the Complaint (e.g. application of *McGirt*[3] to the exclusion of the *Castro-Huerta* framework[4]). *See State v. Bohanan*, Motion to Dismiss for Lack of Jurisdiction (in which Bohanan stated that the alleged crime was committed in either the Cherokee Nation or Muscogee (Creek) Nation). The State court denied Bohanan's motion. Bohanan did not appeal and

---

[1] An Indian who is not a member of the tribe in which the alleged offense occurred is referred to as a "non-Member."

[2] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2022-108.

[3] *McGirt v. Oklahoma*, 591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020).

[4] *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022).

2

MCN Appendix Page 83

voluntarily entered into a Misdemeanor Diversion Program plea agreement with the State in February 2025. Bohanan is not a detainee in the county jail—the David L. Moss Criminal Justice Center ("DLM"). *Id.*

*State v. Hess*, CM-2024-2951 (Dist. Ct. Tulsa Co.).[5] Jessica Diane Hess, a Choctaw Nation member, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Office, for obstructing an officer. OKLA. STAT. tit. 21, § 540. Defendant Kunzweiler filed charges of behalf of the State of Oklahoma. Hess challenged the state district court's jurisdiction. *See State v. Hess*, Motion to Dismiss for Lack of Jurisdiction (stating the alleged crime was committed in either the Cherokee Nation or Muscogee (Creek) Nation); Defendant's Reply to State's Response Objecting to Defendant's Motion to Dismiss. The state court denied the motion. Ms. Hess has not appealed. A jury trial is set for April 28, 2025. Ms. Hess is not detained at the DLM. *Id.*

*State v. Mason*, CM-2024-4510 (Dist. Ct. Tulsa Co.).[6] Charles Aaron Mason, a Navajo Nation member, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Department, for driving under the influence, for which the State of Oklahoma—by and through Defendant Kunzweiler—filed a criminal charge. OKLA. STAT. tit. 47, § 11-902(A)(2). The conduct occurred within the historical bounds of the Nation. Mason challenged the court's jurisdiction based on similar arguments. *See State v. Mason*, Motion to Dismiss for Lack of Jurisdiction. Like The state court denied the motion and Mason did not appeal. On March 6, 2025, Mason entered a guilty plea. *Id.* Mr. Mason is not in custody at the DLM. Plaintiff presumably would have this Court interfere with the plea agreement between the State of Oklahoma and Mr. Mason.

---

[5] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-2951.
[6] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-4510.

MCN Appendix Page 84

*State v. Neafus*, CM-2024-1222 (Dist. Ct. Tulsa Co., April 3, 2024).[7] Leigha Marie Neafus, a member of the Sac and Fax Nation of Missouri, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Department, for suspicion of larceny of merchandise from a retailer. OKLA. STAT. tit. 21, § 1731. The State of Oklahoma, by and through Defendant Kunzweiler, filed a criminal charge. The conduct occurred within the historical boundaries of the Nation. Ms. Neafus challenged the court's jurisdiction, arguing as well that *McGirt*—a case that addressed the State's jurisdiction to prosecute Indians who commit major crimes in Indian country (not at issue here)— applies to the exclusion of the mandatory analytical framework articulated in *Castro-Huerta*. *See State v. Neafus*, Motion to Dismiss for Lack of Jurisdiction. The State court denied the motion. Neafus has not appealed and is not in custody at the DLM. A jury trial is currently set for May 5, 2025. As with the other State Prosecutions, Plaintiff asks the Court to interfere with the State district court's jurisdictional determination and upcoming jury trial setting.

*State v. Morris*, CM-2024-4494 (Dist. Ct. Tulsa Co., Nov. 26, 2024).[8] Megan Marie Morris a/k/a Megan Marie Webb, a Choctaw Nation member, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Office, and charged with larceny of merchandise from a retailer. OKLA. STAT. tit. 21, § 1731. The conduct occurred within the historical boundaries of the Nation. Morris offered extensive briefing with similar arguments in his motion to dismiss, which was denied. *See State v. Morris*, Def. Mot. to Dismiss for Lack of Jurisdiction; *see also Id.*, Reply Brief in Support of Motion to Dismiss (arguing, at page 10, "that state criminal jurisdiction over *any* Indian for a crime alleged in Indian Country is *per se* foreclosed without express authorization, and delegation of authority to the state, by [C]ongress via legislation or treaty.") (emphasis in

---

[7] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-1222.
[8] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-4494.

4

original). The State district court denied the motion to dismiss on March 28, 2025. Ms. Morris is not in custody at the DLM. Plaintiff asks this Court to interfere in *State v. Morris*, an ongoing criminal prosecution, disregarding principles of federalism and comity.

### III.   MOTION TO DISMISS STANDARD.

Federal Rule of Civil Procedure 12(B)(6) permits a court to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The court should accept as true all factual allegations and views them in the light most favorable to the non-movant, but this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

Generally, a court may not properly consider matters outside the pleadings when adjudicating a motion to dismiss. FED R. CIV. P. 12(b). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *Id.* (citing *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972); 5 CHARLES

5

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 & n. 13 (2d ed. 1990)).

## ARGUMENT AND AUTHORITIES

### PROPOSITION ONE
### PLAINTIFF CANNOT PREVAIL AGAINST SHERIFF REGALADO UNDER EXISTING LAW

Plaintiff seeks to use the federal district court as a vehicle to overturn existing state law. In addition to the impropriety of such an action discussed in subsequent propositions, the law as stated by the Oklahoma Court of Criminal Appeals and the United States Supreme Court precludes recovery by Plaintiff. Sheriff Regalado is entitled to dismissal as a matter of law.

Navigating the unsettled post-*McGirt* legal landscape continues to present challenges to state, tribal, and federal governments, as well as to law enforcement and residents within the affected jurisdictions. The status today, however, is settled with respect to the jurisdictional test articulated by the United States Supreme Court and applied by the Oklahoma Court of Criminal Appeals.

Nearly five years ago, the United States Supreme Court held that Congress never disestablished the Nation Reservation; that the land within the Nation Reservation is "Indian country," as defined in 18 U.S.C. § 1151; and that the federal government therefore has exclusive jurisdiction to prosecute Indians for certain crimes committed within the Nation Reservation under the Major Crimes Act, 18 U.S.C. § 1153(a). *McGirt*, 591 U.S. at 913-934. Relying on *McGirt*, the U.S. Supreme Court in *Sharp v. Murphy*, 591 U.S. 977, 140 S. Ct. 2412, 207 L. Ed. 2d 1043 (2020) (mem.) summarily affirmed the United States Court of Appeals for the Tenth Circuit's 2017 decision that had reached the same conclusions regarding the continued existence of the Nation Reservation and the exclusivity of federal jurisdiction as to certain crimes committed within the

6

MCN Appendix Page 87

Nation Reservation by Indians. *Murphy*, 591 U.S. at 977; *see Murphy v. Royal*, 875 F.3d 896, 937-38 (10th Cir. 2017).

All of Tulsa County is located within the historical boundaries of the Muskogee (Creek) Nation Reservation and the Cherokee Nation Reservation. While the *McGirt* Court focused only on the Nation Reservation, the Oklahoma Court of Criminal Appeals subsequently applied the applicable *McGirt* analysis to conclude that Congress never explicitly erased or disestablished the boundaries of the Cherokee Nation Reservation. *Hogner v. State*, 2021 OK CR 4, 500 P.3d 629, 635 (Okla. Crim. App. 2021), overruled on other grounds by *Deo v. Parish*, 2023 OK CR 20, 541 P.3d 833 (Okla. Crim. App. 2023). As such, today all of Tulsa County is Indian country, split between the Nation Reservation and the Cherokee Nation Reservation. In fact, the eastern part of Oklahoma is now recognized as Indian country.[9] *Castro-Huerta*, 597 U.S. at 634.[10]

Post-*McGirt*, numerous jurisdictional challenges and questions have arisen in Indian country, leading litigants to turn to the courts for answers. A key jurisdictional question was posed to the United States Supreme Court in *Castro-Huerta*, in which the court was asked to determine whether the federal government has *exclusive* jurisdiction to prosecute crimes by non-Indians committed against Indians in Indian country, or whether federal and state governments have *concurrent* jurisdiction to prosecute those crimes. *Id*. at 632-633. In answering this question, the

---

[9] Applying the analysis from *McGirt*, the Oklahoma Court of Criminal Appeals has concluded that several other reservations in Oklahoma were not disestablished. *See, e.g.*, *State ex rel. Matloff v. Wallace*, 2021 OK CR 21, ¶15, 497 P. 3d 686, 689 (reaffirming recognition of the Cherokee, Choctaw, and Chickasaw Reservations); *Grayson* v. *State*, 2021 OK CR 8, ¶10, 485 P. 3d 250, 254 (Seminole Reservation); *State v. Brester*, 2023 OK CR 10, 531 P.3d 125 (Ottawa and Peoria Reservations).

[10] "Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." *Castro-Huerta*, 597 U.S. at 636.

7

**MCN Appendix Page 88**

*Castro-Huerta* court articulated that a tribal jurisdictional analysis begins with the established understanding that pursuant to the United States Constitution, "States have the authority to prosecute crimes committed within their territory "except when preempted (in a manner consistent with the Constitution) by federal law or by principles of tribal self-government." *Id*. at 652-653.

In *Castro-Huerta*, as here, the underlying offenses fall under the General Crimes Act rather than the Major Crimes Act applicable to *McGirt*. *Castro-Huerta*, 597 U.S. at 633. The General Crimes Act "borrows the body of federal criminal law that applies in federal enclaves and extends it to Indian country." *Id*. at 640. The *Castro-Huerta* Court found that nothing in the plain language of the General Crimes Act preempts the State's authority to prosecute crimes in Indian country. *Id*. at 639-40. Thus, "both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639 (footnote omitted). The question then turned to whether, "a separate principle of federal law that . . . precludes state interference with tribal self-government" applies. *Id*. at 639 n.2 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980)). Applying the *Bracker* balancing test, the *Castro-Huerta* Court determined that the principles of tribal self-government do not preempt state jurisdiction because a state prosecution of a crime under the General Crimes Act does not deprive the tribe of any of its prosecutorial authority. *Castro-Huerta*, 597 U.S. 629.

Applying the articulated analysis from *Castro-Huerta*, the Oklahoma Court of Criminal Appeals considered whether the state or its municipalities have jurisdiction to prosecution an Indian who is not a member of the tribe in which the violation of a general crime allegedly occurred. *City of Tulsa v. O'Brien*, 2024 OK CR 31. In *O'Brien*, an enrolled citizen of the federally recognized Osage Nation tribe was charged by the City of Tulsa with multiple misdemeanor traffic offenses occurring within the boundaries of the Muscogee (Creek) Nation. *Id*. at ¶¶ 1-3. The

MCN Appendix Page 89

accused initially lost a jurisdictional challenge when the municipal judge relied upon the Section 14 of The Curtis Act of 1898 to hold that the City of Tulsa maintained jurisdiction over violations of municipal ordinances. After the Tenth Circuit later opined that The Curtis Act did not survive statehood for Oklahoma, *Hooper v. City of Tulsa*, 71 F.4th 1270, 1288 (10th Cir. 2023), Mr. O'Brien successfully re-urged his motion to dismiss on jurisdictional grounds. *O'Brien*, ¶¶ 4-7. The City of Tulsa appealed the municipal order to the state's highest criminal court of appeals, chiefly relying upon *Castro-Huerta* and its stated analytical framework for determining questions of tribal jurisdiction.

The *O'Brien* Court, indeed, relied upon and conducted the same jurisdictional analysis provided by the United States Supreme Court in *Castro-Huerta* because the analysis does not turn on whether the criminal defendant is a non-Indian or a non-Member. After determining that state jurisdiction was not preempted as a result of *Bracker* balancing, the *O'Brien* Court found that Oklahoma has concurrent criminal jurisdiction in Indian country over non-Member Indian defendants accused of committing non-major crimes, 2024 OK CR 31, ¶ 35, and that the *Bracker* balance of interests does not preempt the exercise of state—and thus municipal—jurisdiction. *Id*.

Displeased with the outcome, Plaintiff filed this action to essentially argue Justice Gorsuch's dissent in *Castro-Huerta* and the short and lone dissent in *O'Brien*. However, as noted in Judge Musseman's in-depth concurring opinion in *O'Brien*, "[c]omments in the dissenting opinion . . . 'are just that: comments in a dissenting opinion.'" 24 OK CR 31 (Musseman, J., concurring at ¶ 3) (quoting *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 177, n. 10, 101 S. Ct. 453, 66 L. Ed. 2d 368 (1980)). While Plaintiff can argue the limited holding of *Castro-Huerta*, as was also unsuccessfully attempted in *O'Brien*, the jurisdictional test identified and relied on by the *Castro-Huerta* Court—and utilized accordingly in *O'Brien*, does not change if the criminal

9

MCN Appendix Page 90

defendant is a non-Indian or a non-Member of the tribal territory where the alleged general crime occurred. Indeed, the *O'Brien* Court explicitly rejected each of the contentions Plaintiff raises in the Complaint, holding that: 1) the United States Supreme Court's framework in *Castro-Huerta* applies to a state's criminal jurisdiction over Indians, *Id.* ¶¶ 13-17; 2) neither Public Law 280 nor the 1906 Oklahoma Enabling Act preempts state jurisdiction over general crimes committed by Indians, *Id.* ¶ 20; 3) application of *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164 (1973) does not override the *Bracker* balancing test or any other component of the *Castro-Huerta* framework, *Id.* ¶¶ 27-35; and 4) as here, the framework urged by Mr. O'Brien "disregard[ed] the plain holding of *Castro-Huerta* and instead rel[ies] largely on Justice Gorsuch's dissent and a string of citations to U.S. Supreme Court precedent that ultimately undermine its own argument." *Id.* ¶ 5 (Musseman, J., concurring).

As such, under Oklahoma law, the state or municipal government's exercise of jurisdiction over a non-Member accused of committing non-major crimes does not unlawfully infringe upon tribal self-government. The Muscogee (Creek) Nation continues to have jurisdiction to prosecute the same offenses within its reservation territory against non-Indians, non-Members, and its own Members for general crimes that are codified in Creek statutes, while the state—and municipalities—share jurisdiction with the Nation over non-Indians and non-Members accused of violating general crimes within the historical boundaries of the Nation's Reservation. Plaintiff has failed to state a claim upon which relief can be granted against Sheriff Regalado. Dismissal is proper.

## PROPOSITION TWO
## PLAINTIFF LACKS STANDING

Plaintiff lacks proper standing to proceed. The doctrine of standing developed in case law to ensure that federal courts do not exceed their authority as it has been traditionally

10

understood. *Raines* v. *Byrd*, 521 U. S. 811, 820, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). The

doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek

redress for a legal wrong. *See Valley Forge Christian College v. Americans United for Separation

of Church and State, Inc.*, 454 U. S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982);

*Warth* v. *Seldin*, 422 U. S. 490, 498-499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). The United

States Supreme Court has established the "irreducible constitutional minimum" of standing

requires that a plaintiff: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351

(1992). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these

elements. *FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603

(1990). Here, Plaintiff cannot establish either an injury-in-fact or redressability.

### A.  Plaintiff Has Not Suffered An Injury in Fact.

Injury in fact is the "[f]irst and foremost" of standing's three elements. *Steel Co. v., Citizens

for Better Environment*, 523 U. S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Injury in

fact is a constitutional requirement and "[i]t is settled that Congress cannot erase Article III's

standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise

have standing." *Raines*, 521 U.S. at 820, n.3. To establish injury in fact, a plaintiff must show that

he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized"

and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U. S., at 560 (internal

quotation marks omitted). To be concrete, an injury must be real harm to a legally protected interest,

not abstract. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury is

particularized only if it affects a party in a personal and individual way. *Id*. And a party who is not

11

threatened by – and, indeed, could never be subject to – state criminal prosecution lacks standing

and is not an appropriate plaintiff to challenge any such pending prosecutions.

> A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases.

*Younger v., Harris*, 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

Here, Plaintiff does not allege an injury that is concrete, particularized, or actual or

imminent, but instead offers a mere conclusory and inaccurate allegation:

> The County's policy, as stated and enforced by the District Attorney and the Sheriff, of pursuing prosecutions against Indians for conduct within the Creek Reservation is causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation.

Complaint [Doc. 2, pp. 4, ¶ 15]. Indeed, the Muscogee (Creek) Nation is not adversely impacted—

let alone suffered an injury in fact—as a result of Defendant Kunzweiler or Sheriff Regalado

following established law:

> . . . [the] prosecution of non-member Indians of the Muscogee (Creek) tribe for misdemeanor traffic offenses occurring on public streets and roads in Tulsa does not affect the tribe's authority to regulate its own citizens for violations of Creek tribal law. In fact, such a prosecution would not involve prosecuting any citizen of the Muscogee (Creek) tribe. Further, **the city of Tulsa's jurisdiction would be concurrent only and would not displace, or diminish, the tribe's prosecutorial authority to try Indians for violations of local tribal law**. **Tulsa's prosecution of non-member Indians would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation**. To the extent that Tulsa's exercise of concurrent jurisdiction over non-Creek Indians for misdemeanor traffic offenses committed on the Creek reservation would somehow pose a problem, Congress can seek to alter it.

*O'Brien*, 24 OK CR 31, ¶ 32 (emphasis added). Indeed, nothing in *Castro-Huerta* or *O'Brien*

diminishes Plaintiff's jurisdiction to police and prosecute crimes—other than Major Crimes—

12

within the Nation.

The State Prosecutions at-issue are against non-Member criminal defendants, not the Nation. Only the individuals can claim specific injury. Like Messrs. McGirt and Castro-Huerta, the individual defendants subject to the State Prosecutions sought relief through proper channels—district court filings, with the option to appeal to the Oklahoma Court of Criminal Appeals, and ultimately, the United State Supreme Court. As in *McGirt* and *Castro-Huerta*, Plaintiff may participate as amicus curiae, as it and many others whose injuries are abstract and not specific have done so in the past. The State of Oklahoma is prosecuting the individual defendants, and the state courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Furthermore, the State Prosecutions—the likes of which have existed for over a century—do not impact Plaintiff's authority to prosecute the same defendants. The United States Supreme Court recently reaffirmed that an individual may be prosecuted by separate sovereigns for the same conduct. *Denezpi v. United States*, 596 U.S. 591 (2022); *see also United States v. Lanza*, 260 U.S. 377, 382 (1922) (holding that "[e]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.").

Without an injury in fact, Plaintiff's Complaint should be dismissed for a lack of standing and, thus, a failure to state a claim upon which relief can be granted Plaintiff against Sheriff Regalado.

**B. Plaintiff Cannot Demonstrate Redressability**

Redressability is an "'irreducible'" component of standing, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), which requires "a likelihood that the

13

requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Here, this component is fatally absent.

To establish redressability, one "must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). Said differently, redressability is absent when, as here, the Court's decision would have no meaningful effect on a complainant's alleged injury. Even if Plaintiff claimed that State Prosecutions caused actual injury, redress would not be available here. The most extreme—albeit inappropriate—relief would be to enjoin Defendant Kunzweiler from prosecuting certain crimes against a limited class of individuals, and order Sheriff Regalado to in-process all Indian detainees as tribal detainees. Even then, redress could not be achieved and the State Prosecutions that remain active would continue.

The Governor of Oklahoma has a constitutional duty to "cause the laws of the State to be faithfully executed[.]" OKLA. CONST. art. 6, § 8. A corresponding statute authorizes the Governor "to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, . . . may prosecute offenses against the law of the state[.]" OKLA. STAT. tit. 74, § 6. In addition, the Oklahoma Attorney General ("OAG") can initiate or appear in criminal prosecutions on behalf of the state. *Id*. at § 18(A)(3). The OAG may also "appear for the state and prosecute and defend all" criminal proceedings in the Oklahoma Court of Criminal Appeals in which the state is interested as a party. *Id*. at § 18b(A)(1). Given the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue the prosecutions in Tulsa County District Court. And, finally, Plaintiff's requested injunction could not affect the state district courts or the Oklahoma Court of Criminal Appeals' ability to proceed with adjudications.

14

**MCN Appendix Page 95**

Oklahoma "District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]" OKLA. CONST. art. 7, § 7(a). And the Oklahoma Court of Criminal Appeals "shall have exclusive appellate jurisdiction . . . in all criminal cases appealed from the district . . . courts[.]" OKLA. STAT. tit. 20, § 40. The Oklahoma Court of Criminal Appeals "is supreme in all criminal appeals from state courts of this State," *Inverarity v. Zumwalt*, 1953 OK CR 148, ¶ 18, 262 P.2d 725, 730, and is duty bound to ensure Oklahoma has "a uniform system of criminal jurisprudence[.]" *State v. Davis*, 1913 OK CR 80, ¶ 8, 130 P. 962, 964.

In sum, a favorable decision for Plaintiff against a single district attorney and county sheriff would not redress any purported injury. Dismissal for a lack of standing is proper.

## PROPOSITION THREE
### THE COURT SHOULD DISMISS UNDER THE *YOUNGER* ABSTENTION DOCTRINE

**A.     Introduction to *Younger*.**

The Court should dismiss this action based on *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), and its progeny. *See also*, *D.L., et al. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004) (stating that the *Younger* abstention presents a question of whether a federal court has jurisdiction to proceed with a case).

Under the *Younger* abstention doctrine, federal courts should not "interfere with state court proceedings by granting equitable relief - such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings" when a state forum provides an adequate avenue for relief. *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). The "Younger abstention is non-discretionary;" the district court must abstain once the conditions are met, "absent extraordinary circumstances." *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). Although federal courts have a steep obligation to exercise the jurisdiction granted them, "they must on rare occasions abstain from exercising their

15

**MCN Appendix Page 96**

jurisdiction in order to 'avoid undue interference with states' conduct of their own affairs.'" *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (quoting *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.3d 709, 711 (10th Cir. 1989)). This is one such occasion.

In *Younger*, a state criminal defendant filed a federal action that alleged that the statute underlying his state prosecution violated the Constitution; he requested that its enforcement be enjoined. He thereby sought to reframe the issues in federal court and to convert what would ordinarily be a defense to a criminal prosecution into an affirmative claim for relief. *See Special Souvenirs, Inc. v. Town of Wayne*, 56 F. Supp. 2d 1062, 1071 (E.D. Wis. 1999). The *Younger* Court concluded that absent extraordinary circumstances, the federal court should abstain from hearing the case based on principles of equity, comity and federalism. *Younger*, 401 U.S. at 43-50.

The United States Supreme Court's discussion on the notion of "comity" in 1971, rings loud and true today:

> [A] proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 44.

*Younger* has since been expanded from its original criminal proceeding application to apply to cases involving civil enforcement proceedings in state court, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975); to cases involving the integrity of administration of the state's judicial system, *see Juidice v. Vail*, 430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (applying *Younger* to allow abstention by federal district courts in § 1983 actions where the state proceeding implicates a state interest); in cases involving two private parties, *see Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987); and, to certain pending

16

administrative proceedings, *see Ohio Civil Rights Comm'n*, 477 U.S. 619, 106 S. Ct. 2718, 91 L.

Ed. 2d 512 (1986).

In applying the *Younger* abstention doctrine, the Tenth Circuit Court of Appeals provides

that federal courts must abstain from exercising jurisdiction when three (3) elements have been

satisfied:

> First, there must be ongoing state criminal, civil, or administrative
> proceedings. Second, the state court must offer an adequate forum to hear the
> federal plaintiffs claims from the federal lawsuit. Third, the state proceeding
> must involve important state interests, matters which traditionally look to state
> law for their resolution or implicate separately articulated state policies.

*Taylor v. Jacquez*, 126 F.3d 1294, 1297 (10th Cir. 1997). If the three requirements are met, and no

exceptions to *Younger* applies, a federal court must abstain from hearing the case. *See Weitzel v.*

*Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001).

**B.    Threshold Consideration to the *Younger* Analysis**.

As a threshold consideration to the above requirements, *Younger* applies when the relief

the plaintiff seeks in federal court would interfere with the ongoing state judicial proceeding.

*Columbia Basement Apartment Assoc. v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001); *see also*

*Marks v. Stinson*, 19 F.3d 873, 882 (3d Cir. 1994) (providing that "[a] federal court will only

consider *Younger* abstention when the requested equitable relief would constitute federal

interference in state judicial or quasi-judicial proceedings."); *Am. Fed'n of State, County and*

*Municipal Employees v. Tristano*, 898 F.2d 1302 (7th Cir. 1990) (noting that common thread in

cases implicating *Younger* abstention is the impact on and interference with the state proceedings.

The federal court interferes with state court proceedings "if plaintiffs seek relief in federal

courts which will impair the ability of the state courts to adjudicate anything that is currently before

them or where federal relief would render the state court's orders or judgments nugatory."

17

**MCN Appendix Page 98**

*Rappaport v. Norlar, Inc.*, 1994 U.S. Dist. LEXIS 5754, Civ.A.No.93-4756, 1994 WL 167959, at *9 (E.D. Pa. April 29, 1994) (internal quotations and citations omitted).[11] If these conditions are met, abstention is proper unless the plaintiff meets the heavy burden of showing "bad faith, harassment, or some extraordinary circumstance that would make abstention appropriate." *Middlesex County Ethics Comm.*, 457 U.S. 423 at 435, 73 L. Ed. 2d 116, 102 S. Ct. 2515; *see also Trackwell v. Kansas*, 2001 U.S. Dist. LEXIS 8301, 2001 WL 709366, at *2 (D. Kan. May 10, 2001).

Here, Plaintiffs seeks injunctive relief from the federal court to interfere with five (5) state court matters. *See* Complaint [Doc. 2, pp. 7-8, ¶¶ 22-27; Prayer for Relief, p.10 ¶¶ A-C]; and Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 4]. Indeed, the equitable relief requested here would constitute federal interference in state judicial proceedings. If the federal court does *not* abstain, the equitable relief sought by Plaintiffs would render the state court's orders or judgments nugatory:

> [I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.

*Huffman v. Pursue, Ltd*., 420 U.S. 592, 604, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975). The threshold condition before examining the three (3) elements in the *Younger* abstention doctrine favors Defendants.

---

[11]Unpublished opinions in this brief are cited for their persuasive value only. 10th Cir. R. 32.1.

MCN Appendix Page 99

### C.  The First *Younger* Element.

The first element in the *Younger* analysis, set forth by the Tenth Circuit in *Taylor*, 126 F.3d at 1297, is the existence of an ongoing state criminal, civil, or administrative proceeding. The State Prosecutions began prior to Plaintiff's filing of its complaint. *See* Section II, *supra*. The first of three elements is satisfied. *Taylor*, 126 F.3d at 1297.

### D.  The Second *Younger* Element.

Regarding the second element, that the state court offers an adequate forum to hear the federal claims from the federal lawsuit, it should be deemed beyond dispute that the Oklahoma state judiciary provides an adequate forum to assert constitutional claims. *See, e.g.*, *Allen v. McCurry*, 449 U.S. 90, 105, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980) (citing *Stone v. Powell*, 428 U.S. 465, 493-94 n.35, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976), for its "emphatic reaffirmation . . . of the constitutional obligation of the state courts to uphold federal law, and its expression of confidence in their ability to do so")). *See also*, *Weitzel v. Division of Occupational & Prof'l Licensing*, 240 F.3d 871, 876 (10th Cir. 2001). The second element is satisfied.

### E.  The Third *Younger* Element.

The third element of the *Younger* abstention analysis examines whether the state proceeding involves important state interests. *Taylor*, 126 F.3d at 1297. The U.S. Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986) (citing *Younger*, 401 U.S. at 44-45). And, "[w]ith respect to the third condition, the State has an important interest in the administration of its judicial system but even a greater interest in the enforcement of its criminal laws. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-

19

**MCN Appendix Page 100**

13, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (citing *Juidice v. Vail*, 430 U.S. 327, 335, 97 S. Ct. 1211,

51 L. Ed. 2d 376 (1977). The third and final element is satisfied. *Younger* and its progeny demand

dismissal of Plaintiff's Complaint.

**F.      There are No Applicable Exceptions**.

Injunctive intervention in state criminal proceedings is permissible only if (1) irreparable

injury is "both great and immediate," (2) the state law is "flagrantly and patently violative of

express constitutional prohibitions, or (3) Plaintiff could show "bad faith, harassment, or . . . other

unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230-

31 (1972) (internal citations omitted). Regarding the third factor, the plaintiff bears a "heavy

burden" to establish bad faith or harassment, and the Tenth Circuit looks to three factors:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of
> success; (2) whether it was motivated by defendant's suspect class or in retaliation
> for the defendant's exercise of constitutional rights; and (3) whether it was
> conducted in such a way as to constitute harassment and an abuse of prosecutorial
> discretion, typically through the unjustified and oppressive use of multiple
> prosecutions.

*Weitzel*, 240 F.3d at 877; *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("[I]t is

the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than

mere allegations of bad faith or harassment.").

Any allegation of irreparable injury fails as a matter of fact and law. The State's prosecution

of non-Member criminal defendants for conduct occurring in Tulsa County, Oklahoma does not

impact Plaintiff's authority and jurisdiction to prosecute the same criminal occurrences; thus, no

injury. Moreover, the State Prosecutions have been pending since as early as two years prior to the

filing of this lawsuit, thus there is no imminency. *See State v. Bohanan*, CM-2022-108 (Tulsa Co.

Dist. Ct. Jan. 10, 2022).  Plaintiff fails to allege the State Prosecutions are motivated by a suspect

class or in retaliation for an exercise of constitutional rights. Of course, Plaintiff could not sincerely

20

**MCN Appendix Page 101**

contend that the prosecution of conduct such as obstructing an officer, driving under the influence in Oklahoma, and theft is motivated by anything other than concern for public safety and county and state affairs. Plaintiff likewise failed to show—or even attempt to show—the existence of bad faith, harassment, or any other unusual circumstance warranting equitable relief. Any such effort would be futile. The Oklahoma Court of Criminal Appeals' decision in *O'Brien*, and most recently in *Stitt v. City of Tulsa*, 2025 OK CR 5, the U.S. Supreme Court's decision and analysis in *Castro-Huerta*, and the state district court rulings in the State Prosecutions endorse the state's prosecutorial jurisdiction; thus, no frivolity or abuse of prosecutorial discretion. In sum, Plaintiff cannot fit its allegations into an exception to the non-discretionary bar on federal court intervention in state criminal proceedings. *Younger* abstention requires dismissal.

## G.      *Younger* **Abstention Applies to Future Prosecutions**.

Plaintiff lacks standing to assert claims regarding future prosecutions not yet initiated, which are subject to its request for injunctive relief. Although *Younger* abstention may only be mandatory where there is an "ongoing criminal prosecution," there "plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *see also Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975) (holding that Younger abstention could not be avoided on the ground that no criminal prosecution was pending against appellees on the date the federal complaint was filed where appellees "had a substantial stake in the state proceedings").

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate.

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); *see also*

*Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019) (holding that parties with "a

21

MCN Appendix Page 102

sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention.") (collecting cases).

As argued above, Plaintiff lacks standing to assert claims regarding future prosecutions not yet initiated, which are subject to its request for injunctive relief. However, to the extent the Court considers any such generalized claims, derivative abstention is appropriate due to Plaintiff's intertwined interests. Plaintiff not only references the State Prosecutions as support for this lawsuit, Compaint [Doc. 2, ¶¶ 22-23], but also alleges how each criminal defendant has challenged the State's jurisdiction in the same manner as Plaintiff does here. *Id*. at ¶ 25. Plaintiff then details how its generalized claims are no different from those being litigated in the State Prosecutions. *Id*. at ¶¶ 26-29. And, remarkably, Plaintiff even alleges that "the District Court in and for Tulsa County, Oklahoma, accepted the County's arguments, denied the Indian defendant's motion to dismiss, and permitted the prosecution to move forward." Complaint [Doc. 2, ¶ 27]. In other words, Plaintiff explicitly acknowledges that other courts have adjudicated the precise issues that it improperly brings to this Court. *Younger* abstention applies to all prosecutions covered by Plaintiff's Complaint, not just the State Prosecutions. Yet, Plaintiff paternalistically seeks to hover over the State Prosecution defendants who have already demonstrated the ability to raise their own jurisdictional challenges in state court.

### PROPOSITION FOUR
### PLAINTIFF'S COMPLAINT FAILS TO IDENTIFY
### A VIOLATION OF FEDERAL LAW BY SHERIFF REGALADO

Other than identifying him as a party, Plaintiff only references Sheriff Regalado twice in its complaint, neither of which allegation purports to be a violation of a federal law this Plaintiff has standing to seek redress here, and for which there is no injury alleged. Indeed, the Complaint states in successive paragraphs:

22

28.  The Tulsa County Sheriff has additionally adopted a policy of booking and classifying inmates and asserting criminal jurisdiction over non-member Indians in light of *O'Brien*. In a memorandum that the Sheriff's Department provided to the Nation on January 24, 2025, the Sheriff stated that "tribal members will be charged by tribal courts only if they are a member of the tribe in which the criminal offense took place.... Any other tribal citizens will not be booked or charged into tribal courts but rather STATE court and booked into [the David L. Moss Criminal Justice Center] as any other citizen."

29.  The David L. Moss Criminal Justice Center is operated by the Sheriff.

Complaint [Doc. 2, pp. 8-9]. So, basically, Sheriff Regalado is accused by Plaintiff of following Oklahoma law, as articulated by the Oklahoma Court of Criminal Appeals in *O'Brien*.

The act at-issue by Sheriff Regalado is to simply identify, for administrative processing reasons, whether an arrestee is being booked into the county jail by a municipality for the violation of state law, or brought to the jail by either the Nation or Cherokee Nation for the violation of state or tribal law. Whether, where, or what criminal charge, if any, is subsequently filed is up to the complete discretion of state or tribal prosecutors, not Sheriff Regalado. *See Carpenter v. State*, 1996 OK CR 56, ¶ 23, 929 P.2d 988, 995. *See also State ex rel. Stout v. Craytor*, 1996 OK CR 79, P12, 753 P.2d 1365, 1368 (noting that the District Attorney has the discretion to decide whether to prosecute and of what charge to bring in state court). Sheriff Regalado and the Tulsa County Sheriff's Office cannot file criminal charges against any person, in any court, and do not determine whether a person is being held by the state or a tribe. If charges are filed, Sheriff Regalado and the jail then follow the direction of the court—state or tribal—with respect to further detention.[12] The

---

[12] With respect to the State Prosecutions, there is no evidence Sheriff Regalado or the Tulsa County Sheriff's Office were involved in the arrest of any of the defendants. In fact, the Oklahoma State Court Network links provided by Plaintiff in its Complaint indicates that four of the five were arrested by the Tulsa Police Department, while the docket for the fifth is silent in this regard. Section II, *supra*.

23

MCN Appendix Page 104

inclusion of Sheriff Regalado as a defendant in this matter is pointless. Plaintiff has not stated a claim upon which relief can be granted against Sheriff Regalado.

**PROPOSITION FIVE**
**THE *COLORADO RIVER* ABSTENTION DEMANDS DISMISSAL**

Sheriff Regalado incorporates by reference the proposition, argument, and authorities set forth in Defendant Kunzweiler's motion to dismiss and brief in support regarding the invocation of the *Colorado River* Abstention Doctrine.

**CONCLUSION**

Plaintiff's Complaint and request for relief is based upon the already failed legal arguments from the dissent in *Castro-Huert*a and the short and lone dissent in *O'Brien*. "Comments in the dissenting opinion . . . 'are just that: comments in a dissenting opinion." *Fritz*, 449 U.S. at 177, n. 10. Furthermore, Plaintiff does not have standing to bring this action. There is no injury in fact to the Nation. State jurisdiction in concurrent in violations of general crimes. The Nation has not lost any ability to charge and prosecute its Members, Non-Members, or non-Indians for violating Creek law in the Nation's Reservation, and it can prosecute the defendants in the State Prosecutions if the offenses are alleged to have occurred in the Nation's Reservation. The *Younger* abstention doctrine should also be followed here. Under this doctrine, federal courts should not interfere with state court proceedings by granting equitable relief - such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings when a state forum provides an adequate avenue for relief. The *Colorado River* abstention doctrine further applies and should be followed to dismiss Plaintiff's Complaint. The legal doctrines of standing, *Younger*, and *Colorado River* aside, Plaintiff's issue with the Sheriff is a memorandum within in his office that discusses how to in-process a person being admitted into the county jail based upon whether the arrestee is a Member of the tribal territory where the incident occurred. Sheriff

24

**MCN Appendix Page 105**

Regalado has not input or authority to decide whether an arrestee will be charged with any crime by the State of Oklahoma or by one of the tribes (Cherokee or Muscogee (Creek)). Once a person is charged, Sheriff Regalado takes directions from the courts. Sheriff Regalado simply does not belong as a party to this lawsuit. Plaintiff has failed to state a claim upon which relief can be granted against Sheriff Regalado. Dismissal is proper.

**Filed**: April 7, 2025

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/ Keith A. Wilkes*
Keith A. Wilkes, OBA 16750
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
kwilkes@hallestill.com

**ATTORNEYS FOR SHERIFF REGALADO**

MCN Appendix Page 106

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally recognized Indian tribe,<br><br>*Plaintiff*,<br><br>v.<br><br>TULSA COUNTY, OKLAHOMA;<br>STEVE KUNZWEILER, in his official<br>capacity as District Attorney for the<br>Fourteenth Prosecutorial District of<br>Oklahoma; and VIC REGALADO, in his<br>official capacity as Tulsa County Sheriff,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-cv-00075-GKF-JFJ |

### DEFENDANT STEVE KUNZWEILER'S MOTION TO DISMISS
### PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT

MCN Appendix Page 107

## TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................ 1

II.   STANDING ...................................................................................................... 7

      A.   Plaintiff has not suffered an injury-in-fact. ............................................ 8

      B.   A favorable ruling would not redress any purported injury. ............................. 10

III.  THE ANTI-INJUNCTION ACT AND *YOUNGER* ABSTENTION ............................... 12

      A.   There are ongoing state criminal proceedings. ...................................... 14

      B.   The State court provides an adequate forum to hear the claims raised in the Complaint. 14

      C.   The state proceedings involve important state interests. ................................ 16

      D.   No exceptions to the bar on federal injunctions of state criminal proceedings apply....... 17

      E.   Plaintiff's generalized request to enjoin potential future criminal proceedings is governed by the same Younger abstention considerations. ........................................ 19

IV.   COLORADO RIVER ABSTENTION ............................................................... 20

CONCLUSION.................................................................................................... 22

i

## **TABLE OF AUTHORITIES**

**Cases**

*Arbaugh v. Y&H Corp.*,
 546 U.S. 500 (2006) ................................................................................................ 9

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*,
 398 U.S. 281 (1970) .............................................................................................. 12

*Carney v. Adams*,
 592 U.S. 53 (2020) .................................................................................................. 8

*City of Tulsa v. O'Brien*,
 2024 OK CR 31, 2024 WL 5001684 ........................................................... passim

*Colorado River Water Conservation Dist. v. U.S.*,
 424 U.S. 800 (1976) ............................................................... 7, 20, 21, 22

*D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*,
 705 F.3d 1223 (10th Cir. 2013) ........................................................... 6, 20

*Denezpi v. United States*,
 596 U.S. 591 (2022) ................................................................................................ 9

*Doran v. Salem Inn, Inc.*,
 422 U.S. 922 (1975) .............................................................................................. 19

*Ellis v. Morzelewski*,
 2:21-CV-639-TC, 2022 WL 3645850 (D. Utah Aug. 24, 2022) ............................. 20

*Fisher v. Whetsel*,
 142 Fed.Appx. 337 (10th Cir. 2005) ..................................................................... 16

*Fox v. Maulding*,
 16 F.3d 1079 (10th Cir. 1994) .............................................................................. 21

*Graff v. Aberdeen Enterprizes, II, Inc.*,
 65 F.4th 500 (10th Cir. 2023) ............................................................................... 13

*Herrera v. City of Palmdale*,
 918 F.3d 1037 (9th Cir. 2019) .............................................................................. 20

*Hicks v. Miranda*,
 422 U.S. 332 (1975) .............................................................................................. 19

*Inverarity v. Zumwalt*,
 1953 OK CR 148, 262 P.2d 725 ............................................................................. 11

*J.B. ex rel. Hart v. Valdez*,
 186 F.3d 1280 (10th Cir. 1999) ............................................................................ 13

*Joseph A. ex rel. Corrine Wolfe v. Ingram*,
 275 F.3d 1253 (10th Cir. 2002) ............................................................................ 14

*Kansas v. Garcia*,
 589 U.S. 191 (2020) .............................................................................................. 16

MCN Appendix Page 109

*Kelly v. Robinson*,
  479 U.S. 36 (1986).................................................................................................... 17

*Massachusetts v. E.P.A.*,
  549 U.S. 497 (2007).................................................................................................... 8

*McClanahan v. State Tax Comm'n of Arizona*,
  411 U.S. 164 (1973).................................................................................................... 3

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020).......................................................................................... passim

*Miller v. Fluent Home, LLC*,
  220CV00641HCNJCB, 2021 WL 8086367 (D. Utah Mar. 18, 2021)....................... 8

*Mitchum v. Foster*,
  407 U.S. 225 (1972)............................................................................................. 1, 17

*Moore v. Sims*,
  442 U.S. 415 (1979).................................................................................................. 14

*N. Mill St., LLC v. City of Aspen*,
  6 F.4th 1216 (10th Cir. 2021).................................................................................... 8

*New Beckley Mining Corp. v. International Union*, UMWA,
  946 F.2d 1072 (4th Cir. 1991).................................................................................. 21

*Nova Health Sys. v. Gandy*,
  416 F.3d 1149 (10th Cir. 2005) ................................................................................ 10

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022).......................................................................................... passim

*Organized Village of Kake v. Egan*,
  369 U.S. 60 (1962)...................................................................................................... 3

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987)...................................................................................................... 14

*Petrella v. Brownback*,
  697 F.3d 1285 (10th Cir. 2012) .................................................................................. 8

*Phelps v. Hamilton*,
  122 F.3d 885 (10th Cir. 1997).................................................................................. 18

*Pueblo of Pojoaque v. Biedscheid*,
  689 F. Supp. 3d 1033 (D.N.M. 2023), *appeal dismissed*, 2024 WL 4256791 (10th Cir. May 13,
  2024) ......................................................................................................................... 12

*Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*,
  874 F.2d 709 (10th Cir. 1989).................................................................................. 19

*Smith v. Bayer Corp.*,
  564 U.S. 299, 306 (2011).......................................................................................... 12

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013)............................................................................................... 1, 13

iii

*State v. Bohanan*,
CM-2022-108 (Dist. Ct. Tulsa Co.) ............................................................... 5, 18

*State v. Davis*,
1913 OK CR 80, 130 P. 962 ....................................................................... 11

*State v. Hess*,
CM-2024-2951 (Dist. Ct. Tulsa Co.) ............................................................... 5

*State v. Mason*,
CM-2024-4510 (Dist. Ct. Tulsa Co.) ............................................................... 5

*State v. Morris*,
CM-2024-4494 (Dist. Ct. Tulsa Co., Nov. 26, 2024) ....................................... 6

*State v. Neafus*,
CM-2024-1222 (Dist. Ct. Tulsa Co., April 3, 2024) ......................................... 6

*State v. Shale*,
345 P.3d 776, 780-81 ................................................................................. 10

*Stitt v. City of Tulsa*,
2025 OK CR 5 .................................................................................. passim

*Summers v. Earth Island Institute,* 555 U.S. 488 (2009) ................................. 8

*Tooele Cnty. v. United States*,
820 F.3d 1183 (10th Cir. 2016) ................................................................. 12

*United States v. Lanza*,
260 U.S. 377 (1922) ................................................................................... 9

*Ute Indian Tribe v. Utah, et al.*,
790 F.3d 1000 ...................................................................................... 9, 19

*Vendo Co. v. Lektro-Vend Corp.*,
433 U.S. 623 (1977) ................................................................................. 12

*Washington v. Confederated Tribes of Colville Indian Reservation*,
447 U.S. 134 (1980) ................................................................................. 10

*Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*,
240 F.3d 871 (10th Cir. 2001) ............................................................. 14, 18

*Weyerhaeuser Co. v. Wyatt*,
505 F.3d 1104 (10th Cir. 2007) ............................................................... 12

*White Mountain Apache Tribe v. Bracker*,
448 U.S. 136 (1980) ............................................................................. 3, 15

*Wiedel v. Hon. McLaughlin*,
No. MA-2024-780 (Okla. Ct. Crim. App.) .................................................. 22

*Winn v. Cook*,
945 F.3d 1253 (10th Cir. 2019) ................................................. 13, 14, 15, 16

*Younger v. Harris*,
401 U.S. 37 (1971) ............................................................................ passim

iv

**Statutes**

20 O.S. § 40 ....................................................................................................... 12

21 O.S. § 1541.1 .................................................................................................. 5

21 O.S. § 1731 .................................................................................................... 7

21 O.S. § 540 ...................................................................................................... 6

47 O.S. § 11-902(A)(2) ....................................................................................... 6

74 O.S. § 18(A)(3) ............................................................................................. 11

74 O.S. § 18b(A)(1) ........................................................................................... 11


28 U.S.C. § 2283 ............................................................................................ 8, 12


**Other Authorities**

1906 Oklahoma Enabling Act .............................................................................. 4

Okla. Const. art. 6, § 8 ...................................................................................... 11

Okla. Const. art. 7, § 7(a) ................................................................................. 12

Public Law 280 .................................................................................................... 4

U.S. Const. art. III .............................................................................................. 8

MCN Appendix Page 112

There has long existed in our judicial system a "national policy forbidding federal courts to stay or enjoin pending state court proceedings[.]" *Mitchum v. Foster*, 407 U.S. 225, 230 (1972). Grounded in notions of federalism and comity, this policy demands that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added). Such is the case here. Yet Muscogee (Creek) Nation ("Plaintiff" or "Nation"), which lacks standing in the first place, urges this Court to disregard, or perhaps reverse, this long-standing, established policy and enjoin ongoing state criminal proceedings (and prevent countless future ones) addressing the exact same issues raised by the Plaintiff. More alarmingly, this request represents a collateral attack that would require a federal district court to reverse a recent decision of the Oklahoma Court of Criminal Appeals, if not also the Supreme Court's decision in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022).

The Complaint [Doc. 2], which targets prosecutions of conduct in Tulsa County unrelated to Muscogee (Creek) Nation members (each of the actions involve prosecutions of members of other Indian tribes), should be dismissed for lack of standing or, alternatively, under the *Younger* or *Colorado River* abstention doctrines.

## I.      BACKGROUND

Displeased with the opinion of the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684, issued not long before this lawsuit was filed, as well as rulings by various State court judges in ongoing criminal proceedings, and the Supreme Court's opinion in *Castro-Huerta*, the Nation filed this improper lawsuit. Plaintiff seeks an injunction preventing Steve Kunzweiler, a state prosecutor ("Kunzweiler" or "Defendant"), from prosecuting *all* Indians accused of committing *any* crime in Indian country. However, the

subject of Plaintiff's lawsuit is limited to nonmember Indians accused of non-major crimes in Indian country, namely in Tulsa, Oklahoma. And while Plaintiff sued a district attorney, the injunction it seeks would directly affect the State's judiciary, which is responsible for determining whether State courts have subject matter jurisdiction. This includes the OCCA, which recently addressed the jurisdictional issue, and State district court judges who are currently applying the law as handed down by the OCCA and the U.S. Supreme Court.

Below is a summary of the OCCA's opinions, which addressed each of Plaintiff's arguments, followed by relevant context regarding the ongoing criminal proceedings at issue. The introduction will then close with a reminder that neither *McGirt* nor *Castro-Huerta* support the novel path Plaintiff pursues here—a federal lawsuit.

> *The Oklahoma Court of Criminal Appeals decisions in O'Brien v. City of Tulsa and Stitt v. City of Tulsa*

On December 5, 2024, the OCCA issued a detailed Opinion addressing the central issue in this lawsuit—whether the State has subject matter jurisdiction over nonmember Indians who commit non-major crimes in Indian country within Oklahoma. *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684. The OCCA's Opinion provided jurisdictional clarity following the United States Supreme Court's opinions in *McGirt v. Oklahoma*, 591 U.S. 894 (2020) and *Castro-Huerta*, 597 U.S. at 629. These decisions addressed, in part, the State's jurisdiction to prosecute major crimes committed by Indians in Indian country and the State's jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country, respectively. *Castro-Huerta* also reiterated the mandatory analytical framework, which the OCCA employed in *O'Brien* and *Stitt v. City of Tulsa*, 2025 OK CR 5.

The *O'Brien* case involved the prosecution of traffic violations committed by a nonmember Indian in Indian country. In *O'Brien*, the OCCA took the United States Supreme Court at its word,

2

MCN Appendix Page 114

concluding that "[u]nless preempted by federal law, 'as a matter of state sovereignty, a State has

jurisdiction over all of its territory, including Indian country.'" *Id*. ¶ 14 (quoting *Castro-Huerta*,

597 U.S. at 652-53 (citing *Organized Village of Kake v. Egan*, 369 U.S. 60, 72 (1962)). Applying

the framework established in *Castro-Huerta* to crimes committed by Indians in Indian country, the

OCCA stated:

> Under the Supreme Court's precedent, "a State's jurisdiction in Indian country may
> be preempted (i) by federal law under ordinary principles of federal preemption, or
> (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-
> government."

*Id*. ¶ 17 (quoting *Castro-Huerta*, 597 U.S. at 638).

The OCCA explicitly rejected each of the contentions Plaintiff raises in the Complaint. The

Court held that: 1) the Supreme Court's framework in *Castro-Huerta* applies to a state's criminal

jurisdiction over Indians, *Id*. ¶¶ 13-17; 2) neither Public Law 280 nor the 1906 Oklahoma Enabling

Act preempts state jurisdiction over general crimes committed by Indians, *Id*. ¶ 20; 3) application

of *McClanahan* does not override *Bracker* balancing or any other component of the *Castro-Huerta*

framework, *Id*. ¶¶ 27-35; and 4) as here, the framework urged by O'Brien "disregard[ed] the plain

holding of *Castro-Huerta* and instead rel[ies] largely on Justice Gorsuch's dissent and a string of

citations to U.S. Supreme Court precedent that ultimately undermine its own argument." *Id*. ¶ 5

(Musseman, J., concurring).[1] Accordingly, the OCCA found that the State has jurisdiction to

---

[1] The OCCA references *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164 (1973) (holding that the Arizona state individual income tax was unlawful as applied to reservation Navajo Indians with respect to income derived wholly from reservation sources) and *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980) ("This inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.").

MCN Appendix Page 115

prosecute these non-major crimes committed in Indian country. On February 5, 2025, the OCCA issued an order denying O'Brien's Petition for Rehearing.

The OCCA has since issued a similar decision in *Stitt*, 2025 OK CR at 5. Reiterating its holding in *O'Brien*, the court "found that *Oklahoma has concurrent criminal jurisdiction in Indian country over non-member Indian defendants accused of committing non-major crimes*." *Id*. at ¶ 8, citing *O'Brien*, 2024 OK CR 31, ¶ 35 (emphasis added). In other words, the OCCA has issued another decision explicitly addressing the issue raised by Plaintiff in this improper litigation. Unlike *O'Brien*, an appeal stemming from the lower court's sustainment of a motion to dismiss for lack of jurisdiction, *Stitt* derived from a conviction following a non-jury trial. *Stitt*, 2025 OK CR 5, ¶ 1, 9. So, the *Stitt* decision will not be remanded and is immediately appealable to the United States Supreme Court.

*The ongoing criminal proceedings Plaintiff seeks to have enjoined*

As support for its Complaint, Plaintiff references five ongoing criminal prosecutions that Defendant filed in Tulsa County District Court, all of which involve conduct that occurred in Tulsa, Oklahoma, within the historical bounds of the Muscogee (Creek) Nation (the "Ongoing Prosecutions"). Compl. ¶35; *Castro-Huerta*, 597 U.S.at 636 (making clear that, contrary to principles advanced by the Nation, "Indian country is part of the State, not separate from the State."). In addition to the fact that each was pending at the time Plaintiff filed its Complaint, each has at least one common theme—allegations of non-major crimes committed by nonmember Indian defendants (*i.e.*, a member of a tribe charged with committing a crime within the boundaries of another tribe's Indian country). Relevant details of the Ongoing Prosecutions follow.

4

In *State v. Bohanan*, CM-2022-108 (Dist. Ct. Tulsa Co.),[2] Kunzweiler filed charges against Ky Wolf Bohanan, a Choctaw Nation member, for creating a bogus check under $1,000 in violation of 21 O.S. § 1541.1. Bohanan challenged the court's jurisdiction, raising similar arguments as those in the Complaint (e.g. application of *McGirt* to the exclusion of the *Castro-Huerta* framework). *See id.*, Motion to Dismiss for Lack of Jurisdiction, CM-2022-108 (Dist. Ct. Tulsa Co. Dec. 6, 2024); *see also* Defendant's Reply to State's Response Objecting to Defendant's Motion to Dismiss, CM-2022-108 (Dist. Ct. Tulsa Co. Jan. 31, 2024). The State court denied the motion. Bohanan did not appeal and later entered a plea agreement. *Id.*, Exhibit A – Tulsa County Misdemeanor Diversion Program Plea Agreement, CM-2022-108 (Dist. Ct. Tulsa Co. Feb. 26, 2025).

In *State v. Hess*, CM-2024-2951 (Dist. Ct. Tulsa Co.),[3] Kunzweiler filed charges against Jessica Diane Hess, a Choctaw Nation member, for obstructing an officer in violation of 21 O.S. § 540. Hess also challenged the court's jurisdiction on similar grounds. *See id.*, Motion to Dismiss for Lack of Jurisdiction, CM-2024-2951 (Dist. Ct. Tulsa Co. Nov. 22, 2024); *see also* Defendant's Reply to State's Response Objecting to Defendant's Motion to Dismiss, CM-2024-2951 (Dist. Ct. Tulsa Co. Jan. 31, 2024). The State court denied the motion, and Hess has not appealed. A jury trial is set for April 28, 2025.

In *State v. Mason*, CM-2024-4510 (Dist. Ct. Tulsa Co.),[4] Kunzweiler charged Charles Aaron Mason, a Navajo Nation member, with DUI in violation of 47 O.S. § 11-902(A)(2). Mason challenged the court's jurisdiction based on similar arguments. *See id.*, Motion to Dismiss for Lack of Jurisdiction, CM-2024-4510 (Dist. Ct. Tulsa Co. Jan. 9, 2025). The State court denied the

---

[2] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2022-108.
[3] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-2951.
[4] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-4510.

5

MCN Appendix Page 117

motion, and Mason did not appeal. On March 6, 2025, he entered a guilty plea. *Id*., Plea of Guilty, CM-2024-4510 (Dist. Ct. Tulsa Co. Mar. 6, 2025). Plaintiff presumably would have this Court inappropriately meddle in the plea agreement.

In *State v. Neafus*, CM-2024-1222 (Dist. Ct. Tulsa Co., April 3, 2024),[5] Kunzweiler charged Leigha Marie Neafus, a member of the Sac and Fax Nation of Missouri, with larceny of merchandise from a retailer in violation of 21 O.S. § 1731. Neafus also challenged the court's jurisdiction, arguing as well that *McGirt*—a case that addressed the State's jurisdiction to prosecute Indians who commit major crimes in Indian country (not at issue here)—applies to the exclusion of the mandatory analytical framework articulated in *Castro-Huerta*. *See Id*., Motion to Dismiss for Lack of Jurisdiction, CM-2024-4510 (Dist. Ct. Tulsa Co. Nov. 5, 2024). The State court denied the motion. Mason has not appealed. A jury trial is currently set for May 5, 2025. As with the other Ongoing Prosecutions, Plaintiff asks the Court to interfere with the State court's jurisdictional determination and a jury trial setting.

In *State v. Morris*, CM-2024-4494 (Dist. Ct. Tulsa Co., Nov. 26, 2024),[6] Kunzweiler charged Megan Marie Morris a/k/a Megan Marie Webb, a Choctaw Nation member, with larceny of merchandise from a retailer in violation of 21 O.S. § 1731. Morris, in over thirty pages of briefing, raised similar jurisdictional arguments. *See id*., Def. Mot. to Dismiss for Lack of Jurisdiction, CM-2024-4494 (Dist. Ct. Tulsa Co. Dec. 3, 2024); *see also Id*., Reply Brief of Defendant herein Response of the State of Oklahoma to Def. Mot. to Dismiss, CM-2024-4494 (Dist. Ct. Tulsa Co., Feb. 28, 2025) (arguing, at page 10, "that state criminal jurisdiction over *any* Indian for a crime alleged in Indian Country is *per se* foreclosed without express authorization,

---

[5] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-1222.
[6] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-4494.

MCN Appendix Page 118

and delegation of authority to the state, by congress via legislation or treaty.") (emphasis in original). The State court denied the motion to dismiss on March 28, 2025. Plaintiff now seeks this Court's interference in both the prosecution and the State court's jurisdictional determination, disregarding federalism and comity principles.

Unless disrupted by an improper federal injunction, each of these cases can trend on the same course as *McGirt* and *Castro-Huerta* did.

*McGirt* and *Castro-Huerta*

Although Plaintiff's Complaint repeatedly references *McGirt* and *Castro-Huerta*, it fails to acknowledge that both cases arose from State court proceedings. Like the criminal cases cited in Plaintiff's Complaint, McGirt and Castro-Huerta were prosecuted by an Oklahoma district attorney in a county courthouse, with appeals made to the OCCA—the same State appellate court where Bohanan, Hess, Mason, Neafus, and Morris can seek resolution of any jurisdictional issues or other grievances they may wish to raise. From there, the United States Supreme Court is available, just as it was in *McGirt* and *Castro-Huerta*. Neither of those cases resulted from federal lawsuits, declaratory judgments, or injunctions. Despite this established pattern, Plaintiff now refuses to recognize its applicability to the Ongoing Prosecutions.

As will be demonstrated, Plaintiff lacks standing to proceed. Even if it did have standing, this case still must be dismissed under the Anti-Injunction Act, 28 U.S.C. § 2283, and the *Younger* abstention doctrine derived from *Younger v. Harris*, 401 U.S. 37 (1971), or, alternatively, pursuant to *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

## II.   STANDING

Injury-in-fact, causation, and redressability comprise the three requirements of U.S. Const. art. III standing and ensure litigation parties have "such a personal stake in the outcome of the

7

MCN Appendix Page 119

controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for illumination." *Miller v. Fluent Home, LLC*, 220CV00641HCNJCB, 2021 WL 8086367, at \*3 (D. Utah Mar. 18, 2021) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007)) Plaintiff must demonstrate the requirements are met before the merits of a case may be reached. *Id*. At the least, Plaintiff cannot establish either an injury-in-fact or redressability.

### A. Plaintiff has not suffered an injury-in-fact.

An injury alleged must be "concrete and particularized," and the threat of that injury must be "actual and imminent, not conjectural or hypothetical." *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012) (quoting *Summers v. Earth Island Institute,* 555 U.S. 488, 493 (2009). To be concrete, an injury must be real harm to a legally protected interest, not abstract. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury is particularized only if it affects a party in a personal and individual way. *Id*. And a party who is not threatened by—and, indeed, could never be subject to—state criminal prosecution lacks standing and is not an appropriate plaintiff to challenge any such pending prosecutions.

> A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases.

*Younger*, 401 U.S. at 42. Plaintiff has not suffered an injury that is concrete, particularized, or actual or imminent. Plaintiff's claims of injury are abstract and are the epitome of hypothetical.[7]

---

[7] The actions at issue are limited to Kunzweiler's prosecutions of nonmember Indians in the Ongoing Prosecutions. Actions do not include any broader group of individuals, such as member Indians charged with criminal conduct within the boundaries of their Tribe's Indian country. So, a request for relief associated with prosecutions other than those against nonmember Indians would necessarily require this Court to engage a hypothetical. *Carney v. Adams*, 592 U.S. 53, 58 (2020) (emphasizing an injury-in-fact "cannot be conjectural or hypothetical")

MCN Appendix Page 120

*First*, the Ongoing Prosecutions are against individual criminal defendants, not the Nation (nor its members). Only the individuals can claim specific injury. Like Jimcy McGirt and Victor Manuel Castro-Huerta, the individual defendants subject to the Ongoing Prosecutions have sought relief through proper channels—district court filings[8]—and have access to the OCCA. Moreover, the United States Supreme Court is available to them all the same. As in *McGirt* and *Castro-Huerta*, Plaintiff may participate as amicus curiae, as may others whose injuries are abstract.

There is a reason that the seminal, jurisdictional cases most heavily relied upon by Plaintiff have not involved Indian Tribes as parties but are instead styled *Oklahoma v. Castro-Huerta* and *Oklahoma v. McGirt*. The State prosecutes individuals. And its courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

*Second*, the Ongoing Prosecutions—the likes of which have existed for over a century—do not impact Plaintiff's authority to prosecute. The United States Supreme Court recently reaffirmed that an individual may be prosecuted by separate sovereigns for the same conduct. *Denezpi v. United States*, 596 U.S. 591 (2022); *see also United States v. Lanza*, 260 U.S. 377, 382 (1922) ("Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.").

Plaintiff will presumably point to *Ute Indian Tribe v. Utah, et al.*, 790 F.3d 1000, for a contention that the Ongoing Prosecutions "infringe[] on [Plaintiff's] tribal sovereignty[.]" Compl. ¶ 15. However, *Ute* is inapposite. *Ute* involved the prosecution of a member of the Ute Indian Tribe for conduct that occurred on the Ute reservation. *Id*. at 1004-05. In contrast, Kunzweiler's

---

[8] In its unveiled collateral attack, the Nation explicitly concedes that, "in each case, the Tulsa County District Court rejected the jurisdictional challenges and allowed the prosecutions to proceed." Motion for Temporary Restraining Order and Preliminary Injunction, p. 5.

9

MCN Appendix Page 121

prosecutions concern non-member Indians for conduct occurring in the historical boundaries of the Nation, which, by the way, "is part of the State, not separate from the State." *Castro-Huerta*, 597 U.S. at 636. This conduct doesn't infringe on Plaintiff's sovereignty yet instead should be welcomed by the Nation. *See, e.g., id*. at 650 (emphasizing that state prosecutions do not harm interests when "State prosecution would supplement . . . authority, not supplant . . . authority."); *See also State v. Shale*, 345 P.3d 776, 780-81, citing *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 161 (1980) (finding that the exercise of state jurisdiction does not "infringe[] on the right of the tribe to make its own laws and be ruled by them," as the "tribe is free to bring its own prosecution if it wishes" and would presumably benefit from State assistance in prosecuting criminal conduct on its land.).

Plaintiff is unable to meet the initial requirement for standing. Even if this requirement were met, Plaintiff cannot demonstrate redressability.

B.  *A favorable ruling would not redress any purported injury.*

To establish redressability, one "must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). Said differently, redressability is absent when, as here, the Court's decision would have no meaningful effect on a complainant's alleged injury.

Had Plaintiff claimed that Defendant's prosecutions caused actual injury, redress would not be available through this lawsuit. The most extreme—albeit inappropriate—relief would be to enjoin Kunzweiler from prosecuting certain crimes against a limited class of individuals. Even then, redress could not be achieved, and the Ongoing Prosecutions could continue for at least three reasons.

10

MCN Appendix Page 122

*First*, the Governor has a constitutional duty to "cause the laws of the State to be faithfully executed[.]" Okla. Const. art. 6, § 8. A corresponding statute authorizes the Governor "to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, . . . may prosecute offenses against the law of the state[.]" 74 O.S. § 6.

*Second*, the Oklahoma Attorney General ("OAG") can initiate or appear in criminal prosecutions on behalf of the state. 74 O.S. § 18(A)(3). The OAG may also "appear for the state and prosecute and defend all" criminal proceedings in the Court of Criminal Appeals in which the state is interested as a party. 74 O.S. § 18b(A)(1). Given the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue the prosecutions at issue.

*Third*, the requested injunction could not affect the trial courts' or OCCA's ability to proceed with adjudications. Oklahoma "District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]" Okla. Const. art. 7, § 7(a). And the OCCA "shall have exclusive appellate jurisdiction . . . in all criminal cases appealed from the district . . . courts[.]" 20 O.S. § 40. OCCA "is supreme in all criminal appeals from state courts of this State[.]" *Inverarity v. Zumwalt*, 1953 OK CR 148, ¶ 18, 262 P.2d 725, 730. The OCCA is duty bound to ensure Oklahoma has "a uniform system of criminal jurisprudence[.]" *State v. Davis*, 1913 OK CR 80, ¶ 8, 130 P. 962, 964.

In sum, a favorable decision for Plaintiff against a single district attorney would not redress any purported injury. Therefore, the Complaint must be dismissed for lack of standing.

Even if Plaintiff could clear the standing threshold (it cannot), the lawsuit must still be dismissed pursuant to abstention doctrines.

MCN Appendix Page 123

### III.   THE ANTI-INJUNCTION ACT AND *YOUNGER* ABSTENTION

The Anti-Injunction Act "is an absolute prohibition against any injunction of any state-court proceedings." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977). Its "core message is one of respect for state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). It provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "exceptions are narrow and are not to be loosely construed." *Tooele Cnty. v. United States*, 820 F.3d 1183, 1188 (10th Cir. 2016). Courts "should resolve doubts about the applicability of an exception in favor of allowing the state-court proceeding to continue." *Tooele Cnty.*, 820 F.3d at 1188 (*quoting Bayer Corp.*, 564 U.S. at 306).

The act reflects the principle that "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately" the United States Supreme Court. *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970). It "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts[,]"prohibits "frequent federal court intervention" in state court proceedings to avoid "'friction between the state and federal courts.'" *Weyerhaeuser Co. v. Wyatt*, 505 F.3d 1104, 1108 (10th Cir. 2007). The Anti-Injunction Act has even barred Indian tribes from obtaining a federal injunction against state court actions. *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033, 1129 (D.N.M. 2023), *appeal dismissed*, 2024 WL 4256791 (10th Cir. May 13, 2024).

12

**MCN Appendix Page 124**

*Younger* abstention and the Anti-Injunction Act both reflect the "fundamental policy against federal interference with state criminal prosecutions[.]" *Younger*, 401 U.S. at 46. In *Younger*, the Supreme Court explained that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id*. at 45. The Court went on to hold that "[o]rdinarily, there should be no interference with such officers; primarily they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done." *Id*. The Supreme Court has put it more bluntly, saying that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc.* 571 U.S. at 72  (emphasis added). The proper individuals to challenge a prosecutor's authority are the accused. *Younger*, 401 U.S. at 46. And the appropriate forums are the state courts where charges are pending and defenses may be lodged. *Id*. This principle is rooted in a notion referred to as "Our Federalism"—which emphasizes the "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. at 44.

Under the *Younger* abstention doctrine, federal courts are required to abstain from exercising jurisdiction to interfere with state proceedings when the following three requirements are met:

(1) [T]here is an ongoing state criminal, civil, or administrative proceeding,

(2) [T]he state court provides an adequate forum to hear the claims raised in the federal complaint, and

(3) [T]he state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). Once those three criteria are satisfied, "*Younger* abstention is not discretionary." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th

13

MCN Appendix Page 125

Cir. 1999). "Thus, claims for declaratory relief and injunctive relief are subject to outright dismissal." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023).

Each element is easily met here. And even if this lawsuit targets only the authority of a single district attorney but not criminal proceedings as a whole, abstention is still required. *Younger* "governs whether the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

### A. *There are ongoing state criminal proceedings*.

Plaintiff concedes in its Complaint that there are ongoing state criminal proceedings. *See Winn*, 945 F.3d at 1258 (holding the first element is satisfied where the parties do not dispute the existence of an ongoing state criminal proceeding). As the basis for its Complaint, Plaintiff cites the Ongoing Prosecutions. Compl. ¶¶ 22-23. The pendency of the Ongoing Prosecutions establishes this first element and also proves the next.

### B. *The State court provides an adequate forum to hear the claims raised in the Complaint.*

Regarding the second factor, "unless state law clearly bars the interposition of the federal statutory and constitutional claims," a plaintiff typically has "an adequate opportunity to raise federal claims in state court." *Winn*, 945 F.3d at 1258. State criminal proceedings fail to offer an adequate opportunity to raise federal issues "'only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it.'" *Moore v. Sims*, 442 U.S. 415, 433 (1979) (internal citations omitted). A federal plaintiff bears the burden to establish "that state procedural law bar[s] presentation of its claims." *Id.* at 432. This feat becomes nearly insurmountable in light of the Tenth Circuit's full confidence in state courts' ability to address federal issues given "the constitutional obligation of the state courts to uphold federal law[.]"

14

*Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 876 (10th Cir. 2001). *See also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 12 (1987) (*Younger* abstention "'offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests'") (internal citation omitted). "*Younger* requires only the availability of an adequate state-court forum, not a favorable result in the state forum." *Winn*, 945 F.3d at 1258.

Oklahoma state courts are capable of fairly and fully adjudicating the issues that Plaintiff raises in this lawsuit as evidenced by the fact that the State courts: (1) have already addressed the issues; (2) continue to address the issues in ongoing criminal prosecutions; and (3) have proven to be adequate forums to resolve issues of the same or more substantial nature.

*First*, this lawsuit was filed not long after the OCCA issued its opinion in *O'Brien*. The *O'Brien* court analyzed and rejected each of Plaintiff's contentions. *See supra* pp. 2-3. Indeed, as it seeks to do again here, the Nation, in a thirty-page brief, argued to OCCA that neither *Castro-Huerta* nor *Bracker* apply to the question of whether the State maintains jurisdiction over nonmember Indians who commit crimes in Indian country. *City of Tulsa v. O'Brien*, Brief of Amicus Curiae Muscogee (Creek) Nation (Okla. Ct. Crim. App. Aug. 13, 2024). After having reviewed the Nation's brief, *Id*., Order Denying Petition for Rehearing, p. 2 (Okla. Ct. Crim. App. Feb. 5, 2025), the OCCA held that the State has jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country. Either the OCCA's words are hollow or the OCCA already fairly and fully adjudicated the issue of whether the State maintains criminal jurisdiction over non-member Indians who commit non-major crimes in Indian country. Moreover, the OCCA has since reiterated its holding, saying "Oklahoma has concurrent criminal jurisdiction in Indian country over non-member Indian defendants accused of committing non-major crimes." *Stitt*, 2025

15

MCN Appendix Page 127

OK CR 5 at ¶ 8. Plaintiff's dismay with the OCCA's analysis and outcomes does not legitimize this lawsuit. There is little, if any, doubt that Plaintiff would not have filed this improper collateral attack if the OCCA had sided with Plaintiff in *O'Brien*. In other words, Plaintiff simply wants a more favorable, albeit legally tortured, result from a concededly adequate state-court forum.

*Second*, as discussed above, Plaintiff itself cites the Ongoing Prosecutions in which State courts are actively adjudicating the issues raised here.

*Third*, State courts have proven to be more than adequate forums in which to resolve issues of this nature. For example, both *McGirt v. Oklahoma* and *Oklahoma v. Castro-Huerta* stemmed from State criminal prosecutions and decisions issued by the OCCA. And the same right that McGirt and Castro-Huerta had to seek review by the OCCA and the United States Supreme Court will be—or could have been—available to each of the criminal defendants in the Ongoing Prosecutions.

No guesswork is needed to determine whether the State courts provide adequate forums to adjudicate the issues raised in Plaintiff's Complaint. The State courts have done so and are doing so now.

### C. The state proceedings involve important state interests.

The third element of *Younger* abstention is satisfied both as a matter of law and fact. As a general matter, State criminal proceedings "are viewed as 'a traditional area of state concern'" and thus involve important state interests. *Winn*, 945 F.3d at 1258. More specifically, "Oklahoma's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." *Fisher v. Whetsel*, 142 Fed.Appx. 337, 339 (10th Cir. 2005). "From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 211 (2020). The Supreme Court "has

16

recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court. . . ." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).

As a sovereign entity, the State has a duty to protect its residents, enforce its laws, and uphold justice within its territorial boundaries. The Supreme Court recognized this in *Castro-Huerta*: "[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." *Id.* at 651. "The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State." *Id.* The Court in *Castro-Huerta* made no distinction between Indian and nonmember Indian offenders. The State's interests are obvious when, as here, the State criminal proceedings involve crimes such as obstructing Tulsa's peace officers, driving under the influence on Tulsa's streets, and theft from retailers in Tulsa.

The Ongoing Prosecutions involve important State interests under any objective analysis.

D. *No exceptions to the bar on federal injunctions of state criminal proceedings apply.*

Injunctive intervention in state criminal proceedings is permissible only if (1) irreparable injury is "both great and immediate," (2) the state law is "flagrantly and patently violative of express constitutional prohibitions, or (3) Plaintiff could show "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230-31 (1972) (internal citations omitted). Regarding the third factor, the plaintiff bears a "heavy burden" to establish bad faith or harassment, and the Tenth Circuit looks to three factors:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

17

*Weitzel*, 240 F.3d at 877; *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("[I]t is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment.").

*First*, any allegation of irreparable injury fails as a matter of fact and law. Defendant's prosecution of non-member criminal defendants for conduct occurring in Tulsa County, Oklahoma does not impact Plaintiff's authority to prosecute the same criminal occurrences; thus, no injury. Moreover, the Ongoing Prosecutions had been pending since as early as two years prior to the filing of this lawsuit; thus, no imminency. *See State v. Bohanan*, CM-2022-108 (Tulsa Co. Dist. Ct. Jan. 10, 2022).

*Second*, Plaintiff also has not alleged that the Ongoing Prosecutions are motivated by a suspect class or in retaliation for an exercise of constitutional rights. Of course, Plaintiff could not sincerely contend that the prosecution of conduct such as obstructing an officer, driving under the influence in Oklahoma, and theft is motivated by anything other than concern for public safety and county and state affairs.

*Third*, Plaintiff likewise has not attempted to show the existence of bad faith, harassment, or any other unusual circumstance warranting equitable relief. Any such effort would be futile. The OCCA's recent decisions in *Stitt* and *O'Brien*—the latter being the decision that sparked this litigation—the Supreme Court's decision in *Castro-Huerta*, and state district court rulings in the Ongoing Prosecutions endorse the State's prosecutorial jurisdiction; thus, no frivolity or abuse of prosecutorial discretion.

Here again, Plaintiff's likely retreat to the Tenth Circuit's decision in *Ute*—a case involving the prosecution of a Ute member on the Ute reservation—would fall flat. Plaintiff may contend that the *Ute* court highlighted an exemption to *Younger* where "states seek to enforce state law

18

MCN Appendix Page 130

against Indians in Indian country[.]" *Ute*, 790 F.3d 1000, 1009. Context is everything. There, the court, quoting *Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989), referenced an inapplicable, if not obsolete, presumption of paramount "federal law, federal policy, and federal authority" over state's interest. Following its discussion about this purported presumption, the *Seneca-Cayuga* court clarified that state interests are of great weight "in cases involving . . . non-reservation Indians," as here. *Id.* (internal citations omitted). The Supreme Court has since explained, "the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims. The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State." *Castro-Huerta*, 597 U.S. at 651.

In sum, Plaintiff cannot fit its allegations into an exception to the non-discretionary bar on federal court intervention in state criminal proceedings. *Younger* abstention requires dismissal.

E.  *Plaintiff's generalized request to enjoin potential future criminal proceedings is governed by the same Younger abstention considerations.*

Although *Younger* abstention may only be mandatory where there is an "ongoing criminal prosecution," there "plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *see also Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975) (holding that Younger abstention could not be avoided on the ground that no criminal prosecution was pending against appellees on the date the federal complaint was filed where appellees "had a substantial stake in the state proceedings").

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate.

MCN Appendix Page 131

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019) (holding that parties with "a sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention.") (collecting cases).

As argued above, Plaintiff lacks standing to assert claims regarding future prosecutions not yet initiated, which are subject to its request for injunctive relief. However, to the extent the Court considers any such generalized claims, derivative abstention is appropriate due to how intertwined Plaintiff's interests are. Plaintiff not only references the Ongoing Prosecutions as support for this lawsuit, Compl. ¶¶ 22-23, but also alleges how each criminal defendant has challenged the State's jurisdiction in the same manner as Plaintiff does here, Compl. ¶ 25. Plaintiff then details how its generalized claims are no different from those being litigated in the Ongoing Prosecutions. Compl. ¶¶ 26-29. Remarkably, Plaintiff even alleges that "the District Court in and for Tulsa County, Oklahoma, accepted the County's arguments, denied the Indian defendant's motion to dismiss, and permitted the prosecution to move forward." Compl. ¶ 27. In other words, Plaintiff explicitly acknowledges that other courts have adjudicated the precise issues that it improperly brings to this Court. *Younger* abstention applies to all prosecutions covered by Plaintiff's Complaint, not just the Ongoing Prosecutions.

## IV.    COLORADO RIVER ABSTENTION

Dismissal is also appropriate under the *Colorado River* abstention doctrine. The *Colorado River* doctrine provides, "reasons of wise judicial administration" at times warrant "dismissal of a federal suit due to the presence of a concurrent state proceeding." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colorado River*, 424 U.S. at 818). Declining jurisdiction based on the *Colorado River* doctrine is appropriate in

20

**MCN Appendix Page 132**

exceptional circumstances. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). To determine whether such circumstances exist, courts must first determine whether the state and federal proceedings are parallel. *Id*. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting *New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991).

It is indisputable that the issues in Plaintiff's Complaint have been and are currently being litigated in State court. Plaintiff concedes as much by citing five examples—the Ongoing Prosecutions—and was involved in at least one other (*O'Brien*). These proceedings clearly demonstrate parallel state and federal proceedings.

The parties are also substantially the same in this and the State criminal proceedings. Or at the least, Kunzweiler is a party in each, and the criminal defendants in the Ongoing Prosecutions are explicitly referenced and leveraged by Plaintiff in this litigation.

Because the state and federal proceedings are parallel, the court must next determine "whether deference to state court proceedings is appropriate under the particular circumstances." *Fox*, 16 F.3d at 1082. To make that determination, courts may consider these factors: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Id*. a (citing *Colorado River*, 424 U.S. at 818). Defendant will address each in turn.

This case does not involve property, so the first factor does not apply. Next, the federal forum is inconvenient for at least two reasons. First, appeals from this litigation will be addressed by the Tenth Circuit, in Colorado, whereas appeals from the State court proceedings will be addressed by the OCCA, in Oklahoma. The travel and expense associated with the former is an unnecessary burden. Second, this federal proceeding requires substantial briefing and expenditure

21

of additional taxpayer dollars only to have this Court address the exact issues being addressed—even already addressed—by State courts.

Moreover, this is quintessential piecemeal litigation, which is the paramount *Colorado River* consideration. *Colorado River*, 424 U.S. at 819. Plaintiff concedes as much through reliance on the Ongoing Prosecutions, which have been on file since as early as January 2022. Moreover, Plaintiff's contentions central to its Complaint are squared before the OCCA in at least *Wiedel v. Hon. McLaughlin*, No. MA-2024-780 (Okla. Ct. Crim. App.). And the issues have already been addressed by the OCCA, in *O'Brien*, with Plaintiff's participation, *City of Tulsa v. O'Brien*, Brief of Amicus Curiae Muscogee (Creek) Nation, No. S-2023-715 (Okla. Ct. Crim. App. August 13, 2024),[9] and in *Stitt*, also with Plaintiff's involvement, *Stitt v. City of Tulsa*, Brief of Amici Curiae Muscogee (Creek) Nation and Seminole Nation of Oklahoma, No. M-2022-984 (Okla. Ct. Crim. App. May 31, 2023). The latter is ripe for appeal to the United States Supreme Court, where Plaintiff will again be able to express its position. Should this case survive dismissal, the only wrinkle will be whether the matter should have been dismissed for the reasons set forth herein.

Last, the State courts obtained jurisdiction in the Ongoing Prosecutions as early as January 2022. This case was not filed until February 13, 2025—not long after the OCCA issued its opinion in *O'Brien*. Each applicable *Colorado River* factor weighs heavily in favor of dismissal.

CONCLUSION

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43. In this case, Plaintiff has attempted to throw that history out and turn established principles of federalism and comity on their head, in an overt search for a more

---

[9] Notably, counsel who authored the Nation's amicus brief also represents Plaintiff here.

22

MCN Appendix Page 134

favorable result from an improper forum. The Ongoing Prosecutions—none of which involve the

Nation's members—are properly brought in State court, and they should be allowed to proceed

without federal court interference. The arguments raised by Plaintiff have been raised in these and

other similar state court criminal prosecutions as our nation's court system wisely provides.

Nothing is preventing individual defendants from raising these arguments in those proceedings

(indeed, they have), or Plaintiff from, at the least, submitting amicus briefs where appropriate. This

improper collateral attack on Oklahoma's judicial system cannot be permitted to stand.

Accordingly, Defendant respectfully requests the dismissal of Plaintiff's Complaint due to

lack of standing. Alternatively, even if standing is established, the lawsuit should be dismissed

under either *Younger* abstention or *Colorado River* abstention.

Date: April 7, 2025                                  Respectfully submitted,

                                                    *s/Phillip G. Whaley*
                                                    Phillip G. Whaley, OBA #13371
                                                    Grant M. Lucky, OBA #17398
                                                    Patrick R. Pearce, Jr., OBA #18802
                                                    RYAN WHALEY
                                                    400 North Walnut Avenue
                                                    Oklahoma City, OK  73104
                                                    (405) 239-6040
                                                    (405) 239-6766 FAX
                                                    pwhaley@ryanwhaley.com
                                                    glucky@ryanwhaley.com
                                                    rpearce@ryanwhaley.com

                                                    Trevor S. Pemberton, OBA #22271
                                                    PEMBERTON LAW GROUP PLLC
                                                    600 North Robinson Avenue, Suite 323
                                                    Oklahoma City, OK 73102
                                                    P: (405) 501-5054
                                                    trevor@pembertonlawgroup.com

                                                    **Attorneys for Defendant**
                                                    **Steve Kunzweiler**

23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe, | ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Case No. 25-cv-00075-GKF-JFJ |
| TULSA COUNTY, OKLAHOMA; STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma; and VIC REGALADO, in his official capacity as Tulsa County Sheriff, | ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**DEFENDANT STEVE KUNZWEILER'S RESPONSE TO THE MUSCOGEE (CREEK) NATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND OPENING BRIEF IN SUPPORT**

MCN Appendix Page 136

## TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

ARGUMENT.................................................................................................................6

   I.  LEGAL STANDARD ...........................................................................................6

   II.  PLAINTIFF FAILS TO SATISFY ITS BURDEN, AND THE COURT SHOULD DENY ITS REQUEST FOR A PRELIMINARY INJUNCTION.........................................9

     a.  Under the first prong, Plaintiff fails to show a likelihood that it will succeed on the merits.........................................................................................................9

       i.  Plaintiff's reliance on *McGirt* to presume the preemption of state jurisdiction over the prosecution of "non-major crimes" is misplaced and contrary to the express holding of *Castro-Huerta* ...........................................................................10

       ii.  Applying the correct standard, as set forth in *Castro-Huerta* and its reliance on *Bracker*, there is no basis for federal preemption here..................................12

         1.  Plaintiff has failed to demonstrate that Congress has preempted state criminal jurisdiction to prosecute non-major crimes committed in Indian country ...........13

         2.  Plaintiff has failed to demonstrate how the exercise of jurisdiction by the State would infringe on tribal self-government ...............................................................15

     b.  The Court need not reach the second or third prongs of the preliminary injunction standard, but even if it does, Plaintiff still fails to meet its burden................................19

       i.  Plaintiff fails to show that it will suffer irreparable harm if a preliminary injunction is not issued .............................................................................................19

       ii.  Plaintiff fails to show that the balance of equities tips in its favor and a preliminary injunction is in the public interest...........................................................21

## TABLE OF AUTHORITIES

**Cases**

*Aposhian v. Barr*,
958 F.3d 969 (10th Cir. 2020) ........................................................................ 22

*Arizona v. United States*,
567 U.S. 387 (2012) ........................................................................................ 13

*Black Emergency Response Team v. Drummond*,
737 F. Supp. 3d 1136 (W.D. Okla. 2024) ...................................................... 22

*California v. Cabazon Band of Mission Indians*,
480 U.S. 202 (1987) ........................................................................................ 10

*City of Tulsa v. O'Brien*,
2024 OK CR 31, 2024 WL 5001684 ......................................................... passim

*City of Tulsa v. Stitt*,
2025 OK CR 5 ........................................................................................ 3, 5, 10

*Crowe & Dunlevy, P.C. v. Stidham*,
640 F.3d 1140 (10th Cir. 2011) ...................................................................... 16

*Dodd v. United States*,
545 U.S. 353 (2005) ........................................................................................ 11

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
356 F.3d 1256 (10th Cir. 2004) .................................................................... 7, 8

*Duro v. Reina*,
495 U.S. 676 (1990) ........................................................................... 17, 18, 23

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .......................................................................... 8

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*,
916 F.3d 792 (10th Cir. 2019) .......................................................................... 8

*Heideman v. South Salt Lake City*,
348 F.3d 1182 (10th Cir. 2003) ...................................................................... 19

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) .......................................................................................... 11

*Kansas v. Garcia*,
589 U.S. 191 (2020) ........................................................................................ 22

ii

*Kelly v. Robinson*,
  479 U.S. 36, 49 (1986) ............................................................................................... 22

*LaRock v. Wisconsin Dep't of Revenue*,
  621 N.W.2d 907 (Wisc. 2001) ................................................................................... 17

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020) ............................................................................................. passim

*MFE Enterprises, Inc. v. Alphanetics*,
  24-CV-304-JFJ, 2024 WL 5201216 (N.D. Okla. Dec. 23, 2024). ................................ 9

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*,
  09-CV-285-TCK-TLW, 2009 WL 10695371, at *3 (N.D. Okla. Nov. 19, 2009) .............. 19, 20

*New Mexico v. Mescalero Apache Tribe*,
  462 U.S. 324 (1983) ................................................................................................... 10

*Nova Health Sys. v. Edmondson*,
  373 F. Supp. 2d 1234 (N.D. Okla. 2005), *aff'd*, 460 F.3d 1295 (10th Cir. 2006) .................... 19

*Oklahoma v. Biden*,
  577 F. Supp.3d 1245 (W.D. Okla. 2021) ................................................................. 7, 19

*Oklahoma v. Bohanan*,
  No. CM-2022-108, District Court of Tulsa County .................................................... 3

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) ............................................................................................. passim

*Oklahoma v. Hess*,
  No. CM-2024-2951, District Court of Tulsa County .................................................. 3

*Oklahoma v. Mason*,
  No. CM-2024-4510, District Court of Tulsa County .................................................. 3

*Oklahoma v. Morris*,
  No. CM-2024-4494, District Court of Tulsa County .................................................. 3

*Oklahoma v. Neafus*,
  No. CM-2024-1222, District Court of Tulsa County .................................................. 3

*ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*,
  12-CV-660-JHP-FHM, 2012 WL 7853812 (N.D. Okla. Dec. 7, 2012), *report and
  recommendation adopted, ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*, 12-CV-660-
  JHP-FHM, 2013 WL 1412823 (N.D. Okla. Apr. 8, 2013) ......................................... 7

*Republican Party of New Mexico v. King*,
  741 F.3d 1089 (10th Cir. 2013) .............................................................................. 1, 7

MCN Appendix Page 139

*RoDa Drilling Co. v. Siegal*,
    552 F.3d 1203 (10th Cir. 2009) .................................................................. 19

*Sampson v. Murray*,
    415 U.S. 61, 86 (1974) ................................................................................ 6

*Schrier v. Univ. of Co.*,
    427 F.3d 1253 (10th Cir. 2005) .................................................................. 8

*State v. R.M.H.*,
    617 N.W.2d 55 (Minn. 2000) ................................................................ 16, 21

*State v. Shale*,
    345 P.3d 776, 779 (Wash. 2015) ............................................................ 17, 21

*Stephens v. Jones*,
    494 Fed. Appx. 906 (10th Cir. 2012) ........................................................ 7

*Thlopthlocco Tribal Town v. Stidham*,
    762 F.3d 1226 (10th Cir. 2014) ................................................................ 17

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .................................................................................... 3

*United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.*,
    883 F.2d 886 (10th Cir. 1989) .................................................................... 7

*United States v. Cooley*,
    593 U.S. 345 (2021) .................................................................................. 18

*United States v. Lara*,
    541 U.S. 193 (2004) .................................................................................. 23

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
    790 F.3d 1000 (10th Cir. 2015) ................................................................ 20

*Vietti v. Welsh & McGough, PLLC*,
    21-CV-58-JFH-SH, 2022 WL 1288314 (N.D. Okla. Apr. 30, 2022) ........................................ 6

*Wacondo v. Concha*,
    873 P.2d 276 (N.M. App. 1994) ................................................................ 21

*Warner v. Gross*,
    776 F.3d 721 (10th Cir. 2015) .................................................................... 7

*Washington v. Confederated Tribes of Colville Indian Reservation*,
    447 U.S. 134 (1980) ................................................................................ 5, 17

*White Mountain Apache Tribe v. Bracker*,
    448 U.S. 136 (1980) ............................................................................. passim

iv

*Williams v. Platt,*
   CIV-03-281-C, 2006 WL 3097184 (W.D. Okla. Oct. 30, 2006) ................................. 6

*Worcester v. Georgia,*
   31 U.S. 515 (1832) ....................................................................................... 23

*Wyandotte Nation v. Sebelius,*
   443 F.3d 1247 (10th Cir. 2006) ................................................................. 19

*Wyeth v. Levine,*
   555 U.S. 555 (2009) ................................................................................... 13

**Statutes**

25 U.S.C. § 1301 .......................................................................................... 17

**Rules**

Fed. R. Civ. P. 65(b) ...................................................................................... 6

**MCN Appendix Page 141**

Defendant Steve Kunzweiler, in his capacity as District Attorney ("Defendant"), files this Response to the Muscogee (Creek) Nation's ("Plaintiff" or "Nation") Motion for Temporary Restraining Order and Preliminary Injunction and Opening Brief in Support ("Motion") [Doc. No. 4]. For the reasons set forth herein, Plaintiff's Motion should be denied.

## **INTRODUCTION**

Plaintiff's request that the Court temporarily restrain and preliminarily enjoin Defendant should be denied. As the Court knows, a temporary restraining order and/or preliminary injunction is an extraordinary remedy, and Plaintiff cannot establish a likelihood of success on the merits, demonstrate irreparable harm, or show that the balance of equities favors an injunction and/or that an injunction serves the public interest. *See Republican Party of New Mexico v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013) (setting forth the four elements).

Under the law announced by the U.S. Supreme Court in *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636-638 (2022) ("*Castro-Huerta*"), a state "has jurisdiction over all of its territory, including Indian country." States, therefore, have jurisdiction to prosecute an individual accused of committing a crime within the state's Indian country unless preempted by federal law or where the exercise of jurisdiction would infringe on tribal self-governance. *Contra* Doc. No. 4 at 1 (where Plaintiff distorts the present analytical framework, wrongly contending "Oklahoma and its political subdivisions may exercise criminal jurisdiction over Indians within the Reservation only with the assent of Congress."). Neither the General Crimes Act nor any other federal law preempts state jurisdiction over non-major crimes, and both the federal government and the State of Oklahoma "have concurrent jurisdiction to prosecute crimes committed in Indian country" under the General Crimes Act. *Id*. at 639, 649. As interpreted by the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684 ("*O'Brien*"), which applied the law as set forth in *Castro-Huerta*, the State's exercise of criminal jurisdiction over non-member

MCN Appendix Page 142

Indians for non-major crimes committed in Indian country is likewise not foreclosed by principles of tribal self-government.

With this in mind, it becomes clear that the filing of this lawsuit is nothing more than an invitation for the Court to shirk, if not outright ignore, *Castro-Huerta* and constitutes an impermissible collateral attack on the OCCA's decision in *O'Brien*. Nearly two years have passed since the prosecutions cited in the Complaint were first filed. And Plaintiff filed this lawsuit only weeks after the OCCA issued its opinion in *O'Brien*. That's no coincidence. Plaintiff even flaunts its improper collateral attack, arguing, in part, "*O'Brien* premises its analysis on *Castro-Huerta*, and that reliance is entirely misplaced." Doc. No. 4 at 2. Notably, this attack comes on the heels of the *O'Brien* court having denied rehearing, explaining that "[a]ll questions duly submitted, *including the issues raised in . . . the Muscogee (Creek) Nation's amicus brief*, were reviewed by the Court prior to rendering the decision in this case." *City of Tulsa v. O'Brien*, Order Denying Pet. for Rehearing, No. S-2023-715 (Okla. Ct. Crim. App. Feb. 5, 2025) (emphasis added).

In its Motion, Plaintiff's request for relief is as remarkable as it is legally unsupported: Plaintiff seeks to enjoin Defendant from "asserting criminal jurisdiction over Indians within the boundaries of the Muscogee (Creek) Reservation" ("Creek Indian country"), purportedly based upon the U.S. Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020) ("*McGirt*"). [Doc. No. 4 at 1]. But that's old, and largely inapplicable, news. As the Court knows, the *McGirt* decision's holding was narrow, limited to cases involving the prosecution of "tribal members for major crimes." *Id*. at 934. Unlike the dispute in *McGirt*, the five cases (pending in the District Court of Tulsa County, Oklahoma) Plaintiff cites as the basis for its request for extraordinary relief involve State prosecution of non-member Indians for *non-major* crimes allegedly committed in Indian country (*i.e.*, crimes committed on or within the Creek's Indian country by members of

2

MCN Appendix Page 143

other recognized tribes). Doc. No. 2, ¶ 23 (citing *Oklahoma v. Bohanan*, No. CM-2022-108 (member of the Choctaw Nation); *Oklahoma v. Hess*, No. CM-2024-2951 (member of the Choctaw Nation); *Oklahoma v. Mason*, No. CM-2024-4510 (member of the Navajo Nation); *Oklahoma v. Neafus*, No. CM-2024-1222 (member of the Sac & Fox Nation of Missouri); *Oklahoma v. Morris*, No. CM-2024-4494 (member of the Choctaw Nation)). The issue before the Court is thus the *same one* the OCCA just faced—and decided—in *O'Brien* and *City of Tulsa v. Stitt*, 2025 OK CR 5, namely: whether the State of Oklahoma's jurisdiction over all of its territory, which includes Indian country, includes criminal jurisdiction over non-member Indians who commit non-major crimes in Indian country.[1] Moreover, the State prosecutions at issue here fall under the General Crimes Act. The Supreme Court reviewed the General Crimes Act closely in *Castro-Huerta* and determined that it does not preempt State jurisdiction. Plaintiff's suggestion that this Court should hold otherwise is thus improper.

A temporary restraining order and preliminary injunction should not issue. *First*, despite its proclamation otherwise, Plaintiff fails to show that it has a likelihood of success on the merits. Throughout its Motion, Plaintiff invites the Court both to adopt an incorrect legal standard and to misapply Supreme Court precedent. By way of example, Plaintiff asserts that *McGirt* and a "long line of precedent"[2] establish that States do not have criminal jurisdiction in Indian country unless Congress has expressly granted it. Such an assertion shrugs off a bedrock principle of Supreme Court jurisprudence: that the most recent decision becomes the governing rule for how an issue is to be handled. To restate it again: in *Castro-Huerta* the Supreme Court announced that "[t]he

---

[1] Any broader framing of the issue would require the Court to impermissibly engage in hypotheticals or address issues not before it. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes.").
[2] Doc. No. 4 at 7.

3

default is that States have criminal jurisdiction in Indian country unless jurisdiction is preempted." *Castro-Huerta*, 597 U.S. at 629. Nevertheless, Plaintiff attempts to distract the Court from that which *Castro-Huerta* plainly requires, choosing to build its analytical foundation on *McGirt*, itself a case expressly limited to whether the State has authority to prosecute Indians who commit major rrimes in Indian country. *McGirt*, 591 U.S. at 898, 934 ("Mr. McGirt's appeal rests on the federal Major Crimes Act."). Considering this improper lawsuit challenges the State's jurisdiction to prosecute general crimes in Indian country, *Castro-Huerta* could not more clearly apply (especially relative to *McGirt*—a case having no bearing on general crimes).

As explained by the Court in *Castro-Huerta*, when the law is read and applied correctly, it is clear that states retain jurisdiction over all of their territory, including criminal jurisdiction in Indian country, *unless* the state's jurisdiction (1) is preempted by federal law or (2) unlawfully infringes on tribal self-government. *See* 597 U.S. at 638. This standard, known as the "*Bracker* test," stems from the Supreme Court's opinion in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-43 (1980) ("*Bracker*").

In its Motion, Plaintiff reruns pre-*Castro-Huerta* analysis, urging the Court to conclude that the State is without jurisdiction over a non-member Indian's criminal conduct in Indian country unless Congress has signed a permission slip otherwise. But that's not the law. Preemption, not permission, is the exception to the general rule that a State is "entitled to the sovereignty and jurisdiction over all the territory within her limits[,]" including Indian country. *Castro-Huerta*, 597 U.S. at 636. Furthermore, Plaintiff fails to—and cannot—articulate how the State's exercise of jurisdiction would infringe on tribal self-government—and, indeed, does not even cite or discuss *Bracker*.

4

MCN Appendix Page 145

Because Plaintiff cannot show that it has a likelihood of success on the merits, the Court need not consider the remaining factors of the preliminary injunction analysis. If, however, the Court chooses to proceed, Plaintiff also fails on the other prongs. For instance, Plaintiff fails to show that it will suffer irreparable harm if a preliminary injunction is not issued. Sure, Plaintiff warns of potential disruption to tribal sovereignty and prosecutorial jurisdiction in Indian country. But Plaintiff totally fails to show how the State's concurrent prosecution of non-member Indians for crimes committed within the historical boundaries of Plaintiff's Indian country infringes on the Nation's sovereignty or tribal self-government. The warning is therefore akin to shouting "fire" before there's even a hint of smoke. Further, the Supreme Court has consistently declined to find an infringement on tribal self-government when the conduct of non-member Indians, who are not constituents of the governing tribe and have no role in its political processes, are at issue. *See Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134 (1980) (*"Colville"*). The Court articulated a clear rule: "For most practical purposes," non-member Indians "stand on the same footing as non-Indians resident on the reservation." *Id*. Plaintiff's argument is even more significantly weakened by other examples where courts have upheld state jurisdiction over crimes committed by non-member Indians. Besides, the most significant disruption here would stem from enjoining a single District Attorney while allowing others throughout Indian country to maintain prosecutorial authority consistent with *Castro-Huerta*, *O'Brien*, and *Stitt*.

Finally, Plaintiff also fails to articulate how the balance of equities and the public interest breaks in its favor. The State of Oklahoma has a strong interest in enforcing its laws and keeping the public safe, regardless of a defendant's race or political status. The applicable framework handed down by the Supreme Court in *Castro-Huerta* supports the State's authority to prosecute

MCN Appendix Page 146

both non-member Indians and non-Indian offenders. Precedent also supports the State's primary role in criminal law enforcement. Plaintiff fails to show that a preliminary injunction serves the public interest. In fact, the balance of equities favors Oklahoma's continued exercise of jurisdiction over non-member Indians in Indian country.

Under *Castro-Huerta*, states have criminal jurisdiction in Indian country unless the state's jurisdiction is preempted by federal law or unlawfully infringes on tribal self-governance. Here, Plaintiff proves neither. Because Plaintiff cannot satisfy any prong of the standard for a preliminary injunction, Plaintiff's attempt to forestall State prosecutions, overturn recent OCCA decisions, and disregard *Castro-Huerta* fails. For all these reasons, Plaintiff's request for a temporary restraining order or preliminary injunction should be denied.

<u>**ARGUMENT**</u>

**I.      LEGAL STANDARD**

Plaintiff seeks both a "noticed" temporary restraining order and a preliminary injunction. However, Rule 65(b) contemplates only a time-limited temporary restraining order issued without notice."[A] temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions." *See Sampson v. Murray*, 415 U.S. 61, 86 (1974); *see also Vietti v. Welsh & McGough, PLLC*, 21-CV-58-JFH-SH, 2022 WL 1288314, at *2 (N.D. Okla. Apr. 30, 2022) ("The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration."). Therefore, the request for a temporary restraining order must be denied, as it is inconsistent with the Federal Rules, mooted by the provision of notice and an opportunity to respond to Defendants, and superseded by the preliminary injunction motion. *See, e.g., Williams v. Platt*, CIV-03-281-C, 2006 WL 3097184, at *1 (W.D. Okla. Oct. 30, 2006) (adopting report and recommendation of magistrate judge) ("The

6

Defendants obtained notice of the requests either through service or electronic case filing. Once the Defendants obtained notice and an opportunity to respond, the requests for a temporary restraining order became moot. As a result, the Court should treat the requests for a temporary restraining order as superseded by the applications for a preliminary injunction."); *Stephens v. Jones*, 494 Fed. Appx. 906, 909 (10th Cir. 2012) (citing with approval magistrate's finding that a request for a temporary restraining order was mooted by defendants' response to it).

A preliminary injunction is "the exception rather than the rule." *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989). Since it is "an extraordinary remedy, the right to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (internal quotation marks and citation omitted). "To obtain a preliminary injunction, the movant bears the burden of establishing four factors: '(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest.'" *Oklahoma v. Biden*, 577 F. Supp.3d 1245, 1251 (W.D. Okla. 2021) (quoting *Republican Party of N.M.*, 741 F.3d at 1092).[3] "[W]here a movant fails to establish a likelihood of success on the merits, it is unnecessary to address the remaining requirements for a preliminary injunction." *Id.*; *see also Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015).

---

[3] Even though the request for a temporary restraining order is improper, the proper legal analysis is unchanged. "Temporary restraining orders and preliminary injunctions are subject to the same standards. [T]herefore references to preliminary injunctions apply also to temporary restraining orders." *ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*, 12-CV-660-JHP-FHM, 2012 WL 7853812, at *1 (N.D. Okla. Dec. 7, 2012), *report and recommendation adopted, ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*, 12-CV-660-JHP-FHM, 2013 WL 1412823 (N.D. Okla. Apr. 8, 2013).

MCN Appendix Page 148

Because certain types of preliminary injunctions "don't merely preserve the parties' relative positions pending trial," courts treat them as "disfavored" and impose on plaintiff "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019). A "disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id*. To get a disfavored injunction, Plaintiff must make a "strong showing" that each of these prongs tilt in its favor. *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016).

Although the relief Plaintiff seeks (a general injunction against the defendants from "any further assertion of criminal jurisdiction over Indians within the Creek Reservation") is not well-defined, it would clearly be considered a disfavored injunction.

*First*, the injunction would mandate action, rather than merely prohibiting it. An injunction is considered mandatory if it "affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Dominion Video*, 356 F.3d at 1261. An injunction requiring Defendant to halt or dismiss such prosecutions would compel affirmative action, such as filings and interactions with state courts.

*Second*, the requested relief would change the status quo. According to the Tenth Circuit, the status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005). As Plaintiff concedes by citing five ongoing criminal prosecutions of non-member Indians, the last uncontested status prior to this action was that Defendant is prosecuting non-member

8

Indians for non-major crimes in Indian country, as authorized under *Castro-Huerta* and Oklahoma law. A preliminary injunction would, therefore, change the status quo.

*Third*, granting the injunction Plaintiff seeks would provide all the relief Plaintiff could expect from a trial win, namely: disrupting the ongoing criminal proceedings and barring a District Attorney from carrying out his duties. Because Plaintiff requests a disfavored preliminary injunction, Plaintiff "must make a heightened showing of the four factors to obtain the injunction." *MFE Enterprises, Inc. v. Alphanetics*, 24-CV-304-JFJ, 2024 WL 5201216, at *4 (N.D. Okla. Dec. 23, 2024). Plaintiff has not established an entitlement to injunctive relief under each of the four factors, much less met its burden to make a heightened showing.

## II. PLAINTIFF FAILS TO SATISFY ITS BURDEN, AND THE COURT SHOULD DENY ITS REQUEST FOR A PRELIMINARY INJUNCTION.

### a. Under the first prong, Plaintiff fails to show a likelihood that it will succeed on the merits.

Plaintiff has not demonstrated a likelihood of success on the merits and is incorrect in asserting that states lack jurisdiction unless authorized by Congress. Throughout its Motion [Doc. No. 4], Plaintiff urges the Court to adopt an incorrect legal standard. Although Plaintiff purports to rely on *McGirt*, it ignores the specific context and express limits of its holding. Instead, Plaintiff invites the Court to presume a blanket absence of state jurisdiction over all Indian criminal conduct, rather than applying the correct analysis set forth by the Supreme Court in *Castro-Huerta* and its reliance on *Bracker*.

Just weeks before Plaintiff filed this lawsuit, the OCCA in *O'Brien* applied the correct jurisdictional framework to the issue central to this case and held that the State has jurisdiction to prosecute non-member Indians who commit non-major crimes in Indian country. The OCCA has

9

since been even clearer: "Oklahoma has concurrent jurisdiction in Indian country over non-member Indian defendants accused of committing non-major crimes." *Stitt*, 2025 OK CR 5, ¶ 8.

This case, therefore, represents an inappropriate collateral attack on the OCCA's decisions and is, in essence, a veiled attempt to disregard *Castro-Huerta*, if only in part.

> **i.     Plaintiff's reliance on *McGirt* to presume the preemption of state jurisdiction over the prosecution of "non-major crimes" is misplaced and contrary to the express holding of *Castro-Huerta*.**

Plaintiff's hope that cherry-picked lines from *McGirt* (an opinion explicitly limited to consideration of the Major Crimes Act) will induce the Court to adopt a novel analytical framework pursuant to which States would presumptively lack jurisdiction in Indian country is misplaced. Precedent—especially *Castro-Huerta* and authorities cited therein—simply does not support Plaintiff's position. Generally, "a State may validly assert authority over the activities of non-members on a reservation, and … in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331–32 (1983). The Court has rejected "an inflexible per se rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 214–15 (1987).

Plaintiff, quoting from a paragraph in *McGirt* that begins, "Mr. McGirt's appeal rests on the federal Major Crimes Act," argues that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country' absent a 'clear expression of the intention of Congress.'" 591 U.S. at 898 [Doc. No. 4 at 7]. From this, Plaintiff extrapolates the adoption of a new "inflexible per se rule" that Oklahoma lacks criminal jurisdiction over all Indians for all crimes committed in Indian country unless Congress expressly grants such authority. [Doc. No. 4 at 7-10]. But *McGirt*, which explicitly limited its consideration to jurisdiction over major crimes,

MCN Appendix Page 151

doesn't serve Plaintiff's end: "Congress allowed only the federal government, not the States, to try tribal members for *major crimes*. All our decision today does is vindicate that replacement promise." *McGirt*, 591 U.S. at 934 (emphasis added). Simply put, *McGirt* did not address crimes governed by the General Crimes Act, like those at issue here. *See id*. at 898.

In contrast, the *Castro-Huerta* case subjected the General Crimes Act to the preemption analysis and reaffirmed the legal standard for analyzing state criminal jurisdiction in Indian country, rooted in principles of state sovereignty "dating back to the 1800s[.]" *Castro-Huerta*, 597 U.S. at 637. Under this bedrock principle, "States have jurisdiction to prosecute crimes committed in Indian country *unless preempted.*" *Castro-Huerta*, 597 U.S. at 637 (emphasis added).

> To begin with, the Constitution allows a State to exercise jurisdiction in Indian country. Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.

*Id*. at 636 (emphasis added). Rephrased, the default rule is that States have criminal jurisdiction in Indian country unless that jurisdiction has been preempted by an act of Congress or unlawful infringement on tribal self-government. *Id*. Attempts to alter the default rule through a patchwork of dissents,[4] legislative history,[5] and novel theories, must fail. No court may … "replace the actual text with speculation as to Congress' intent." *Castro-Huerta*, 597 U.S. at 642; *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (The Court "presume[s] more modestly" ... that [the] legislature says ... what it means and means ... what it says.") (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005).)

Plaintiff does not and cannot demonstrate preemption under either part of the *Bracker* test. Instead, Plaintiff misapplies an inapplicable framework. After dismissing *Castro-Huerta*, Plaintiff

---

[4] *See, e.g.,* Mot. at 10 ("As the dissent put it . . . .").
[5] *See, e.g.,* Mot. at 12 (quoting conference reports).

MCN Appendix Page 152

turns to selective quotes from *McGirt* in an attempt to persuade this Court that states cannot exercise jurisdiction in Indian country without express Congressional permission. The foundation of Plaintiff's argument reflects its interpretation of "what the law should be," not "what the law is." *Castro-Huerta,* 597 U.S. at 656. The Court in *Castro-Huerta* made it clear: "States do not need a permission slip from Congress to exercise their sovereign authority. The default is that States have criminal jurisdiction in Indian country unless that jurisdiction is preempted." *Id.*

Plaintiff's intent to challenge the framework and holding in *Castro-Huerta* is apparent. Indeed, rather than follow the Supreme Court's opinion and longstanding precdent,[6] Plaintiff invites this Court to adopt the dissent's view of the preemption test. *See id.* at 668 (Gorsuch, J., dissenting) (arguing that, in the view of the dissent, "the preemption rule" applicable in matters of Indian tribal sovereignty should be "exactly the opposite of the normal rule"). The Court's decision stands in direct contrast Plaintiff's argument:

> [U]nder the Constitution and this Court's precedents, the default is that States may exercise criminal jurisdiction within their territory. See Amdt. 10. States do not need a permission slip from Congress to exercise their sovereign authority. In other words, the default is that States have criminal jurisdiction in Indian country unless that jurisdiction is preempted. In the dissent's view, by contrast, the default is that States do not have criminal jurisdiction in Indian country unless Congress specifically provides it. The dissent's view is inconsistent with the Constitution's structure, the States' inherent sovereignty, and the Court's precedents.

*Id*. at 653 (emphasis added). It is axiomatic that this Court must apply the law as interpreted by the Supreme Court, not as Plaintiff wishes it to be.

> **ii.**  **Applying the correct standard, as set forth in *Castro-Huerta* and its reliance on *Bracker*, there is no basis for federal preemption here.**

---

[6] Notably, the parties at least agree that "*Castro-Huerta* . . . does not disturb the long-settled precedents of the Supreme Court directly addressing state jurisdiction over Indians." Mot. 12-13. The key difference is that, contrary to Plaintiff, Defendant accepts and applies the long-settled precedent relied on by the *Castro-Huerta* majority.

MCN Appendix Page 153

As stated by the Supreme Court in *Castro-Huerta*, "[t]his Court has long held that Indian country is part of a State, not separate from it." 597 U.S. at 631. Thus, as a matter of state sovereignty, "States have jurisdiction to prosecute crimes committed in Indian country unless preempted." *Id*. at 637. To determine whether state jurisdiction is preempted, the Court still applies the *Bracker* test, which provides that "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id*. at 638.

### 1. Plaintiff has failed to demonstrate that Congress has preempted state criminal jurisdiction to prosecute non-major crimes committed in Indian country.

The first question is whether the state's exercise of jurisdiction over non-member Indians who commit non-major crimes in Indian country is preempted "by federal law under ordinary principles of federal preemption." *Castro-Huerta*, 597 U.S. at 638. There is a strong presumption against preemption of state law, so "unless that was the clear and manifest purpose of Congress," courts should not find preemption of state police powers. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see also Arizona v. United States*, 567 U.S. 387, 400 (2012) ("In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'").

*First*, Congress has not preempted the State's jurisdiction to prosecute Indians who commit non-major crimes in Indian country. Of particular significance, the Court in *Castro-Huerta* specifically found that the General Crimes Act does not preempt state authority to prosecute crimes for conduct occurring in Indian country and "both the Federal Government and the State have concurrent jurisdiction [under the General Crimes Act] to prosecute crimes committed in Indian country." 597 U.S. at 639–40 (emphasis added). Additionally, the Court found that "Public Law

13

280 contains no language that preempts States' civil or criminal jurisdiction." *Id*. at 647–48. The

Supreme Court has thusly spoken on the issue.

Notable, too, is the fact that the OCCA rejected arguments of Plaintiff (as amicus) in

*O'Brien*, which sought to limit the holding of *Castro-Huerta* in the same way Plaintiff asks this

Court to limit it here.

> O'Brien and amicus, the Muscogee (Creek) Nation tribe, both contend that *Castro-Huerta* does not apply here because that decision was limited to deciding whether the State had concurrent jurisdiction with the federal government to prosecute a non-Indian for a reservation crime against an Indian victim. To the contrary, the Supreme Courts discussion in *Castro-Huerta* about the ways in which a state's criminal jurisdiction over Indians may be preempted was not limited to criminal cases involving non-Indian defendants and Indian victims. The same is true of the Court's interpretation in *Castro-Huerta* of the plain language of the General Crimes Act, which cannot logically be read to preempt state jurisdiction over Indian defendants, while not preempting state jurisdiction over Indian victims.

2024 OK CR 31, ¶ 19, 2024 WL 5001684. The OCCA, therefore, found that under *Castro-Huerta*,

no federal law preempted state prosecutorial authority over non-major (general) crimes committed

in Indian country. *Id*. ¶ 30. Thus, the first part of the *Bracker* test is clearly not met.

Plaintiff does not suggest otherwise. It does not—and cannot—argue that the General

Crimes Act, Public Law 280, or any other specific provision of federal lawpreempts state criminal

jurisdiction in Indian country. Instead, Plaintiff's lone argument for preemption is that "the

Constitution vests criminal authority over Indians in Indian country exclusively in the federal

government [and] the Tenth Amendment reserves no residuum of that authority to the states." Doc.

No. 4 at 16. Plaintiff's theory is that "State criminal jurisdiction over all Indians—members and

non-members—is indeed preempted by the Constitution's delegation of exclusive authority to

Congress." *Id.* at 17. As already explained, Plaintiff's preemption argument is merely a product of

its fractured foundation. It claims that a state only has criminal jurisdiction in Indian country if

14

Congress provides a permission slip. This, of course, flies in the face of the default—and controlling—rule set out in *Castro-Huerta*.

Here, Plaintiff has not—and, at this time, cannot—provide another basis to show that federal law preempts the State's exercise of criminal jurisdiction over non-member Indians in Indian Country. Accordingly, the analysis must move to the second prong, known as the *Bracker* balancing test, which looks at whether "the exercise of state jurisdiction" over non-member Indians "would unlawfully infringe on tribal self-government." *Castro-Huerta*, 597 U.S. at 638.

> **2.**      **Plaintiff has failed to demonstrate how the exercise of jurisdiction by the State would infringe on tribal self-government.**

Turning to the second prong of the anlaysis under *Bracker,* preemption may also occur when the exercise of state jurisdiction unlawfully infringes on tribal self-government. However, Plaintiff makes no merits-based argument based on the *Bracker* balancing test to show how State jurisdiction would infringe on tribal self-government in this case.

As support for its Motion, Plaintiff cites five prosecutions [Doc. No. 2, Compl. ¶ 23], each of which involve non-major crimes committed by non-members within the historical boundaries of Creek Indian country. Plaintiff does not—and cannot—point to a single ongoing prosecution of one of **_its_** members for conduct that occurred within the Nation's jurisdictional boundaries. And consistent with the analysis in *Castro-Huerta*, the State's concurrent authority to prosecute non-major crimes committed by non-members of the Nation, whether within the Nation's Indian country or otherwise, does not infringe on the Nation's sovereignty or its internal self-government. An argument to the contrary should not be taken seriously, considering non-member Indians have no voice in the Nation's government, the forum, or the laws that may impact their lives. Moreover, the State's exercise of concurrent jurisdiction does "not displace, or diminish, the tribe's

15

MCN Appendix Page 156

prosecutorial authority to try Indians for violations of local tribal law." *O'Brien*, 2024 OK CR 31,

¶ 32. Therefore, it is unsurprising that Plaintiff has made no attempt to advance such an argument.

Instead of applying the Supreme Court's instruction, Plaintiff repeats its flawed

jurisdictional argument and again invites the Court to overturn *Castro-Huerta*. Plaintiff argues that

the decision applies only to conduct by non-Indians in Indian country, not to the conduct of non-

member Indians.[7] [Doc. No. 4 at 13-17]. In essence, Plaintiff claims—without any actual

support— that the *Castro-Huerta* default rule applies only to conduct by non-Indians because the

Court did not explicitly address the defendant's membership status. Defendant concedes that

*Castro-Huerta* made no distinction between member and non-member Indians. But that fact serves

only to reinforce the Court's conclusion: that the General Crimes Act does not preempt state

criminal jurisdiction in Indian country. The Court's articulation of the default rule concerning state

jurisdiction in Indian country is not limited by membership status. As a matter of state sovereignty,

state jurisdiction is the default under the Constitution, irrespective of an individual's Indian

membership status.

That said, the underlying defendant's membership status *is* a consideration when applying

the *Bracker* balancing test—*i.e.*, whether tribal self-government is infringed by the state's exercise

of jurisdiction. The Tenth Circuit has previously recognized that separate Indian tribes are

independent entities with their own jurisdiction to regulate their own citizens. *See Crowe &*

*Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1152 (10th Cir. 2011) ("While the Creek Nation has

jurisdiction to regulate its own citizens, the Thlopthlocco is an independent tribal entity that elects

its own government pursuant to its own Constitution and is not itself a citizen of the Creek

---

[7] As another state supreme court has noted, the Supreme Court "has not consistently utilized the same nomenclature" nor "clearly differentiated between nonmember Indians, non-Indians, and Indians" in many of its holdings.  *State v. R.M.H.*, 617 N.W.2d 55, 61 (Minn. 2000).

MCN Appendix Page 157

Nation."). And as the Supreme Court has held on multiple occasions, "[f]or most practical purposes," non-member Indians "stand on the same footing as non-Indians resident on the reservation." *Colville*, 447 U.S. at 161. In the seminal *Colville* decision, the Supreme Court upheld the state's authority to impose taxes on on-reservation purchases by non-member Indians. *Id.* at 138. In addressing the argument related to tribal self-government, the Court noted that the "imposition of [the] tax on these purchasers [would not] contravene the principle of tribal self-government, for the simple reason that non-members are not constituents of the governing Tribe." *Id.* at 161. Thus, when a Supreme Court decision "refers to 'non-Indians,' the logic of the opinion applies to non-members of a tribe, including other independent Indian tribes." *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1234 (10th Cir. 2014).

For purposes of criminal jurisdiction, the Supreme Court has likewise held that since non-member Indians "share relevant jurisdictional characteristics of non-Indians" (*i.e.*, non-member Indians cannot "vote, hold office, or serve on a jury" of the reservation tribe), they also "share the same jurisdictional status." *Duro v. Reina*, 495 U.S. 676, 688, 693, 696 (1990) ("*Duro*"). Following *Duro*, Congress enacted the so-called "*Duro* fix" by defining tribal "powers of self-government" to include the power "to exercise criminal jurisdiction over all Indians," including non-member Indians. *See* 25 U.S.C. § 1301. But that statutory amendment only redefined and expanded the scope of tribal jurisdiction; it did nothing to curtail or preempt the concurrent exercise of state jurisdiction. *See, e.g., State v. Shale*, 345 P.3d 776, 779 (Wash. 2015) ("Nothing in the act itself addressed whether this *post-Duro* tribal jurisdiction is exclusive of any state jurisdiction."); *LaRock v. Wisconsin Dep't of Revenue*, 621 N.W.2d 907, 914 (Wisc. 2001) (rejecting argument that the *Duro* fix overturned the inherent jurisdiction of states over non-member Indians within Indian country and holding that the "distinction between non-member Indians on the lands of

17

MCN Appendix Page 158

another tribe and tribal members on their own lands—as stressed in *Colville* and reasserted in *Duro*—remains valid"). Even after the *Duro* fix, the Supreme Court has continued to recognize the "limited character" of tribal sovereignty and to cite *Duro* for the principles on which it relied, including concerns regarding the application of full tribal jurisdiction to those "who do not belong to the tribe and consequently had no say in creating the laws that would be applied to them." *United States v. Cooley*, 593 U.S. 345, 352–53 (2021).

The OCCA recognized this important distinction in *O'Brien*, holding that State and municipal "prosecution of non-member Indians of the Muscogee (Creek) tribe for … offenses occurring on public streets and roads in Tulsa does not affect the tribe's authority to regulate its own citizens for violations of Creek tribal law. In fact, such a prosecution would not involve prosecuting any citizen of the Muscogee (Creek) tribe." 2024 OK CR 31, ¶ 32. Indeed, "prosecution of non-member Indians would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation." *Id*. Accordingly, the OCCA found that State jurisdiction was not preempted under the *Bracker* balancing test because the state's exercise of jurisdiction "would not unlawfully infringe upon tribal self-government." *Id*. ¶ 35.

In short, Defendant's exercise of State jurisdiction does not unlawfully infringe on tribal self-government. When the State prosecutes a non-member Indian who commits a non-major crime in Indian country, there is minimal, if any, impact on the Nation's right to self-govern. The rationale is straightforward: the prosecution of non-member Indians does not affect the Nation's authority to regulate its own citizens under tribal law, and non-members are not a part of any of the Nation's political bodies, forums, or processes. Applying the correct legal standard as mandated by the Supreme Court in *Castro-Huerta*, it is clear that: (1) State jurisdiction is not preempted by federal law and that (2) the State's exercise of jurisdiction over non-member Indians does not

18

unlawfully interfere with the Nation's self-government. Therefore, Plaintiff is unlikely to succeed on the merits, and the Court should deny its request for a preliminary injunction.

**b.      The Court need not reach the second or third prongs of the preliminary injunction standard, but even if it does, Plaintiff still fails to meet its burden.**

Because Plaintiff fails to show a likelihood of success on the merits, the Court can deny Plaintiff's Motion [Doc. No. 4] without further inquiry. Indeed, "where a movant fails to establish a likelihood of success on the merits, it is unnecessary to address the remaining requirements for a preliminary injunction." *Oklahoma v. Biden*, 577 F.Supp.3d at 1251. Even if the Court chooses to explore the other prongs, Plaintiff still fails to satisfy its burden for a preliminary injunction.

**i.      Plaintiff fails to show that it will suffer irreparable harm if a preliminary injunction is not issued.**

As to the second prong, a plaintiff satisfies the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 09-CV-285-TCK-TLW, 2009 WL 10695371, at *3 (N.D. Okla. Nov. 19, 2009) (*quoting RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)). "To constitute irreparable harm warranting the issuance of an injunction, the plaintiff must make a prima facie showing of an injury which is certain, great, actual and not theoretical. 'Irreparable harm is not harm that is merely serious or substantial.'" *Nova Health Sys. v. Edmondson*, 373 F. Supp. 2d 1234, 1240 (N.D. Okla. 2005), *aff'd*, 460 F.3d 1295 (10th Cir. 2006) (quoting *Heideman v. South Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003)).

Plaintiff makes no attempt to identify certain, great, actual, and non-theoretical harm. Instead, it asserts that Defendant's claimed infringement on tribal sovereignty constitutes *per se* irreparable harm, citing *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006). In that case, the Tenth Circuit held that an invasion of tribal sovereignty occasioned by a state

19

**MCN Appendix Page 160**

enforcing state law on Indian land "can" constitute irreparable injury. However, as this Court has previously held, the law requires more, even of an Indian tribe such as the Nation, namely that the tribe "offer additional details regarding precisely how [a defendant's] actions have violated [its] sovereignty." *Muscogee (Creek) Nation*, 2009 WL 10695371, at *4.

Rather than provide any details about how the ongoing prosecutions of non-member Indians by Defendant violate its sovereignty, Plaintiff simply relies on the Tenth Circuit's opinion in *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015), for the proposition that prosecuting any Indians for conduct occurring within the Creek Reservation is "itself an infringement on tribal sovereignty." [Doc. No. 4 at 20-21]. However, *Ute Indian Tribe* is inapposite. That case involved the prosecution of a member of the Ute Indian Tribe for conduct that occurred on the Ute reservation land that had previously been recognized in litigation between the parties as Indian country. 790 F.3d at 1004-05. In contrast, the prosecutions referenced in this matter concern non-member Indians, the prosecution of which has now been repeatedly legitimized by State district courts and the OCCA.

The Nation argues that it has "enacted its own criminal and traffic laws" and that enforcement of these "core governmental functions" is impaired when "the County asserts authority to enforce its own criminal laws against those same Indians, subjecting them to a criminal justice system other than the Nation's own and purporting to deny the Nation's own inherent jurisdiction over those offenses." [Doc. No. 4 at 22]. The point is meritless. Defendant has been exercising concurrent jurisdiction to prosecute non-member Indians in Indian country for more than half a century. Plus, the Nation has not identified any specific, non-theoretical harm to its ability to enforce its own tribal laws. As the OCCA noted in *O'Brien*, the State's concurrent jurisdiction "would not displace, or diminish, the tribe's prosecutorial authority to try Indians for

20

MCN Appendix Page 161

violations of local tribal law[.]" 2024 OK CR 31, ¶ 32. In fact, the "prosecution of non-member Indians would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation." *Id*. Notably, other states are doing just fine:

- *State v. Shale*, 345 P.3d 776, 776 (Wash. 2015): The Washington Supreme Court upheld the state's right to prosecute an Indian enrolled with a tribe committing a crime on another tribe's reservation, finding it would not interfere with tribal sovereignty. The court cited *Colville* to support the state's exercise of jurisdiction;

- *State v. R.M.H.*, 617 N.W.2d 55, 57 (Minn. 2000): The Minnesota Supreme Court ruled that the state has jurisdiction to enforce its speeding and driver's license laws against an Indian committing these offenses on a state highway within a reservation of a tribe of which the Indian is not a member. Although Minnesota's Public Law 280 criminal jurisdiction did not apply, the court determined that state jurisdiction was not preempted under *Bracker* balancing. It noted that Indian sovereignty is weaker over non-members, including non-member Indians, citing *Colville* and *Duro*. Subsequent cases confirmed that this ruling remains valid;

- *Wacondo v. Concha*, 873 P.2d 276 (N.M. App. 1994): The New Mexico Court of Appeals upheld state court jurisdiction over a civil suit brought by a member Indian against a non-member Indian for crimes committed on the plaintiff tribe's reservation. The court referenced Felix Cohen's 1942 treatise, stating that an Indian has the same right to sue in state courts as any other citizen in cases not affecting federal or tribal relations. It rejected the argument that New Mexico's lack of participation in Public Law 280 preempted state jurisdiction and found that concurrent state jurisdiction could benefit tribal courts by fostering cooperation between state and tribal judges.

Moreover, since *Castro-Huerta*, states have been able to successfully prosecute and interpret the laws related to non-Indians and non-members in Indian country. Of course, any authority Plaintiff has to prosecute the same criminal conduct is unaffected by the State's prosecution of the crimes. Plaintiff simply has not shown how it will be irreparably harmed if a preliminary injunction is not granted.

      **ii.     Plaintiff fails to show that the balance of equities tips in its favor and a preliminary injunction is in the public interest.**

MCN Appendix Page 162

The third and fourth preliminary injunction standards—the balancing of the equities and the public interest—merge  when the government is the party opposing the preliminary injunction. *Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1136, 1157 (W.D. Okla. 2024) (*citing Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020)). In balancing the harms of an injunction prohibiting Defendant from exercising criminal jurisdiction over non-member Indians for conduct occurring in Indian country, Plaintiff contends that this final factor weighs in its favor because "[a]ny law enforcement concerns the County may invoke will surely not be as portentous as it may assert," while on the "Nation's side of the ledger [is] irreparable harm to the Nation's sovereignty and self-government .…" Doc. No. 4 at 23.  This could not be further from the truth.

"From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 211 (2020). As the Supreme Court has recognized, "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court . …" *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). Far from trivial, the State of Oklahoma has the utmost interest in ensuring the safety of all its citizens, regardless of race or political status, by holding offenders accountable and deterring criminal activity. As a sovereign entity, the State has a duty to protect its residents, enforce its laws, and uphold justice within its territorial boundaries. The Supreme Court specifically recognized this sovereign duty in *Castro-Huerta*, finding that "the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." 597 U.S. at 651. "The State also has a strong interest in ensuring that criminal offenders—especially violent offenders— are appropriately punished and do not harm others in the State." *Id.*

MCN Appendix Page 163

On the other hand, the Nation's interests in self-government are not harmed by the denial of a preliminary injunction. The alleged harm to the Nation is puzzling, considering that Defendant's prosecution of crimes occurring within the historical boundaries of the Nation's Indian country is limited to non-member Indians. Furthermore, while the Nation has the authority under *Duro* to prosecute non-member Indians, the Nation's jurisdiction does not foreclose the State's. As such, the Nation has no greater (and likely less) interest than the State in prosecuting non-major crimes. The State's exercise of concurrent jurisdiction over non-member Indians does not interfere with the Nation's right to prosecute the same individual for the same offense, as both entities derive their powers from separate sovereigns. Therefore, a second prosecution would not violate the Double Jeopardy Clause. *United States v. Lara*, 541 U.S. 193, 197-98 (2004). Plaintiff has failed to show that the balance of equities and public interest weighs in favor of a preliminary injunction.[8] In fact, the balance of equities weighs against Plaintiff and in favor of the State's continued ability to exercise jurisdiction over non-member Indians in Indian country.

For these reasons, Plaintiff's request that the Court temporarily restrain and preliminarily enjoin Defendant should be denied.

---

[8] This is clearly the case even without mentioning that a conclusion asserting the State's lack of jurisdiction over non-member Indians would improperly treat tribes as fungible. Tribes have represented themselves as "distinct political communities," which is to say they are distinct from each other. *Worcester v. Georgia*, 31 U.S. 515, 557 (1832). They "are not mere fungible groups of homogenous persons among whom any Indian would feel at home[.]" *Duro*, 495 U.S. at 695.

MCN Appendix Page 164

Date: April 8, 2025

Respectfully submitted,

*s/Phillip G. Whaley*

Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

**Attorneys for Defendant**
**Steve Kunzweiler**

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing.

*s/Phillip G. Whaley*

Phillip G. Whaley

24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Case No. 25-cv-00075-GKF-JFJ |
| | ) | |
| TULSA COUNTY, OKLAHOMA, *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT REGALADO and DEFENDANT TULSA COUNTY'S**
**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY**
**RESTARINING ORDER AND PRELIMINARY INJUNCTION**

Defendants Vic Regalado, in his official capacity as Sheriff of Tulsa County ("Sheriff Regalado"), and Tulsa County, Oklahoma, provide their response in opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 4], and request the Court to enter an order denying Plaintiff's motion. In support of their response in opposition, the movants provide as follows:

**I.    INTRODUCTION.**

Plaintiff is not entitled to the extraordinary relief sought in its motion.

In reaction to the opinions of the Oklahoma Court of Criminal Appeals in *City of Tulsa v. O'Brien*,[1] and the United States Supreme Court in *Castro-Huerta*,[2] the Defendant argues the *dissents* in those opinions to improperly impose its will here. Plaintiff's attempted end-run around federal and state law should not be countenanced by this Court.

Plaintiff filed its lawsuit against Sheriff Regalado, Defendant Steve Kunzweiler, the lead state prosecutor in Oklahoma's Fourteenth District, and "Tulsa County, Oklahoma."[3] Plaintiff

---

[1] *City of Tulsa v. O'Brien*, 2024 OK CR 31.
[2] *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022).
[3] "Tulsa County, Oklahoma" is not the name by which the county government may be sued and is not a proper party. *See* Motion to Dismiss [Doc. 39].

1

MCN Appendix Page 166

seeks a declaratory judgment that Defendants lack "criminal jurisdiction over Indians for conduct occurring within the Creek Reservation," and claims Defendants' "continued assertion of that jurisdiction violates federal law." Complaint [Doc. 2, p. 10, ¶ A]. Plaintiff also seeks a temporary restraining and preliminary injunction prohibiting Defendants "from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization of Congress." [*Id*. at ¶¶ B, C].[4]

For Plaintiff to obtain the relief it seeks, however, this Court must ignore the teachings of the United States Supreme Court in *Castro-Huerta* on the proper test to determine jurisdictional questions in Indian country, and then interfere with ongoing state prosecutions by ordering—effectively—state district courts to ignore the binding authority of the state's highest appellate court for criminal matters. As *Castro-Huerta* reminded, the Court's "proper role under Article III of the Constitution is to declare what the law is," not what Plaintiff thinks the law should be. *Id*. at 655. Plaintiff's request for relief must be denied.

## II.   THERE IS NO ACTIVITY OF "TULSA COUNTY, OKLAHOMA" TO ENJOIN.

In its Motion for Temporary Restraining Order and Temporary Injunction [Doc. 4], the Nation collectively places all Defendants under the term "County" and claims the "County" is wrongfully asserting criminal jurisdiction to prosecute certain Indians within the Creek Reservation. *Id*. at p. 8. Using that collective descriptor, Plaintiff asks the Court to:

> B.   Enter a noticed temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) prohibiting the County from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

Complaint [Doc. 2, p. 10, ¶ B]. Paragraph B of the prayer is the only restraint and injunctive relief

---

[4]"States do not need a permission slip from Congress to exercise their sovereign authority. In other words, the default is that States have criminal jurisdiction in Indian country unless that jurisdiction is *preempted*." *Castro-Huerta*, 597 U.S. at 653.

2

that includes Tulsa County, Oklahoma, and Sheriff Regalado.[5] The request, however, is improper as to both Tulsa County, Oklahoma, and Sheriff Regalado.

The Board of County Commissioners of the County of Tulsa—the county's governing body—has no role or say in law enforcement or the exercise of jurisdiction over or prosecution of any person. Indeed, as a creature of statute, the Board of County Commissioners possesses "only such authority as is granted by statute, and such authority must be exercised in the manner provided by law." *Tulsa Exposition & Fair Corp. v. Board of County Comm'rs of Tulsa County*, 1970 OK 67, ¶ 26, 468 P.2d 501, 507-08 It is the state legislature's power "to define the duties among the several county officers and to regulate county governmental affairs." *Id*. at ¶ 27. In this regard, it is the district attorney in a county in his or her district who "is responsible for prosecuting, investigating, and representing the State of Oklahoma in all criminal matters." *State v. Hooley*, 2012 OK CR 3, ¶ 20, 269 P.3d 949, 955.[6] The district attorney has broad discretion to decide whether to file charges and what charges to file. *See Childress v. State*, 2000 OK CR 10, ¶ 18, 1 P.3d 1006, 1011 ("[t]he decision regarding which criminal charge to bring lies within the wide parameters of prosecutorial discretion."). *See also Wolfenbarger v. State*, 1985 OK CR 143, ¶ 5, 710 P.2d 114, 115 ("the prosecutor has sole authority to decide under which statute to file charges"); and *Carpenter v. State*, 1996 OK CR 56, P23, 929 P.2d 988, 995 ("[T]he decision whether to prosecute and what charge to file is within the discretion of the prosecutor."). Furthermore, "under Oklahoma law, a district attorney is an arm of the state," *not* of the county. *Erikson v. Pawnee Cnty. Bd. of Cnty.*

---

[5]Paragraph C essentially requests the same relief but explicitly limits it to Defendant Kunzweiler. Complaint [Doc. 2, p. 10, ¶ C].

[6]The Oklahoma legislature abolished the position of county prosecutor in 1967. Today, there is one district attorney within each of 27 districts for Oklahoma's 77 counties. Most district attorneys serve as the state's chief prosecutor for multiple counties within their respective districts, with the only exception being the 7th (Oklahoma), 14th (Tulsa), and 15th (Muskogee) districts, which—because of population—contain only one county. OKLA. STAT. tit. 19, § 131.

3

*Comm'rs*, 263 F.3d 1151, 1153-54 (10th Cir. 2001); *see also* OKLA. STAT. tit. 19, § 215.30(B) (providing that "All appointees and employees of district attorneys, . . . shall be deemed to be state officers or employees for all purposes."). The decision by District Attorney Kunzweiler to follow Oklahoma law by charging and prosecuting non-Member Indians for the alleged violation of general crimes is within his sole discretion as a state officer. As a matter of law, the county—the Board of County Commissioners of the County of Tulsa—has no role or say in matters of law enforcement. *See also* Okla. Opin. Atty. Gen. No. 79-98, at 145 (May 15, 1979) ("the District Attorney and the Sheriff are the only two [county] offices which involve any law enforcement duties"). There is simply no activity of the county itself that can be restrained or enjoined here.

### III.    SHERIFF REGALADO DOES NOT ENGAGE IN ANY UNLAWFUL ACTIVITY TO BE RESTRAINED OR ENJOINED BY THE COURT.

Beyond identifying him in the Complaint, Plaintiff only references Sheriff Regalado twice:

> 28. The Tulsa County Sheriff has additionally adopted a policy of booking and classifying inmates and asserting criminal jurisdiction over non-member Indians in light of *O'Brien*. In a memorandum that the Sheriff's Department provided to the Nation on January 24, 2025, the Sheriff stated that "tribal members will be charged by tribal courts only if they are a member of the tribe in which the criminal offense took place.... Any other tribal citizens will not be booked or charged into tribal courts but rather STATE court and booked into [the David L. Moss Criminal Justice Center] as any other citizen."

> 29. The David L. Moss Criminal Justice Center is operated by the Sheriff.

Complaint [Doc. 2, pp. 8-9]. Neither paragraph involves exercising criminal jurisdiction over Indians by Sheriff Regalado. Rather, Paragraph 28 alleges—correctly—that post-*O'Brien*, the Tulsa County Sheriff's Office issued an internal memorandum on how to administratively in-process ("book") non-Member arrestees brought to the county jail by a municipality for the alleged violation of a state law, or brought to the jail by either the Nation or Cherokee Nation for the alleged violation of tribal law. It is not deciding criminal jurisdiction. Whether, where, or what

4

MCN Appendix Page 169

criminal charge, if any, is subsequently filed is up to the complete discretion of state or tribal prosecutors, not Sheriff Regalado or the county jail. *See Carpenter v. State*, 1996 OK CR 56, ¶ 23, 929 P.2d 988, 995. *See also State ex rel. Stout v. Craytor*, 1996 OK CR 79, ¶ 12, 753 P.2d 1365, 1368 (noting that the District Attorney has the discretion to decide whether to prosecute and of what charge to bring in state court).

Indeed, Sheriff Regalado and the Tulsa County Sheriff's Office do not have the legal authority or ability to file any criminal charge against any person in any court for any crime. Sheriff Regalado does, however, "have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer." OKLA. STAT. tit. 19, § 513. *See also* OKLA. STAT. tit. 57, § 47 ("The sheriff, or such person designated by law in his place, shall have charge of the county jail of his county and of all persons by law confined therein."). The quoted memorandum in the Complaint, also attached as an exhibit to the Nation's declaration [Doc. 5], simply advises that at intake to the county jail, it should be noted in the electronic record whether the arrestee is being held on potential state or tribal charges. If charges are filed by either the State of Oklahoma, Cherokee Nation, or Plaintiff, then Sheriff Regalado follows the direction of the applicable court—state or tribal—with respect to further detention, transfer, or release. Like Defendant Tulsa County, Oklahoma, Sheriff Regalado is not involved in any exercise of discretion or decision-making process to charge or prosecute any person for any crime, regardless of their race, ethnicity, or membership in a tribe. There is no activity of Sheriff Regalado to restrain or enjoin.

5

#### IV.   PLAINTIFF CANNOT MEET THE STANDARD TO OBTAIN ITS REQUESTED RELIEF.

Defendants Tulsa County, Oklahoma, and Sheriff Regalado adopt and incorporate by reference the response of Defendant Kunzweiler in opposition to Plaintiff's motion for temporary restraining order and preliminary injunction. [Doc. 41].

WHEREFORE, Defendants Tulsa County, Oklahoma and Vic Regalado, in his official capacity as Sheriff of Tulsa County, request the Court to enter an order denying Plaintiff's requested relief.

**Filed**: **April 8, 2025**

HALL, ESTILL, HARDWICK, GABLE,
  GOLDEN & NELSON, P.C.

*s/ Keith A. Wilkes*
Keith A. Wilkes, OBA 16750
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
kwilkes@hallestill.com
**ATTORNEYS FOR TULSA COUNTY,
OKLAHOMA and SHERIFF REGALADO**

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe,<br><br>*Plaintiff*,<br><br>v.<br><br>TULSA COUNTY, OKLAHOMA; STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma; and VIC REGALADO, in his official capacity as Tulsa County Sheriff,<br><br>*Defendants*. | Case No. 25-cv-75-GKF-JFJ |

**NATION'S COMBINED REPLY BRIEF IN SUPPORT OF ITS MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**MCN Appendix Page 172**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. ii

REPLY TO DISTRICT ATTORNEY ................................................................................1

I.  Legal Standard .............................................................................................1

II.  The Nation Has a Strong Likelihood of Success on the Merits. ...........................2

    A.  The Jurisdictional Rule of *McGirt* Is Not Limited to the Major Crimes Act...........2

    B.  *Castro-Huerta* Has No Applicability to This Case. ...................................................4

    C.  This Court Cannot Accept the District Attorney's Invitation To Depart from *McGirt* and *Ute Indian Tribe*. ......................................................................................6

    D.  Federal Law Does Not Distinguish Between Member and Non-Member Indians for Criminal Jurisdiction Purposes.........................................................8

    E.  The District Attorney's Reliance on *Tulsa v. O'Brien* Is Misplaced. ......................10

III.  The District Attorney's Irreparable Harm Arguments Fail. .............................11

IV.  The District Attorney's Arguments Regarding the Balance of Equities and the Public Interest Are Meritless. ......................................................................13

REPLY TO SHERIFF ......................................................................................................14

REPLY TO TULSA COUNTY ......................................................................................16

CONCLUSION..................................................................................................................16

i

MCN Appendix Page 173

## TABLE OF AUTHORITIES

**Cases**

*Arostegui-Maldonado v. Garland*,
   75 F.4th 1132 (10th Cir. 2023) ............................................................................. 7

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*,
   562 F.3d 1067 (10th Cir. 2009) ............................................................................ 1

*Bosse v. Oklahoma*,
   580 U.S. 1 (2016) ................................................................................................. 6

*Brunson v. Provident Funding Assocs.*,
   608 F. App'x 602 (10th Cir. 2015) ........................................................................ 2

*Bucklew v. Precythe*,
   587 U.S. 119 (2019) ............................................................................................. 3

*Chicago United Industries, Ltd. v. City of Chicago*,
   445 F.3d 940 (7th Cir. 2006) ............................................................................... 2

*City of Tulsa v. O'Brien*,
    Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024) ....... 10, 11, 15

*County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation*,
   502 U.S. 251 (1992) ............................................................................................. 5

*Draper v. United States*,
   164 U.S. 240 (1896) ............................................................................................. 5

*Duro v. Reina*,
   495 U.S. 676 (1990) ...................................................................................... 8, 9, 10

*Dutcher v. Matheson*,
   840 F.3d 1183 (10th Cir. 2016) ............................................................................11

*Estate of Crowell ex rel. Boen v. Board of County Commissioners*,
   237 P.3d 134 (Okla. 2010) ................................................................................... 16

*Ex parte Crow Dog*,
   109 U.S. 556 (1883) ............................................................................................. 3

*Federal Trade Commission v. Elite IT Partners, Inc.*,
   91 F.4th 1042 (10th Cir. 2024) ............................................................................ 7

*Hagen v. Utah*,
   510 U.S. 399 (1994) ...................................................................................... 3, 4, 8

ii

*Hewitt v. Parker*,
No. 08-CV-227-TCK-TLW, 2012 WL 380335 (N.D. Okla. Feb. 6, 2012) ................................11

*Hudson v. Harpe*,
No. 23-6181, 2024 WL 262695 (10th Cir. Jan. 24, 2024) ........................................................ 4

*LaRock v. Wisconsin Department of Revenue*,
621 N.W.2d 907 (Wisc. 2001) ...............................................................................................11

*Mallory v. Norfolk Southern Railway Co.*,
600 U.S. 122 (2023) ............................................................................................................. 6

*McGirt v. Oklahoma*,
591 U.S. 894 (2020) ..................................................................................................... passim

*Michigan v. Bay Mills Indian Community*,
572 U.S. 782 (2014) ........................................................................................................... 10

*Muscogee (Creek) Nation v. Oklahoma Tax Commission*,
2009 WL 10695371 (N.D. Okla. Nov. 19, 2009) ................................................................. 12

*Nevada v. Hicks*,
533 U.S. 353 (2001) ............................................................................................................. 5

*New York ex rel. Cutler v. Dibble*,
62 U.S. 366 (1858) .............................................................................................................. 5

*New York ex rel. Ray v. Martin*,
326 U.S. 496 (1946) ............................................................................................................. 5

*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022) ..................................................................................................... passim

*Oneok, Inc. v. Southern Union Co.*,
No. 99-CV-345-H(M), 1999 WL 34861197 (N.D. Okla. May 11, 1999) ................................ 2

*Organized Village of Kake v. Egan*,
369 U.S. 60 (1962) ............................................................................................................. 5

*People for Ethical Treatment of Property Owners v. U.S. Fish and Wildlife Service*,
852 F.3d 990 (10th Cir. 2017) .............................................................................................. 9

*Prairie Band of Potawatomi Indians v. Pierce*,
253 F.3d 1234 (10th Cir. 2001) ...................................................................................... 2, 12

*Pryor v. School District No. 1*,
99 F.4th 1243 (10th Cir. 2024) ............................................................................................. 2

iii

*Rice v. Rehner*,
  463 U.S. 713 (1983) ........................................................................................................ 9

*Rivers v. Roadway Express, Inc.*,
  511 U.S. 298 (1994) ........................................................................................................ 3

*Schrier v. University of Colorado*,
  427 F.3d 1253 (10th Cir. 2005) ...................................................................................... 2

*Shinn v. Ramirez*,
  596 U.S. 366 (2022) ..................................................................................................... 3, 5

*State v. R.M.H.*,
  617 N.W.2d 55 (Minn. 2000) .........................................................................................11

*State v. Shale*,
  345 P.3d 776 (Wash. 2015) ............................................................................................11

*Stephens v. Jones*,
  494 F. App'x 906 (10th Cir. 2012) .................................................................................. 2

*Strain v. Regalado*,
  977 F.3d 984 (10th Cir. 2020) ........................................................................................ 7

*Sunnyside Coal Co. v. Director, Office of Workers' Compensation Programs*,
  112 F.4th 902 (10th Cir. 2024) ....................................................................................... 9

*Surplus Trading Co. v. Cook*,
  281 U.S. 647 (1930) ........................................................................................................ 5

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
  460 U.S. 533 (1983) ........................................................................................................ 6

*United States v. Doe*,
  865 F.3d 1295 (10th Cir. 2017) ...................................................................................... 7

*United States v. Lara*,
  541 U.S. 193 (2004) ........................................................................................................ 9

*United States v. Little*,
  119 F.4th 750 (10th Cir. 2024) ..................................................................................... 15

*United States v. McBratney*,
  104 U.S. 621 (1881) ........................................................................................................ 5

*United States v. Patterson*,
  Case No. CR-20-71-RAW, 2021 WL 633022 (E.D. Okla. Feb. 18, 2021) .............................. 15

iv

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*,
  790 F.3d 1000 (10th Cir. 2015) .................................................................................. passim

*Wacondo v. Concha*,
  873 P.2d 276 (N.M. Ct. App. 1994) ...................................................................................11

*Ward v. Fisher*,
  Case No. 23-CV-554-JFH-JFJ, 2024 WL 2965640 (N.D. Okla. June 12, 2024)........................ 7

*Washington v. Confederated Tribes of Colville Indian Reservation*,
  447 U.S. 134 (1980) .......................................................................................... 9

*Williams v. Platt*,
  No. CIV-03-281-C, 2006 WL 3097184 (W.D. Okla. Oct. 30, 2006) ......................................... 2

*Wirtz v. Regalado*,
  Case No. 18-CV-0599-GKF-FHM, 2020 WL 1016445 (N.D. Okla. Mar. 2, 2020) ................. 16

*Wyandotte Nation v. Sebelius*,
  443 F.3d 1247 (10th Cir. 2006) ................................................................................ 12, 13

**Statutes**

18 U.S.C. § 1152 ................................................................................................... 3

18 U.S.C. § 1153 (Major Crimes Act) ................................................................... passim

Okla. Stat. Ann. tit. 19, § 180.61 ........................................................................ 14

Okla. Stat. Ann. tit. 19, § 516 ............................................................................. 14

Okla. Stat. Ann. tit. 51, § 24A.3(5) ..................................................................... 14

**Legislative Reports**

H.R. Conf. Rep. No. 101-938, 1990 WL 201576 ....................................................... 10

H.R. Rep. No. 102-61 ........................................................................................... 10

**Other Authorities**

Tulsa County Sheriff's Office, Criminal Investigations Division (CID) (webpage) .....................15

MCN Appendix Page 177

**REPLY TO DISTRICT ATTORNEY**

The District Attorney posits an array of arguments to escape the controlling force of *McGirt v. Oklahoma*, 591 U.S. 894 (2020), and *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015), and to recast *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), as a case about state criminal jurisdiction over Indians. All of them fail.

## I.    Legal Standard

The District Attorney contends that the Nation's requested preliminary injunction is disfavored and subject to a heightened standard because it (1) alters the status quo; (2) is mandatory; and (3) provides all the relief the Nation could recover by a trial on the merits. Kunzweiler Br. 8–9. The argument is a red herring because, as explained below, the Nation's motion amply satisfies any applicable standard, heightened or not. In any event, the requested preliminary injunction meets none of the disfavored criteria.

First, "[a]n injunction disrupts the status quo when it changes the last peaceable uncontested status existing between the parties *before the dispute developed*." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070–71 (10th Cir. 2009) (emphasis added) (quotation marks omitted). Here, the last uncontested status between the parties followed *McGirt*, when the District Attorney agreed with the Nation that prosecutions of Indians within the Creek Reservation "fall out of the jurisdiction of the State," Brief of Amici Curiae (including District Attorney Kunzweiler), *Castro-Huerta* (No. 21-429), 2022 WL 729178, at *13, *17. This remained the uncontested status quo until the District Attorney began prosecuting Indians several years later. Far from disrupting a peaceable status quo, then, the Nation's motion seeks to return to the circumstances that existed prior to the disruption caused by the District Attorney's current,

1

contested position. *See Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024) ("Plaintiff

contested the Restrictions. So the last peaceable status quo existed *before* the Restrictions[.]").

Second, the Nation's requested injunction is clearly prohibitory rather than mandatory. It

seeks to enjoin illegal prosecutions of Indians on the Creek Reservation. It does not become

mandatory simply because it would incidentally require one-time actions to dismiss the pending

prosecutions, *see* Kunzweiler Br. 8, which would hardly require the "ongoing supervision" of the

Court, *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (citation omitted).

Third, the requested injunction would not "provide all the relief Plaintiff could expect

from a trial win," Kunzweiler Br. 9. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d

1234 (10th Cir. 2001), makes clear that this applies only where the preliminary relief has an

effect that "cannot be undone[.]" *Id.* at 1247 (citation omitted) (providing examples, including an

order requiring disclosure of confidential information). This is not such a case.[1]

## II.   The Nation Has a Strong Likelihood of Success on the Merits.

### A.   The Jurisdictional Rule of *McGirt* Is Not Limited to the Major Crimes Act.

The District Attorney contends that *McGirt* is limited to the Major Crimes Act, 18 U.S.C.

§ 1153 (MCA), because it states that "Congress allowed only the federal government, not the

---

[1] The Nation's request for a temporary restraining order is governed by the same standard as its preliminary injunction request. *See* Nation Prelim. Inj. Mot. 6. The District Attorney contends that Rule 65(b) "only" permits temporary restraining orders "without notice." Kunzweiler Br. 6. That is not correct. *See Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 946 (7th Cir. 2006) (Posner, J.) ("Rule 65(b) … imposes *additional* restrictions on temporary restraining orders issued without notice" but otherwise applies to "*all* TROs."); *Oneok, Inc. v. S. Union Co.*, No. 99-CV-345-H(M), 1999 WL 34861197, at *7 (N.D. Okla. May 11, 1999) (affirming "temporary restraining order with notice under Fed.R.Civ.P. 65"); *Brunson v. Provident Funding Assocs.*, 608 F. App'x 602, 606 (10th Cir. 2015) (upholding TRO granted after notice and hearing). The District Attorney's caselaw, Kunzweiler Br. 6–7, simply consists of courts recounting magistrate recommendations that were not objected to on the relevant issue. *See Stephens v. Jones*, 494 F. App'x 906, 909 (10th Cir. 2012); *Williams v. Platt*, No. CIV-03-281-C, 2006 WL 3097184, at *1 (W.D. Okla. Oct. 30, 2006).

2

States, to try tribal members for *major crimes*. All our decision today does is vindicate that replacement promise." Kunzweiler Br. 11 (quoting *McGirt*, 591 U.S. at 934 (emphasis by District Attorney)).

But the quoted statement is "simply a customary nod to the truism that we decide only the case before us," *Shinn v. Ramirez*, 596 U.S. 366, 387 (2022) (citation omitted). That the *McGirt* Court decided the case before it hardly suggests that the decision has no force beyond its facts. *See Bucklew v. Precythe*, 587 U.S. 119, 136 (2019) ("[J]ust as binding as this [Court's] holding is the reasoning underlying it."). Indeed, "[t]he essence of judicial decisionmaking [is] applying general rules to particular situations[.]" *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994). And the general rule applied by *McGirt* is clear: "State courts *generally* have no jurisdiction to try Indians for conduct committed in Indian country." 591 U.S. at 898 (emphasis added) (quotation marks omitted). Accordingly, "this Court has long 'require[d] a clear expression of the intention of Congress' before the state … may try Indians for conduct on their lands." *Id*. at 929 (brackets in original) (quoting *Ex parte Crow Dog*, 109 U.S. 556, 572 (1883)).

The Court's citation to *Crow Dog* belies any claim that it understood itself to be applying a rule confined to the MCA. *Crow Dog* predates the MCA and makes clear that the rule derives from "the general policy of the government towards the Indians, as declared in many statutes and treaties, and recognized in many decisions of this court, from the beginning to the present time." 109 U.S. at 572. *Crow Dog* itself involved the predecessor statute to the General Crimes Act, 18 U.S.C. § 1152, and according to the District Attorney, "the State prosecutions at issue here fall under the General Crimes Act," Kunzweiler Br. 3.

Nor does the District Attorney square his argument with *Hagen v. Utah*, 510 U.S. 399 (1994), which recognizes the applicability of the same rule in the context of a non-member

3

Indian and a non-MCA offense. *See* Nation Prelim. Inj. Mot. ("Mot.") 9; *Hagen*, 510 U.S. at

401–02, 408 ("Congress has not granted criminal jurisdiction to … Utah to try crimes committed

by Indians in Indian country," and therefore, only if the locus of the crime "is not in Indian

country" did Utah "properly exercise[] criminal jurisdiction over petitioner, an Indian[.]"

(quotation marks omitted)). And *Ute Indian Tribe*, another non-MCA case also controlling here,

is equally clear that "unless Congress provides an exception to the rule … states possess no

authority to prosecute Indians for offenses in Indian country." 790 F.3d at 1004 (quotation marks

omitted).

### B.    *Castro-Huerta* Has No Applicability to This Case.

The District Attorney contends that "Plaintiff claims … that the *Castro-Huerta* default

rule applies only to conduct by non-Indians because the Court did not explicitly address the

defendant's membership status." Kunzweiler Br. 16. He includes no cite to the Nation's brief

because it contains no such argument. Instead, the Nation argues that *Castro-Huerta* limits its

reach to non-Indians because the Court said so, emphatically and repeatedly. *See, e.g.*, 597 U.S.

at 648 (referring to state criminal jurisdiction over non-Indians in Indian country as "the narrow

jurisdictional issue in this case" and distinguishing it from "other crimes committed in Indian

country, such as crimes committed by Indians"); *id*. at 639 n.2 (describing state jurisdiction "over

crimes committed by Indians" as "a question not before us"); *id.* at 650 n.6 ("*We express no view

on state jurisdiction over a criminal case of that kind.*" (emphasis added)); *id.* at 655 n.9 ("*To

reiterate, we do not take a position on that question.*" (emphasis added)).[2]

---

[2] *See also Hudson v. Harpe*, No. 23-6181, 2024 WL 262695, at *1 (10th Cir. Jan. 24, 2024)
(stating, on denial of Indian criminal defendant's application for certificate of appealability, that
"[b]ecause Mr. Hudson is a member of the Muscogee (Creek) Nation—and therefore, an
Indian—*Castro-Huerta* does not apply to this case" and that "[n]o reasonable jurist would
conclude" otherwise).

*Castro-Huerta*'s disclaimers exemplify what the Court has described as "unusually explicit" and "aggressively limiting language" that "foreclose[s] any extension" of the case "beyond the narrow" issue it addresses, *Shinn*, 596 U.S. at 387 (quotation marks and citations omitted). And yet the District Attorney—who derides the Nation for "distort[ing], "shirk[ing]," and "ignor[ing]" *Castro-Huerta*, Kunzweiler Br. 1–2—*nowhere* acknowledges the Supreme Court's repeated and express limitations on the decision's reach. As his silence confirms, the District Attorney cannot reconcile his position with the Court's express limiting language.

Nor does the District Attorney grapple with *Castro-Huerta*'s cited authorities. He states:

> Notably, the parties at least agree that "*Castro-Huerta* … does not disturb the long-settled precedents of the Supreme Court directly addressing state jurisdiction over Indians." Mot. 12–13. The key difference is that, contrary to Plaintiff, Defendant accepts and applies the long-settled precedent relied on by the *Castro-Huerta* majority.

*Id*. at 12 n.6.

The problem for the District Attorney is that the number of precedents cited in *Castro-Huerta* that uphold state criminal jurisdiction over Indians in Indian country absent congressional assent is *zero*. Of the eight cases the Court cited for the "overarching jurisdictional principle dating back to the 1800s" that serve as the precedential foundation of its holding, 597 U.S. at 637, *not one* involves state criminal jurisdiction over an Indian in Indian country.[3]

*Castro-Huerta*'s limitation of its default rule to cases involving non-Indian defendants reflects its reliance on the Tenth Amendment as the wellspring of state criminal authority in

---

[3] *See* 597 U.S. at 636–38 (citing *New York ex rel. Cutler v. Dibble*, 62 U.S. 366, 370 (1858) (non-Indian conduct); *Cnty. of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation*, 502 U.S. 251, 257–58 (1992) (same); *United States v. McBratney*, 104 U.S. 621, 621 (1881) (same); *Draper v. United States*, 164 U.S. 240, 241 (1896) (same); *New York ex rel. Ray v. Martin*, 326 U.S. 496, 498 (1946) (same); *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 62 (1962) (off-reservation Indian conduct); *Nevada v. Hicks*, 533 U.S. 353, 355 (2001) (same); *Surplus Trading Co. v. Cook*, 281 U.S. 647, 651 (1930) (non-Indian property in military reserve)).

5

MCN Appendix Page 182

Indian country. As the Nation has discussed in detail—invoking over a century of Supreme Court

precedent, including *Castro-Huerta*—the Tenth Amendment reserves no powers to states in areas

where the Constitution vests them exclusively in the United States, including criminal

jurisdiction over Indians in Indian country. Accordingly, before states may assert such

jurisdiction, Congress must confer it. *See* Mot. 13–16 (discussing same).

The District Attorney's *entire* rebuttal to this argument is: "This, of course, flies in the

face of the default—and controlling—rule set out in *Castro-Huerta*." Kunzweiler Br. 15. This

perfunctory and circular response assumes the very premise it asks this Court to accept. The

District Attorney has no answer for *Castro-Huerta*'s Tenth Amendment underpinning.

### C. This Court Cannot Accept the District Attorney's Invitation To Depart from *McGirt* and *Ute Indian Tribe*.

The District Attorney contends that, in urging that *McGirt* rather than *Castro-Huerta*

controls, the Nation "shrugs off a bedrock principle of Supreme Court jurisprudence: that the

most recent decision becomes the governing rule[.]" *Id.* at 3. This argument shrugs off his full

agreement elsewhere that "*Castro-Huerta* … does not disturb the long-settled precedents of the

Supreme Court directly addressing state jurisdiction over Indians." *Id.* at 12 n.6 (ellipsis in

original) (quoting Mot. 12–13). His self-contradictions aside, the District Attorney clearly asks

this Court to hold that *Castro-Huerta* upended prior precedent addressing state criminal

jurisdiction over Indians, such that this Court can decline to apply that prior precedent.

But doing so would be legal error. The Supreme Court's "decisions remain binding

precedent until [the Court] see[s] fit to reconsider them[.]" *Bosse v. Oklahoma*, 580 U.S. 1, 3

(2016) (citation omitted). "Until that occurs, [prior precedent] is the law," *Thurston Motor Lines,*

*Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983), "even if the lower court thinks the [prior]

precedent is in tension with" a later decision, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136

6

(2023). Thus, because *Castro-Huerta* expressly disclaims any intent to address state criminal jurisdiction over Indians, lower courts have no authority to depart from *McGirt*'s instruction that such jurisdiction is foreclosed absent congressional assent. *See* Mot. 18–19 (discussing same). The District Attorney nowhere responds to this argument, and "[c]ourts routinely deem an issue 'waived' when a party fails to respond to a movant's substantive argument," *Ward v. Fisher*, Case No. 23-CV-554-JFH-JFJ, 2024 WL 2965640, at *4 (N.D. Okla. June 12, 2024) (citation omitted), *aff'd*, No. 24-5083, 2025 WL 1012868 (10th Cir. Apr. 1, 2025).

The same principle applies to Tenth Circuit precedents. Thus, independent of *McGirt*, the District Attorney cannot escape *Ute Indian Tribe*'s controlling admonition (in a non-MCA case) that absent congressional assent, "states possess no authority to prosecute Indians for offenses in Indian country." 790 F.3d at 1004 (quotation marks omitted). Because *Castro-Huerta* "express[es] no view on state jurisdiction over a criminal case of that kind," 597 U.S. at 650 n.6, this Court cannot decline to apply the rule affirmed in *Ute Indian Tribe*. Even a Circuit panel cannot depart from prior Circuit precedent based on a subsequent Supreme Court decision, unless the decision "clearly overrule[s] our precedent[.]" *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023) (quotation marks omitted). Accordingly, Tenth Circuit precedents "remain good law unless the Supreme Court has *indisputably and pellucidly abrogated* them." *Fed. Trade Comm'n v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1051 (10th Cir. 2024) (emphasis added) (quotation marks omitted), *cert. denied*, 145 S. Ct. 150 (2024); *see also United States v. Doe*, 865 F.3d 1295, 1299 (10th Cir. 2017) (where Supreme Court decision reflects "the … Court's careful efforts to cabin the narrow … question before it," thus "clarifying what the case before it was *not* about," it "left undisturbed the bedrock principles we relied on in" prior Circuit precedent on issues beyond those stated limitations); *Strain v. Regalado*, 977

7

MCN Appendix Page 184

F.3d 984, 993 (10th Cir. 2020) (where Supreme Court decision does not "pronounce its application" to an issue, "we cannot overrule our precedent on this issue"). Given *Castro-Huerta*'s repeated disclaimers of intent to address criminal jurisdiction over Indians, it simply cannot be held to have upended prior Circuit precedent on that issue. *Ute Indian Tribe* controls.

**D.    Federal Law Does Not Distinguish Between Member and Non-Member Indians for Criminal Jurisdiction Purposes.**[4]

The District Attorney repeatedly invites this Court to distinguish between member and non-member Indians, but federal law permits no such distinction in the criminal context. *McGirt* applies the presumptive rule against state jurisdiction to a non-member Indian defendant; and *Hagen* affirms the applicability of the same rule to a non-member Indian for a non-MCA offense. *See supra* pp. 3-4. While the Nation briefed this aspect of both cases, Mot. 8–9, the District Attorney addresses neither. Instead, seeking refuge where none is to be found, he asserts that "*Castro-Huerta* made no distinction between member and non-member Indians," Kunzweiler Br. 16. The point is both true and self-defeating. *See Castro-Huerta*, 597 U.S. at 639 n.2 (describing state jurisdiction "over crimes committed by Indians" as "a question not before us").

The District Attorney's reliance on *Duro v. Reina*, 495 U.S. 676 (1990), fares no better. The *Duro* majority and dissent both understood that a jurisdictional gap would result if the Court held that tribes lacked jurisdiction over non-major crimes by non-member Indians, due to the lack of state jurisdiction over such crimes; they simply disagreed on whether that fact should affect the outcome of the case. *See* Mot. 10–11. The District Attorney has no response to these

---

[4] In its April 11, 2025 Order (Doc. 44), this Court denied intervention to two movants. The Nation agrees that those denials are fully warranted under the law. However, as part of its analysis, the Court suggested that the Nation's suit is limited to the issue of jurisdiction over non-member Indians. *See id*. at 3. To be clear, because federal law does not distinguish between member and non-member Indians for purposes of criminal jurisdiction, the Nation has framed its requested relief with respect to Indians generally. *See, e.g.*, Compl., ¶¶ 34–36.

points except to note that the Nation cited the dissent, Kunzweiler Br. 11 & n.4, but the Nation

did so to demonstrate the dissent's agreement with the majority on the issue, Mot. 10–11.

Congress also understood that *Duro* left a jurisdictional gap because of the lack of state

criminal jurisdiction over non-member Indians, and closing the gap by reaffirming tribal

jurisdiction was indeed Congress's purpose in enacting the *Duro* Fix. *See id*. at 12. The District

Attorney's only response is to note that in making this point the Nation cites legislative history.

Kunzweiler Br. 11 & n.5. But the Nation did so not to overcome or even interpret statutory text,

but to demonstrate Congress's understanding of the legal context within which it enacted the

*Duro* Fix—which is precisely how the Supreme Court used the same legislative history when

assessing the same statute. *See United States v. Lara*, 541 U.S. 193, 199 (2004); *see also*

*Sunnyside Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 112 F.4th 902, 912–13 (10th Cir.

2024) ("Congress's purpose in passing the law is verified by a Senate [Committee] Report ….

[that] indicates the Senate's awareness of" the issue the law sought to address); *People for*

*Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*, 852 F.3d 990, 1006 (10th Cir.

2017) (looking to House and Senate Reports to determine what "the statutory scheme was

intended" to accomplish).

The District Attorney's reliance on *Washington v. Confederated Tribes of Colville Indian*

*Reservation*, 447 U.S. 134 (1980), is equally infirm. *Colville* "held that [non-member Indians] …

'stand on the same footing as non-Indians' … *insofar as imposition of tax on cigarette sales is*

*concerned*." *Rice v. Rehner*, 463 U.S. 713, 720 n.7 (1983) (emphasis added). It so held, in part,

because of non-member Indians' purported lack of beneficial participation in tribal affairs. *See*

447 U.S. at 161. As the District Attorney notes, *Duro* extended this reasoning to the criminal

context. Kunzweiler Br. 17–18. In fact, *Duro* quotes *Colville*'s "same footing" passage, 495 U.S.

9

at 687; echoes *Colville*'s views on non-member Indians' purported lack of participation in tribal affairs, *id*. at 688, 693; and concludes that therefore, "[f]or purposes of criminal jurisdiction, petitioner's relations with this Tribe are the same as the non-Indian's," *id*. at 688.

All of this gets the District Attorney nowhere (and again is self-defeating) because in enacting the *Duro* fix, Congress took note of the *Duro* Court's reasoning—*see* H.R. Rep. No. 102-61, at 2–3 (1991) ("Since Duro could not vote in tribal elections, hold tribal office, or sit on a tribal jury, the Supreme Court viewed his relationship with the tribe as the functional equivalent of a non-Indian.")—and unequivocally repudiated its extension to the criminal context:

> *Congress has recognized* that tribal governments afford a broad array of rights and privileges to non-tribal members. Non-tribal member Indians own property on Indian reservations, their children attend tribal schools, their families receive health care from tribal hospitals and clinics. Federally-administered programs and services are provided to Indian people because of their status as Indians, without regard to whether their tribal membership is the same as their reservation residence. The issue of who is an Indian for purposes of Federal law is well-settled as a function of two hundred years of Constitutional and case law and Federal statutes.

H.R. Conf. Rep. No. 101-938, 1990 WL 201576, at *104 (emphasis added). The District Attorney has given this Court no basis to second guess Congress's reasoning. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 803 (2014) (Courts should not "replace Congress's considered judgment" with their own because "[j]udicial deference to the paramount authority of Congress in matters concerning Indian policy remains a central and indispensable principle of the field of Indian law." (citation omitted)).

### E.    The District Attorney's Reliance on *Tulsa v. O'Brien* Is Misplaced.

The District Attorney contends that the Nation's action is "an impermissible collateral attack on the OCCA's decision in" *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL

MCN Appendix Page 187

5001684 (Okla. Crim. App. Dec. 5, 2024), and that the Nation "even flaunts its improper

collateral attack" by explaining how the OCCA erred. Kunzweiler Br. 2. The argument again is

grounded in rhetoric rather than law. The District Attorney does not endeavor to explain how this

suit can constitute an impermissible collateral attack on a state case to which the Nation was not

a party, had no rights of appeal, and by which it is not bound.

The argument is also a red herring. The Nation has explained in detail how *O'Brien*

contradicts federal law, *see* Mot. 17–20, and the District Attorney makes no attempt to explain

how the Nation is wrong. He simply peppers his brief with quotes from *O'Brien* as though it

were binding precedent and contends that it "legitimized" his prosecutions. Kunzweiler Br. 20.

Under this spurious reasoning, Oklahoma's prosecution of the defendant in *McGirt* was

"legitimized" by his conviction in the state courts. The Supreme Court obviously saw things

differently; and like it, this Court "owes no deference to the OCCA's adjudication of" federal

issues, *Hewitt v. Parker*, No. 08-CV-227-TCK-TLW, 2012 WL 380335, at *4 (N.D. Okla. Feb. 6,

2012); *see also Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016) ("[W]e are not bound

by a state court interpretation of federal law." (citation omitted)).[5]

### III.    The District Attorney's Irreparable Harm Arguments Fail.

The District Attorney's grab-bag of irreparable harm arguments fails at every turn.

He first contends that the Nation cannot establish irreparable harm because it does not "provide

any details about how the ongoing prosecutions of non-member Indians by Defendant violate its

---

[5] The District Attorney's other state cases, Kunzweiler Br. 17, 21, are likewise non-binding and
are inapposite. Three are civil cases, s*ee State v. R.M.H.*, 617 N.W.2d 55, 60 (Minn. 2000);
*Wacondo v. Concha*, 873 P.2d 276 (N.M. Ct. App. 1994); and *LaRock v. Wis. Dep't of Revenue*,
621 N.W.2d 907 (Wisc. 2001), and the lone criminal case involved an express grant of state
jurisdiction, *see State v. Shale*, 345 P.3d 776, 782 n.11 (Wash. 2015) ("Public Law 280 and RCW
37.12.010 [state statute accepting PL280 jurisdiction] together do grant such jurisdiction.").

MCN Appendix Page 188

sovereignty[.]" Kunzweiler Br. 20. In fact, the Nation has addressed the issue extensively. *See*

Mot. 20–22 (discussing impacts on the Nation's rights of self-government in light of *Ute Indian*

*Tribe*, *Wyandotte Nation v. Sebelius*, 443 F.3d 1247 (10th Cir. 2006), and *Prairie Band*). And the

District Attorney's caselaw does not undermine the Nation's arguments. In *Muscogee (Creek)*

*Nation v. Oklahoma Tax Commission*, Case No. 09-CV-285-TCK-TLW, 2009 WL 10695371

(N.D. Okla. Nov. 19, 2009), the Court found that the Nation had failed to provide adequate

details of how an assertion of state jurisdiction *outside* of the Nation's Indian country could

impact its sovereignty. *See id*. at *4. The Court distinguished that situation from *Wyandotte*

*Nation*, which, as here, involved "the enforcement of a state law *on Indian land*," *id*. (citing

*Wyandotte Nation*, 443 F.3d at 1255 (emphasis by Court)).

The District Attorney's attempt to distinguish *Ute Indian Tribe* based on the non-member

Indian distinction, Kunzweiler Br. 20, is meritless for the reasons stated above. *See supra* Section

II.D. Likewise meritless is his contention that the Nation is not suffering irreparable harm

because "Defendant has been exercising concurrent jurisdiction to prosecute non-member

Indians in Indian country for more than half a century," Kunzweiler Br. 20; *see McGirt*, 591 U.S.

at 934, 937–38 ("the magnitude of a legal wrong is no reason to perpetuate it" and "[u]nlawful

acts, performed long enough and with sufficient vigor, are never enough to amend the law").

The District Attorney's contention that state prosecution of non-member Indians cannot

irreparably harm the Nation because "other states are doing just fine," Kunzweiler Br. 21, is

baffling. First, the irreparable harm analysis focuses on the plaintiff alleging the harm, not on the

defendant inflicting it. Second, two of the state cases he cites for that proposition are civil, and in

the other the state enjoyed criminal jurisdiction by express grant of Congress. *See supra* p. 11

n.5. Third, none of those cases addresses how the states or tribes "are doing," fine or otherwise.

MCN Appendix Page 189

Finally, the District Attorney contends that the Nation cannot show irreparable harm because "[o]f course, any authority Plaintiff has to prosecute the same criminal conduct is unaffected by the State's prosecution of the crimes." Kunzweiler Br. 21. Prefacing an argument with "of course" is no substitute for supporting it with legal authority, which the District Attorney does not provide, *see id*. The Nation has set forth in detail how the District Attorney's prosecutions interfere with its sovereignty, with citation to Tenth Circuit and Supreme Court precedent. *See* Mot. 21–22. The District Attorney addresses none of it.

## IV.   The District Attorney's Arguments Regarding the Balance of Equities and the Public Interest Are Meritless.

The District Attorney cites various Supreme Court opinions regarding states' important interests in criminal law enforcement. Kunzweiler Br. 22. None of them addresses a state's interest in enforcing its criminal laws against Indians. *See id*. But *Ute Indian Tribe* does, directly and extensively, on facts materially identical to this case, *see* Mot. 22–23, and in response to similar arguments by the State of Utah.[6] And *Ute* concludes that "there's no question who has the better of it. On the Tribe's side of the ledger lies … the paramount federal policy of ensuring that Indians do not suffer interference with their efforts to develop … strong self-government," while the state interests under such facts approach "the vanishing point." 790 F.3d at 1007 (second ellipsis in original) (quotation marks omitted).

The Nation briefed all of this extensively in its balance of harms and public interest arguments, and once again the District Attorney ignores all of it in his discussion of those issues, a discussion in which *Ute Indian Tribe*, an indisputably relevant precedent, makes no appearance. *See also Wyandotte Nation*, 443 F.3d at 1256 (because "the preliminary injunction

---

[6] *See* State of Utah's Answer Brief at 13–14, *Ute Indian Tribe* (No. 14-4034), 2014 WL 4180069, at *13–14.

MCN Appendix Page 190

does not permanently prevent the state from prosecuting violations of state gaming law on the Shriner Tract," but only "until these critical sovereignty issues can be adjudicated," "[g]ranting the injunction is in no way contrary to the public interest." (citation omitted)).

Finally, the District Attorney ends his brief by again ignoring contrary Circuit precedent. He contends that the concurrent jurisdiction he asserts would not impair the Nation's self-government because tribes and states are separate sovereigns and therefore "a second prosecution would not violate the Double Jeopardy Clause." Kunzweiler Br. 23. But the tribe and the state in *Ute Indian Tribe* were also separate sovereigns, and yet the balance of harms and the public interest favored the tribe such that "the district court should have issued a preliminary injunction," 790 F.3d at 1005. An injunction should likewise issue here.

### REPLY TO SHERIFF

Sheriff Regalado ("Sheriff") incorporates all the District Attorney's responsive arguments to the Nation's motion. Regalado and Tulsa Cnty. Br. ("Regalado Br.") 6. The Nation accordingly incorporates the reply arguments set forth above in this reply to the Sheriff. Additionally, the Sheriff contends that the Nation's motion should be denied because he lacks authority "to file any criminal charge against any person in any court for any crime." *Id.* at 5.

However, the Nation filed suit to stop *any* unlawful assertion of criminal jurisdiction by the defendants, not just the filing of charges. *See, e.g.*, Compl., ¶¶ 28–36. The Sheriff is a peace officer with powers of criminal investigation, enforcement, and arrest authority under Oklahoma law. *See* Okla. Stat. Ann. tit. 19, § 516 (setting forth duties of sheriff as peace officer); *id.* § 180.61 (sheriff among entities "charged with enforcing the laws relating to public peace and safety"); *id.* tit. 51, § 24A.3(5) (sheriff among entities "charged with enforcing state or local criminal laws and initiating criminal prosecutions"); *see also* Tulsa County Sheriff's Office,

14

Criminal Investigations Division (CID)[7] (describing criminal investigation division of Tulsa County Sheriff's Office). Such duties, when exercised with respect to Indian criminal suspects, fall squarely within the scope of the Nation's requested injunction against "assert[ing] criminal jurisdiction," Compl., ¶¶ 35–36; *see, e.g.*, *United States v. Little*, 119 F.4th 750, 766 (10th Cir. 2024) ("[O]fficers of the Jenks, Oklahoma, Police Department lacked jurisdiction when they investigated the homicide, arrested and interrogated Little [an Indian], and searched Little's home [within the Nation's Reservation.]"); *United States v. Patterson*, Case No. CR-20-71-RAW, 2021 WL 633022, at *3 (E.D. Okla. Feb. 18, 2021) ("In light of the *McGirt* decision, … Deputy Youngblood lacked jurisdictional authority to arrest Defendant [an Indian]."), *aff'd*, No. 21-7053, 2022 WL 17685602 (10th Cir. Dec. 15, 2022).

Indeed, as discussed in the Nation's Motion, the Sheriff has implemented a policy of booking, detaining, and incarcerating non-member Indians for conduct arising within the Creek Reservation. He has informed those under his authority—and also informed the Nation—that, in light of *O'Brien*, non-member Indians "will not be booked or charged into tribal courts but rather STATE court and booked into [the Tulsa County Jail] as any other citizen" and that "[t]he *only tribal arrests* that will take place will be Creek Citizens …. All others will be booked into [the Tulsa County Jail] and charged in Tulsa Co. District Court." Decl. of Att'y Gen. Geraldine Wisner ¶ 5, Ex. 2. (emphasis added). This is very much an assertion of jurisdiction the Nation seeks to enjoin.

The Sheriff contends that booking policy is not within his control because "Sheriff Regalado follows the direction of the applicable court—state or tribal—with respect to further detention, transfer, or release." Regalado Br. 5. But the Sheriff, not the courts, sets policy for the

---

[7] https://tcso.org/divisions/criminal-investigations-division-cid/.

15

County jail. *See Wirtz v. Regalado*, Case No. 18-CV-0599-GKF-FHM, 2020 WL 1016445, at \*13 (N.D. Okla. Mar. 2, 2020) ("Sheriff Regalado is the final policymaker for the jail [and] he is responsible for creating and enforcing the [jail's] policies and procedures[.]"); *Est. of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs*, 237 P.3d 134, 142 (Okla. 2010) (same). The booking policy is his, and given that it contravenes federal law, it forms the proper subject of an injunction. The Sheriff's contention that "[t]here is no activity of Sheriff Regalado to restrain or enjoin," Regalado Br. 5, accordingly contradicts both the facts and the law.[8]

### REPLY TO TULSA COUNTY

Tulsa County incorporates all the District Attorney's responsive arguments on the Nation's motion. *See* Regalado Br. 6. The Nation thus incorporates all the reply arguments set forth above in this reply to the County. Additionally, in its motion to dismiss and its response to the Nation's motion, the County contends that it is not a proper defendant. *See id.* at 2–4; Tulsa Mot. To Dismiss (Dkt. 39) at 3–6. To avoid burdening the Court with duplicative briefing, the Nation will address that issue in its response to the County's motion to dismiss, which it adopts by reference here.

### CONCLUSION

The Nation respectfully requests that its motion be granted.

---

[8] To be clear, the Nation does not seek to prevent the Sheriff from exercising law enforcement authority with respect to Indian suspects within the Reservation. *See* Mot. 23. However, he must do so under the parties' Cross-Deputization Agreement, which does not authorize the Sheriff to book Indian defendants into the county jail for violations of State law. *See* Wisner Decl. ¶ 2, Ex. 1, § 8(D).

MCN Appendix Page 193

Dated: April 21, 2025

Geraldine Wisner, OBA No. 20128
Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com


O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com


Philip H. Tinker
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

17

**MCN Appendix Page 194**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-CV-75-GKF-JFJ |
| | ) | |
| STEVE KUNZWEILER, in his official | ) | |
| Capacity as District Attorney for the | ) | |
| Fourteenth Prosecutorial District of | ) | |
| Oklahoma; and VIC REGALADO, in his | ) | |
| Official capacity as Tulsa County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff, the Muscogee (Creek) Nation, seeks a Temporary Restraining Order preventing the defendants from exercising criminal jurisdiction over Indians within the Nation's Reservation who are not members of the Nation.[1] The Nation contends immediate action is required because the defendants' exercise of criminal jurisdiction irreparably harms the Nation's sovereignty and self-government and unlawfully subjects non-member Indians within the Nation's Reservation to a criminal justice system other than the Nation's.[2]

"A temporary restraining order is an extraordinary remedy that is an exception rather than the rule, and courts do not grant it as a matter of right." *Heavy Petrol. Partners, LLC v. Atkins*, 2010 WL 11565423, at *2 (D. Kan. May 25, 2010). A party seeking a temporary restraining order must show:

---

[1] When a temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for preliminary injunction. 13 *Moore's Federal Practice*, § 65.31. Though it would be permissible to do so here, the Court exercises its discretion to address the motion as one for a temporary restraining order.

[2] Pursuant to Local Civil Rule 65-1(c), plaintiff submitted a completed TRO Information Sheet on April 18, 2025.

> (1) that it is substantially likely to succeed on the merits; (2) that it
> will suffer irreparable injury if the court denies the requested relief;
> (3) that its threatened injury without the restraining order outweighs
> the opposing party's injury under the restraining order; and (4) that
> the requested relief is not adverse to the public interest.

*Steede v. Levy*, 2025 WL 1029422, at *3 (D. Kan. April 7, 2025); *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). When the failure to satisfy one factor is dispositive, a court need not consider the other factors. *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021).

Irreparable Harm

Among the four factors listed above, "a showing of probable irreparable harm is the single most important prerequisite." *Dominion Video Sat., Inc. v. Echostar Sat. Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (internal quotations omitted).

To constitute irreparable harm, an injury must be certain, great, actual, "and not theoretical." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1243 (10th Cir. 2001). Irreparable harm is not harm that is "merely serious or substantial." *Id.* at 1250 (quoting *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976). "[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). (emphasis in original) (brackets, citations, and internal quotation marks omitted).

An intrusion on tribal sovereignty by enforcing state law on Indian land *can* constitute irreparable injury. *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171-72 (10th Cir.

2

1998).  But the Nation relies on case authority in which the injuries were – unlike the injury demonstrated thus far in this case – certain, great, actual, and not theoretical.

In *Prairie Band*, the State of Kansas was enforcing state motor vehicle registration and titling laws with respect to vehicles registered and titled by the tribe to tribal members.  The circuit panel held that the district court had not abused its discretion in determining that, without the preliminary injunction, the tribe would suffer irreparable harm.  The panel agreed that the injury to the tribe was "certain and great" and more than "merely serious or substantial."  Enforcement of the state's motor vehicle laws interfered with tribal self-government once the tribe enacted its own motor vehicle code.  The purpose of the tribal code was "to implement reasonable rules, regulations, and penalties essential to maintaining a safe transportation system" on the Reservation, something the tribe needed to do as a result of a significant increase in motor vehicles entering the Reservation to engage in gaming.  *Prairie Band*, 253 F.3d at 1237.

In *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 100 (10th Cir. 2015), a Utah county prosecuted a Ute tribal member for alleged traffic offenses on tribal lands.  Insofar as the state was prosecuting a tribal member for alleged offenses on tribal lands, the circuit panel concluded there was "just no room for debate" that the defendants' conduct constituted irreparable injury.

And in *Fisher v. Dist. Court of Sixteenth Jud. Dist.*, 424 U.S. 382 (1976), the Supreme Court held that a proceeding for adoption, by tribal members, of a son of tribal members, where all parties were residents of the Northern Cheyenne Indian Reservation and where no substantial part of conduct supporting the adoption petition took place off the reservation, was litigation arising on the reservation, and the tribal court had jurisdiction to the exclusion of Montana courts. The Court noted that state-court jurisdiction would plainly interfere with the powers of self-

3

government conferred upon the Northern Cheyenne Tribe and exercised though the Tribal Court and would create a substantial risk of conflicting adjudications affecting the custody of the child.

Here, in contrast to *Prairie Band, Ute*, and *Fisher*, the Nation has not yet identified certain, great, actual, and non-theoretical harm. It does not contend that defendants have denied the Nation of its jurisdiction to enforce its own criminal and traffic laws against non-member Indians. The defendants are not attempting to prosecute members of the Nation. And the Nation has not yet explained how state-court jurisdiction over non-member Indians plainly interferes with its powers of tribal self-government.

Balancing of the Equities and the Public Interest

The third and fourth factors—whether the threatened injury to the movant outweighs the injury to the party opposing the TRO and whether the TRO would not be adverse to the public interest—merge when the government is the party opposing the preliminary injunction. *Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1136, 1157 (W.D. Okla. 2024) (citing *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020)).

Both the Nation and the defendants have the duty to protect their residents, enforce their laws, and uphold justice within their territorial boundaries. While the Nation has the power to prosecute non-member Indians, *see* 25 U.S.C. § 1301(2) and *United States v. Lara*, 541 U.S. 193 (2004), it has not yet demonstrated that the harm to its interests pending resolution of the motion for preliminary injunction outweighs the injury to the defendants' interests in enforcing laws with respect to non-member Indians. In addition, the Nation has not persuaded this court that the requested order temporarily enjoining the defendants from exercising criminal jurisdiction over non-member Indians is not adverse to the public interest.

4

WHEREFORE, the plaintiff's Motion for Temporary Restraining Order [Doc. 45] is denied.

This matter is set for a scheduling conference on Monday, April 28, 2025 at 2:00 p.m. for the purpose of discussing whether the Court ought to rule on the defendants' Motions to Dismiss prior to addressing the plaintiff's Motion for Preliminary Injunction.

IT IS SO ORDERED this 23rd day of April, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

MCN Appendix Page 199

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe, | |
| *Plaintiff*, | |
| v. | Case No. 25-cv-75-GKF-JFJ |
| STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma; and VIC REGALADO, in his official capacity as Tulsa County Sheriff, | |
| *Defendants*. | |

**MUSCOGEE (CREEK) NATION'S COMBINED RESPONSE
TO DEFENDANTS' MOTIONS TO DISMISS**

MCN Appendix Page 200

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iii

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     The Nation Has Standing. ......................................................................................2

       A.     Legal Standard .............................................................................................2

       B.     The Nation Has Alleged an Injury Specific to the Nation. ....................................2

       C.     That the Defendants Have Limited Their Claims of Jurisdiction to Non-
              Member Indians Does Not Undermine the Nation's Standing. .............................5

       D.     The Nation's Injury Is Redressable by a Favorable Ruling from This
              Court. ...........................................................................................................6

II.    The Anti-Injunction Act and *Younger* Abstention Do Not Apply. .......................................8

       A.     The Anti-Injunction Act ................................................................................8

       B.     The *Younger* Abstention Doctrine...................................................................9

       C.     The District Attorney's Ongoing Prosecutions Are Not an Adequate Forum
              for the Nation To Litigate the Claims It Has Brought Before This Court. ..............9

       D.     A State's Claimed Interest in Prosecuting Indians in Indian Country Is
              Foreclosed as a Cognizable Interest Under the *Younger* Abstention
              Analysis......................................................................................................13

       E.     *Younger* Does Not Apply Because the Harm Alleged to Federally
              Protected Rights Is Irreparable......................................................................16

III.   *Colorado River* Abstention Does Not Apply. ................................................................18

       A.     The *Colorado River* Doctrine .......................................................................18

       B.     No Parallel State Proceeding Exists To Support *Colorado River*
              Abstention. .................................................................................................19

       C.     The Ongoing Prosecutions Are Not Adequate Vehicles To Resolve the
              Dispute Between the Defendants and the Nation. .............................................21

MCN Appendix Page 201

D.    The Federal Nature of the Issues Weighs Heavily Against *Colorado River* Abstention. .........................................................................................22

E.    Defendants' Forum Convenience and Piecemeal Litigation Arguments Fail. .........................................................................................22

IV.    Sheriff Regalado Is Not Entitled to Dismissal as a Matter of Law. ...................................23

CONCLUSION ...........................................................................................................................25

MCN Appendix Page 202

**TABLE OF AUTHORITIES**

**Cases**

*Ankenbrandt v. Richards*,
    504 U.S. 689 (1992) ............................................................................................. 9, 18

*Arostegui-Maldonado v. Garland*,
    75 F.4th 1132 (10th Cir. 2023) .................................................................................. 15

*BNSF Railway Co. v. City of Moore*,
    536 F. Supp. 3d 1225 (W.D. Okla. 2021) ................................................................. 21

*Brown ex rel. Brown v. Day*,
    555 F.3d 882 (10th Cir. 2009) ..................................................................................... 9

*Cheyenne-Arapaho Tribes of Oklahoma v. Oklahoma*,
    618 F.2d 665 (10th Cir. 1980) ..................................................................................... 4

*City of Tulsa v. O'Brien*,
    Case Number: S-2023-715, 2024 WL 5001684 (Okl. Crim. App. Dec. 5, 2024) ........... 6, 24, 25

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) ...................................................................................... passim

*Cressman v. Thompson*,
    719 F.3d 1139 (10th Cir. 2013) ................................................................................... 2

*Crown Point I, LLC v. Intermountain Rural Electric Association*,
    319 F.3d 1211 (10th Cir. 2003) ................................................................................. 10

*D.L. v. Unified School District No. 497*,
    392 F.3d 1223 (10th Cir. 2004) ...................................................................... 10, 11, 12

*Dayan-Varnum v. Dayan*,
    Case No. 23-CV-00052-SEH-MTS, 2025 WL 854905 (N.D. Okla. Mar. 19, 2025) ............... 21

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ................................................................................................ 12

*Dutcher v. Matheson*,
    840 F.3d 1183 (10th Cir. 2016) ................................................................................. 24

*Estate of Crowell ex rel. Boen v. Board of County Commissioners*,
    237 P.3d 134 (Okla. 2010) ....................................................................................... 25

**MCN Appendix Page 203**

*Federal Home Loan Bank Board v. Empie*,
    778 F.2d 1447 (10th Cir. 1985) ......................................................................11

*Federal Trade Commission v. Elite IT Partners, Inc.*,
    91 F.4th 1042 (10th Cir. 2024) ..................................................................... 15

*Fisher v. District Court*,
    424 U.S. 382 (1976) ....................................................................................... 5

*Fox v. Maulding*,
    16 F.3d 1079 (10th Cir. 1994) ................................................................. passim

*Global Impact Ministries v. Mecklenburg County*,
    No. 3:20-CV-00232-GCM, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021) ...............................12

*Great American Insurance Co. v. Gross*,
    468 F.3d 199 (4th Cir. 2006) ......................................................................20

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ....................................................................................14

*Hewitt v. Parker*,
    No. 08-CV-227-TCK-TLW, 2012 WL 380335 (N.D. Okla. Feb. 6, 2012) ............................. 24

*Hicks v. Miranda*,
    422 U.S. 332 (1975) ..................................................................................... 12

*Hooper v. City of Tulsa*,
    71 F.4th 1270 (10th Cir. 2023) ..................................................................... 18

*Hudson v. Harpe*,
    No. 23-6181, 2024 WL 262695 (10th Cir. 2024) .................................................... 15

*Imperial County, California v. Munoz*,
    449 U.S. 54 (1980) ....................................................................................... 8

*Initiative and Referendum Institute v. Walker*,
    450 F.3d 1082 (10th Cir. 2006) ........................................................... 2, 4, 5, 6

*JPMorgan Chase Bank, N.A. v. Fletcher*,
    No. 06-CV-624-GKF-SAJ, 2008 WL 151894 (N.D. Okla. Jan. 14, 2008) ......................... 21, 22

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) ..................................................................... 7

*Larson v. Valente*,
    456 U.S. 228 (1982) ..................................................................................... 7

iv

*Lee-Brinkman v. Birdsong,*
 No. CIV-23-99-RAW-GLJ, 2023 WL 3919757 (E.D. Okla. May 5, 2023) ............................ 20

*Matsumoto v. Labrador,*
 122 F.4th 787 (9th Cir. 2024) .................................................................................................. 7

*McGirt v. Oklahoma,*
 591 U.S. 894 (2020)..................................................................................................... passim

*Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,*
 425 U.S. 463 (1976).................................................................................................... 3, 4

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
 460 U.S. 1 (1983)............................................................................................. 19, 21, 22

*Oklahoma v. Castro-Huerta,*
 597 U.S. 629 (2022).................................................................................... 4, 14, 15, 24

*Organized Village of Kake v. Egan,*
 369 U.S. 60 (1962)...................................................................................................... 14

*Petrella v. Brownback,*
 697 F.3d 1285 (10th Cir. 2012) .................................................................................... 2

*Phoenix Energy Marketing Inc. v. Chase Oil Corp.,*
 Case No. 16-CV-1681-CVE-TLW, 2017 WL 2347188 (N.D. Okla. May 30, 2017).......... 20, 22

*Pinnacle Performance & Repair, Inc. v. City of Owasso,*
 No. 19-CV-183-TCK-JFJ, 2020 WL 1905681 (N.D. Okla. Apr. 17, 2020) .............................12

*Prairie Band of Potawatomi Indians v. Pierce,*
 253 F.3d 1234 (10th Cir. 2001) ...................................................................... 3, 4, 16, 18

*Pueblo of Pojoaque v. Biedscheid,*
 689 F. Supp. 3d 1033 (D.N.M. 2023) ........................................................................... 8

*Quapaw Tribe of Oklahoma v. Blue Tee Corp.,*
 653 F. Supp. 2d 1166 (N.D. Okla. 2009) ...................................................................... 3

*Requena v. Roberts,*
 893 F.3d 1195 (10th Cir. 2018) ................................................................................... 21

*Robinson v. Stovall,*
 646 F.2d 1087 (5th Cir. 1981) .....................................................................................12

*Roe # 2 v. Ogden,*
 253 F.3d 1225 (10th Cir. 2001)................................................................................. 9, 18

v

*Santana v. City of Tulsa,*
  359 F.3d 1241 (10th Cir. 2004) ................................................................... 21

*Schlagel v. Discount Tire Company of Colorado, Inc.,*
  No. 23-CV-02909-NYW-CYC, 2025 WL 316549 (D. Colo. Jan. 28, 2025) ...........................20

*Seifert v. Unified Government of Wyandotte County/Kansas City,*
  779 F.3d 1141 (10th Cir. 2015).................................................................21

*Seneca-Cayuga Tribe of Oklahoma v. Oklahoma ex rel. Thompson,*
  874 F.2d 709 (10th Cir. 1989) ........................................................... passim

*Smith v. Albany County School District No. 1 Board of Trustees,*
  121 F.4th 1374 (10th Cir. 2024) ....................................................... 2, 4, 5, 6

*Sprint Communications, Inc. v. Jacobs,*
  571 U.S. 69 (2013) ................................................................................. 9

*State v. Bohanan,*
  CM-2022-108 (Tulsa Cnty. Dist. Ct. Jan. 10, 2022) ...............................................17

*Strain v. Regalado,*
  977 F.3d 984 (10th Cir. 2020) ................................................................... 15

*Tony Alamo Christian Ministries v. Selig,*
  664 F.3d 1245 (8th Cir. 2012) .................................................................12

*Trimble v. FedEx Office and Print Services, Inc.,*
  Case No. 22-CV-000433-GKF-JFJ, 2023 WL 5695834 (N.D. Okla. July 28, 2023) ............... 16

*Tucker v. Reeve,*
  601 F. App'x 760 (10th Cir. 2015) ............................................................. 14

*United States v. City of Las Cruces,*
  289 F.3d 1170 (10th Cir. 2002) .............................................................. 19, 21

*United States v. Doe,*
  865 F.3d 1295 (10th Cir. 2017) ................................................................ 15

*United States v. Draine,*
  26 F.4th 1178 (10th Cir. 2022) ................................................................. 8

*United States v. Lara,*
  541 U.S. 193 (2004) ............................................................................ 4, 5

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence,*
  22 F.4th 892 (10th Cir. 2022) .............................................................. 10, 19

MCN Appendix Page 206

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*,
  790 F.3d 1000 (10th Cir. 2015) ............................................................................... passim

*Walck v. Edmondson*,
  472 F.3d 1227 (10th Cir. 2007) ....................................................................... 16, 17

*Ware v. Kunzweiler*,
  No. 22-CV-0076-JFH-CDL, 2022 WL 1037484 (N.D. Okla. Apr. 6, 2022) ........................... 16

*Winn v. Cook*,
  945 F.3d 1253 (10th Cir. 2019) ............................................................................. 9, 16

*Wirtz v. Regalado*,
  Case No. 18-CV-0599-GKF-FHM, 2020 WL 1016445 (N.D. Okla. Mar. 2, 2020) ................. 25

*Wyandotte Nation v. Sebelius*,
  443 F.3d 1247 (10th Cir. 2006) ............................................................................... 4

*Younger v. Harris*,
  401 U.S. 37 (1971) ......................................................................................... passim

**Statutes**

25 U.S.C. § 1301(2) ......................................................................................... 4, 5

28 U.S.C. § 2283 (Anti-Injunction Act) ..................................................................... 8

Okla. Stat. Ann. tit. 19, § 215.4 ............................................................................. 7

**Other Authorities**

17A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4222 ................. 8

vii

**MCN Appendix Page 207**

**INTRODUCTION**

The Tenth Circuit has not minced words: "[U]nless Congress provides an exception to the rule … states possess no authority to prosecute Indians for offenses in Indian country." *Ute Indian Tribe of the Uintah and Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) (quotation marks omitted). In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the Supreme Court reaffirmed this rule and held that "Oklahoma cannot come close" to establishing that Congress has provided such an exception with respect to the Muscogee (Creek) Reservation. *Id*. at 929.

Yet the District Attorney and Sheriff ("Defendants") are exercising criminal jurisdiction over Indians for conduct arising within that very Reservation.

The issues surrounding their doing so are federal to their core; are grounded in the Constitution, federal treaties, statutes, and caselaw; and implicate the sovereignty of the United States and the Muscogee (Creek) Nation ("Nation"). Despite this, and despite the dispositive clarity of *Ute Indian Tribe* and *McGirt*, the Defendants contend that this Court has no business inquiring into any of it and must abdicate its constitutional charge in favor of state courts presiding ultra vires over individual criminal defendants, where the District Attorney will face none of those sovereigns as an adversary, in proceedings by which none of them will be bound.

The Defendants propose three bases on which to insulate their conduct from review in this Court: (1) Article III standing; (2) *Younger* abstention; and (3) *Colorado River* abstention. None has merit. Each fundamentally misconstrues the controlling precedents of the Supreme Court and the Tenth Circuit that confirm the justiciability of the Nation's action.[1]

---

[1] The standing, *Younger*, and *Colorado River* arguments raised by the District Attorney and Sheriff are substantively parallel. The Nation accordingly responds to them jointly here to avoid redundant briefing. The Sheriff also raises several distinct arguments, which the Nation addresses in the final section of this brief. Pursuant to a joint stipulation filed by the Nation and Tulsa County, Dkt. 52, the Court has dismissed the County from this action, Dkt. 53.

1

MCN Appendix Page 208

## ARGUMENT

**I.      The Nation Has Standing.**

### A.      Legal Standard

"The standing inquiry, at the motion to dismiss stage, asks only whether the plaintiff has sufficiently alleged a cognizable injury, fairly traceable to the challenged conduct that is likely to be redressed by a favorable judicial decision." *Petrella v. Brownback*, 697 F.3d 1285, 1295 (10th Cir. 2012). Courts "must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party." *Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) (citation omitted). "Standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[.]" *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (brackets, quotation marks, and citation omitted). Thus, courts "assume … that the plaintiff will prevail on his merits argument—that is, that the defendant has violated the law." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (citation omitted).

### B.      The Nation Has Alleged an Injury Specific to the Nation.

Defendants assert that the Nation has not alleged a cognizable injury because their actions do not affect the Nation "in a personal and individual way," and therefore "[o]nly the individual[] [criminal defendants] can claim specific injury." Def. Steve Kunzweiler's Mot. To Dismiss Pls.' Compl. and Br. in Supp. (Dkt. 40) at 8–9; Mot. To Dismiss and Br. in Supp. by Def. Vic Regalado (Dkt. 38) at 11, 13 (same). This argument is meritless. The Nation has alleged that the Defendants' actions are "causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system," Compl. (Dkt. 2) ¶ 15, and "Indian tribes, like states and other governmental entities, have standing to sue to

2

MCN Appendix Page 209

protect sovereign … interests," *Quapaw Tribe of Okla. v. Blue Tee Corp.*, 653 F. Supp. 2d 1166, 1179 (N.D. Okla. 2009).[2]

The Tenth Circuit is clear that an Indian nation's sovereign interests include freedom from the unauthorized prosecution of Indians within the nation's Indian country, where, absent congressional assent, "only the federal government or an Indian tribe may prosecute Indians[.]" *Ute Indian Tribe*, 790 F.3d at 1003. Unauthorized prosecutions by state actors "'create[s] the prospect of significant interference with [tribal] self-government' that this [Circuit] has found sufficient to constitute 'irreparable injury.'" *Id.* at 1006 (first brackets in original) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250–51 (10th Cir. 2001)).[3]

Such injury is independent of the harm to individual Indian defendants and establishes standing in the tribe itself. In *Prairie Band*, the Tenth Circuit recognized that a state's claim of authority to issue motor vehicle citations to individual Indians within a tribe's Indian country was an "infringement on tribal self-government" and held that the "[p]rotection of that right is the foundation of federal Indian law; accordingly, we conclude that the tribe has standing." 253 F.3d at 1242. In *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463 (1976), where a state sought to tax individual Indians within a tribe's reservation, the Supreme Court explained that

---

[2] Counsel for the District Attorney pressed these same arguments in cases brought by the United States and the Nation to enjoin other prosecutors from exercising criminal jurisdiction over Indians, including non-member Indians, within the Creek Reservation. In granting a Motion to Intervene by other Tribal Nations, Judge Eagan rejected each of the arguments and affirmed that "the Nations have standing to intervene as plaintiffs." Op. and Order at 3–7, *United States v. Iski*, Case No. 24-CV-0493-CVE (E.D. Okla. Apr. 9, 2025) ("Iski Op."); Op. and Order at 3–7, *United States v. Ballard*, Case No. 24-CV-0626-CVE-SH (N.D. Okla. Apr. 9, 2025) ("Ballard Op.").

[3] *Prairie Band* so held even though the case did not involve pending state proceedings, *see* 253 F.3d at 1238 (challenged citations had been "dismissed" or "resolved"), such that the tribe's injury turned on the "threat" and "prospect" of future citations, *id*. at 1250 (citation omitted); *see also Quapaw Tribe*, 653 F. Supp. 2d at 1180 (*Prairie Band* held that a "tribe had standing to sue Kansas to *prevent* … infringement on tribe's right to self-government" (emphasis added)).

3

> the Tribe, Qua Tribe, has a discrete claim of injury … so as to confer standing
> upon it apart from the monetary injury asserted by the individual Indian plaintiffs.
> Since the substantive interest which Congress has sought to protect is tribal self-
> government, such a conclusion is quite consistent with other doctrines of
> standing.

*Id*. at 468 n.7. So too here. The Defendants' actions threaten not only the rights of individuals but the Nation's right of self-government, and the Nation has standing to protect that right.[4]

The Defendants additionally argue that state prosecution of Indians does not impair the Nation's self-government because "an individual may be prosecuted by separate sovereigns for the same conduct." Dkt. 40 at 9; Dkt. 38 at 13 (same). But the separate sovereigns doctrine assumes that both sovereigns have lawful jurisdiction, an assumption this Court cannot indulge when adjudicating a motion to dismiss for lack of standing, where a defendant's conduct is assumed illegal. *See Smith*, 121 F.4th at 1378; *Initiative and Referendum Inst.*, 450 F.3d at 1093. In any event, the argument fails. The Supreme Court considered the issue in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), and concluded that the prosecution of the defendant there

> would not deprive the tribe of any of its prosecutorial authority. *That is because*
> … Indian tribes [generally] lack criminal jurisdiction to prosecute crimes
> committed by non-Indians …. [and] a state prosecution of a non-Indian does not
> involve the exercise of state power over any Indian or over any tribe.

*Id.* at 650 (emphasis added). Here, the converse is true on both counts. The Nation's "powers of self-government" include "'criminal jurisdiction over *all* Indians,' including nonmembers," within its boundaries, *United States v. Lara*, 541 U.S. 193, 198 (2004) (quoting 25 U.S.C. § 1301(2)), and the Defendants claim criminal jurisdiction over those same Indians. In *Ute Indian Tribe*, the state's assertion of concurrent criminal jurisdiction over an individual with

---

[4] The District Attorney suggests that it is telling that the relevant cases "have not involved Indian tribes as parties[.]" Dkt. 40 at 9. *But see, e.g.*, *Ute Indian Tribe*, 790 F.3d 1000; *Prairie Band*, 253 F.3d 1234; *Wyandotte Nation v. Sebelius*, 443 F.3d 1247 (10th Cir. 2006); *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665 (10th Cir.1980).

MCN Appendix Page 211

respect to whom the tribe (as here) exercised jurisdiction pursuant to its right of self-government was "itself an infringement on tribal sovereignty," 790 F.3d at 1005; *see also, e.g.*, *Fisher v. Dist. Ct.*, 424 U.S. 382, 387–88 (1976) ("State-court jurisdiction plainly would interfere with the powers of self-government" by subjecting Indians in Indian country "to a forum other than the one they have established for themselves.").

**C.    That the Defendants Have Limited Their Claims of Jurisdiction to Non-Member Indians Does Not Undermine the Nation's Standing.**

Defendants assert that their actions pose no threat to the Nation's rights of self-government because the "prosecutions concern non-member Indians[.]" Dkt. 40 at 10. Thus, their conduct "doesn't infringe on Plaintiff's sovereignty[.]" *Id.*; *see also* Dkt. 38 at 10 (same).

This argument is foreclosed on a motion to dismiss for lack of standing, where the correctness of the Nation's arguments regarding the illegality of state prosecution of non-member Indians and its corresponding unlawful infringement on the Nation's tribal self-government is assumed. *See Initiative and Referendum Inst.*, 450 F.3d at 1093; *Smith*, 121 F.4th at 1378.

Moreover, the argument contradicts federal law, which does not distinguish for purposes of tribal powers of self-government between member and non-member Indians. Congress has proclaimed, and the Supreme Court has confirmed, that tribes' "'powers of self-government' … include 'the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over *all* Indians,' including nonmembers." *Lara*, 541 U.S. at 198 (quoting 25 U.S.C. § 1301(2)). Non-member Indians accordingly fall within the ambit of tribal self-government for criminal jurisdictional purposes on an equal basis with member Indians. They therefore fall within the general rule that "within Indian country, generally only the federal government or an Indian tribe may prosecute *Indians* for criminal offenses," such that a state's assertion of jurisdiction contrary to that rule is "itself an infringement on tribal sovereignty[.]" *Ute Indian*

5

*Tribe*, 790 F.3d at 1003, 1005 (emphasis added). Indeed, the defendant in *McGirt* was "an

enrolled member of the Seminole Nation … [whose] crimes took place on the Creek

Reservation." 591 U.S. at 898. Far from concluding, as the Defendants would have it, that the

Nation had no sovereign interests at stake in such a prosecution, the Court explained that "Mr.

McGirt's personal interests wind up implicating the Tribe's" interests in its own (and the federal

government's) jurisdiction over "Indians" within its Reservation, and thus the case

> winds up as a contest between State and Tribe…. [and] the stakes are not
> insignificant. If Mr. McGirt and the Tribe are right [that the Creek Reservation is
> Indian country], the State has no right to prosecute *Indians* for crimes committed
> [there]. Responsibility to try these matters would fall instead to the federal
> government and Tribe.

*Id.* at 899 (emphasis added).

The Nation's rights of self-government, then, are equally implicated whether a state

prosecutes a member or a non-member Indian for conduct within the Creek Reservation. *McGirt*,

after all, applies the same rule (presumptively forbidding state criminal jurisdiction over Indians

in Indian country) to a non-member Indian that *Ute Indian Tribe* applies to a member Indian.[5]

**D.      The Nation's Injury Is Redressable by a Favorable Ruling from This Court.**

The Defendants contend that the Nation also lacks standing because its injury is not

redressable by this Court. Even were this Court to issue an injunction, they claim, "the Ongoing

Prosecutions could continue[.]" *Id.* at 10. For this, the Defendants suggest that the Governor or

---

[5] While again, the merits are not at issue in a standing challenge, *see Initiative and Referendum Inst.*, 450 F.3d at 1093; *Smith*, 121 F.4th at 1378, the Nation notes that its brief in support of its motion for a preliminary injunction sets forth in detail how state criminal jurisdiction over non-member Indians in Indian country violates federal law no less than over member Indians, and how the Oklahoma Court of Criminal Appeals' contrary reasoning in *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL 5001684 (Okl. Crim. App. Dec. 5, 2024), is pervaded by fundamental errors, including those for which that Court has already been forcefully admonished and thrice reversed by the United States Supreme Court. *See* Mot. of Muscogee (Creek) Nation for TRO and Prelim. Inj. and Opening Br. in Supp. (Dkt. 4) at 7–20.

MCN Appendix Page 213

the Attorney General has the authority to engage in prosecutions, and therefore, "[g]iven the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue the prosecutions at issue." *Id*. at 11; *see also* Dkt. 38 at 14 (asserting same). The argument fundamentally misunderstands the legal concept of redressability.

The District Attorney exercises state criminal authority within the Fourteenth Prosecutorial District. *See* Okla. Stat. Ann. tit. 19, § 215.4. The asserted injury here includes the District Attorney acting under color of that authority to unlawfully prosecute Indians within the Creek Reservation, both presently and going forward, in violation of the Nation's rights of sovereignty and self-government. "Plaintiffs suing public officials can satisfy the causation and redressability requirements of standing by demonstrating" that the defendant "possess[es] authority to enforce the complained-of" law. *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) (quotation marks and citation omitted). That is indisputably the case here.

That the Governor and Attorney General may also possess prosecutorial authority within the Fourteenth District does nothing to undermine that conclusion. The Defendants cite no authority for the proposition that harm caused by government conduct is non-redressable merely because another government entity might inflict similar harm. *See* Dkt. 40 at 10–11; Dkt. 38 at 14–15. And the law is decidedly to the contrary. *See, e.g.*, *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (rejecting argument that "to establish redressability, appellees must show … that there is no other means by which the State can [proceed with the challenged conduct]. We decline to impose that burden upon litigants."); *Matsumoto v. Labrador*, 122 F.4th 787, 801–02 (9th Cir. 2024) (where state law "specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities

7

suffices to establish redressability. That proposition is supported by decades of Supreme Court

precedent…. [A] plaintiff need not sue every defendant that may cause her harm.").[6]

*     *     *

In sum, the Nation has established its standing, and the Defendants have given this Court

no credible basis to conclude otherwise.

## II.        The Anti-Injunction Act and *Younger* Abstention Do Not Apply.

### A.        The Anti-Injunction Act

The District Attorney invokes the Anti-Injunction Act, 28 U.S.C. § 2283, but simply

quotes its text and various judicial decisions concerning the Act's underlying policy goals,

without offering any substantive arguments regarding its applicability to this case. *See* Dkt. 40 at

12 (citation omitted). The argument is therefore waived. *See United States v. Draine*, 26 F.4th

1178, 1187 n.5 (10th Cir. 2022) (stating that claimant "merely quotes" the text of a provision in

an opening brief but does not develop an argument under it, "so it is waived").

In any event, the Nation is not a party or privy to any state proceeding, and the Act does

not apply to "strangers to the state court proceedings" who will not be "bound" by them,

*Imperial Cnty. v. Munoz*, 449 U.S. 54, 59 (1980) (citation omitted); *see also* 17A Charles Alan

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4222 n.27 (3d ed. Apr. 2025

Update) (same). *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033 (D.N.M. 2023), *see*

Dkt. 40 at 12, is not to the contrary because the tribe was a party to the state action. *See* 689 F.

---

[6] In granting the motion of other tribal nations to intervene in separate but similar actions, Judge
Eagan rejected this same argument, holding that "[t]he Nations' injuries are fairly traceable to
defendant's challenged conduct" and "a favorable judicial decision enjoining defendant …
would redress the Nations' injury at least to some extent, which is all the law requires." Iski Op.
6 (quotation marks omitted); Ballard Op. 6 (quotation marks omitted).

8

Supp. 3d at 1049. Nor do the District Attorney's other cases involve non-parties to the State

proceedings.

### B.       The *Younger* Abstention Doctrine

Under *Younger v. Harris*, 401 U.S. 37 (1971), a federal court must abstain from

exercising jurisdiction in "certain instances in which the prospect of undue interference with

state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69,

72 (2013). *Younger* abstention "is the exception, not the rule." *Ankenbrandt v. Richards*, 504 U.S.

689, 705 (1992) (citation omitted). "It should be rarely … invoked, because the federal courts

have a virtually unflagging obligation … to exercise the jurisdiction given them." *Roe # 2 v.

Ogden*, 253 F.3d 1225, 1232 (10th Cir. 2001) (ellipses in original) (quotation marks omitted).

As relevant here, *Younger* turns on three mandatory requirements: (1) an "ongoing" state

criminal proceeding that the federal plaintiff seeks to enjoin; that (2) is an "adequate forum" for

the federal plaintiff to adjudicate the issues raised in its complaint; and (3) involves "important

state interests," *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (citation omitted). "Each of

these conditions must be satisfied before *Younger* abstention is warranted." *Seneca-Cayuga Tribe

of Okla. v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989); *see also Brown ex

rel. Brown v. Day*, 555 F.3d 882, 894 n.10 (10th Cir. 2009) (where one factor not met, "we need

not consider" the others). As demonstrated below, the Defendants fail to satisfy the second and

third mandatory criteria, thereby twice dooming their argument.

### C.       The District Attorney's Ongoing Prosecutions Are Not an Adequate Forum for the Nation To Litigate the Claims It Has Brought Before This Court.

Under the second *Younger* requirement—whether the ongoing state proceedings provide

an adequate forum for the Nation to litigate its federal claims—the Defendants devote their entire

argument to explaining the competence of state courts to adjudicate federal questions. *See* Dkt.

MCN Appendix Page 216

40 at 14–16 (noting "state courts' ability to address federal issues," the "obligation of the state courts to uphold federal law," and that "Oklahoma state courts are capable" of addressing the federal issues raised in the Nation's complaint and therefore "provide adequate forums" under the second *Younger* requirement (citation omitted)). *See* Dkt. 38 at 19 (same).

The Defendants' focus is misplaced. No one questions that "state courts, as courts of general jurisdiction," can adjudicate federal issues, *Ute Indian Tribe of the Uintah and Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 899 (10th Cir. 2022). But if the mere competence of state courts to do so satisfied the "adequate forum" requirement for *Younger* abstention, the requirement would be met in every case, rendering it a pointless inquiry. Instead, the test is whether a state court provides an adequate forum for *the federal plaintiff* to pursue its claims. *See, e.g.*, *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004) ("*Younger* abstention is inappropriate when *a federal plaintiff* cannot pursue its federal contentions in the ongoing state proceeding." (emphasis added)); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) ("[W]e find that *plaintiff* does not have an adequate opportunity to raise its federal claims in state court'" (emphasis added)).

Defendants make no claim that the Nation could litigate its federal claims in the ongoing state court prosecutions. Nor can they. The Nation is not a party to those prosecutions, nor is it in privity with any party. It is instead a genuine stranger to those proceedings and *Younger* does not bar federal court jurisdiction "over the claim of a genuine stranger to an ongoing state proceeding," *D.L.*, 392 F.3d at 1230.

This principle dooms the Defendants' *Younger* argument. Nor can they salvage it by asserting "how intertwined Plaintiff's interests are" with those of the defendants in the ongoing prosecutions, Dkt. 40 at 20. They contend that "each criminal defendant has challenged the

10

State's jurisdiction" by invoking *McGirt* and that, therefore, the Nation's claims "are no different

from" those of the criminal defendants. *Id.*; Dkt. 38 at 22 (same). But, as addressed in the

standing discussion above, *supra* p. 2–5, the Nation's claims are indeed distinct, and the

argument is accordingly foreclosed by controlling Tenth Circuit precedent. In *D.L.*, the Court

made clear that *Younger* does not bar a federal action by a non-party to the state proceedings

simply because the federal action may involve legal questions "identical to those raised in state

court[.]" 392 F.3d at 1230. "So long as the stranger has its own distinct claim to pursue, it may

even be aligned with the state-court litigant" against the same state policy. *Id.*

For these propositions, the Court cited *Federal Home Loan Bank Board v. Empie*, 778 F.2d

1447 (10th Cir. 1985). There, under highly analogous facts, a federal agency sought declaratory

and injunctive relief that Oklahoma had no authority to regulate private entities regulated by the

agency under federal law. *Id.* at 1448. Oklahoma invoked *Younger* because the private entities

were defendants in ongoing state proceedings and were challenging the same state assertion of

regulatory authority as the federal agency plaintiff. *Id.* at 1449. The Court rejected the argument

because the federal agency's interests

> are much broader than those of Victor Federal or the other private parties. It is
> concerned with the stability and smooth operation of a nationwide network of
> savings institutions; Victor Federal, for example, is concerned only with the
> success of its campaign to advertise longer hours and drive-in teller windows.

*Id.* at 1452.

This reasoning in *D.L.* and *Federal Home Loan* applies directly here. The Nation

unquestionably has a "distinct claim to pursue," *D.L.*, 392 F.3d at 1230, one arising under the

array of federal laws and policies that prohibit interference with "the Nation's sovereignty" and

"federally protected rights of self-government," Dkt. 2 ¶ 7. These sovereign concerns are "much

broader than those of … private parties," *Fed. Home Loan*, 778 F.2d at 1452, including any

11

MCN Appendix Page 218

private criminal defendant asserting individual rights. *See, e.g.*, Dkt. 2 ¶ 15 ("The County's

[prosecutions are] causing irreparable injury to the Nation by interfering with its sovereignty and

undermining the authority of its own criminal justice system, including the authority of its

Attorney General, Lighthorse police, and courts to prosecute under the Nation's own laws

criminal offenses committed by Indians within its Reservation."). Defendants thus fail the second

requirement for *Younger* abstention, and accordingly—regardless of the underlying merits of the

Nation's claims—no warrant exists for the Court to abstain under *Younger* because the State

courts cannot provide an adequate forum for the Nation to adjudicate those merits.[7]

---

[7] *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), *see* Dkt. 40 at 19; Dkt. 38 at 21, addresses the inapposite circumstance in which the interests of *federal plaintiffs* are so intertwined that if *Younger* bars the claim of one because it is a state defendant, it may bar the others. *See* 422 U.S. at 928 (considering whether "all three plaintiffs should … be thrown into the same hopper for *Younger* purposes"). Here there is no federal plaintiff that is also a state defendant. Should Defendants invoke *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012), or *Global Impact Ministries v. Mecklenburg County*, No. 3:20-CV-00232-GCM, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021), they are likewise inapposite as they also address relations between federal co-plaintiffs where at least one was a state defendant. And *Hicks v. Miranda*, 422 U.S. 332 (1975), *see* Dkt. 40 at 19; Dkt. 38 at 21, involved the equally inapposite circumstance of the federal plaintiffs having been made defendants in the state proceedings "the day following" service of their complaint, 422 U.S. at 349. *Hicks* simply holds that *Younger* applies "where state criminal proceedings are begun *against the federal plaintiffs* after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court[.]" *Id.* (emphasis added). Because the federal plaintiffs had not shown they "could not seek the return of their property in the state proceedings…, *Younger* … could not be avoided on the ground that no criminal prosecution was pending against appellees *on the date the federal complaint was filed*." *Id.* (emphasis added); *see also Pinnacle Performance & Repair, Inc. v. City of Owasso*, No. 19-CV-183-TCK-JFJ, 2020 WL 1905681, at *5 (N.D. Okla. Apr. 17, 2020) (abstaining under *Younger* and stating that "[i]n *Hicks*, as in this case, no state proceedings were pending against the defendants at the time they filed suit in federal court, but state court proceedings were subsequently filed *against the federal court plaintiffs*" (emphasis added)). *D.L.* indeed cites with approval the Fifth Circuit's interpretation of "intertwine[ment]" under *Hicks*. *See* 392 F.3d at 1230–31 (citing *Robinson v. Stovall*, 646 F.2d 1087, 1092 (5th Cir. 1981) ("[T]he *Hicks* holding

MCN Appendix Page 219

**D.      A State's Claimed Interest in Prosecuting Indians in Indian Country Is Foreclosed as a Cognizable Interest Under the *Younger* Abstention Analysis.**

The Defendants contend that the third requirement for *Younger* abstention is met because "Oklahoma's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." Dkt. 40 at 16 (citation omitted); Dkt. 38 at 19–20 (asserting general state interests in criminal law enforcement). Utah made similar arguments in *Ute Indian Tribe*— *see* State of Utah's Answer Brief at 21, *Ute Indian Tribe* (No. 14-4034), 2014 WL 4180069, at *13 ("[A] state's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." (quotation marks omitted))—and the Court rejected it because

> where, as here, states seek to enforce state law against Indians in Indian country "[t]he presumption and the reality … are that federal law, federal policy, and federal authority are paramount" and the state's interests are insufficient "to warrant *Younger* abstention."

*Ute Indian Tribe*, 790 F.3d at 1008–09 (quoting *Seneca-Cayuga*, 874 F.2d at 713–14). Nothing about this reasoning excludes the prosecution of non-member Indians. Again, *McGirt* underscores the federal nature of the issue in a non-member Indian case, explaining that given that the Creek Reservation remains Indian country, "the State has no right to prosecute Indians for crimes committed [there].… Responsibility to try these matters would fall instead to the federal government and Tribe." 591 U.S. at 899. And the passage in *Seneca-Cayuga* quoted by *Ute Indian Tribe* likewise makes no exception for non-member Indians: "[F]ederal law, federal

---

rested on the fact that the owners (the federal plaintiffs) could vindicate their rights by seeking the return of their seized property in the pending state prosecutions of their employees. When this crucial element availability of intervention in the state proceedings is absent, the courts have not hesitated to reject an 'intertwining' theory[.]") (citation omitted)). Here, the Nation is not a defendant in any state proceeding. It has no means to vindicate its federal rights in those proceedings, and Defendants' caselaw accordingly cannot salvage their argument.

13

**MCN Appendix Page 220**

policy, and federal authority are paramount in *the conduct of Indian affairs in Indian Country.*" 874 F.2d at 713 (emphasis added); *see also Haaland v. Brackeen*, 599 U.S. 255, 275 (2023) (citing as an example of Congress's plenary and exclusive power over Indian affairs a "law allowing tribes to prosecute nonmember Indians who committed crimes on tribal land").[8]

The question, then, is not whether Oklahoma has important interests in enforcing criminal laws as a general matter. Indeed, the Tenth Circuit recognized that "Oklahoma has an important interest in prosecuting criminal cases without interference from federal courts" just a month before *Ute Indian Tribe* in a decision (joined by then-Judge Gorsuch, who authored *Ute Indian Tribe*) that did not involve Indian country issues. *Tucker v. Reeve*, 601 F. App'x 760 (10th Cir. 2015). Rather, the question here, as in *Ute Indian Tribe*, turns on the state's interest in enforcing its criminal laws "*against Indians* in Indian country"—which states "have no legal entitlement to do in the first place." *Ute Indian Tribe*, 790 F.3d at 1007, 1008 (emphasis added).

The District Attorney contends that the decision's *Younger* analysis has been rendered "inapplicable, if not obsolete" by *Castro-Huerta*, Dkt. 40 at 19, even though that case involved only a non-Indian defendant.[9] In making this argument, the District Attorney presses this Court to act beyond its authority and hold that a Supreme Court decision that does not reach an issue nevertheless upends Tenth Circuit precedent on that issue. Even a Circuit panel cannot do that.

---

[8] The District Attorney notes that *Seneca-Cayuga* states that the reasoning does not apply when a state suit involves "non-reservation Indians, as here." Dkt. 40 at 19 (quotation marks omitted). But in referring to "non-reservation Indians," *Seneca-Cayuga* is not referencing non-member Indians. It is referring to the situation in *Organized Village of Kake v. Egan*, 369 U.S. 60 (1962)—*see* 874 F.2d at 713 (citing *Egan*)—which involved state regulation of Indian conduct taking place "not on any reservation" and "outside of Indian country," 369 U.S. at 75.

[9] The District Attorney elsewhere agrees that *Castro-Huerta* "does not disturb the long-settled precedents of the Supreme Court directly addressing state jurisdiction over Indians," Def. Steve Kunzweiler's Resp. to the Muscogee (Creek) Nation's Mot. for TRO and Prelim. Inj. and Opening Br. in Supp. (Dkt. 41) at 12 n.6 (citation omitted). In the District Attorney's telling, then, *Castro-Huerta* both upheld and overturned long-settled jurisdictional principles.

14

For a panel to depart from prior Circuit precedent based on a subsequent Supreme Court decision, the decision "must clearly overrule our precedent[.]" *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023) *(*quotation marks omitted). Accordingly, Tenth Circuit precedents "remain good law unless the Supreme Court has *indisputably and pellucidly abrogated* them." *Fed. Trade Comm'n v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1051 (10th Cir. 2024) (emphasis added) (quotation marks omitted); *see also, e.g.*, *Strain v. Regalado*, 977 F.3d 984, 993 (10th Cir. 2020) (stating that Supreme Court decision did not "pronounce its application" to a specific issue, "so we cannot overrule our precedent on this issue.").

This principle applies with greatest force where a Supreme Court decision reflects "the … Court's careful efforts to cabin the narrow … question before it," thus "clarifying what the case before it was *not* about[.]" *United States v. Doe*, 865 F.3d 1295, 1299 (10th Cir. 2017). That is precisely the case with *Castro-Huerta.* Not only does the decision not "indisputably and pellucidly abrogate[]" *Ute Indian Tribe* or any other precedents addressing state criminal jurisdiction over Indians, it expressly and repeatedly disavows any intent to even reach the issue. *See, e.g.*, 597 U.S. at 648 (referring to state criminal jurisdiction over non-Indians in Indian country as "the narrow jurisdictional issue in this case"); *id*. at 639 n.2 (describing state jurisdiction "over crimes committed by Indians in Indian country" as "a question not before us"); *id*. at 650 n.6 ("We express *no view* on state jurisdiction over a criminal case of that kind." (emphasis added)); *id*. at 655 n.9 ("To reiterate, we do not take a position on that question."); *Hudson v. Harpe*, No. 23-6181, 2024 WL 262695, at *1 (10th Cir. 2024) (stating, on denial of Indian criminal defendant's application for certificate of appealability, that "[b]ecause Mr. Hudson is a member of the Muscogee (Creek) Nation—and therefore, an Indian—*Castro-Huerta* does not apply to this case" and that "[n]o reasonable jurist would conclude" otherwise).

15

MCN Appendix Page 222

*Ute Indian Tribe* and *Seneca-Cayuga* accordingly remain good law in the Tenth Circuit and are binding on this Court. *See Trimble v. FedEx Off. and Print Servs., Inc.*, Case No. 22-CV-000433-GKF-JFJ, 2023 WL 5695834, at *3 (N.D. Okla. July 28, 2023) (Frizzell, J.) ("This court is bound to follow Tenth Circuit authority.").

**E.        *Younger* Does Not Apply Because the Harm Alleged to Federally Protected Rights Is Irreparable.**

The Tenth Circuit is clear that "*Younger* … is inapplicable" if the federal plaintiff can show that an "irreparable injury" will result from the state proceeding, *Walck v. Edmondson*, 472 F.3d 1227, 1233 (10th Cir. 2007) (citation omitted), and that the injury "cannot be eliminated by … [the federal plaintiff's] defense against a single criminal prosecution," *id.* (quoting *Younger*, 401 U.S. at 46).

That standard is met here. First, absent congressional assent, state prosecution of an Indian in Indian country "'create[s] the prospect of significant interference with [tribal] self-government' that this court has found sufficient to constitute 'irreparable injury.'" *Ute Indian Tribe*, 790 F.3d at 1006 (brackets in original) (quoting *Prairie Band*, 253 F.3d at 1250–51). That is the very injury the Nation has alleged. To be sure, the Nation has not yet proved that to the Court's satisfaction on the merits— *see* Op. and Order (Dkt. 54) at 4 ("[T]he Nation has not yet explained how state-court jurisdiction over non-member Indians plainly interferes with its powers of tribal self-government.")—but the Nation need not have done so yet under the *Younger* analysis. *See Winn*, 945 F.3d at 1259 (*Younger* irreparable harm exception focuses on the nature of "the alleged violation"); *Ware v. Kunzweiler*, No. 22-CV-0076-JFH-CDL, 2022 WL 1037484, at *3 (N.D. Okla. Apr. 6, 2022) ("allege[d] irreparable injury"). *Younger* abstention would foreclose the Court from ever reaching the merits of the Nation's allegations of irreparable

16

**MCN Appendix Page 223**

harm, risking (if the Nation is correct) application of the doctrine where the Tenth Circuit has held that "*Younger* … is inapplicable," *Walck*, 472 F.3d at 1233 (citation omitted).

Second, the Nation cannot eliminate that threat through its defense of a state criminal prosecution, as it will not be a defendant in any of them. Thus, even were the Court to find all three *Younger* requirements met, *Younger* abstention is foreclosed. *See Walck*, 472 F.3d at 1233 (where threat of irreparable injury that cannot be eliminated by federal plaintiff's defense to single criminal prosecution is established, courts "need not decide … whether the three conditions for mandatory abstention exist[.]").

The Defendants further assert that "the Ongoing Prosecutions had been pending since as early as two years prior to the filing of this lawsuit; thus, no imminency." Dkt. 40 at 18 (citing *State v. Bohanan*, CM-2022-108 (Tulsa Cnty. Dist. Ct. Jan. 10, 2022)); Dkt. 38 at 20 (same). The argument again fails. Defendant Bohanan had two separate state charges pending when, on December 6, 2024, he moved to dismiss those charges under *McGirt*, *see* https://bit.ly/4cJ0OTQ; https://bit.ly/4lL2bpf, prior to which the Nation had no notice or other means of identifying this prosecution as implicating an Indian defendant. On December 26, 2024, the District Court dismissed the charges in one case, finding that "[t]he District Court is … without jurisdiction against Defendant." *See* https://bit.ly/42ZBFkA. In the second case, the District Attorney responded to the defendant's motion to dismiss for lack of jurisdiction on January 27, 2025, and the District Court denied the motion on January 31, 2025. *See* https://bit.ly/4lL2bpf. Two weeks later, the Nation filed suit.

The Defendants' "no imminency" argument likewise fails as a matter of law, and indeed they cite no law to support it. S*ee* Dkt. 40 at 18; Dkt. 38 at 20. The prosecutions of Indians for conduct arising within the Creek Reservation are *pending now.* The question of imminence is

MCN Appendix Page 224

therefore irrelevant. As for future prosecutions, the "threat" and "prospect," *Prairie Band*, 253 F.3d at 1250 (citation omitted), of infringement of the Nation's sovereignty likewise exists *now*—as it did in *Prairie Band* despite the absence of any pending state proceeding—because the Defendants have claimed jurisdiction over Indians within the Creek Reservation, have manifested their willingness to exercise it, and have to date foregone every opportunity to disavow their intent to exercise it going forward. *See Hooper v. City of Tulsa*, 71 F.4th 1270, 1277 (10th Cir. 2023) (reasonable fear of future unlawful prosecution constituted "imminent injury"). Again, *Younger* abstention does not turn on the Plaintiff having prevailed on the merits of these issues because, by definition, it forecloses a court from ever reaching those merits.

*     *     *

In sum, Defendants' arguments for *Younger* abstention—which "is the exception, not the rule," *Ankenbrandt*, 504 U.S. at 705, and "should be rarely … invoked," *Roe # 2*, 253 F.3d at 1232 (ellipsis in original) (quotation marks omitted)—founder for numerous reasons that, separately or together, confirm this Court's constitutional obligation to retain jurisdiction here.

## III.    *Colorado River* Abstention Does Not Apply.

Defendants incorrectly contend that the Court should abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Dkt. 40 at 20–22; Dkt. 38 at 24 (adopting District Attorney's *Colorado River* arguments).

### A.    The *Colorado River* Doctrine

The *Colorado River* doctrine applies to "situations involving the contemporaneous exercise of concurrent jurisdictions … by state and federal courts" and, upon a showing of "exceptional circumstances" by the party invoking the doctrine, "permits a federal court to

18

**MCN Appendix Page 225**

dismiss or stay a federal action in deference to pending parallel state court proceedings[.]" *Fox v. Maulding*, 16 F.3d 1079, 1080, 1081 (10th Cir. 1994) (ellipsis in original) (citations omitted).

Under *Colorado River*, this Court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction …; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice … to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) (quotation marks omitted). Moreover, "the presence of federal-law issues *must always be a major consideration weighing against surrender*," *id*. at 26 (emphasis added), and a court's *Colorado River* analysis in general must be

> *heavily weighted in favor of the exercise of jurisdiction*. Indeed, since "[o]nly the clearest of justifications will warrant dismissal," *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247, *any doubt should be resolved in favor of exercising federal jurisdiction*.

*Fox*, 16 F.3d at 1082 (emphases added) (quotation marks and citations omitted). Finally, a court "*cannot* … abstain under *Colorado River* … if the state court has no jurisdiction to decide the claims" before it. *Lawrence*, 22 F.4th at 908 n.17 (emphasis added) (brackets and quotation marks omitted).[10]

### B.     No Parallel State Proceeding Exists To Support *Colorado River* Abstention.

For abstention under *Colorado River* to be even a possibility, the Defendants must first identify a parallel state court proceeding with which the Nation's suit overlaps. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) (a parallel proceeding "is a threshold

---

[10] Because this Court "cannot" abstain if the state courts lack jurisdiction, *Lawrence*, 22 F.4th at 908 n.17, and since their jurisdiction is the very question at issue in the Nation's action, to abstain under *Colorado River* would require this Court to *assume* state jurisdiction in the face of controlling precedent to the contrary—*see Ute Indian Tribe*, 790 F.3d at 1004; *McGirt*, 591 U.S. at 928–29—and thereby risk a grave violation of its jurisdictional obligations under federal law.

MCN Appendix Page 226

condition for engaging in the *Colorado River* analysis"); *Fox*, 16 F.3d at 1081 (court must find parallel proceeding "[b]efore examining" *Colorado River*'s factors). The Defendants cannot establish this threshold requirement. "Suits are parallel if [1] substantially the same parties litigate [2] substantially the same issues in different forums." *Fox*, 16 F.3d at 1081 (citation omitted). The *entirety* of the Defendants' argument that this case involves "substantially the same parties" as appear in the ongoing state prosecutions is this single, unsupported sentence: "Or at the least, Kunzweiler is a party in each, and the criminal defendants in the Ongoing Prosecutions are explicitly referenced and leveraged by Plaintiff in this litigation." Dkt. 40 at 21.

But the Nation is a stranger to those proceedings. The Defendants make no effort to explain the vague concept that a federal plaintiff that "reference[s] and leverage[s]" a state criminal defendant in its complaint thereby becomes the equivalent of a party to the state prosecution. *See Colo. River*, 424 U.S. at 819 ("[o]nly the clearest of justifications will warrant" abstention).[11]

---

[11] *See Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681-CVE-TLW, 2017 WL 2347188, at *9 (N.D. Okla. May 30, 2017) ("substantially same parties" requirement not met where one federal party "is not a party" in the state suit); *Schlagel v. Discount Tire Co. of Colo., Inc.*, No. 23-CV-02909-NYW-CYC, 2025 WL 316549, at *4 (D. Colo. Jan. 28, 2025) (same where federal plaintiff "is not a party" in state suit); *Nautilus Ins. Co. v. Otero Cnty. Hosp. Ass'n*, No. 2:11-CV-00178 BRB/LAM, 2011 WL 12574962, at *5 (D.N.M. Nov. 4, 2011) (same); *Lee-Brinkman v. Birdsong*, No. CIV-23-99-RAW-GLJ, 2023 WL 3919757, at *3 (E.D. Okla. May 5, 2023) ("substantially same parties" requirement met because state case included "all the parties in this Federal case" with additional state defendants), *report and recommendation adopted*, No. CIV-23-099-RAW-GLJ, 2023 WL 5615451 (E.D. Okla. Aug. 30, 2023); *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 208 (4th Cir. 2006) (stating that in *Colorado River*, "at least the federal plaintiff was a party to the state action," and that because federal plaintiff "is not a party" in the state proceedings, "to abstain … would deprive [federal plaintiff] of the opportunity to litigate its claims").

MCN Appendix Page 227

The argument is also waived. *See Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1156 (10th Cir. 2015) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (brackets in original) (citation omitted)); *Dayan-Varnum v. Dayan*, Case No. 23-CV-00052-SEH-MTS, 2025 WL 854905, at *2 (N.D. Okla. Mar. 19, 2025) (same).

The Defendants "seek[] abstention and thus ha[ve] the burden of establishing that *Colorado River* is applicable[.]" *BNSF Ry. Co. v. City of Moore*, 536 F. Supp. 3d 1225, 1235 (W.D. Okla. 2021). Their failure to establish the "threshold" and dispositive parallel proceedings requirement therefore dooms their argument without consideration of any other factors. *Fox*, 16 F.3d at 1081; *City of Las Cruces*, 289 F.3d at 1182.

### C.   The Ongoing Prosecutions Are Not Adequate Vehicles To Resolve the Dispute Between the Defendants and the Nation.

The Tenth Circuit has made clear that application of "the *Colorado River* doctrine would be '*a serious abuse of discretion*' unless 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue *between the parties*[.]'" *Fox*, 16 F.3d at 1081 (emphases added) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28); *JPMorgan Chase Bank v. Fletcher*, No. 06-CV-624-GKF-SAJ, 2008 WL 151894, at *3 (N.D. Okla. Jan. 14, 2008) (Frizzell, J.) (same). The Defendants nowhere acknowledge this dispositive requirement.

The Nation is neither a party nor in privity with a party to the state court proceedings, so no judgment in those cases can bind the Nation. *See, e.g.*, *Requena v. Roberts*, 893 F.3d 1195, 1209 n.7 (10th Cir. 2018) (issue preclusion requires that "the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication"); *Santana v. City of Tulsa*, 359 F.3d 1241, 1246 n.3 (10th Cir. 2004) (same for res judicata). Thus, even if the Defendants prevail in those proceedings, that would not resolve this case. The Nation would

21

retain a viable federal claim against the Defendants. *See Phoenix Energy*, 2017 WL 2347188, at

*9 (declining to dismiss under *Colorado River* because defendant was "not a party to the [State]

suit" and thus "resolution of the state case might not dispose of" the controversy between the

parties). Under these circumstances, the Defendants' suggestion that this Court abstain from

deciding a federal claim that cannot be resolved elsewhere is nothing less than an invitation to

commit "a serious abuse of discretion," *Fox*, 16 F.3d at 1081 (citation omitted); *JPMorgan*

*Chase Bank*, 2008 WL 151894, at *3 (citation omitted) (same).

> **D.  The Federal Nature of the Issues Weighs Heavily Against *Colorado River* Abstention.**

The Defendants also tellingly fail to acknowledge, much less address, yet another central

consideration in the *Colorado River* analysis—the source of law. As the Supreme Court has

explained, "the presence of federal-law issues must always be a *major consideration weighing*

*against surrender*" of jurisdiction. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 (emphasis

added). As noted, whether states possess jurisdiction over Indians in Indian country, and

questions of tribal sovereignty and self-government, are quintessential questions "of federal law

in an area in which federal interests predominate," *Seneca-Cayuga Tribe*, 874 F.2d at 714; *id*. at

713 ("[F]ederal law, federal policy, and federal authority are paramount in the conduct of Indian

affairs in Indian Country."); *Ute Indian Tribe*, 790 F.3d at 1007 (same). The source-of-law

consideration accordingly weighs heavily against abstention.

> **E.  Defendants' Forum Convenience and Piecemeal Litigation Arguments Fail.**

Defendants argue that "appeals from this litigation will be addressed by the Tenth Circuit,

in Colorado, whereas appeals from the State court proceedings will be … addressed by the

OCCA, in Oklahoma. The travel and expense associated with the former is an unnecessary

burden." Dkt. 40 at 21. Since the Tenth Circuit uses electronic filing, this argument invokes the

MCN Appendix Page 229

burdens of single trip to Denver for oral argument. By now a pattern may be apparent to this Court. Each of the Defendants' standing and abstention arguments rests on the refusal to acknowledge, let alone to properly account for, the Nation's right of self-government and its role in this case. With respect to the Defendants, the value of the Nation being able to speak with its own voice in defending its federally protected right to self-government—one so forcefully recognized by the Supreme Court and the Tenth Circuit—outweighs the price of a plane ticket.

The Defendants further argue that this federal action is inconvenient because it "requires substantial briefing and expenditure of additional taxpayer dollars[.]" Dkt. 40 at 21–22. But the inconvenience of having to litigate a matter *at all* is no basis for abstention. *Colo. River*, 424 U.S. at 817 (generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court"); *Fox*, 16 F.3d at 1082 (same). Solicitude for the public fisc would be better served by not briefing standing and abstention arguments so clearly foreclosed by federal law.

Finally, the Defendants state that avoiding "piecemeal litigation … is the paramount *Colorado River* consideration." Dkt. 40 at 22. But the Defendants' preferred solution of litigating the issues presented here through multiple criminal prosecutions epitomizes piecemeal litigation. And the feature all the state court proceedings share is the absence of the Nation, which will not be bound by the outcomes. To abstain here would be to surrender jurisdiction in deference to a slate of state cases that embody not only a piecemeal approach to resolving the core jurisdictional issue facing this Court, but an unquestionably ineffectual one.

## IV.    Sheriff Regalado Is Not Entitled to Dismissal as a Matter of Law.

Sheriff Regalado argues that he "is entitled to dismissal as a matter of law" because "the law as stated by the Oklahoma Court of Criminal Appeals and the United States Supreme Court

MCN Appendix Page 230

precludes recovery by" the Nation. Dkt. 38 at 6; *see also id*. at 7–10 (discussing *Castro-Huerta*

and *O'Brien*). The Nation has comprehensively addressed the merits of its entitlement to

injunctive relief in its Motion for a Temporary Restraining Order and Preliminary Injunction and

its Reply to that Motion, including discussing in detail how neither *Castro-Huerta* nor *O'Brien*

undermines the Nation's entitlement to relief. *See* Dkt. 4 at 7–20; Nation's Combined Reply Br.

in Supp. of Its Mot. for TRO and Prelim. Inj. (Dkt. 51) at 2–11. The Sheriff's briefing does not

address any of the Nation's arguments on those issues. To avoid burdening the Court with

duplicative submissions, the Nation incorporates that briefing by reference here.

Nor can the Sheriff disclaim responsibility for his actions by asserting that he is simply

"following Oklahoma law, as articulated by … *O'Brien*," Dkt. 38 at 23. The Nation's claim is

that by exercising criminal jurisdiction over Indians within the Creek Reservation after *McGirt*,

the Defendants are violating *federal* law. Accordingly, the Sheriff can take no refuge in decisions

of the Oklahoma Court of Criminal Appeals. *See Hewitt v. Parker*, No. 08-CV-227-TCK-TLW,

2012 WL 380335, at *4 (N.D. Okla. Feb. 6, 2012) ("this Court owes no deference to the OCCA's

adjudication of" questions of federal law); *Dutcher*, 840 F.3d at 1195 ("[I]t is beyond cavil that

we are not bound by a state court interpretation of federal law." (citation omitted)).

And as to federal law, the Sheriff contends that the Nation's Complaint fails to allege any

conduct that "purports to be a violation of federal law" attributable to him. Dkt. 38 at 22. That is

simply not so. *See* Dkt. 2 ¶¶ 28–36; *see also* Dkt. 51 at 14–16 (responding to same arguments).

The Sheriff further contends that he bears no actionable responsibility for his conduct with

respect to Indians because "[w]hether, where, or what criminal charge, if any, is subsequently

filed is up to the complete discretion of state or tribal prosecutors [sic], not Sheriff Regalado."

Dkt. 38 at 23; *see also id*. ("Sheriff Regalado and the Tulsa County Sheriff's Office … do not

24

MCN Appendix Page 231

determine whether a person is being held by the state or a tribe."). However, the Nation filed suit

to stop *any* unlawful assertion of criminal jurisdiction by the Defendants, not just the filing of

charges. *See, e.g.*, Dkt. 2 ¶¶ 28–36. The Sheriff is a peace officer with powers of criminal

investigation, enforcement, and arrest authority under Oklahoma law, which the Nation set forth

in detail in its Reply, Dkt. 51 at 14–15, and which it incorporates here by reference.

Moreover, "Sheriff Regalado is the final policymaker for the jail [and] he is responsible

for creating and enforcing the [jail's] policies and procedures[.]" *Wirtz v. Regalado*, Case No. 18-

CV-0599-GKF-FHM, 2020 WL 1016445, at *13 (N.D. Okla. Mar. 2, 2020); *Est. of Crowell ex*

*rel. Boen v. Bd. of Cnty. Comm'rs*, 237 P.3d 134, 142 (Okla. 2010) (same). As discussed in the

Nation's Motion, under color of that authority, the Sheriff has implemented a policy of booking,

detaining, and incarcerating non-member Indians for conduct arising within the Creek

Reservation. He has informed those under his authority—and informed the Nation as well—that,

in light of *O'Brien*, non-member Indians "will not be booked or charged into tribal courts but

rather STATE court and booked into [the Tulsa County Jail] as any other citizen" and that, within

the Creek Reservation, "[t]he *only tribal arrests* that will take place will be Creek Citizens ….

All others will be booked into [the Tulsa County Jail] and charged in Tulsa Co. District Court."

Decl. of Att'y Gen. Geraldine Wisner (Dkt. 5) ¶ 5, Ex. 2. (emphasis added). The Nation seeks to

enjoin such assertions of jurisdiction.[12]

## CONCLUSION

The Nation respectfully requests that the Defendants' Motions to Dismiss be denied.

---

[12] To be clear, the Nation does not seek to prevent the Sheriff from exercising law enforcement
authority with respect to Indian suspects within the Reservation. *See* Dkt. 4 at 23. However, he
must do so under the parties' Cross-Deputization Agreement, which does not authorize the
Sheriff to book Indian defendants into the county jail for violations of state law. *See* Dkt. 5 ¶ 2,
Ex. 1, § 8(D).

25

MCN Appendix Page 232

Dated: April 28, 2025

Geraldine Wisner, OBA No. 20128
Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com


O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com


Philip H. Tinker
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com


*Counsel for Muscogee (Creek) Nation*

26

MCN Appendix Page 233

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally recognized Indian tribe,<br><br>*Plaintiff,*<br><br>v.<br><br>STEVE KUNZWEILER, in his official<br>capacity as District Attorney for the<br>Fourteenth Prosecutorial District of<br>Oklahoma; and VIC REGALADO, in his<br>official capacity as Tulsa County Sheriff,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-cv-00075-GKF-JFJ |

**DEFENDANT STEVE KUNZWEILER'S REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT**

This federal lawsuit filed by the Muscogee (Creek) Nation ("Plaintiff" or "Nation")—

which seeks to jeopardize public safety in Tulsa and beyond and directly interfere with ongoing

state prosecutions—is clearly barred by the *Younger* and *Colorado River* abstention doctrines.

Defendant Steve Kunzweiler ("Defendant" or "Kunzweiler") concedes that the Nation is not a

party to the ongoing state criminal proceedings. But that is only the beginning of the analysis. "The

rule in *Younger v. Harris* is designed 'to permit state courts to try state cases free from interference

by federal courts[.]' . . . Plainly, the same comity considerations apply where the interference is

sought by some . . . not parties to the state case." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

Before going further, Defendant will address a red herring underlying Plaintiff's Response

Brief (Doc. 57). Plaintiff attempts to obscure the clear legal issue—whether the State, not the

Nation, has authority to prosecute nonmember Indians for non-major crimes committed in Indian

country within State boundaries—by focusing on an irrelevant argument: the claim that the Nation

would not be bound by state court decisions. *See, e.g.,* Doc. 57 at 21 (strangely invoking legal

1

**MCN Appendix Page 234**

concepts of issue preclusion and res judicata and insisting that "no judgment in [the state criminal proceedings] can bind the Nation."). The contention misses the mark. This case does not concern the Nation's prosecutorial authority, which has not been—and cannot be—affected by any state court ruling. The legal issue centers solely on State authority, and Kunzweiler, whose actions Plaintiff seeks to enjoin, is unquestionably bound by those decisions. Plaintiff is simply attempting to use improper means to overturn unfavorable state court rulings by improperly re-litigating them in a federal forum it hopes is more sympathetic. *City of Tulsa v. O'Brien*, Order Denying Petition for Rehearing, No. S-2023-715 (Okla. Ct. Crim. App. Feb. 5, 2025) ("All questions duly submitted, including the issues raised in [O'Brien's] motion to dismiss the appeal, his response brief, and *the Muscogee (Creek) Nation's amicus brief*, were reviewed by the Court prior to rendering the decision in this case" that the State's jurisdiction over all its territory includes the authority to prosecute nonmember Indians who commit non-major crimes in Indian country.") (emphasis added).

To that end, Plaintiff asks this Court to:

- Effectively rewrite well-established abstention doctrines that clearly apply to this matter;

- Accept inherently contradictory positions: that the State's prosecutions of nonmember Indians harm the Nation (to establish standing), while simultaneously claiming the suit is somehow unrelated to those very prosecutions (to avoid abstention);

- Authorize burdensome and irrelevant discovery, including depositions and evidentiary hearings involving State and Tribal officials, despite the purely legal nature of the question presented—thereby inviting similar actions across six related federal lawsuits (stemming from four cases involving six complaints by original and intervening parties). Plaintiff, in essence, asks this Court to pull top law enforcement officials in Tulsa from active criminal prosecutions to testify in this civil case, undermining the integrity of the criminal justice system, the very concern addressed by *Younger* abstention, and putting public safety at risk;

- Disregard that the Oklahoma Court of Criminal Appeals directly addressed the issue in *O'Brien* and *Stitt*—and overlook the fact that an appeal to the U.S. Supreme Court is

2

imminent in at least *Stitt*, with a petition due within 90 days of April 7, 2025, following the denial of rehearing by the OCCA.

The Nation's response brief serves only to distract from this central truth: the injunction it seeks would disrupt numerous active State criminal proceedings. And there can be no doubt that, had State courts ruled as it wished, the Nation would be defending those courts and their authority, not collaterally attacking them here. In the end, Plaintiff's arguments here mirror those raised by criminal defendants—and even Plaintiff—in State court proceedings, tying it too closely to those prosecutions to escape abstention simply because it is not a named party in them. Indeed, Plaintiff's claims are wholly dependent on the prosecutions.

This Court should abstain and reject Plaintiff's oppressive effort to force discovery and evidentiary hearings that are unrelated to the controlling legal issue and designed solely to interfere with State prosecutions through duplicative federal litigation.

## I.    *Younger* **mandates dismissal.**

That abstention is generally the exception that proves the rule is insignificant because abstention *is mandatory* (*i.e.*, non-discretionary) when, as here: "(1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (cleaned up); *see also Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("When *Younger*'s three requirements are met, abstention is mandatory.").

Plaintiff does not dispute the first element of mandatory abstention. Doc. 57 at 9 (recognizing and acknowledging Defendant's "ongoing state proceedings").  Plaintiff baldly asserts that the second element is not met simply because the Plaintiff is not a party to those

MCN Appendix Page 236

proceedings, nor is it in privity. But the standard is whether the state forum provides an adequate opportunity to raise the federal claims—not whether the plaintiff is a named party or even in direct privity. Finally, the Nation contends, with immaterial nuance, that prosecutions for violations of Oklahoma law do not implicate important state interests. Respectfully, that's untenable. If enforcing state criminal law and ensuring public safety within state borders isn't an important state interest, nothing is. Neither law nor logic support the Nation's position.

Importantly, a federal court need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). *Younger* abstention is "jurisdictional." *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 100 n.3 (1998).

**A. The state courts provide an adequate forum to hear the claims raised in the Complaint.**

In urging this Court to retain jurisdiction and block state criminal prosecutions, Plaintiff argues it is not—and cannot become—a party to such proceedings. Doc. 57 at 9-12.  But—as the very basis of this lawsuit makes clear—nor is it a "genuine stranger" as the Nation would have this Court believe. *Younger* abstention does not require it to be a party, only that the state forum provides an adequate opportunity to raise the federal claims. That is certainly the case here.

Federal courts routinely apply *Younger* abstention to non-parties when their interests are closely tied to those of individuals involved in ongoing state proceedings. As the Supreme Court stated in *Doran v. Salem Inn, Inc.*, *Younger* considerations may extend to "legally distinct parties" where their interests are "so closely related" that interference with one would disrupt the others. 422 U.S. 922, 928 (1975). Likewise, in *Hicks v. Miranda*, the Court confirmed that abstention is proper where interests are "intertwined" and where the federal action seeks to disrupt a state prosecution. 422 U.S. at 348–49. These comity principles apply even when the federal plaintiff is

MCN Appendix Page 237

not a party to the state proceeding but asserts rights derived from those who are. *See D.L. v. Unified*

*Sch. Dist. No. 497*, 392 F.3d 1223, 1231 (10th Cir. 2004); *Spargo v. N.Y. State Comm'n on Judicial*

*Conduct*, 351 F.3d 65, 83–84 (2d Cir. 2003); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x

630, 635–36 (6th Cir. 2005).

The analysis and decision in *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th

Cir. 2012), are enlightening. There, the Arkansas Department of Human Services took custody of

numerous children living on the property of a religious organization ("TACM") following findings

of abuse. Although TACM itself was not a party to the state dependency and parental rights

proceedings, it filed a federal lawsuit alleging violations of its and its members' constitutional

rights. TACM argued that it had no way to participate in state court and no access to federal court

if *Younger* applied—claiming it was in a "no man's land." *Id.* at 1251. The appellate court rejected

that argument, emphasizing that *Younger* abstention applied because TACM's injuries were

"sufficiently related to, or inextricably intertwined with," those of its members, who were parties

to the state cases. *Id.* at 1253 (holding that relief based on the injuries of individual members were

"plainly barred by Younger"). As to TACM's claims of independent injury, the court found those

injuries were "generally aligned with those of its members" and, therefore, "in one degree or

another, derivative of the injuries of its members." *Id.* Accordingly, the court held that *Younger*

barred the federal action, even though TACM could not become a party to the state court

proceedings and had asserted facial constitutional claims.

Similar to the present case, in *Glob. Impact Ministries v. Mecklenburg Cnty.*, 2021 WL

982333 (W.D.N.C. Mar. 16, 2021), several organizations filed an action against a city and county

in North Carolina seeking, among other things, an injunction against the enforcement of a local

ordinance banning certain protest gatherings as unconstitutional after several of its members had

been cited and arrested pursuant to it. According to the court, these "ongoing state criminal proceedings relating to the arrests or citations of" members of the organization plainly implicated *Younger*. *Id*. at *3. The organizations "share a close relationship and alignment with the" individual members and the state court proceedings. *Id*. at *4. And those "proceedings implicate important state interests and provide an adequate opportunity for the parties in the state proceeding to raise constitutional challenges." *Id*. at *3

Plaintiff's position mirrors that of the organizations in *TACM* and *Glob. Impact Ministries*, which were closely aligned with state parties. Plaintiff shares a close relationship and alignment with the criminal defendants. The Nation claims its own injury—purportedly to its "sovereignty and . . . the authority of its own criminal justice system." Doc. 57 at 2-3. But this injury is entirely speculative and unsupported; the Nation cites no instance of the State interfering with its ability to prosecute nonmember Indian within its Indian country. Even if such an injury existed, it would arise solely from and be *completely contingent on the ongoing prosecutions* of individual Indian defendants, making the Nation and the criminal defendants inextricably tied. In short, Plaintiff's claims depend entirely on the rights and circumstances of others. Without those prosecutions, it would have no case. This claim, in other words, relies entirely on the asserted rights and circumstances of those defendants.

As in *TACM*, Plaintiff is not a party to the state proceedings, but its claims are so intertwined with those of the defendants that any federal relief would directly interfere with the ongoing state cases. The key question is whether Plaintiff's claims are "closely intertwined" with those in state court. *D.L.*, 392 F.3d at 1231. Here, they are inextricably intertwined.

Finally, the Nation's own conduct undercuts its position. In extensive amicus briefing before the OCCA, *City of Tulsa v. O'Brien*, Brief of Amicus Curiae Muscogee (Creek) Nation, No.

6

S-2023-715 (Ct. Crim. App. Aug. 13, 2024),[1] the Nation raised all the arguments presented here without ever suggesting that the state courts were an improper venue or incapable of deciding the issues. Those courts ruled, and the Nation now turns to federal court in hopes of a different result. Litigation initiated for the express purpose of undermining—much less interfering with—ongoing state proceedings is the exact type of interference *Younger* forbids. *See Younger*, 401 U.S. at 44.

In sum, the state prosecutions the Nation urges this Court to disrupt could not more clearly provide an adequate forum to address the claims raised in the Complaint. As in *TACM*, "but for" the ongoing prosecution of individual Indians and their purported jurisdictional defenses, the Nation's allegations—and thus, its claims—do not exist.

### B.  The state court prosecutions implicate important state interests.

With immaterial nuance, the Nation contends that no important state interests are implicated. After conceding the state has a general interest in enforcing its laws, the Nation posits that the "question . . . turns on the state's interest in enforcing its criminal laws 'against Indians in Indian country." Doc. 57 at 14 (cleaned up).

The actual question under *Younger* is simply whether "the proceedings implicate important state interests." *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here then we must ask whether state prosecutions of nonmember Indians accused of violating Oklahoma's criminal laws within its borders—and in some cases, against its citizens— implicate important state interests. Plaintiff skips to a merits argument (something it shuns elsewhere in its brief) to conclude that the state cannot have an interest because it has "no legal entitlement . . . in the first place." Doc. 57 at 14 (citation omitted). Clear law and basic logic belie the Nation's analysis.

---

[1] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=Appellate&number=S-2023-715.

7

There is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Id.* Indeed, in our federal system, "[t]he States possess primary authority for defining and enforcing the criminal law." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). Each state has a "sovereign interest in being in control of, and able to apply, its laws throughout its territory." *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 476 (2d Cir. 2013). Simply put, States have "a strong sovereign interest" in "protecting *all* crime victims," and punishing *all* criminal offenders within their borders. *Castro-Huerta*, 597 U.S. at 651 (emphasis added). This Court has already said as much, finding the State has an "interest[] in enforcing laws with respect to non-member Indians." Doc. 54 at 4. Of course, it would be a logical impossibility to have an interest in protecting crime victims while lacking the power to prosecute offenders. Yet, Plaintiff asks this Court to strip a district attorney of that very authority.

Moreover, considering the Supreme Court's reaffirmation of the validity of State prosecutions in *Castro-Huerta*, *Ute*—an inapposite Tenth Circuit decision—cannot be deployed as a justification for categorical exclusivity. *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1006 (10th Cir. 2015); *see also Arizona v. U.S.*, 567 U.S. 387, 400 (2012) ("[C]ourts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'"). This is especially so in cases like this one which, unlike *Ute*, do not involve member Indians on a reservation. *Ute Indian Tribe*, 790 F.3d at 1006. Rest assured, Defendant does not ask this Court to overturn *Ute*. This Court has already noted the clear distinction between *Ute*—where "a Utah county prosecuted a Ute tribal member for alleged traffic offenses on tribal lands"—and the nonmember context. *See* Doc. 54 at 3-4.

8

MCN Appendix Page 241

A simple hypothetical applying Plaintiff's logic illuminates its absurdity. Suppose a member of the Navajo Nation (*i.e.*, a non-Oklahoma tribe) assaults an Oklahoma public official (*e.g.*, the Governor or Attorney General) in Tulsa, Oklahoma. In Plaintiff's world, such an incident would not implicate important state interests, and Oklahoma would be unable to prosecute the Navajo Nation member or protect its own officials. Surely not.

## C.  No exception to *Younger* applies.

Plaintiff argues that even if the *Younger* elements are met, prosecutions of nonmember Indians would cause it irreparable injury sufficient to override abstention. Doc. 57 at 16-18. First, "irreparable injury is insufficient unless it is 'both great and immediate.'" *Younger*, 401 U.S. at 46. Plaintiff does not claim that its purported injury is great or immediate. Second, the Nation relies heavily on *Ute* and *Prairie Band* for this tenuous position. *Id*. But this Court already rejected that argument, finding, "in contrast to *Prairie Band, Ute,* and *Fisher*, the Nation has not yet identified certain, great, actual, and non-theoretical harm." Doc. 54 at 4.

The irreparable injury exception is meant to protect the rights of criminal defendants when their individual rights cannot be safeguarded during ongoing prosecutions.  It does not apply to federal plaintiffs whose *Younger*-barred claims are intertwined with or derivative, directly or indirectly, of the state defendant. The Nation's attempt to stretch the exception beyond its limits fails.

## II.      The Court should abstain under *Colorado River*.

The heart of *Colorado River* abstention embodies a policy of "wise judicial administration," promoting the "conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). And, as emphasized in *Arizona v. San Carlos Apache Tribe of Arizona*, even where permissible, federal

9

MCN Appendix Page 242

adjudication is "neither practical nor wise" if it risks "duplicative litigation," generates "tension and controversy between the federal and state forums," or fosters "confusion" over underlying rights. 463 U.S. at 568.

To avoid abstention under *Colorado River*, Plaintiff must contort the law and its application. Despite its explicit dependence on ongoing State criminal prosecutions, Plaintiff contends there are no parallel state proceedings. It again highlights that it isn't a party to the state proceedings—something Defendant concedes. Rather than applying the law, Plaintiff says— without more—that it is a "stranger" to the state proceedings. Doc. 57 at 20. In hopes that the Court too will avoid application of the law, Plaintiff then oddly contends that Defendant "waived" the argument that there are parallel proceedings. *Id*. at 21. It didn't. Each element of *Colorado River* is met, and the Court should abstain for this reason as well.

First, "[s]uits are parallel if *substantially* the same parties litigate *substantially* the same issues in different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (emphasis added). The word "substantially" immediately preceding "the same parties" has meaning. "[E]xact identity of parties and issues is not required." *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033 (D.N.M. 2023), *appeal dismissed*, *Pueblo of Pojoaque v. Biedscheid*, 23-2149, 2024 WL 4256791 (10th Cir. May 13, 2024) (examining *Fox v. Maulding*). To be sure, "substantially the same parties" is nowhere limited to just sameness or privity. As argued above, Plaintiff's claims are inextricably intertwined with and derivative of the criminal defendants and their defenses. *See supra* Part I.A. And the state criminal proceedings are an adequate vehicle, just as they were in *McGirt* and *Castro-Huerta*.

Second, although the issues must only be *substantially* the same, the issues in the State prosecutions and this lawsuit are *precisely* the same—whether the State's jurisdiction over all of

MCN Appendix Page 243

its territory includes jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country.

Third, Plaintiff's analysis regarding the existence of federal law is incomplete, at best. Doc. 57 at 22. For instance, the opening quote in Section III.D. of the Nation's Response strips material language from the sentence quoted, namely: that "the presence of state-law issues may weigh in favor of [the federal court's] surrender[]" under *Colorado River. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). It is indisputable that the State's ability to enforce its criminal code against nonmember Indians who commit crimes in Oklahoma implicates state-law *issues*, just as it invokes state-law *interests* at play in the *Younger* analysis. *See supra* Part I.B.

Here, the core issue—whether the State's jurisdiction over all its territory includes jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country— is already being addressed in state courts and has been decided at both trial and appellate levels. And the Supreme Court is sure to have an opportunity to address the OCCA's analysis and decision, very soon. Plaintiff simply disagrees with the results. But dissatisfaction with the state court outcomes does not justify federal intervention. Judicial economy and respect for parallel proceedings strongly favors abstention.

## III. Plaintiff lacks standing.

### A. Plaintiff has not shown an injury.

Plaintiff's argument that it has shown an injury is replete with citation to inapposite—or at the least, distinguishable—authority. *See, e.g. Ute Indian Tribe of the Uintah & Ouray Rsrv. V. Lawrence*, 22 F.4th 892 (10th Cir. 2022); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234; and *Fisher v. Dist. Ct.*, 424 U.S. 382 (1976). This Court dealt with each of these cases, finding:

11

MCN Appendix Page 244

Here, in contrast to *Prairie Band, Ute,* and *Fisher*, the Nation *has not yet identified* certain, great, actual, and *non-theoretical harm*. It does not contend that defendants have denied the Nation of its jurisdiction to enforce its own criminal and traffic laws against nonmember Indians. The defendants are not attempting to prosecute members of the Nation. And the Nation has not yet explained how state-court jurisdiction over nonmember Indians plainly interferes with its powers of tribal self-government.

Doc. 54 at 4. (emphasis added).

The Nation has done no more here—there is no injury. And where there is no injury, there can be no redress. In sum, Plaintiff lacks standing.

### B. A favorable ruling would not provide redress.

Even if Plaintiff could show an injury—and it cannot—redressability is lacking. The Nation is hopeful it might persuade the Court that an injury really does not have to be redressed. However, the authority doesn't say that. For instance, in *Larson v. Valente*, the Supreme Court emphasized that a discrete injury would "indeed be *completely* redressed by a favorable decision[,]" thus establishing redressability (emphasis added). 456 U.S. 228, 243 (1982). *See also Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007) (where redressability was not established because, in part, "a declaratory judgment [would not] avoid the future possibility (albeit remote) of a criminal prosecution."). The Plaintiff's purported injury would not be completely redressed, or really redressed at all, if relief were granted. State court judges (which are likely necessary parties) could continue issuing decisions. And other State officials such as the Governor (perhaps another necessary party) could continue to prosecute cases.

The Court should abstain from interfering with ongoing criminal prosecutions or otherwise dismiss this case for lack of standing.

### CONCLUSION

For all these reasons, Defendant's Motion to Dismiss should be granted.

12

MCN Appendix Page 245

Date: May 12, 2025

Respectfully submitted,

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

**Attorneys for Defendant**
**Steve Kunzweiler**

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing.

*s/Phillip G. Whaley*
Phillip G. Whaley

13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 25-cv-00075-GKF-JFJ |
| | ) | |
| TULSA COUNTY, OKLAHOMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT REGALADO's
REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Vic Regalado, in his official capacity as Sheriff of Tulsa County ("Sheriff Regalado"), hereby provides his Reply in support of Sheriff Regalado's Motion to Dismiss and Brief in Support [Doc. 38], and requests the Court to enter an order granting the motion and dismissing Sheriff Regalado from this action for Plaintiff's failure to state a claim upon which relief can be granted against this defendant. FED. R. CIV. P. 12(b)(6).

## I.    PLAINTIFF CANNOT PREVAIL AGAINST SHERIFF REGALADO.

### A.  The United States Supreme Court's Jurisdictional Test.

The key issue before the Court on Sherrif Regalado's motion to dismiss and in Plaintiff's request for extraordinary relief is purely a question of law. Indeed, the number of judges or courthouses Plaintiff has or aspires to one day establish, or how many general crimes it continues to choose not to prosecute, does not change the analysis and result. Applying the United States Supreme Court's established jurisdictional test in Indian country[1] leads to one answer; the State of Oklahoma and the Muscogee (Creek) Nation ("Nation") have concurrent jurisdiction to prosecute general crimes against non-Members in the Nation.

---

[1] *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022).

1

In its response [Doc. 57], the Nation notes that it addressed this issue in its Motion for Temporary Restraining Order and Preliminary Injunction briefing, but that Sheriff Regalado did not address its analysis in response. This argument is a non-starter; that analysis was not necessary to defeat Plaintiff's failure to establish that it was entitled to immediate extraordinary relief. *See* Opinion and Order [Doc. 54], denying Plaintiff's Motion for Temporary Restraining Order. Although Plaintiff's reliance upon the losing arguments and dissenting opinions in *Castro-Huerta* and *O'Brien*[2] is understandable, it is an established non-winnable legal position. Plaintiff has not— and cannot—state a claim against Sheriff Regalado under which it can recover.

### B.  The Complaint Allegations Against Sheriff Regalado.

Plaintiff claims Sheriff Regalado is exercising criminal jurisdiction over non-Members by "booking, detaining, and incarcerating" them in the county jail. Response [Doc. 57, p. 33]. In the Complaint, Plaintiff lumps Defendant Kunzweiler, Sheriff Regalado, and since dismissed "Tulsa County, Oklahoma," into a mixed stew descriptor, "County," [Doc. 2, p. 3, ¶ 5], and dedicates its allegations almost entirely to the theory that the "County" is prosecuting Indians. *See e.g*. *id* at ¶¶ 7, 21- 27. However, the only party capable of prosecuting non-Member Indians is Defendant Kunzweiler. The sole allegation specific to Sheriff Regalado is Plaintiff's claim that Sheriff Regalado adopted a policy of "booking and classifying inmates [*sic*]"[3] and "asserting criminal jurisdiction over non-member Indians in light of *O'Brien*." *Id*. at ¶ 28.[4] Whether Sheriff Regalado administratively classifies an arrestee on intake to the county jail—a facility which is also utilized

---

[2]*City of Tulsa v. O'Brien*, 2024 OK CR 31.

[3]Persons held pending charges are arrestees. Charged persons held pending trial are pretrial detainees. Those held post-conviction are inmates or incarcerated persons. None of the state criminal defendants identified in the Complaint are being held at the county jail in any capacity.

[4]The Complaint does not accuse Sheriff Regalado (or the Tulsa County Sheriff's Office) of arresting non-Member Indians. Rather, the allegation relates to intaking procedures at the county jail.

2

by the Nation and Lighthorse under a contract with Sheriff Regalado—has no impact on jurisdiction. Criminal jurisdiction is initially exercised by the arresting agency, most of which have cross-deputization agreements with the Nation. It is next a decision by the Nation—acting by and through its prosecutor—and by the state—acting by and through the District Attorney—on whether to file criminal charges in their respective court systems or direct the release of the arrestee. If charges are filed, Nation or state court judges determine whether a person is released from the county jail, or whether their detainment will continue. Sheriff Regalado is simply classifying whether the arrestees are being held pending charges by the Nation or state.

### C. The Law.

The United States Constitution provides the State of Oklahoma with the right to exercise jurisdiction in Indian country:

> Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.

*Castro-Huerta*, 597 U.S. at 636 (citing U.S. Const. Amdt 10). The "'sovereignty that the Indian tribes retain is of a unique and *limited* character.'" *United States v. Cooley*, 593 U.S. 345, 349-50, 141 S. Ct. 1638, 210 L. Ed. 2d 1 (2021) (quoting *United States v. Wheeler*, 435 U.S. 313, 323, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978)) (emphasis added). Indian tribes possess "inherent sovereign authority over *their* members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991) (internal citation omitted) (emphasis added). *See also Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 689, 142 S. Ct. 1929, 213 L. Ed. 2d 221 (2022) (quoting *Citizen Band Potawatomi*). One of the limitations is that

3

there is no traditional preemption of state jurisdiction over a non-Member Indian committing a non-major crime in Indian country. *Castro-Huerta*, 597 U.S. at 639 n.2, 641-42.[5]

The jurisdictional test to reach this conclusion was articulated by the United States Supreme Court in *Castro-Huerta*: "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id*. at 638. With respect to preemption, the General Crimes Act provides: "Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country." 18 U.S.C. § 1152. The *Castro-Huerta* Court concluded that the General Crimes Act extends "federal law to Indian country, leaving untouched the background principle of state jurisdiction over crimes committed with the State, including Indian country." 597 U.S. at 639. Importantly, unlike the Major Crimes Act, which was the focus of *McGirt*, the General Crimes Act does not say that "federal jurisdiction is exclusive to Indian country, or that state jurisdiction is preempted in Indian country." *Castro-Huerta*, 597 U.S. at 639. While Mr. Castro-Huerta provided multiple counter-arguments to this conclusion, the U.S. Supreme Court found that "[n[one is persuasive." *Id*. at 640.

The *Castro-Huerta* Court next considered whether Public Law 280 was a source of preemption, but found "[t]hat argument is similarly unpersuasive." *Id*. at 647. Indeed, "'[n]othing

---

[5]As the Supreme Court held in *Castro-Huerta*, unlike the Major Crimes Act analyzed in *McGirt v. Oklahoma*, 591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020), "the General Crimes Act does not treat Indian country as the equivalent of a federal enclave for jurisdictional purposes. Nor does the Act make federal jurisdiction exclusive or preempt state law in Indian country." *Castro Huerta*, 597 U.S. at 642. Thus, "[u]nder the General Crimes Act . . . both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639.

MCN Appendix Page 250

in the language or legislative history of Pub. L. 280 indicates that it was meant to divest States of pre-existing and otherwise lawfully assumed jurisdiction.'" *Id*. at 647-648 (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U. S. 138, 150, 104 S. Ct. 2267, 81 L. Ed. 2d 113 (1984)). Public Law 280 contains no language to preempt state civil or criminal jurisdiction. *Id*. at 648.

Without preemption by federal law under ordinary principles of federal preemption, a court must apply *Bracker*[6] balancing to determine if state jurisdiction would unlawfully infringe on tribal self-government. *Castro-Huerta*, 597 U.S. at 639 n.2, 649. *Bracker* requires a balancing of the federal, state and tribal interests. *Bracker*, 448 U.S. at 145. Here, the exercise of state jurisdiction does not infringe on tribal self-government. In particular, a state prosecution of a general crime committed by a non-Member would not deprive the tribe of any of its prosecutorial authority. Exercising concurrent jurisdiction over non-Member Indians bolsters the Nation's strong interest in public safety for its citizens. This is analogous to the rationale in *Castro-Huerta* for why concurrent state jurisdiction did not harm the federal interest in Indian country. *Id*. at 650-51. The Nation's dual jurisdiction to prosecute non-Members for violations of its laws is not impacted by the state's prosecution of the same non-Members for violations of the state's general crimes. There is simply no adverse impact on the Nation's right to self-governance of *its* own affairs and *its* members; the Nation does not govern a Cherokee, Osage, or any other non-Member Indian. Any tribal self-government "justification for preemption of state jurisdiction" would be "problematic." American Indian Law Deskbook §4.8, at 260; see also *Three Affiliated Tribes*, 467 U. S., at 148.[7]

---

[6] *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-43, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980).

[7] "[W]hen analyzing U.S. Supreme Court precedent regarding the distinction between member and non-member Indians, it becomes clear that prosecution of non-member Indians does not implicate

5

Next, "recognition of concurrent state jurisdiction could facilitate effective law enforcement on the Reservation, and thereby further the federal and tribal interests in protecting Indians and their property against the actions of non-Indians." *Castro-Huerta*, 597 U.S. at 650-651 (internal quotations omitted). As the Court concluded,

> the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims. The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State. The State's interest in protecting crime victims includes both Indian and non-Indian victims.

*Id*. at 852 (internal citation omitted). As this Court notes, the Nation "does not contend that defendants have denied the Nation of its jurisdiction to enforce its own criminal and traffic laws against non-member Indians. The defendants are not attempting to prosecute members of the Nation." Opinion and Order [Doc. 54, p. 4]. Indeed, "[b]oth the Nation and the defendants have the duty to protect their residents, enforce their laws, and uphold justice within their territorial boundaries." *Id*. The state "prosecution of non-member Indians of the Muscogee (Creek) tribe for misdemeanor traffic offenses occurring on public streets and roads in Tulsa [County] does not affect the tribe's authority to regulate its own citizens for violations of Creek tribal law. In fact, such a prosecution would not involve prosecuting any citizen of the Muscogee (Creek) tribe." *O'Brien*, 2024 OK CR 31 at ¶ 32 (recognizing that rather than harming the Nation, concurrent jurisdiction and prosecution of non-member Indians "would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation.").

Regarding the Nation's incorporated argument from its injunctive relief briefing, the

---

the *self* in tribal self-government. Non-member Indians are, for criminal jurisdiction purposes, similarly situated to non-Indians. Indian tribes are separate and distinct sovereigns, not a fungible amalgamation of Native American peoples." *City of Tulsa v. O'Brien*, 2024 OK CR 31 (J. Musseman, Specially Concurring at ¶ 14).

MCN Appendix Page 252

Nation offers nothing new to bolster the failed arguments and theories urged in *Castro-Huerta*, *O'Brien*, and their respective dissents. While the limitation on the holding in *Castro-Huerta* is noted, the framework of the legal test established in *Castro-Huerta* to determine jurisdiction in Indian country is unassailable under the current binding authority of the United States Supreme Court.

## I.    STANDING AND THE ABSTENTION DOCTRINES.

Both Sheriff Regalado and Defendant Kunzweiler challenged Plaintiff's standing and argued for the application of the *Younger* abstention doctrine and *Colorado River* abstention doctrine in their respective motions to dismiss [Docs. 38 and 40]. Plaintiff, in turn, addressed those issues in a combined response [Doc. 57]. Because the arguments of both defendants are essentially the same, Sheriff Regalado adopts and incorporates by reference Defendant Kunzweiler's Reply in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 67] to save the Court from being unnecessarily burdened by vastly similar briefing.

## CONCLUSION

Plaintiff's Complaint and request for relief is based upon the already failed legal arguments from the dissent in *Castro-Huert*a and the short and lone dissent in *O'Brien*. Applying the established jurisdictional test for Indian country, state jurisdiction is concurrent for violations of general crimes. Indeed, the Nation has not lost any ability to charge and prosecute its Members, non-Members, or non-Indians for violating Creek law in the Nation's Reservation, and it can prosecute the defendants in the State Prosecutions if the offenses are alleged to have occurred in the Nation's Reservation. The concurrent state prosecution of non-Members cannot adversely impact the Nation's self-government of *its* affairs and of *its* Members.

7

MCN Appendix Page 253

Furthermore, Plaintiff's sole issue with Sheriff Regalado is a Tulsa County Sheriff's Office memorandum that discusses how to administratively in-process an arrestee into the county jail, based upon whether the arrestee is a Member of the tribal territory where the incident occurred. Sheriff Regalado has no input or authority to decide whether an arrestee will be charged with any crime by the State of Oklahoma or by one of the tribes (Cherokee or Muscogee (Creek)). Once a person is charged, Sheriff Regalado takes directions from the state and/or tribal courts. Sheriff Regalado simply does not belong as a party to this lawsuit. Plaintiff has failed to state a claim upon which relief can be granted against Sheriff Regalado. Dismissal with prejudice is proper.

Filed: May 12, 2025

**HALL, ESTILL, HARDWICK, GABLE,**
  **GOLDEN & NELSON, P.C.**

*s/ Keith A. Wilkes*
Keith A. Wilkes, OBA 16750
Johnathan L. Rogers, OBA 21341
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
kwilkes@hallestill.com
jrogers@hallestill.com
**ATTORNEYS FOR SHERIFF REGALADO**

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>STEVE KUNZWEILER, in his official<br>capacity as District Attorney for the<br>Fourteenth Prosecutorial District of<br>Oklahoma; and VIC REGALADO, in his<br>official capacity as Tulsa County Sheriff,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 25-CV-75-GKF-JFJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter comes before the court on the Motion to Dismiss of Vic Regalado [Doc. 38]. For the reasons stated below, the motion is granted.

The southern two-thirds of Tulsa County, Oklahoma lies within the Muscogee (Creek) Reservation. Five years ago, in *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the Supreme Court found that the Reservation was never disestablished. The ramifications of that decision continue to reverberate throughout Eastern Oklahoma as the boundaries of State, federal, and tribal jurisdiction are repeatedly called into question.

In *McGirt*, the Supreme Court found that the State does not have jurisdiction over major crimes committed by Indians in "Indian country"—i.e., the Reservation. *Id.* at 932–38. Two years later, in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), the Court found that Oklahoma has concurrent jurisdiction over crimes committed by non-Indians in Indian country.

In this case, the Muscogee (Creek) Nation contends that the State of Oklahoma may not exercise criminal jurisdiction over *any* Indian—including non-member (i.e., non-Creek) Indians—for conduct occurring on the Creek Reservation.

The Nation filed its Complaint seeking: (1) a declaratory judgment that Tulsa County lacks criminal jurisdiction over Indians (including non-member Indians) for conduct occurring within the Reservation and that continued assertion of such jurisdiction violates federal law; (2) a temporary restraining order forbidding the County from exercising jurisdiction over Indians (including non-member Indians) for conduct occurring within the Reservation;[1] (3) a preliminary and permanent injunction enjoining defendant Kunzweiler from exercising criminal jurisdiction over Indians (including non-member Indians) for conduct occurring within the Reservation without Congress's express authorization; (4) its attorney fees and costs; and (5) any other appropriate relief.

On April 7, 2025 defendant Tulsa County, Oklahoma filed a Motion to Dismiss the claims against it because "Tulsa County, Oklahoma" is an improper party pursuant to Okla. Stat. tit. 19, § 4. Tulsa County and the Nation filed a "Stipulation to Dismiss Tulsa County from the Above-Captioned Case," which the court granted.

The remaining defendants—Sheriff Vic Regalado and District Attorney Steve Kunzweiler—filed separate Motions to Dismiss. In his Motion to Dismiss, Sheriff Regalado argues that: (1) the Nation lacks standing, (2) this court should abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), (3) this court should abstain pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and (4) the Nation has not identified any violation of federal law by him.

---

[1] On April 29, 2025 the court denied the Nation's request for a temporary restraining order. [Doc. 54].

- 2 -

MCN Appendix Page 256

County sheriffs in Oklahoma bear a litany of responsibilities, including an obligation to maintain county jails and preserve the peace in their respective counties. OKLA. STAT. tit. 19, §§ 513, 516. However, county sheriffs do not make prosecutorial decisions. Prosecutorial decisions are the district attorney's responsibility. *Oklahoma v. Haworth*, 283 P.3d 311, 316 (Okla. Crim. App. 2012) ("The county attorney[2] acts under a discretion committed to him for public good, and one of his most important functions is to select, out of what the law permits, the charges which he will bring against offenders.") (quoting *Wilson v. Oklahoma*, 209 P.2d 512, 514 (Okla. Crim. App. 1949)); *Cuesta-Rodriguez v. Oklahoma*, 241 P.3d 214, 235 (Okla. Crim. App. 2010) ("The decision regarding which criminal charge to bring lies within the wide parameters of prosecutorial discretion.") (quoting *Childress v. Oklahoma*, 1 P.3d 1006, 1011 (Okla. Crim. App. 2000)); *and Carpenter v. Oklahoma*, 929 P.2d 988, 995 (Okla. Crim. App. 1996) ("[T]he decision whether to prosecute and what charge to file is within the discretion of the prosecutor.").

The Nation's requested relief—declaratory and injunctive relief preventing the District Attorney from exercising criminal jurisdiction over non-member Indians on the Reservation—does not implicate Sheriff Regalado. Sheriff Regalado does not make the decision to prosecute any defendant. Sheriff Regalado is not a proper party to this action, and his Motion to Dismiss [Doc. 38] is granted.

IT IS SO ORDERED this 7th day of August, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[2] The office of county attorney was abolished in 1965 and its functions assumed by the office of district attorney. OKLA. STAT. tit. 19, § 215.19.

MCN Appendix Page 257

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MUSCOGEE (CREEK) NATION,            )
a federally recognized Indian tribe, )
                                     )
*Plaintiff*,                         )
                                     )
v.                                   )     Case No. 25-cv-00075-GKF-JFJ
                                     )
STEVE KUNZWEILER, in his official    )
capacity as District Attorney for the )
Fourteenth Prosecutorial District of )
Oklahoma,                            )
                                     )
*Defendant*.                         )

## DEFENDANT STEVE KUNZWEILER'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Steve Kunzweiler ("Defendant") submits this Answer to Plaintiff, Muscogee (Creek) Nation's ("Plaintiff"), Complaint.

Unless specifically admitted herein, Defendant denies the allegations in Plaintiff's Complaint. Pursuant to Federal Rule of Civil Procedure 8(b), Defendant responds to the allegations in each corresponding paragraph of the Complaint as follows:

### INTRODUCTION

1.   Defendant denies Plaintiff's characterization of *McGirt v. Oklahoma*, 591 U.S. 894 (2020), in paragraph 1 of its Complaint. In *McGirt*, the U.S. "Supreme Court held that, for the purposes of the Major Crimes Act, the Muscogee (Creek) Reservation was never disestablished." [Doc. 76 at 1].

2.   Defendant denies Plaintiff's allegations and characterization of the law in paragraph 2 of its Complaint. "[A]s a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022).

1

MCN Appendix Page 258

Indeed, "the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country." *Id*. at 638. And under the General Crimes Act, which is at issue in the Complaint, "both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639.

3.   Defendant denies Plaintiff's allegations and legal characterizations in paragraph 3 of its Complaint. Under the General Crimes Act, which is at issue in the Complaint, "both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639. The General Crimes Act does not "say . . . that state jurisdiction is preempted in Indian country." *Id*. Applying the "*Bracker* balancing test, th[e] Court has recognized that even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." *Id*. at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-143 (1980)). The State's prosecution of non-member Indians who commit non-major crimes in Indian country does not unlawfully infringe upon tribal self-government.

4.   To the extent the allegations and legal characterizations in paragraph 4 of Plaintiff's Complaint are directed at Defendant, Defendant denies the same and adopts and incorporates its response to Plaintiff's allegations in paragraph 3 of its Complaint.

5.   Defendant denies Plaintiff's allegations and legal characterizations in paragraph 5 of its Complaint. Defendant maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country, as further explained in response to Plaintiff's allegations in paragraph 3 of its Complaint.

MCN Appendix Page 259

6.      With respect to the allegations and legal characterizations in paragraph 6 of Plaintiff's Complaint, Defendant admits that he maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country. However, Defendant denies any allegation in paragraph 6 to the contrary.

7.      Defendant denies the allegations in paragraph 7 of Plaintiff's Complaint. Defendant maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country.

## JURISDICTION AND VENUE

8.      With respect to the allegations in paragraph 8 of Plaintiff's Complaint, Defendant denies that this Court has jurisdiction over this action, as more fully set forth in its Motion to Dismiss [Doc. 40] and related filings. Defendant also denies that the Nation asserts claims arising under the principles of federal Indian law governing federal, tribal, and state authority within Indian country, to the extent Plaintiff's understanding of federal Indian law principles are recited elsewhere in its Complaint. Defendant admits that the Nation has a relationship with the United States.

9.      With respect to the allegations in paragraph 9 of Plaintiff's Complaint, Defendant admits venue would be proper in this District, assuming, arguendo, this Court has jurisdiction over this action.

## PLAINTIFF

10.      With respect to the allegations in paragraph 10 in Plaintiff's Complaint, Defendant admits that Plaintiff has been recognized as an Indian entity eligible to receive services from the United States Bureau of Indian Affairs. However, Defendant denies the remaining allegations and legal characterizations in paragraph 10 of Plaintiff's Complaint, to the extent Plaintiff alleges or

3

MCN Appendix Page 260

implies that any sovereign powers of self-governance or jurisdiction associated with the Creek Reservation are exclusive or impact in any way Defendant's authority to prosecute non-member Indians who commit non-major crimes in Indian country.

11.     With respect to the allegations in paragraph 11 of Plaintiff's Complaint, Defendant admits only that the language Plaintiff quotes from the Muscogee (Creek) Nation criminal code does appear in such code. However, Defendant denies any allegation or implication that Plaintiff's assertion of jurisdiction supersedes, preempts, or in any way affects Defendant's authority to prosecute non-member Indians who commit non-major crimes in Indian country.

## DEFENDANTS

12.     To the extent the allegations in paragraph 12 of Plaintiff's Complaint are directed at Defendant, Defendant admits only that the county of Tulsa County is located within the exterior boundaries of Oklahoma and includes therein the exterior boundaries of the historical Creek Reservation and Cherokee Reservation.

13.     With respect to the allegations in paragraph 13 of Plaintiff's Complaint, Defendant admits that he is the District Attorney for the Fourteenth Prosecutorial District of Oklahoma, which encompasses Tulsa County. And although Defendant further admits that Plaintiff has sued Defendant in his official capacity, Defendant denies that such lawsuit is proper or meritorious.

14.     With respect to the allegations in paragraph 14 of Plaintiff's Complaint, Defendant denies that Tulsa County Sheriff Vic Regalado is a defendant in this lawsuit, as the Court dismissed him as a party.

## STANDING

15.     Defendant denies the allegations and legal characterizations in Paragraph 15 of Plaintiff's complaint. Defendant maintains the authority to prosecute non-member Indians who

MCN Appendix Page 261

commit non-major crimes in Indian country, and such authority neither interferes with nor causes any injury to Plaintiff. Indeed, the General Crimes Act does not "say . . . that state jurisdiction is preempted in Indian country." *Id*. Applying the "*Bracker* balancing test, th[e] Court has recognized that even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." *Id*. at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-143 (1980)). The State's prosecution of non-member Indians who commit non-major crimes in Indian country does not unlawfully infringe upon tribal self-government.

16.     With respect to the allegations in paragraph 16 of Plaintiff's Complaint, Defendant denies that he has engaged in, or will engage in, any unlawful conduct. Defendant maintains the authority to prosecute non-member Indians who commit non-major crimes in Indian country, and such authority neither interferes with nor causes any injury to Plaintiff. Indeed, the General Crimes Act does not "say . . . that state jurisdiction is preempted in Indian country." *Id*. Applying the "*Bracker* balancing test, th[e] Court has recognized that even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." *Id*. at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-143 (1980)). The State's prosecution of non-member Indians who commit non-major crimes in Indian country does not unlawfully infringe upon tribal self-government.

17.     Defendant denies the allegations in paragraph 17 of Plaintiff's Complaint. As further set forth in his Motion to Dismiss [Doc. 40], redressability is absent. Moreover, Defendant maintains the authority to prosecute non-member Indians who commit non-major crimes in Indian country, and such authority neither interferes with nor causes any injury to Plaintiff. Indeed, the

5

General Crimes Act does not "say . . . that state jurisdiction is preempted in Indian country." *Id*. Applying the "*Bracker* balancing test, th[e] Court has recognized that even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." *Id*. at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-143 (1980)). The State's prosecution of non-member Indians who commit non-major crimes in Indian country does not unlawfully infringe upon tribal self-government.

### THE SUPREME COURT'S DECISION IN *McGIRT V. OKLAHOMA*

18. Defendant denies Plaintiff's characterization of *McGirt v. Oklahoma*, 591 U.S. 894 (2020), in paragraph 18 of its Complaint. In *McGirt*, the United States Supreme Court held that, for the purposes of the Major Crimes Act, the Muscogee (Creek) Reservation was never disestablished.

19. Defendant denies the allegations and legal characterizations in paragraph 19 of Plaintiff's Complaint. First, in *McGirt*, the United States Supreme Court held that, for the purposes of the Major Crimes Act, the Muscogee (Creek) Reservation was never disestablished. Second, "as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Indeed, "the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country." *Id*. at 638. And under the General Crimes Act, which is at issue in the Complaint, "both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639. Third, applying the "*Bracker* balancing test, th[e] Court has recognized that even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if

6

MCN Appendix Page 263

the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." *Id*. at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-143 (1980)). The State's prosecution of non-member Indians who commit non-major crimes in Indian country does not unlawfully infringe upon tribal self-government.

20.    To the extent the allegations and legal characterizations in paragraph 20 of Plaintiff's Complaint are directed at Defendant, Defendant denies the same for the reasons set forth in response to the allegations in paragraph 19 of Plaintiff's Complaint.

### THE COUNTY'S CONTINUED CLAIM TO CRIMINAL JURISDICTION OVER INDIANS FOR CONDUCT WITHIN THE CREEK RESERVATION AFTER *McGIRT*

21.    With respect to the allegations in paragraph 21 of Plaintiff's Complaint, Defendant admits that he maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country. Defendant further admits that the Oklahoma Court of Criminal Appeals held in *O'Brien*, which was issued after having analyzed each of Defendant's arguments advanced in this lawsuit, that the State of Oklahoma has authority to prosecute non-member Indians who commit non-major crimes in Indian country. *City of Tulsa v. O'Brien*, Case No. S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024).

22.    With respect to the allegations in paragraph 22 of Plaintiff's Complaint, Defendant admits that he has properly opposed certain motions to dismiss criminal prosecutions filed in Tulsa County District Court by non-member Indians accused of non-major crimes in Indian country and that the Tulsa County District Court has properly denied multiple such motions to dismiss.

23.    With respect to the allegations in paragraph 23 of Plaintiff's Complaint, Defendant admits that the State commenced criminal proceedings in the cases cited by Plaintiff, each of which involves allegations of non-major crimes committed by non-member Indians in Indian country.

MCN Appendix Page 264

24.     With respect to the allegations in paragraph 24 of Plaintiff's Complaint, Defendant admits that the charged conduct occurred within the exterior boundaries of Tulsa County, State of Oklahoma, which includes the historical boundaries of the Creek Reservation.

25.     With respect to the allegations in paragraph 25 of Plaintiff's Complaint, Defendant admits that each defendant in the criminal proceedings referenced in paragraph 24 of Plaintiff's Complaint filed a motion to dismiss challenging the State's jurisdiction. However, Defendant denies any generalization of the arguments advanced by each such defendant and refers the Court to the motions to dismiss on file in each case.

26.     With respect to the allegations in paragraph 26 of Plaintiff's Complaint, Defendant admits that the State has asserted its authority to prosecute non-member Indians who commit non-major crimes in Indian country, and that the Oklahoma Court of Criminal Appeals' decision in *O'Brien* affirmed such authority based on an analysis expressly endorsed by the United States Supreme Court in *Castro-Huerta* and precedents cited therein.

27.     With respect to the allegations in paragraph 27 of Plaintiff's Complaint, Defendant admits that the Tulsa County District Court properly applied applicable law in each prosecution referenced in paragraph 23 of Plaintiff's Complaint, specifically by finding that the State maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country.

28.     The allegations in paragraph 28 of Plaintiff's Complaint appear to be directed at the Tulsa County Sheriff, who has been dismissed as a party to this lawsuit. However, to the extent such allegations are directed at Defendant, Defendant admits only that the Tulsa County Sheriff's policies consistent with the State's authority to prosecute non-member Indians who commit non-major crimes in Indian country, are lawful.

MCN Appendix Page 265

29.     The allegations in paragraph 29 of Plaintiff's Complaint appear to be directed at the Tulsa County Sheriff, who has been dismissed as a party to this lawsuit. However, to the extent such allegations are directed at Defendant, Defendant admits that the Tulsa County Sheriff has authority over the David L. Moss Criminal Justice Center.

30.     With respect to the allegations and legal characterizations in paragraph 30 of Plaintiff's Complaint, Defendant admits only that the State maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country. However, Defendant denies that the Supreme Court and Tenth Circuit precedents prohibit the State from prosecuting non-member Indians who commit non-major crimes in Indian country. "[A]s a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Indeed, "the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country." *Id*. at 638. And under the General Crimes Act, which is at issue in the Complaint, "both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639. Third, applying the "*Bracker* balancing test, th[e] Court has recognized that even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." *Id*. at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-143 (1980)). The State's prosecution of non-member Indians who commit non-major crimes in Indian country does not unlawfully infringe upon tribal self-government.

31.     Defendant denies the allegations and legal characterizations in paragraph 31 of Plaintiff's Complaint. Defendant maintains authority to prosecute non-member Indians who

9

commit non-major crimes in Indian country. "[A]s a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Indeed, "the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country." *Id*. at 638. And under the General Crimes Act, which is at issue in the Complaint, "both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639. Third, applying the "*Bracker* balancing test, th[e] Court has recognized that even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." *Id*. at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-143 (1980)). The State's prosecution of non-member Indians who commit non-major crimes in Indian country does not unlawfully infringe upon tribal self-government.

## COUNT I

32.    Although paragraph 32 of Plaintiff's Complaint does not contain any specific allegations, Defendant denies the allegations and legal characterizations in all preceding paragraphs, except as specifically admitted, above.

33.    With respect to the allegation in paragraph 33 of Plaintiff's Complaint, Defendant admits only that the United States Supreme Court, in *McGirt*, held that, for the purposes of the Major Crimes Act, the Muscogee (Creek) Reservation was never disestablished.

34.    Defendant denies the allegations in paragraph 34 of Plaintiff's Complaint. Defendant maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country, and such authority has not been preempted by federal law.

MCN Appendix Page 267

35.     With respect to the allegations in paragraph 35 of Plaintiff's Complaint, Defendant admits that the State maintains the authority to prosecute non-member Indians who commit non-major crimes in Indian country, and such authority has not been preempted by federal law.

36.     With respect to the allegations in paragraph 36 of Plaintiff's Complaint, Defendant admits that the State maintains the authority to prosecute non-member Indians who commit non-major crimes in Indian country, and as a matter of federal and state law, as well as public safety, Defendant will continue to prosecute criminal conduct that occurs within his jurisdiction.

## PRAYER FOR RELIEF

37.     Defendant denies the prayer for relief and each of its subparts in Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

1.      This Court lacks jurisdiction over Plaintiff's claims.

2.      Plaintiff has failed to state a claim upon which relief can be granted.

3.      Plaintiff has failed to join necessary parties.

4.      Defendant maintains authority to prosecute non-member Indians who commit non-major crimes in Indian country.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant prays that his answer be deemed good and sufficient and all claims by Plaintiff against Defendant be dismissed, with prejudice, and such other and further relief, legal, equitable, including attorney's fees, be awarded Defendant.

MCN Appendix Page 268

Dated:  August 26, 2025

Respectfully submitted,

_s/Phillip G. Whaley_
Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

**_Attorneys for Defendant_**
**_Steve Kunzweiler_**

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

_s/Phillip G. Whaley_
Phillip G. Whaley

12

**MCN Appendix Page 269**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MUSCOGEE (CREEK) NATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 25-CV-75-GKF-JFJ |
| | ) | |
| **STEVE KUNZWEILER, in his official** | ) | |
| **capacity as District Attorney for the** | ) | |
| **Fourteenth Prosecutorial District of** | ) | |
| **Oklahoma,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

This matter comes before the court on the Motion for Preliminary Injunction [Doc. 4] of plaintiff Muscogee (Creek) Nation. The Nation seeks a preliminary injunction to prevent defendant Tulsa County District Attorney Steve Kunzweiler from asserting concurrent criminal jurisdiction over Indians who are not members of the Nation and who are alleged to have committed crimes not covered by the Major Crimes Act within the boundaries of the Nation's Reservation. On October 9, 2025, the court held a hearing on the motion. For the reasons stated below, the motion is denied.

"Four factors must be shown by the movant to obtain a preliminary injunction: (1) the movant 'is substantially likely to succeed on the merits; (2) [the movant] will suffer irreparable injury if the injunction is denied; (3) [the movant's] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'" *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)). "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the

MCN Appendix Page 270

[movant] is entitled to such relief.'" *N. M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245 (10th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  To prevail, the Nation must establish each factor.  *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022).

Three categories of preliminary injunctions are disfavored and require a heightened standard of proof: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.  *Colorado v. EPA*, 989 F.3d 874, 883-84 (10th Cir. 2021).  To obtain a disfavored injunction, the movant must make a "strong showing" that the likelihood-of-success-on-the-merits and the balance-of-harms factors tilt in its favor.  *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (quoting *Fish*, 840 F.3d at 724).

**Analysis**

I.      **Likelihood of Success on the Merits**

As mentioned above, the issue presented in this case is whether the Tulsa County District Attorney may assert concurrent criminal jurisdiction over Indians who are not members of the Muscogee (Creek) Nation (hereinafter referred to as "nonmember Indians") and who are alleged to have committed crimes not covered by the Major Crimes Act (MCA) within the Nation's Reservation.

The Nation raises five arguments in support of its likelihood to succeed on the merits.  All five are variants on a common theme—that state courts have no concurrent jurisdiction to try nonmember Indians unless authorized by Congress, and that the preemption analysis contained in *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 638-49 (2022) cannot be applied in this case.

- 2 -

**MCN Appendix Page 271**

In its first argument, the Nation contends that, under Supreme Court precedent, States lack criminal jurisdiction over *all* Indians in Indian country absent clear Congressional assent, and that a "presumptive prohibition" exists against state criminal jurisdiction over nonmember Indians.  It cites *McGirt v. Oklahoma*, 591 U.S. 894, 929 (2020), for the proposition that the presumptive prohibition recognizes no distinction between member and nonmember Indians.  In *McGirt*, the Court held that Jimcy McGirt, an enrolled member of the Seminole Nation convicted in an Oklahoma state court of three serious sexual offenses, had committed his crimes on land established by Congress as a reservation for the Creek Nation, and therefore within "Indian country."  Pursuant to the MCA, "*[a]ny Indian* who commits" certain enumerated major crimes "within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." 18 U.S.C.  § 1153(a) (emphasis added).  In other words, the MCA required McGirt—a member of the Seminole Nation who committed his crime on the Creek Reservation—to be tried in federal court. Accordingly, McGirt's state court convictions were reversed for lack of jurisdiction.  In contrast, this case involves nonmember Indians who allegedly committed crimes *not* covered by the MCA. The Supreme Court recognized no distinction between member and nonmember Indians in *McGirt* because the MCA recognizes no such distinction. Therefore, the holding in *McGirt* does not support a presumptive prohibition against state criminal jurisdiction over nonmember Indians in this case, as this case does not involve the MCA.

MCN Appendix Page 272

Although the holding in *Castro-Huerta* does not address the issue raised in this case,[1] the opinion sets forth the preemption analysis by which issues of a State's criminal jurisdiction in Indian country must be evaluated and decided. After reviewing its precedents, the Court stated: "[i]n short, the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country." 597 U.S. at 637-38. State jurisdiction may be preempted "(i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id*. at 638, 652-653.[2] Accordingly, this court shall address the Nation's likelihood of success pursuant to the preemption analysis contained in *Castro-Huerta*.

Second, the Nation asserts that Congress recognizes no distinction between member and nonmember Indians for the purposes of state criminal jurisdiction in Indian country. But Congressional provisions using the general term "Indian" "reflect the Government's treatment of Indians as a single large class with respect to *federal* jurisdiction and programs." *Duro v. Reina*, 495 U.S. 676, 689-90 (1990). Those Congressional references are not dispositive of a State's jurisdiction to prosecute nonmember Indians accused of committing non-major crimes in Indian country. More importantly, Congress need not have made a distinction between member and nonmember Indians. As the Supreme Court stated in *Castro-Huerta*:

> [U]nder the Constitution and this Court's precedents, the default is
> that States may exercise criminal jurisdiction within their territory.
> See Amdt. 10. States do not need a permission slip from Congress
> to exercise their sovereign authority. In other words, the default is

---

[1] The Court clearly stated in two footnotes that it expressed no view on the issue of whether a State may exercise jurisdiction over crimes committed by Indians against non-Indians in Indian country. *See* 597 U.S. at 650 n.6, 655 n.9.

[2] The analysis is often referred to as the *Bracker* test. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-45 (1980).

MCN Appendix Page 273

> that States have criminal jurisdiction in Indian country unless that
> jurisdiction is *preempted*.

597 U.S. at 653.[3]

Third, the Nation contends—and is correct—that the Court in *Castro-Huerta* expressed no view on state jurisdiction over a State's prosecution of crimes committed by an Indian against a non-Indian in Indian country. *Id.* at 650 n.6, 655 n.9. However, as previously discussed, the Court identified the preemption analysis to be applied in deciding such issues. *See id.* at 639 n.2.

Fourth, the Nation argues that "*Castro-Huerta*'s Constitutional foundation forecloses any distinction between member and non-member Indians." [Doc. 4, p. 20]. In *Castro-Huerta*, the Court cited the Tenth Amendment in support of its statement that "as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." 597 U.S. at 636. The Nation contends the Court's reasoning does not support state jurisdiction over crimes by Indians because Congress's power to legislate with respect to Indian tribes is "plenary and exclusive" (citing *Haaland v. Brackeen*, 599 U.S. 255, 272 (2023)), and because the Tenth Amendment reserves to the states only "that residuum of sovereignty not delegated to the United States by the Constitution." [Doc. 4, p. 22 (citing *Skiriotes v. Florida*, 313 U.S. 69, 77 (1941), and *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 899-900 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 273 (2022), among others)].

In *Haaland v. Brackeen*, a birth mother, foster and adoptive parents, and the State of Texas brought an action seeking a declaration that the Indian Child Welfare Act (ICWA) was

---

[3] An example of Supreme Court precedent rejecting the proposition that Congress must expressly authorize the exercise of state jurisdiction is *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987). There, the Court wrote that "[o]ur cases … have not established an inflexible *per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." *Id.* at 214-15.

- 5 -

MCN Appendix Page 274

unconstitutional because it exceeds Congress's power under Article I.   The Court rejected that claim, confirming that Congress's power to legislate with respect to Indians is well established and broad.   But defendant in the instant case does not contest Congress's plenary power to legislate with respect to Indians.   He merely rejects the proposition "that a state only has criminal jurisdiction in Indian country if Congress provides a permission slip." [Doc. 41 at 20-21].   As previously mentioned in footnote 3 of this Opinion and Order, the Supreme Court has not established an inflexible *per se* rule precluding state jurisdiction in Indian country in the absence of express congressional consent.

*Skiriotes v. Florida* involved the state court criminal conviction of a man for using diving equipment in the taking of sponges from the Gulf of Mexico off the coast of Florida.   A Florida statute forbade the use of diving suits for the purpose of taking commercial sponges from the Gulf of Mexico within the territorial limits of that State.   The issue presented was whether Florida's statute was beyond the power of the State.   The Court found no basis for holding that the statute exceeded the limits of state power and affirmed the conviction.   The portion of the Court's opinion on which the Nation relies has nothing to do with the Tenth Amendment.   Rather, it addresses the power given to Congress by Section 3 of Article IV of the Constitution to admit new States.

In *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence,* a former tribal employee, a non-Indian, filed suit in Utah state court against the tribe on claims arising out of an employment contract.   The tribe filed suit in federal court seeking an injunction to halt the state court proceedings.   The federal district court dismissed the tribe's complaint and the tribe appealed.   The Tenth Circuit reversed and remanded, in part because "when a case brought against a tribe or its members 'arise[es] from conduct in Indian country,' state courts lack jurisdiction 'absent clear congressional authorization.'"   22 F.4th at 900 (quoting *Navajo Nation v. Dalley*, 896 F.3d 1196,

- 6 -

1204 (10th Cir. 2018)). *Lawrence* is unpersuasive, as the instant case does not involve a lawsuit brought against the Nation or its members in state court.

Because the Supreme Court has not established an inflexible *per se* rule precluding state jurisdiction in Indian country in the absence of express congressional consent, the Nation's fourth argument does not persuade the court that the Nation is likely to succeed on the merits.

Fifth, the Nation contends that the Oklahoma Court of Criminal Appeals' decision in *City of Tulsa v. O'Brien*, ---P.3d---, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024), and its reliance on *Castro-Huerta*, is not binding on this federal court. The Nation is correct as a matter of law, and the OCCA's opinion is not binding on this court. However, this contention is not itself relevant to the issue of whether the Nation is likely to succeed on the merits

### A.    Preemption by Federal Law

For the reasons stated above, the court finds and concludes that the defendant is not preempted by federal law under ordinary principles of federal preemption from asserting concurrent criminal jurisdiction over nonmember Indians charged with committing crimes not covered by the MCA within the Nation's Reservation.

### B.    Preemption by Unlawful Infringement on Tribal Self-Government

"[E]ven when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Castro-Huerta*, 597 U.S. at 649 (citing *Bracker*, 448 U.S. at 142-143; *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 333-35 (1983)). "Under the *Bracker* balancing test, the Court considers tribal interests, federal interests, and state interests." *Castro-Huerta*, 597 U.S. at 649. For the following reasons, this court concludes that the Nation has not

- 7 -

MCN Appendix Page 276

met its burden of showing that the exercise of concurrent criminal jurisdiction over nonmember Indians unlawfully infringes on tribal self-government.

First, the State's exercise of concurrent jurisdiction to prosecute non-major crimes committed by nonmember Indians does not infringe upon the Nation's sovereignty or its internal self-government. The State's exercise of concurrent jurisdiction does not displace or diminish the Nation's jurisdiction and authority to prosecute those same individuals for violations of tribal law.

Second, the State's exercise of concurrent jurisdiction serves tribal interests in prosecuting nonmember Indians for crimes committed in Tulsa County against the Nation and its property, as well as the Nation's members and their property. Tulsa County is largely metropolitan, and thus quite different in many respects than other reservations. Though the Nation has presented evidence that it has opened a courtroom in Jenks, Tulsa County, Oklahoma, the testimony presented was that the Jenks court is a traffic court only.

Third, the Nation's interest in prosecuting nonmember Indians to the exclusion of the State is of lesser weight than its legitimate governmental interest in prosecuting its own members to the State's exclusion. *See Washington v. Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. 134, 161 (1980) ("For most practical purposes [nonmember] Indians stand on the same footing as non-Indians resident on the reservation.").

Fourth, the State's exercise of concurrent jurisdiction to prosecute non-major crimes committed by nonmember Indians does not infringe upon federal interests. State prosecution of crimes committed by nonmember Indians, like state prosecution of crimes committed by non-Indians in Indian country, supplements federal authority, it does not supplant it. *Cf. Castro-Huerta*, 597 U.S. at 650 ("State prosecution [of a non-Indian] would supplement federal authority, not supplant federal authority."). It also furthers federal interests by protecting the Nation and its

- 8 -

property, and members of the Nation and their property, against the criminal actions of nonmember Indians.

Fifth, the State has a strong interest in the exercise of concurrent jurisdiction over nonmember Indians alleged to have committed non-major crimes on the Nation's Reservation. "[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims," both Indian and non-Indian. *Id.* at 651. "The State also has a strong interest in ensuring that criminal offenders are appropriately punished and do not harm others in the State." *Id.*

Having considered the arguments contained in the briefing and the evidence presented at the hearing, this court concludes that the Nation has not met its burden of showing that the exercise of concurrent state jurisdiction over nonmember Indians unlawfully infringes on tribal self-government. Because the Nation has not met its burden to show that it is substantially likely to succeed on the merits, the motion for preliminary injunction [Doc. 4] must be denied.[4]

## II.     Irreparable Harm

The second factor that must be shown to obtain a preliminary injunction is irreparable injury if the injunction is denied. *Free the Nipple*, 916 F.3d at 805 (citing *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012)). "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'" *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that

---

[4] The failure to establish a significant possibility of success on the merits renders addressing the remaining factors for a preliminary injunction unnecessary. *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015). Although the court need not address the remaining factors, it nevertheless opts to do so.

MCN Appendix Page 278

there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (emphasis in original).

As previously stated, the defendant's prosecution of nonmember Indians alleged to have committed crimes not covered by the MCA within the Nation's Reservation does not prevent the Nation from prosecuting the same nonmember Indians under tribal law. Just as a state and the federal government may each—as separate sovereigns—prosecute an individual for the same criminal conduct without causing harm to their respective sovereignty, so too can the Nation and the State exercise concurrent jurisdiction over a nonmember Indian for the same criminal act without irreparable harm to the Nation. Having read the parties' briefs on the motion, and having heard the evidence presented at the hearing on the motion, this court concludes that the Nation has not shown that it is irreparably harmed by the exercise of concurrent jurisdiction over nonmember Indians alleged to have committed crimes not covered by the Major Crimes Act on its Reservation.

## III.    Balance of the Equities and the Public Interest

The third and fourth preliminary injunction factors—whether the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction and whether the preliminary injunction would not be adverse to the public interest—merge when the government is the party opposing the preliminary injunction. *Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1136, 1157 (W.D. Okla. 2024) (citing *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020)).

The Nation has not shown that the threatened injury to its interests outweighs the harms that the preliminary injunction will cause the State. Nor has it shown that a preliminary injunction would not adversely affect the public interest. Tulsa County has a population of approximately 670,000 people, and a majority of Tulsa County lies within the Nation's Reservation. The

**MCN Appendix Page 279**

defendant, along with approximately sixty (60) assistant district attorneys and sixty (60) support staff, enforces the laws of the State of Oklahoma in Tulsa County. Any alleged injury to the Nation's sovereignty resulting from the State's exercise of concurrent criminal jurisdiction over nonmember Indians does not outweigh the injury to the citizens of Tulsa County—both Indian and non-Indian—or the adverse effect to the public interest by enjoining the defendant and his office from enforcing the laws of the State against nonmember Indians. Accordingly, the court concludes the Nation has not met its burden as to the third and fourth factors.

## IV.    The Preliminary Injunction Sought is Disfavored

The traditional purpose for preliminary injunctions is to "preserve the status quo until a trial on the merits may be had." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). In this Circuit, the status quo is defined "by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* at 1100 (emphasis in original).

Here, the Nation seeks a preliminary injunction that would alter the status quo. The defendant prosecuted nonmember Indians for conduct within the Nation's Reservation for over two years before the Nation filed this lawsuit and its motion for preliminary injunction. *See, e.g., Oklahoma v. Bohanan*, No. CM-2022-108 (Tulsa Cnty. Dist. Ct. filed Jan. 10, 2022). DA Kunzweiler has continued to prosecute nonmember Indians for conduct that occurred on the Nation's Reservation. *See Oklahoma v. Hess*, No. CM-2024-2951 (Tulsa Cnty. Dist. Ct. filed Aug. 8, 2024); *Oklahoma v. Mason*, No. CM-2024-4510 (Tulsa Cnty. Dist. Ct. filed Nov. 27, 2024);

- 11 -

*Oklahoma v. Morris*, No. CM-2024-3928 (Tulsa Cnty. Dist. Ct. filed Oct. 14, 2024); *Oklahoma v. Neafus*, No. CM-2024-1222 (Tulsa Cnty. Dist. Ct. filed Apr. 3, 2024).

Because the Nation seeks a preliminary injunction that alters the status quo, it must make a strong showing with regard to both the likelihood of success on the merits and the balancing of harms. As discussed above, it fails to do so. Even if the preliminary injunction sought here was not disfavored, this court finds and concludes the plaintiff would not prevail on its motion.

### Conclusion

For the foregoing reasons, the Motion for Preliminary Injunction of plaintiff Muscogee (Creek) Nation [Doc. 4] is denied.

IT IS SO ORDERED this 7th day of November, 2025.

_____
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

- 12 -

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Muscogee (Creek) Nation, | | |
| Plaintiff, | Case No.: | 25-CV-75-GKF-JFJ |
| vs. | | |
| Steve Kunzweiler, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma, | **ORDER FOR JOINT STATUS REPORT** | |
| Defendant. | | |

Pursuant to LCvR16.1, the parties are directed to prepare, and file of record, a Joint Status Report on or before: **12/31/2025**.

Joint Status Report forms are available in the Court Clerk's office, or can be obtained from our public web site at www.oknd.uscourts.gov. For the purpose of preparing the Joint Status Report, the parties shall, pursuant to Fed. R. Civ. 16 and 26, confer at least 14 days prior to the date the Joint Status Report is to be filed with the Court.

Note that pursuant to Fed. R. Civ. P. 26(a)(1), initial disclosures must be made within 14 days after you confer for the purpose of preparing the discovery plan portions of the Joint Status Report, and that pursuant to LCvR26.1, parties shall make initial disclosures unless they stipulate otherwise in the Joint Status Report. By this order, all parties are under an affirmative duty to (i) comply with the mandatory disclosure requirements, and (ii) notify the Court of any non-disclosure so that the issue can be promptly referred to a Magistrate Judge for resolution.

In the Joint Status Report, the parties shall advise the Court of all legal and/or factual issues that remain for resolution in this matter. Alternatively, in the event the parties agree that the Court's ruling on plaintiff's motion for preliminary injunction decided the controlling issue in this case, the parties shall advise the court so that it may enter a final judgment.

Be advised that scheduling conferences are not routinely set by the Court. A scheduling conference may, however, be set at a party's request or on the Court's own initiative. The parties shall indicate in their Joint Status Report whether they believe that a scheduling conference is necessary. If a scheduling conference is set, the Court will enter a Scheduling Order at the conclusion of the scheduling conference. If a scheduling conference is not set, the Court will enter a Scheduling Order based on the information provided by the parties in the Joint Status Report.

Dated: December 2, 2025

_____
Gregory K. Frizzell, U.S. District Judge

Order for Joint Status Report                                                                     (CV-13 6/2021)

MCN Appendix Page 282

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe, <br><br> *Plaintiff*, <br><br> v. <br><br> STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma, <br><br> *Defendant*. | Case No. 25-cv-75-GKF-JFJ |

### JOINT STATUS REPORT OF THE MUSCOGEE (CREEK) NATION AND DISTRICT ATTORNEY STEVE KUNZWEILER

Pursuant to LCvR16.1 and this Court's December 2, 2025 Order for Joint Status Report (Dkt. 88), the Muscogee (Creek) Nation and District Attorney Steve Kunzweiler hereby advise the Court as follows:

1)    On October 9, 2025, this Court held an evidentiary hearing on the Nation's Motion for Preliminary Injunction (Dkt. 4). Both parties presented evidence in support of their respective positions regarding the Nation's Motion and rested at the conclusion of their presentations. Minute Sheet (Dkt. 85).

2)    The Court issued its ruling on November 7, 2025, denying the Nation's Motion for Preliminary Injunction. Op. and Order (Dkt. 87).

3)    The Parties, having reviewed the Court's Opinion and Order, agree that the Court's ruling decides the controlling issue in this case. *See* Dkt. 88 ("[I]n the event the parties agree that the Court's ruling on plaintiff's motion for preliminary injunction decided the controlling issue in

MCN Appendix Page 283

this case, the parties shall advise the court so that it may enter a final judgment."). The Parties

accordingly request that the Court enter final judgment in this matter.

4)    The Nation reserves the right to appeal any final judgment of the Court, including any

"interlocutory orders that merge into the final judgment," *Edmonds-Radford v. Sw. Airlines Co.*,

17 F.4th 975, 985 (10th Cir. 2021) (quoting *AdvantEdge Bus. Grp., L.L.C. v. Thomas E.*

*Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1237 (10th Cir. 2009)).

MCN Appendix Page 284

Dated: December 29, 2025

*/s/ Phillip G. Whaley*
Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

*Counsel for Defendant*
*Steve Kunzweiler*

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
Joshua C. Handelsman
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com
jhandelsman@kanjikatzen.com

Philip H. Tinker, OBA No. 36498
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com

Geraldine Wisner, OBA No. 20128
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

*Counsel for Muscogee (Creek) Nation*

3

MCN Appendix Page 285

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally recognized Indian tribe, | ) )<br>) | |
| Plaintiff, | ) ) | |
| v. | ) )<br>) | Case No. 25-CV-75-GKF-JFJ |
| The Board of County Commissioners of<br>the County of Tulsa; STEVE KUNZWEILER,<br>in his official capacity as District Attorney<br>for the Fourteenth Prosecutorial District of<br>Oklahoma; and VIC REGALADO, in his<br>official capacity as Tulsa County Sheriff, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) ) | |

**JUDGMENT**

In their Joint Status Report filed December 29, 2025, [Doc. 89], plaintiff Muscogee (Creek) Nation and defendant Steve Kunzweiler, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma, (1) advise the court that the Opinion and Order [Doc. 87] denying plaintiff's Motion for Preliminary Injunction decided the controlling issue in this case and (2) request that the court enter final judgment in this matter.

It is therefore ORDERED, ADJUDGED, AND DECREED that plaintiff Muscogee (Creek) Nation, a federally recognized Indian tribe, take nothing, that this matter be dismissed on the merits, and that judgment is hereby entered in favor of defendant Steve Kunzweiler, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma.

It is further ORDERED, ADJUDGED, AND DECREED that pursuant to the court's orders [Doc. 53; Doc. 75] dismissing defendants Board of County Commissioners of the County of Tulsa, and Vic Regalado, in his official capacity as Tulsa County Sheriff, as parties to this action, plaintiff

MCN Appendix Page 286

Muscogee (Creek) Nation take nothing and the claims against defendants Tulsa County and Sheriff

Regalado are dismissed.

ENTERED this 30th day of December, 2025.

Gregory K. Frizzell
United States District Judge

MCN Appendix Page 287

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally recognized Indian tribe,<br><br>       *Plaintiff,*<br><br>v.<br><br>STEVE KUNZWEILER, in his official<br>capacity as District Attorney for the<br>Fourteenth Prosecutorial District of<br>Oklahoma,<br>       *Defendant.* | Case No. 25-cv-75-GKF-JFJ |

### NOTICE OF APPEAL

Notice is hereby given that Plaintiff Muscogee (Creek) Nation appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment of the United States District Court for the Northern District of Oklahoma in the above-captioned matter, which judgment was entered on December 30, 2025 by the Honorable Gregory K. Frizzell. *See* Dkt. 90.

Dated: January 28, 2026

Geraldine Wisner, OBA No. 20128
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
   *Counsel of Record*
David A. Giampetroni
Joshua C. Handelsman
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com

Philip H. Tinker, OBA No. 36498
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100

*Counsel for Muscogee (Creek) Nation*