**No. 26-5013**

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

MUSCOGEE (CREEK) NATION,

*Plaintiff/Appellant*,

v.

STEVE KUNZWEILER, et al.,

*Defendants/Appellees*.

Appeal from the United States District Court
for the Northern District of Oklahoma,
Case No. 4:25-cv-00075-GKF-JFJ (Hon. Gregory K. Frizzell)

## APPENDIX TO APPELLANT'S OPENING BRIEF
**Volume II, Pages 289 to 431**

Geraldine Wisner
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447

O. Joseph Williams
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447

Riyaz A. Kanji
David A. Giampetroni
Joshua C. Handelsman
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com

Philip H. Tinker
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103

*Counsel for Appellant Muscogee (Creek) Nation*

# TABLE OF CONTENTS

Excerpts of Transcript of Preliminary Injunction Hearing before the Honorable Gregory K. Frizzell, October 9, 2025 ....................................................................289

Preliminary Injunction Hearing Exhibit 1
(MCN District Court Employment Data)..................................................362

Preliminary Injunction Hearing Exhibit 5
(Summary: Comparison of Tulsa County and MCN Per Capita Judges) ...364

Preliminary Injunction Hearing Exhibit 6
(Photos of MCN District Court)................................................................366

Preliminary Injunction Hearing Exhibit 7
(New MCN Court Building Design) ..........................................................371

Preliminary Injunction Hearing Exhibit 12
(Summary: MCN Data on Charges)..........................................................381

Preliminary Injunction Hearing Exhibit 16
(MCN Attorney General Office Employment List 2026) ..........................386

Preliminary Injunction Hearing Exhibit 19
(Summary: Comparison of Tulsa County and MCN Per Capita
Prosecutors) .............................................................................................387

Preliminary Injunction Hearing Exhibit 48
(Summary: MCN Budgets)........................................................................389

Preliminary Injunction Hearing Exhibit 60
(MCN Citizenship Data)............................................................................395

Preliminary Injunction Hearing Exhibit 64
(Bohanan OSCN Docket) ..........................................................................396

Preliminary Injunction Hearing Exhibit 65
(Bohanan Karpel Search)...........................................................................401

Preliminary Injunction Hearing Exhibit 66
(Mason OSCN Docket) ...................................................................................402

Preliminary Injunction Hearing Exhibit 67
(Mason Karpel Search)..................................................................................408

Preliminary Injunction Hearing Exhibit 68
(Hess OSCN Docket).....................................................................................409

Preliminary Injunction Hearing Exhibit 69
(Hess Karpel File).........................................................................................415

Preliminary Injunction Hearing Exhibit 72
(Neafus OSCN Docket) .................................................................................416

Preliminary Injunction Hearing Exhibit 73
(Neafus Karpel File) .....................................................................................422

Preliminary Injunction Hearing Exhibit 74
(Morris OSCN Docket) .................................................................................423

Preliminary Injunction Hearing Exhibit 75
(Morris Karpel File).....................................................................................430

Preliminary Injunction Hearing Exhibit 77
(Summary: Non-Member Prosecutions by Tulsa County).........................431

Dated: April 29, 2026

Geraldine Wisner
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447

O. Joseph Williams
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
Joshua C. Handelsman
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com

Philip H. Tinker
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103

*Counsel for Appellant Muscogee (Creek) Nation*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) No. 25-CV-075-GKF-JFJ |
| | ) |
| STEVEN KUNZWEILER, et al., | ) |
| | ) |
| Defendant(s). | ) |

TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING

**BEFORE THE HONORABLE GREGORY K. FRIZZELL**

**UNITED STATES DISTRICT JUDGE**

OCTOBER 9, 2025

*REPORTED BY:*        *BRIAN P. NEIL, RMR-CRR*
                *United States Court Reporter*

**MCN APPENDIX PAGE 289**

A P P E A R A N C E S


**Riyaz A. Kanji and Josh Handelsman**, Attorneys at Law, Kanji & Katzen, P.O. Box 3971, Ann Arbor, Michigan, 48106, attorneys on behalf of the Plaintiff;

**Philip H. Tinker**, Attorney at Law, Kanji & Katzen, 811 1st Avenue, Suite 630, Seattle, Washington, 98104, attorney on behalf of the Plaintiff;

**Olin J. Williams**, Attorney at Law, P.O. Box 1131, Okmulgee, Oklahoma, 74447, attorney on behalf of the Plaintiff;

**Geri Wisner**, Attorney, Muscogee (Creek) Nation, P.O. Box 580, Okmulgee, Oklahoma, 74447, attorney on behalf of the Plaintiff;


**Trevor S. Pemberton**, Attorney, Office of Governor J. Kevin Stitt, 2300 North Lincoln, Room 212, Oklahoma City, Oklahoma, 73105, attorney on behalf of Defendant Kunzweiler;

**Phillip G. Whaley**, Attorney at Law, Ryan, Whaley, Coldiron, & Shandy, 119 North Robinson, Room 900, Oklahoma City, Oklahoma, 73102, attorney on behalf of Defendant Kunzweiler.

*Brian P. Neil, RMR-CRR*
*U.S. District Court - NDOK*

MCN APPENDIX PAGE 290

*I N D E X*

*WITNESSES*

|  |  | *PAGE* |
|---|---|---|
| **ZECHARIA HARJO** | | |
| Direct Examination by Mr. Tinker | | 9 |
| Cross-Examination by Mr. Whaley | | 33 |
| Redirect Examination by Mr. Tinker | | 40 |
| **KEVIN DELLINGER** | | |
| Direct Examination by Mr. Handelsman | | 41 |
| Cross-Examination by Mr. Whaley | | 67 |
| **MICHAEL BELL** | | |
| Direct Examination by Mr. Handelsman | | 82 |
| Cross-Examination by Mr. Pemberton | | 94 |
| **GERALDINE WISNER** | | |
| Direct Examination by Mr. Tinker | | 98 |
| Cross-Examination by Mr. Pemberton | | 146 |
| **STEPHEN KUNZWEILER** | | |
| Direct Examination by Mr. Whaley | | 169 |
| Cross-Examination by Mr. Kanji | | 189 |
| Redirect Examination by Mr. Whaley | | 213 |

**MCN APPENDIX PAGE 291**

**A.**      Yes.  On the one hand, unfortunately, the resources that the federal government provides to tribes on a pro capita/pro rata basis have not been enough to see the actual need boots on the ground.  However, the Nation takes its commitment to public safety as a governmental agency very seriously.  Therefore, it's reflected in the amount of nonfederal funds that we expend for the provision of not just public safety, but general government services.

**Q.**      Is this pattern of a majority Nation funding, supplemented by a smaller portion of federal revenues, is that typical across all of the Nation's programs and services?

**A.**      It's definitely very common.  On a case-by-case basis, some programs oscillate towards more federal funding, but many programs do oscillate towards more nonfederal funding and expenditures.

**Q.**      Thank you, Mr. Secretary.  And I'd like to now turn to discussing the topic of tribal citizens not members of the Muscogee Nation.  We refer to them generally as "nonmember Indians."  I'd like to discuss with you the extent to which they may use and benefit for the Nation's governmental programs and services.

Are you familiar with whether nonmember Indians who work, live, or receive -- whether nonmember Indians work, live, and receive governmental services from the Nation?

**A.**      Absolutely, yes.

**Q.** Do you have responsibilities regarding the governmental services and programs that might serve nonmember Indians?

**A.** Absolutely, yes.

**MR. TINKER:** As a point of context initially, I'd like to refer to MCN Exhibit No. 49. We are not asking to admit this exhibit, but we will note this is from the Congressional Record and Your Honor could take judicial notice of it?

**THE COURT:** Very well.

**MR. TINKER:** And the excerpts here are from legislative history for the *Duro*-fix, which is the legislation that in 1991 returned to tribal nations the authority to exercise criminal jurisdiction over nonmember Indians, and this contains congressional findings relative to why Congress has made that judgment. I would refer first to Congress' finding in enacting the *Duro*-fix. Congress there recognized that the federal government has "forced the relocation of many tribes onto one reservation."

**Q.** **(BY MR. TINKER)** Mr. Secretary, are you familiar with the 19th and 20th century history of your nation?

**A.** I am, yes.

**Q.** Was the Creek Nation subject to relocation by the United States?

**A.** As a matter of federal policy, yes, we were.

**Q.** Could you remind us of the circumstances of that

MCN APPENDIX PAGE 293

relocation?

**A.**    Yes.  So as I mentioned, federal policy dictated at that time removal for most tribes, particularly those on the east coast.  The concept of Indian territory was created and many tribes all over the country were removed to Oklahoma, but particularly the five tribes share legal and historical context upon that shared removal to Oklahoma or at that time was Indian territory.

**Q.**    At the outset of the removal to the Indian territory, were the five tribes each given their own separate reservations?

**A.**    No, we were not.

**Q.**    Okay.  In lieu of separate reservations, what was the -- what was the status at that time?

**A.**    I believe Cherokee was provided their own reservation, but the Muscogee and Seminole Nations were provided a joint jurisdiction, and the same is true of the Chickasaw and Choctaw Nations.

**Q.**    Were all of the five tribes --

                    *(Discussion held off the record)*

        **THE COURT:**  Counsel, you've made a statement here, a reference to the congressional finding, that I cannot find in Exhibit 49 apportioning the tribe to -- and let's see if I can find the words here.

        **MR. TINKER:**  The words I have, Your Honor, would be

**MCN APPENDIX PAGE 294**

and the quote is "forced the relocation of many tribes onto one reservation."  I believe that might be on page 2 of the excerpts.

THE COURT:  I see.  Just one second.  I see.  I didn't see the back.  All right.  Go ahead.

MR. TINKER:  Apologies.

THE COURT:  All right.  Go ahead.

Q.    (BY MR. TINKER)   Eventually, Mr. Secretary, the five tribes were each given their own reservations within the Indian territory?

A.    Yes, we were.

Q.    Okay.  After that time, did the citizens of the five tribes each stay within their own separate reservations or did they continue to move about and cohabitate amongst each other's reservations?

A.    We continued to move about and cohabitate.

Q.    Also in MCN Exhibit No. 45, the *Duro*-fix report, Congress additionally recognized that "nontribal member Indians own property on Indian reservations."

Are you aware of whether nonmember Indians continue to own property on the Nation's reservation today?

A.    Yes.

Q.    Could you please elaborate?

A.    Yes.  The grant manager of the Nation is a citizen of the Chickasaw Nation and owns a house and works for the Muscogee

*Brian P. Neil, RMR-CRR*
*U.S. District Court - NDOK*

MCN APPENDIX PAGE 295

Nation living within the Muscogee Nation.

Q.    Is that the only such example that you're aware of?

A.    No.  There are many more beyond that.

Q.    In the *Duro*-fix legislative history, MCN Exhibit No. 49, Congress recognized that nonmember Indians are additionally "frequently married to tribal members."

Are nonmember Indians within the reservation today married to or in relationships with Muscogee citizens?

A.    Absolutely, yes.

Q.    Okay.  Are you aware of any additional context?

A.    Yes.  One of our cabinet secretaries is married to a citizen of the Choctaw Nation, that being Mr. Joe Williams.

Q.    Again, is that an isolated incident?

A.    It is not, no.

Q.    Because nontribal members may be married to or may be in relationships with tribal citizens, do they raise children together?

A.    Yes.

Q.    Are those children typically eligible to enroll as Muscogee citizens?

A.    Yes.

Q.    Does the Creek Nation have an interest in the well being of the parents of Muscogee children?

A.    Absolutely, yes.

Q.    Does the Nation have an interest in keeping the family of

MCN APPENDIX PAGE 296

Muscogee children together where it's safe and appropriate to do so?

**A.** Yes.

**Q.** Could the children of parents of mixed Muscogee and other tribal ancestry, might they be eligible to enroll in a different tribe other than the Nation?

**A.** Yes.

**Q.** So some children living within the reservation of Muscogee parentage might be enrolled in the Cherokee Nation or another tribe?

**A.** Yes. And at one point that also included myself.

**Q.** As a Muscogee citizen, Secretary Harjo, you have familial relation withs other tribal nations, you live on your reservation, and you represent your tribal government. Have you traveled and worked among native people on other reservations?

**A.** I have, yes.

**Q.** Could you please tell us what being in Indian Country, being on a reservation, what that means to you?

**A.** Sure. Being within Indian Country, of course, has a legal context but part of that legal context is historical and cultural. As a citizen of the Muscogee Nation but growing up in Norman, Oklahoma, within the boundaries of the Chickasaw Nation, I greatly benefited immeasurably from being surrounded by a tribal community, and while not the one I was enrolled in,

was certainly one that had many positive impacts both on my life and then also reflected the cultural and respect that I believe is unique to Muscogee people.

Q.    Thank you, Mr. Secretary.  And I'm going to refer once again to MCN Exhibit No. 49, where Congress also recognized that nonmember Indians can be "part of the labor force on the reservation."

Does the Nation have policies or practices that support the employment of nonmember Indians on the reservation?

A.    We do, yes.

Q.    Could you provide any examples of these policies?

A.    Yes.  As a matter of hiring preference, the Nation prefers to hire Muscogee citizens as well as generally tribal citizens, be they citizens of any other tribe.

MR. TINKER:  If we can please look at MCN Exhibit No. 58.

Q.    (BY MR. TINKER)  Do you recognize this document, Mr. Secretary?

A.    I do, yes.

Q.    Could you please tell us what this is?

A.    Yes.  This was a report complied by the self-governance manager, Carson Ball, who's actually a citizen of the Osage Nation.  In this report, it details a number of the programmatic services, functions, and activities, as well as our employment statistics backed up from our 2023 audited

MCN APPENDIX PAGE 298

financials.

Q.    So on page 1 of this memo below the opening paragraph, do we see employment metrics regarding tribal citizens, nonmember Indians, and non-Indians for the Nation's executive branch, gaming enterprises, the Department of Health, as well as the tribal business enterprise?

A.    We do, yes.

        MR. TINKER:  The Nation would move to admit as a public record.

        THE COURT:  Any objection?

        MR. WHALEY:  None.

        THE COURT:  Plaintiff's 58 is admitted.

        MR. TINKER:  If we could now turn to MCN Exhibit No. 56, please.  Your Honor, this is a statute passed by the National Council.  It is available in the Nation's code online at the Nation's website.  We would ask that you are able to take judicial notice.

        THE COURT:  Very well.  The court will do so.

Q.    (BY MR. TINKER)   Could you please tell us, Mr. Secretary, what this legislation represents?

A.    Yes.  This legislation represents National Council Act 18-199.  In it, it codifies a new version of the Muscogee (Creek) Nation Contracting Employment Support Act, which supports and establishes the contracting employment support office.  And essentially what that office does is provides a

workforce development program and training opportunities for tribal citizens generally throughout the reservation as well as a preferred vendor network.

Q.   Could you explain in layman's terms what this office does in terms of providing employment support for member and nonmember Indians?

A.   Yes.  So as I mentioned, it establishes a preferred vendor network and all of the contracts and other needed, I guess, work that needs to be completed at the Nation goes through the preferred vendor network.  As part of that preferred vendor network, it establishes a job bank.  So for all of the work that's being completed on or for the Nation's behalf, there's the opportunity as well as an incentive and requirement under this law to hire tribal citizens within the reservation where it makes sense.

So the job bank, again, is tied to the actual products -- or not products -- but the projects that are being conducted throughout the reservation and being completed by contractors, and, again, they're incentivized to hire tribal citizens.

Q.   Where the Nation contracts with private business services, there's preferential hiring for tribal citizens and nonmember Indians?

A.   Yes, there is.

Q.   Does the Nation provide job training or employment

MCN APPENDIX PAGE 300

readiness programs to nonmember Indians?

A.    We do, yes.

Q.    Could you identify some of those programs, please?

A.    We operate a number of employment and training programs as a Department of Labor recipient and funding similar to the state.  So we have many workforce development training opportunities, again, similar to what you might see at your nontribal government, be they local or state.

And then beyond that, we also operated a number of grant programs, like the Homeless Veterans Resource Program, HVRP, which is operated by our veterans affairs department, and seeks to employ and provide emergency housing to any veteran, particularly those that are tribal, be they Muscogee citizens or non-Muscogee tribal citizens.

Q.    Are these programs supported by federal appropriations, by the tribe's own revenues, or both?

A.    Usually both.  In the instance of the HVRP program, that's a federal grant award that's supplemented by tribal funding.

Q.    Why is it important for the Nation to provide employment opportunities and employment training services to nonmember Indians?

A.    Well, frankly, nonmember Indians are part of the fabric of our community.  They invariably and immeasurably impact our communities and our lives.  And so when we're investing in

everyone, particularly some of the most vulnerable based on statistics and demographics, vulnerable populations, we're increasing, I think, the bottom floor of our community, so to speak.  We care greatly, of course, and tribal citizens of all Nations are priority for the Muscogee Nation absolutely.

Q.    Referring back to MCN Exhibit No. 49, the legislative history report, Congress there recognized that nonmember Indians also often "receive the benefits of programs and services provided by the tribal government."

Now, we have established the Nation provides programs and services to nonmember Indians.  Could you please identify one or two of the more significant such programs?

A.    Yeah.  Healthcare, of course, is a very, very large component when in comes to social and economic wellness, the other being education.  But specific to healthcare, the Nation provides healthcare to the general public in many instances, but specifically it's the largest health-care provider in rural Oklahoma where our reservation extends to.  This includes five hospitals, eight clinics, and a number of other rehabilitation or other medical and ancillary facilities.

MR. TINKER:  And I would note here that MCN Exhibit No. 49 specifically references "tribal hospitals and clinics" as one of the specific services for Congress' findings.

Q.    (BY MR. TINKER)  So nonmember Indians receive services from the tribe's hospitals and clinics?

**A.**     Yes.

          **MR. TINKER:**   Can we see MCN Exhibit No. 58 on page 2, please?

**Q.**     **(BY MR. TINKER)**   Do we see information at the top of this page relating to the tribal citizen and nonmember Indians who receive services from the Nation's health department?

**A.**     I do, yes.

**Q.**     Are the nonmember Indians who receive these services, are they charged for those?

**A.**     They are not, no.

          **MR. TINKER:**   If we could please look to MCN Exhibit No. 43.

**Q.**     **(BY MR. TINKER)**   Can you tell us what this document is, please?

**A.**     Yeah.  This is a memo from the controller for the Department of Health, and in it it details the amount of total funds the Nation expended for the fiscal years FY23 and FY24, and it's broken down between the federal spend and the nonfederal spend for both those fiscal years.

**Q.**     Does this memo and the accompanying budgetary information on the following pages, does this reflect that the majority of the Nation's healthcare funding does not come from federal sources but from its own governmental revenues?

**A.**     It does, yes.

          **MR. TINKER:**   The Nation would move to admit MCN

*Brian P. Neil, RMR-CRR*
*U.S. District Court - NDOK*

No. 43.

THE COURT:  Any objection?

MR. WHALEY:  No objection.

THE COURT:  Plaintiff's 43 is admitted.

MR. TINKER:  Can we please look at MCN Exhibit No. 59, please?

Q.    (BY MR. TINKER)    Are you familiar with this document, Mr. Secretary?

A.    I am, yes.

Q.    Could you tell us generally what we're looking at with this set of documents?

A.    Yeah.  This set of documents references the programs available on the Nation's website that, again, are generally available to tribal citizens, not just Muscogee citizens.

MR. TINKER:  The Nation moves to admit 59.

THE COURT:  Any objection?

MR. WHALEY:  No objection.

THE COURT:  59 is admitted.

MR. TINKER:  And if we can turn back to MCN Exhibit No. 58 on page 2.

Q.    (BY MR. TINKER)    Here, I'll refer you to the MCN social services programs identified there.  I don't think we would need to go into detail on every one of these services, but would you please explain for us what sorts of social service programs the Nation would offer to nonmember Indians?

MCN APPENDIX PAGE 304

**A.**   Sure.  When tribal citizens, again generally, be they Muscogee or non-Muscogee citizens, need assistance, they can apply for the BIA general welfare.  That program or that application qualifies them potentially for a number of -- a number of other social services the Nation does provide.

Some of that includes direct cash assistance, such as TANF, and maybe food programs, and then also -- I mean, it specifically references here the WIC program.  But in general, again, there's a need assessment, and based on income or a qualifying event, such as a death in the family or loss of a job, they're then placed with the program that they potentially qualify for services from.

**Q.**   And do we see on this memo the number of tribal citizens and nonmember Indians that receive services from the programs and services listed here?

**A.**   We do, yes.

**Q.**   Are these programs and services, are they generally funded exclusively with federal revenues or are they funded with Nation and federal revenues?

**A.**   All of these grant programs are funded or supplemented with tribal revenue.

**Q.**   Why is it important --

**THE COURT:**  Counsel, could you outline for me the relevance of the respective funding streams to the four issues before me today?

**MR. TINKER:** We're just looking to establish, Your Honor, that although there is federal contracting support for tribal programs, the Nation invests a significant amount of its own governmental revenues to support services to nonmember Indians because of their core value and participation within the Nation's community.

**THE COURT:** Okay. But how does that relate to any of the four issues before me, likelihood of success on the merits, irreparable injury if the court denies the requested relief, that the threatened injury without the preliminary injunction outweighs the opposing party's injury under the preliminary injunction, and that the requested relief is not adverse to the public interest? I mean, all of this is laudable. I just don't know what the relevance to the issues before the court is.

**MR. TINKER:** Of course, Your Honor. Thank you. And I would say it goes to both likelihood of success on the merits and also the balance of harms. Because as Congress recognized in enacting the *Duro*-fix, a major component of Congress' consideration there was the fact that nonmember Indians are within Nation communities, they participate in services, they are intertwined with the families, they have oftentimes been put in the position of living in this area on this reservation by federal policies, all of which justified and compelled in Congress' mind the conclusion that tribal nations do have

MCN APPENDIX PAGE 306

criminal jurisdiction with respect --

THE COURT:  The issue of criminal jurisdiction is not present here.  I think at the last hearing counsel for the defendant admitted the Creek Nation has criminal jurisdiction over these non-Major Crimes Act alleged crimes by nonmember Indians.  The question is exclusive jurisdiction.

So how does this pertain to the Nation's interest in exclusive jurisdiction over nonmember Indians?

MR. TINKER:  It would go to the balance of harms, Your Honor, primarily.  I think the legal -- the success on the merits may have been the point I just mentioned.  As to the balance of harms, where -- and we believe that Tulsa County does not have jurisdiction over those nonmember Indians.  We believe that's precluded by federal law, their exercise of jurisdiction over these nonmember residents and members of the community who are so entwined and receive tribal governmental services.  The Nation has put so much of its effort into building these community support structures, the exercise of unlawful jurisdiction by an outside government is a harm to the Nation's own sovereignty.

THE COURT:  Again, that boils down to the legal issue itself; correct?

MR. TINKER:  It certainly is very closely intertwined with the legal issue but there's also the practical problems.  We will also be addressing this with Attorney

General Wisner and with some of the other witnesses, that the exercise of concurrent jurisdiction does infringe on the Nation's ability to exercise its own jurisdiction.

**THE COURT:**  Okay.  Go ahead.

**MR. TINKER:**  Thank you, Your Honor.

Just quickly because I know Your Honor has the understanding and the flavor of the services provided to nonmember Indians, I just want to address quickly educational services which are also highlighted in Congress' report.  If we can look at Exhibit 58 at the third page, I believe.

**Q.**  **(BY MR. TINKER)**  Do we see information here relating to the Nation's educational programming?

**A.**  We do, yes.

**Q.**  Okay.  Can you tell us, what is the Eufaula dorm?

**A.**  The Eufaula dormitory is an historical boarding school. So if you recall the Indian boarding school programs, historically this is one of them that's always been placed within the Muscogee Nation.

**Q.**  And the Johnson-O'Malley Program?

**A.**  The Johnson-O'Malley Program follows the Johnson-O'Malley Act, which honors essentially the federal government's trust responsibility to provide for the education for tribal citizens wherever they may live.

**Q.**  And both of these educational programs are available to member and nonmember Indians?

MCN APPENDIX PAGE 308

**A.**   Yes.

          **MR. TINKER:**   The Nation also has MCN Exhibit No. 57. If we can look at that, please.

**Q.**   **(BY MR. TINKER)**   Does this exhibit show the participation of member and nonmember Indians within Johnson-O'Malley?

**A.**   Yes.

          **MR. TINKER:**   The Nation would move to admit.

          **THE COURT:**   Any objection to 57?

          **MR. WHALEY:**   No objection, Your Honor.

          **THE COURT:**   57 is admitted.

**Q.**   **(BY MR. TINKER)**   And just one final question, Mr. Secretary.  Why has the Nation chosen to prioritize providing educational services and social services to both Nation citizens and nonmember Indians within the reservation?

**A.**   I believe I alluded to this before.  But they're part of the fabric of our community and oftentimes they're not just that.  They're our family members, they're our spouses, they're our relatives, our cousins, our friends, but more importantly they're our neighbors.

          And so the Nation's commitment, again, to being a governmental service that provides resources for the public, particularly those that are tribal, is, you know, what we're all about.  So it doesn't stop with just them, but particularly we have a responsibility and we take that responsibility very seriously when it comes to the well-being of Muscogee and

non-Muscogee tribal citizens within the reservation.

Q.     Thank you, Mr. Secretary.

          MR. TINKER:  We have one more exhibit to ask to move in.  This would be MCN Exhibit No. 60, which is data from the Nation's citizenship office regarding the total enrollment in the Nation and also the enrollment within the Nation's reservation boundaries which go to some comparative metrics that we'll be introducing later.

          THE COURT:  All right.  And you're offering that at this time?

          MR. TINKER:  I would offer that at this time, Your Honor.

          THE COURT:  Any objection to Exhibit 60?

          MR. WHALEY:  None other than it's unorthodox with the witness not testifying about it.

          THE COURT:  Correct.

          MR. WHALEY:  But no, Your Honor.

          THE COURT:  Very well.  Plaintiff's 60 is admitted. Go ahead.

          MR. TINKER:  Thank you, Your Honor.  No further questions for Mr. Harjo at this time.

          THE COURT:  Very well.  Cross-examination.

                    **CROSS-EXAMINATION**

BY MR. WHALEY:

Q.     Mr. Secretary, you're the secretary of the Nation; is

*Brian P. Neil, RMR-CRR*
*U.S. District Court - NDOK*

domestic violence.  The majority of that docket is criminal related so there are three.

Q.    And then there are 36 nonjudicial personnel who work for the courts?

A.    Yes.

            MR. HANDELSMAN:  Can we go to Exhibit 5?

            THE COURT:  And does criminal include traffic or is traffic another category?

            THE WITNESS:  There's traffic, Your Honor, and then there's also DUI that are the more criminal.

            THE COURT:  Okay.  So of the three judges, though, is traffic one of those three?

            THE WITNESS:  Yes, sir.

            THE COURT:  All right.  And then somebody told me -- hearsay -- that you now have a court in Jenks in the RiverWalk, I guess?

            THE WITNESS:  Yeah.

            THE COURT:  Which court is there?

            THE WITNESS:  That is our new traffic court, Your Honor.

            THE COURT:  That's what I figured.

            THE WITNESS:  And we just had our first docket yesterday --

            THE COURT:  Interesting.

            THE WITNESS:  -- and things went great.  Yeah, we

MCN APPENDIX PAGE 311

just opened that up. The reason we had opened that up, Your Honor, there were some situations where some of the officers in the northern part of our reservation had some issues with having to travel from the most northern regions down to Okmulgee. So we realized that was an issue so we spent the money to open a brand-new court and have it in Jenks.

We've heard back from the City of Tulsa and they're extremely proud and excited, I should say, that they only have about a 12-minute drive now to get to court instead of driving 45-plus minutes to get to Okmulgee.

**THE COURT:** Right. And who's your judge in Jenks?

**THE WITNESS:** Judge Toni Smith.

**THE COURT:** All right. Thank you very much.

**THE WITNESS:** Yes, sir.

**MR. HANDELSMAN:** Could we go to Exhibit 1, the second page?

**Q.   (BY MR. HANDELSMAN)** I think, Mr. Dellinger, you might have been confused by Your Honor's question, which was whether the traffic judge is counted among the criminal judges and the DV judge there or whether that's a separate judge handling the criminal there.

**A.** I'm sorry. Yes, Your Honor, I made a mistake there. The domestic violence judge is the one who hears the -- our third criminal judge deals with domestic violence, the criminal cases.

Q.    And the traffic judge --

A.    All traffic.

Q.    -- is handling the traffic cases?

A.    Yes, sir.

Q.    Okay.  So not one of the criminal judges?

A.    Right.

Q.    Okay.  Thank you.

A.    Sorry.

MR. HANDELSMAN:  Let's move on to the next exhibit, Exhibit 5.

Q.    (BY MR. HANDELSMAN)  What is this?

A.    It is a graph that shows the Tulsa County residents per Tulsa County criminal division judges compared with the Muscogee (Creek) Nation reservation Indian residents per Muscogee (Creek) Nation district court judge handling criminal matters.

Q.    And what do these numbers reveal?

A.    Reveals that the number each judge -- the number of residents per judge.  The Tulsa County one shows for every judge there's 68,000 -- excuse me, let me put my glasses on -- 68,844 residents per judge, and within the Muscogee (Creek) Nation, there are 45,692 residents per criminal judge.

Q.    Let's go to the next page to understand those calculations a bit better.  Could you start by describing the Tulsa County calculation and how you derived that figure?

MCN APPENDIX PAGE 313

**A.** Okay. That calculation consisted of the following: Taking the residents of Tulsa County, which is 669,279 -- and that is supported by Muscogee (Creek) Nation Exhibit No. 3 -- dividing that by the judges in the criminal division of Tulsa County District Court, which is eleven -- again, supported by Muscogee (Creek) Nation Exhibit 2 -- dividing the residents into each judge -- or the judge, you get residents per judge of 68,844.

**Q.** And can you describe the Muscogee Nation District Court calculation? Let's start with the top piece. So it says that the Indian residents within Muscogee (Creek) Nation using expansive U.S. definition, 137,076.

**A.** Yes.

**Q.** Why that figure of 137,076?

**A.** There is no definitive number within the Muscogee (Creek) Nation reservation of enrolled members of federally-recognized Indian tribes. So our manager of the GIS division of the Muscogee (Creek) Nation, Frank Harjo, took a look at the 2020 census and took the numbers of those individuals that claim on the census to be American Indian, along with those on the 2020 census that are claiming a mix, along with being American Indian, and came up with this figure of 137,076.

**Q.** So that represents -- 137,076 is the number of people who identified for the census as at least partly American Indian and who live within the reservation?

*Brian P. Neil, RMR-CRR*
*U.S. District Court - NDOK*

MCN APPENDIX PAGE 314

**A.**   Yes.

THE COURT:  Okay.  And that's within the entire reservation; correct?

THE WITNESS:  Yes, Your Honor.

THE COURT:  So not just Tulsa County?

THE WITNESS:  Right.

THE COURT:  And, again, the expansive U.S. Census definition is the people who say, oh, yeah, I'm part Indian; right?  No proof of tribal membership at all; right?

THE WITNESS:  Right.

THE COURT:  Okay.  Go ahead.

**Q.**   **(BY MR. HANDELSMAN)**  Relatedly, do you think that that 137,000 figure, do you think that's overinclusive or underinclusive of the number of enrolled members of the federally-recognized tribe?

**A.**   Overinclusive.

**Q.**   And can you explain why?

**A.**   Yeah.  There's a phenomenon where --

THE COURT:  I'm well aware.

MR. HANDELSMAN:  All right, Your Honor.

THE COURT:  We see it all the time.

**Q.**   **(BY MR. HANDELSMAN)**  If that number were lower, so say there are 100,000 members of federally-recognized tribes on the reservation, how would that affect the calculations here?

**A.**   The ratio of residents to judge would be lower.

**Q.** So the comparison would be even more favorable for a Nation relative to Tulsa County's system?

**A.** Yes.

**MR. HANDELSMAN:** Let's go to Exhibit -- move to admit Exhibit 5.

**THE COURT:** Any objection?

**MR. WHALEY:** No objection.

**THE COURT:** Plaintiff's 5 is admitted.

**Q.** **(BY MR. HANDELSMAN)** Let's go to Exhibit 6 so we kind of look briefly at the infrastructure of the Muscogee Nation's court system. What is this photo a photo of?

**A.** This is the Mound building on the complex in Okmulgee, our headquarters, and it houses the Muscogee (Creek) Nation District Court, the Supreme Court of the Muscogee (Creek) Nation, and the National Council of the Muscogee (Creek) Nation.

**Q.** Let's go to the next photo. What's this an image of?

**A.** This is a hearing, an in-custody hearing. You can tell that -- this is in the district court. You can tell that looking to the right, you can see a defendant in the orange, he's being Zoomed in, and so this is an in-custody hearing taking place before Judge Ching, one of our criminal judges.

**Q.** What about trials; are there trials in the Nation's district courts?

**A.** Yes, yes.

MCN APPENDIX PAGE 316

**Q.** Jury trials and bench trials?

**A.** Yes.

**Q.** And indigent clients, are they given public defenders?

**A.** Yes. They have the ability to request such.

**Q.** When you've observed court, have you witnessed police officers from other departments testify in court?

**A.** Yes, yes.

**MR. HANDELSMAN:** Let's go to the next photo. Then we can go to the next one.

**Q.** **(BY MR. HANDELSMAN)** And what is this an image of?

**A.** This is a view from behind the bench in the new Jenks -- we've been calling it the Tulsa traffic court -- but this is the view from behind the judge's bench.

**MR. HANDELSMAN:** And can we go to the next photo?

**Q.** **(BY MR. HANDELSMAN)** What's this one?

**A.** Photo behind the podium facing towards the bench.

**MR. HANDELSMAN:** Move to admit Exhibit 6.

**THE COURT:** Any objection?

**MR. WHALEY:** No objection.

**THE COURT:** Exhibit 6 is admitted.

**MR. HANDELSMAN:** Let's look at Exhibit 7 now. Ms. Hall, could you scroll through slowly so Mr. Dellinger can see this exhibit? You can stop there.

**Q.** **(BY MR. HANDELSMAN)** What is this document?

**A.** These are renderings of the new Muscogee (Creek) Nation

court building that is being built in Okmulgee on the southeast corner of our complex and it is a 52,000-square-foot building. It will house the district court and its offices on the 1st floor, Supreme Court on the 2nd floor.

Q.   Has the Nation broken ground on this building?

A.   We just broke ground yesterday.  So we had a wonderful day in the Creek Nation yesterday between our first day of the Tulsa traffic court and the groundbreaking for this beautiful building that is scheduled to be open in, I believe, March of '27.

Q.   How much is the Nation spending to build this courthouse?

A.   It's been awhile since I've seen that number.  I think it's north of $30 million.

Q.   Why did the Nation believe it was important to make this expenditure?

A.   It's for a couple reasons.  You know, it's showing the growth of the court system, and it also shows that we are open to implementing new technology and we want to be a first-rate court.  The motto of the court is not only to be the best court in Indian Country, but to be the best court in the United States.  So we think this helps us get there.

MR. HANDELSMAN:  Move to admit Exhibit 7.

THE COURT:  Any objection?

MR. WHALEY:  No objection.

THE COURT:  Plaintiff's 7 is admitted.

MCN APPENDIX PAGE 318

Q.   (BY MR. HANDELSMAN)  Let's talk about how the Nation funds its court system.  You were here when Secretary Harjo testified?

A.   Yes.

Q.   And you saw this summary exhibit showing that the Nation has spent more than 6.8 million so far this year on the district court operations?

A.   Yes.

Q.   Does the Muscogee Nation's court system rely heavily on fines and fees to fund itself?

A.   No, it does not and it never has.

Q.   Do you impose fines and fees, though?

A.   We do.

Q.   But you say that the court isn't especially reliant on those?

A.   No.  We've always been funded through tribal gaming funds.  We fund it ourselves.  The Nation funds us.

Q.   Why don't you want your system to be funded based on fines and fees?

A.   Well, I think one of the main things, we don't want that type of a load or barrier on someone after they -- if they serve a sentence.  A lot of them have families and, you know, we don't want that to be a burden on them.  So that's been something we do when it's necessary, you know, but it's not something that we want to rely on to allow -- or something we

have to have for our court system to operate and function.

Q.    When you have observed court and there are defendants who are serving their sentence, perhaps complying with conditions if they're not in prison, but they're unable to pay fines and fees that have been imposed by the court, do judges regularly waive those fines and fees?

A.    Those can -- those will be waived if they're accomplishing and participating in their, for instance, probation plan.  You know, if they're making progress and doing a great job, those have been waived and can be waived, yes.

Q.    What about the Muscogee Nation AG's office; does it fund itself through fines and fees?

A.    No.  Just like the court, it's never relied on those. It's always been funded through appropriation from the tribe.

Q.    Let's talk about the ramp-up in the caseload since *McGirt* starting with Exhibit 8.  What is this document?

A.    This is a document that shows the -- this is felonies -- findings on felonies in felony cases.  This is the year -- it's on page 2019.

Q.    So findings on felonies, is that like a disposition of a felony charge is a finding?

A.    Yes.

Q.    Let's go to the second page.  What does this show?

A.    The same thing, findings in felony cases -- findings on felonies in felony cases.  It shows in 2020, there were a total

of 119 findings.

**Q.** So 119 felony charges disposed of in 2020; right?

**A.** Yes.

**Q.** Let's go to the sixth page. See 2024, the last full year? How many in 2024, how many felony charges were disposed of?

**A.** 1,298, which is about a ten-fold increase from 2019.

**Q.** And 795 of those resulted in a guilty plea and a sentence?

**A.** Yes, sir.

**Q.** And then 322 had a deferred sentence?

**A.** Yes, sir.

> **MR. HANDELSMAN:** Move to admit Exhibit 8.

> **THE COURT:** Any objection?

> **MR. WHALEY:** No objection.

> **THE COURT:** Exhibit 8 is admitted.

**Q.** **(BY MR. HANDELSMAN)** Let's go to Exhibit 9. What is this document?

**A.** Findings on misdemeanors and misdemeanor cases from 2019 through, I believe, 2025.

**Q.** Let's go to year 2020, the second page, the year *McGirt* was decided. How many total findings on misdemeanor charges and misdemeanor cases were there in 2020?

**A.** 115.

**Q.** And then let's look at 2024. How many findings on

misdemeanor charges and misdemeanor cases in 2024?

**A.**    686.

**Q.**    So that's about a five-fold increase?

**A.**    Yes.

**MR. HANDELSMAN:**  Move to admit Exhibit 9.

**THE COURT:**  Any objection?

**MR. WHALEY:**  No objection.

**THE COURT:**  Exhibit 9 is admitted.

**MR. HANDELSMAN:**  Exhibit 10, please.

**THE COURT:**  Is Exhibit 10 really relevant to this matter because this has more to do with municipal rather than county charges; correct?

**MR. HANDELSMAN:**  I think it's relevant, Your Honor, in the sense that my understanding is the DA's office does prosecute some traffic charges.

**THE COURT:**  Okay.  Go ahead.

**MR. HANDELSMAN:**  I think it also just helps illustrate the ramp-up in the Nation's investment in its criminal justice system.

**Q.**    **(BY MR. HANDELSMAN)**    This document 10, what is it?

**A.**    This is traffic -- findings on traffic in traffic cases, traffic matters.

**Q.**    And let's look at the second page, year 2020.  188 total number of findings; right?

**A.**    Yes.

MCN APPENDIX PAGE 322

Q.    And then it says "125 initial" right above that.  What does "initial" mean for the traffic docket?

A.    Initial are tickets where an individual just comes in, does not consent, it just pays it and they move on.

Q.    So it's like a traffic ticket that they don't -- they just don't contest it, pay it online, or pay it --

A.    Yes.

Q.    And let's look at the numbers for 2024.  So 12,281 total number of findings.  Above that it says "1,944 initial."

A.    Yes.

Q.    Does that mean that there have been about 2,000 citations that people have paid to the district court without contesting those traffic citations?

A.    Correct.

            MR. HANDELSMAN:  Move to admit Exhibit 10.

            THE COURT:  Any objection?

            MR. WHALEY:  No, Your Honor.

            THE COURT:  Exhibit 10's admitted.

Q.    (BY MR. HANDELSMAN)    On that topic of traffic, do you expect that a figure of traffic citations processed to increase?

A.    Yes.  I believe with Tulsa coming in and with Okmulgee coming in, the numbers are just going to increase.

Q.    Previously they hadn't been preferring traffic citations to the Nation?

**A.**    Correct.

**Q.**    Exhibit 11.  This is -- well, could you explain what this one is?

**A.**    This is findings on DUI broken down by case type, DWI's.

**Q.**    And let's look at for year 2025 the page number ending in 10.  So how many findings on felony DWI charges have there been so far this year?

**A.**    According to this, 73.

**Q.**    And how many findings on misdemeanor DWI charges?

**A.**    222.

**Q.**    Why are there many more misdemeanor DWI charges than felony DWI charges?

**A.**    Under the Nation's code, just like the State of Oklahoma, first-time offenses are a misdemeanor so that's why there are more misdemeanors here than felonies.  The felonies are one or more -- one or more DUI -- DWI.  Excuse me.  So that's represented by the number 73 so that's why there's so many more misdemeanors, first-time offenses.

**MR. HANDELSMAN:**  Move to admit Exhibit 11.

**THE COURT:**  Any objection?

**MR. WHALEY:**  No, Your Honor.

**THE COURT:**  Plaintiff's 11 is admitted.

Counsel, we're a little bit after noon.  If you're coming to an end with this witness, we can continue until the end; or if you'd prefer, we could take our break now.

MR. HANDELSMAN:  I think we should keep going.  It will be less than ten minutes to complete it, I believe.

THE COURT:  All right.  Go ahead.

Q.   (BY MR. HANDELSMAN)   Let's look at Exhibit 12.  What is this?

A.   It is a chart, a graph, showing the findings on felony cases -- charges -- excuse me -- in the Muscogee (Creek) Nation District Court from 2019 through 2025.

Q.   Is this graph that's on the front page, is that based on the data from Exhibit 8 that we were looking at?

A.   Yes.

Q.   And what does it show?

A.   It shows that the number of felony charges over the Nation have significantly increased from 2019 through 2025.

Q.   And then there are other tables in this document.  What are those tables?

A.   Those are all tables that show the -- they're the tables that basically show the numbers that we just went over.  Numbers from those findings are listed here by year.

Q.   So felony cases, misdemeanor cases, traffic charges --

A.   Yes.

Q.   -- DWI's?

A.   Yes.

MR. HANDELSMAN:  Move to admit Exhibit 12.

THE COURT:  Any objection?

**MR. WHALEY:**  No objection.

**THE COURT:**  Plaintiff's 12 is admitted.

**MR. HANDELSMAN:**  Let go back to Exhibit 8 and I want to go to page 6.

**Q.   (BY MR. HANDELSMAN)**  At the bottom there, it says, "summary of sentencing details, confinement, jail, 1."  Does that mean that only one person was sentenced to time in prison?

**A.**    No.  The reporting system for court, for some reason it just presents 1 or 2 when it's describing this, which is not correct.  Those numbers of sentencing figures, confinement figures are kept by another division or department within the district court and so we do have records of those and keep those.  So --

**Q.**    Okay.  So that's just a meaningless entry by the reporting system?

**A.**    Yes.

**Q.**    So the Nation does give people prison sentences?

**A.**    Yes.

**Q.**    Does that include for DWI's?

**A.**    Yes.  Yes, we do.  We recently had a gentleman who had multiple DWI's, and he was just sentenced to the Bureau of Prisons for a five-year sentence.

**Q.**    Where does the Nation send people for sentences?  So you mentioned the Bureau of Prisons.  Are there other places?

**A.**    Yes.  We submit them to our -- the local county

facilities that we have detention agreements with.  If they receive a sentence in excess of one year, that's where the Bureau of Prisons comes into play.  We apply to submit them to the Bureau of Prisons through a program called the "tribal prisoner program," which requires a sentence in excess of one year.  And then the -- we have people all over the country in the BOP program serving sentences.

Q.    Why do you prefer the Bureau of Prisons' program rather than county for longer sentences?

A.    There are two really great benefits to the BOP program. One, it allows our prisoners to get some services while they're serving their sentence, everything from, you know, drug and rehab -- drug and substance rehabilitation; behavioral health help; batterer's intervention assistance, the program to help them with that to assure that does not happen again.  Also, it's free of charge to the Nation.  It only costs the Nation to transport them to the facility and back.  And so that's a great benefit.  And so, one, it helps the defendant; and two, it costs the Nation almost nothing to participate in that program.

Q.    Do you know how much the Nation spends of its own money on incarceration each year?

A.    Over $5 million a year.

Q.    Do you see Nation judges using alternatives to incarceration sometimes?

A.    Yes.  You know, we're all about public safety, we'll

enter punitive measures when and where necessary.  But if there are situations where that is not necessary, we will utilize alternative means, ankle monitors, again sending them to get behavioral health help assistance and, again, drug and substance abuse rehabilitation.

Q.    Do you think that the Nation has succeeded in responding to the challenges after *McGirt*?

A.    Yes.  Extremely proud of our Nation and how we've stepped up.

MR. HANDELSMAN:  I don't have any further questions. I would just like to move to admit Exhibit 2 and 3, which were underlying exhibits for the summary exhibit, No. 5, that was admitted.  That's a web page from the Tulsa County criminal division and a government website with census data.

THE COURT:  Any objection to 2 and 3?

MR. WHALEY:  No, Your Honor.

THE COURT:  Very well.  Plaintiff's 2 and 3 are admitted.

MR. HANDELSMAN:  And actually one more, Your Honor, which would be Exhibit 13, which is Oklahoma's court fee schedule.

THE COURT:  Oh, you say 13 --

MR. HANDELSMAN:  13.

THE COURT:  -- or 32?

MR. HANDELSMAN:  I believe 13.

MCN APPENDIX PAGE 328

with the Muscogee Nation.  Coweta and Muscogee Nation have a cross-deputization agreement; right?

**A.**    Yes, we do.

**Q.**    And what is a cross-deputization agreement?

**A.**    A cross-deputization agreement is just -- it's two entities that get into an agreement with each other that allows us to process laws, criminal acts, and stuff like that against people outside of our jurisdiction.

**Q.**    So under the cross-deputization agreement, your officers in Coweta are deputized to enforce tribal law with respect to Indians?

**A.**    Yes, sir.

**Q.**    And that applies to nonmember Indians and also Creek citizens?

**A.**    Yes.

**Q.**    And are the Lighthorse officers who work for the Nation, are they deputized to enforce state law and local law with respect to non-Indians?

**A.**    Just recently we've crossed-deputized the Lighthorse Police in the Coweta jurisdiction, yes.

**Q.**    When did you first enter that cross-deputy agreement?

**A.**    It was this last summer is when we got into that agreement.  Now, the first -- are you talking about the first agreement?

**Q.**    Yeah.  I guess explain both steps.

MCN APPENDIX PAGE 329

**A.**    Okay.  So in September of 2020 is when I approached my council and got them to approve the cross-deputization agreement with the tribe.  And then back in July of this year, we went ahead and cross-deputized their officers.  After reading the cross-deputization agreement, I realized I had the authority to do that.

**Q.**    So for five years now, your officers have been cross-deputized by the Nation?

**A.**    Yes.

**Q.**    Could you explain how this works on the ground?  So let's say that your officer pulls someone over who he suspects of being drunk and finds out that the suspect is a tribal member.  What can your officer do?

**A.**    So, you know, of course, we do the stop, we approach the driver's window.  At that time we're going to ask them if they're a member of a federally-recognized tribe.  If they tell us that they are, the arrest -- or the stop is going to continue just like it normally would, the arrest would continue on.  We would go ahead and take that individual back to the police department, do the Breathalyzer on them.

Then at that point, we'll also notify the Lighthorse Police that we've arrested a tribal member.  Didn't matter what Nation they were from.  And then we will have -- they will come and transport that person to a facility.

**Q.**    Do your officers need to know the Nation's criminal code

in order to affect that arrest?

A.    No.

Q.    Can you explain why not?

A.    Basically, we can arrest on Title 47 or Title 21.  Title 47 being traffic code.  Title 21 would be criminal codes.  And what we do is we send what we arrested the individual for to the tribe and then they'll be like the clearinghouse.  They'll decide and make sure that it fits into their crime.

        THE COURT:  Do you arrest under Oklahoma code?

        THE WITNESS:  Yes, sir.

        THE COURT:  And then let the tribe determine whether it's volitive of its code?

        THE WITNESS:  Yes, sir.

Q.    (BY MR. HANDELSMAN)  Is it anymore complicated to arrest someone if he's a tribal member than if he's not a tribal member?

A.    No.

Q.    And do you know how many tribal members your officers have arrested and released to Lighthorse in the past year?

A.    In the past 12 months, it's 50 -- about approximately 50 people.

Q.    You said you first got your officers cross-deputized by the Nation in September 2020.  Did you have any concerns before you decided to do that?

A.    Yes.  So as with anything that's new, you start

MCN APPENDIX PAGE 331

questioning, okay, how is this process going to work?  Where's the paperwork going to go?  Who do we -- like we've established contacts with our DA's office, we knew who they were.  So we had to establish contacts with the tribal office, the Attorney General's Office, and start getting those relationships worked out.  So my concern was where the paperwork was going to go and ensure it was going to get to the right person.

Q.    Did you have any concerns at first about whether cases would be prosecuted once they were referred?

A.    I did at the beginning.  I was kind of curious of how their court system was going to work, so I actually attended -- I believe it was about two cases that I went down and observed.  What I saw in the courtroom was exactly like what it would be in any courtroom, the judge is there to preside, you got a prosecuting attorney, you've got attorneys in the room, the laws are basically the same.  There's really no difference in what goes on in theirs and people are held accountable.

Q.    Have you been satisfied with how cases that you've referred have been prosecuted since you have --

A.    I have -- sorry.  I have been.

Q.    Were there any other growing pains apart from that initial concern about cases getting prosecuted?  Any other growing pains in your relationship with Lighthorse?

A.    Not that I can recollect at this time.

Q.    Can you describe your department's relationship with the

Muscogee Nation Attorney General's Office?

**A.** I have a very good working relationship with them, just as I saw do with my DA's office. I can call either one of them up and we can talk cases, we can talk concerns, anything like that. So I have them on my phone just like I do the DA.

**Q.** From your experience, are they committed to public safety?

**A.** They are.

**Q.** And when your department has referred cases, have your police officers gone to the Nation's courts to testify?

**A.** Yes, they have.

**Q.** And is that --

**A.** And will be here shortly.

**Q.** That's worked out well?

**A.** Yes.

**Q.** Other than cross-deputizing each other as officers and referring cases to each other, are there any other benefits that Coweta has gotten from its close relationship with the Muscogee Nation's law enforcement?

**A.** Yes. Being a department my size with a small budget, there are certain things out there that I just don't have the means to buy or purchase, the training. We've utilized the Lighthorse Police Department during a recent robbery that we had in Coweta. We located the suspect. He was outside of our jurisdiction. I called Chief Phillips up with the Lighthorse

Police.  He then sent his SWAT team up to our location because this subject was inside the reservation at the time and they assisted us along with the Wagoner County Sheriff's Department.

Q.    Did they send you a bill after they sent their SWAT team up to help in this joint collaboration?

A.    They did not.

Q.    Have they ever sent you a bill for any sort of help they've provided, whether it's involved policing Indians or non-Indians?

A.    No.

Q.    I want to ask you about a quote from DA Kunzweiler about the City of Tulsa's recent decision to start referring cases to the Nation.

          MR. HANDELSMAN:  Can we bring up the NonDoc article, Ms. Hall, from June of this year?

          MR. PEMBERTON:  Your Honor, if he's publishing an exhibit -- specifically it sounds like a NonDoc article -- it would be hearsay.

          THE COURT:  Yes, yes.

          MR. HANDELSMAN:  And I'm not offering this as an exhibit.  I'm not offering it for the truth of the matter asserted.

          THE COURT:  All right.

          MR. HANDELSMAN:  I'm offering it just to ask a few questions.

THE COURT:  All right.

MR. HANDELSMAN:  And can we go to page 7?

Q.    (BY MR. HANDELSMAN)  So that top paragraph has a quote from DA Kunzweiler.  "I have my concerns that TPD is going to focus on the things that they know they can do without being second-guessed as to why they went further into an investigation.  I think that's just human nature and I think the police department will probably allocate its resources accordingly.  That causes me concern about merchants in my community, homeowners in my community, people whose cars have been broken into.  When you start developing a suspect and that suspect ends up being an Indian, I suspect that it's just going to shut down then you're just starting from scratch.  And experience has told me that if you're picking up somebody else's investigation, you're just not going to work it as hard if you were first handling it.  So as the tribe may be trying to pick some things up, they're going to be coming in late to the game in a lot of this stuff."

     Do you agree with that quote?

A.    Not necessarily.  It's -- so as a police officer -- I've been doing this for quite a long time -- we handle the crimes. When we get on the scene, we'll set up a crime scene.  We don't start dictating whether or not they're Native American or not Native American, we just start working the crime.  And at one point or another, once we find out that it is a tribal -- maybe

MCN APPENDIX PAGE 335

there's a tribal victim involved in it, all's we're going to do is we're still going to hold the scene, we're going to process the information that we received up to that point, and then we're going to call that agency that's involved, the Muscogee Lighthorse.  Once they arrive on scene, we're going to brief them as to what we have and we're going to pass over all the information that we collected prior to their arrival.

So it's not like anything is going to get dropped.  If anything, the evidence is going to be protected until the Lighthorse Police actually gets there.

Q.    Does the Coweta Police Department put less effort into an investigation when the subject is native and the case will eventually be handed off to the Nation?

A.    No.  We continue on just like it was anybody that's involved.

Q.    Does your department sometime work investigations collaboratively with Lighthorse?

A.    We do.

Q.    And can you --

A.    Just like we do with any other agency out there, including Wagoner County Sheriff's Department.

Q.    Can you explain how that collaboration is actually helpful for law enforcement?

A.    Yes.  So sometimes they can bring things to the table that we don't have, some investigative tools that we don't have

MCN APPENDIX PAGE 336

at our disposal.  They also will come in and bring up investigators that may have training in specific areas that my officers just don't have.

Currently, I don't have any officers that are able to handle anything that deals with the Major Crimes Act with the FBI so I will have to bring in their officers in order to take that case.

Q.    And from your observation, when your department refers a case to the Nation, does the Nation put less effort into investigating or prosecuting that case than if they had worked it from the start?

A.    No.

Q.    How have crime rates changed in Wagoner County since *McGirt* was decided?

A.    Our crime rates in Wagoner County have dropped significantly.  Since about 2017, we've noticed the numbers dropping within our county.  With the work that we do with the Wagoner County Sheriff's Department, the Coweta Police Department, Wagoner PD, and then, of course, Lighthorse altogether, it's really a bad place for bad guys to show up.

Q.    Does Wagoner County -- does the Wagoner County DA assert concurrent jurisdiction over nonmember Indians?

A.    He does not.

Q.    And do you think that that's working out for public safety?

MCN APPENDIX PAGE 337

**A.**     I do.

**Q.**     Can you explain?

**A.**     Well, one thing as a chief I can tell you again from a small department -- this probably has nothing to do with the Tulsa department -- but when you really look at what we do, that means there's two cases that are running side by side. That means my officers have to go to two court cases to testify, and that takes a lot -- that takes my guys off the street that much longer and it costs me money as a chief of police.

**Q.**     You would have concerns then if the Wagoner County DA decided to start concurrently prosecuting cases with the Nation?

**A.**     You know, I would to a point.  The way I look at it as a chief, as long as the crimes are being solved and the people that are paying the price for whatever crime that they've done, I'm satisfied with that.  So I would choose the easiest route for us to prosecute these people.

**Q.**     And are you satisfied with the status quo in Wagoner County, with the tribe exercising jurisdiction and the county DA not doing so?

**A.**     I'm very satisfied at this time.

          **MR. HANDELSMAN:**  Thank you.  No further questions.

          **THE COURT:**  Cross-examination.

MCN APPENDIX PAGE 338

Q.    And I'd like to turn now to the Nation's overall approach to implementing and administering its criminal justice system and discuss how that approach might reflect the Nation's values and also its public safety goals.

So first, I would ask, with respect to the victims of crimes, what are the Nation's overall goals and approach to addressing victims?

A.    With victims of crime, recognizing that statistically speaking one in every three native women has been sexually assaulted, our high rates of domestic violence unfortunately occur in a home where children are witnessing this, we feel that it's imperative to be able to teach these children and victims that the harm that they have experienced should not take place.  That's an effort to stop, to throw a wrench, if you will, in these gears of repeated intergenerational trauma that we see.  That's important for the Nation to impact.

So utilizing our services, which is a lot of classes, a lot of cultural -- a cultural training, a lot of cultural healing that is unique to our Nation -- and every tribe has their own unique healing system -- we are cognizant of that and we want to make sure that those things are available for Native victims and their families.

Q.    What about with respect to offenders; what are your goals in terms of dealing with an offender?

A.    In the same manner, we want to make sure that there is an

MCN APPENDIX PAGE 339

opportunity for healing.  Defendants, regardless of the crime unless on those rare occasions -- defendants will at some point in time be going back home, will be returning to a community.  Not only that family, but the neighborhood and those around want to make sure that when someone is released back into the population, that there has been some rehabilitation, that there has been some healing, and there's remorse and those things have been addressed.

Simply throwing someone in jail or obligating them to court costs and fines is not in any way healing and it doesn't bring about any sense of closure or any kind of education to know that what they did was wrong and what should happen or that it should never happen in the first place.

**Q.**    Do you believe that incarceration is always the right outcome for a criminal offender?

**A.**    I don't believe it's always.

**Q.**    What are some circumstances in which incarceration might not be the proper outcome?

**A.**    There are occasions where we see individuals who may be experiencing a manic -- a manic state, they're in a manic behavior.  They're either not taking their medications or they've taken too much of their medications.  They're hearing voices.  We can recognize that they're in a behavioral health emergency state.  I think that it is inappropriate to put someone in that condition in jail.

MCN APPENDIX PAGE 340

**MR. PEMBERTON:**  No objection.  I think the court could take judicial notice.

**THE COURT:**  It is filed as a document in this court.  I don't believe it's yet approved by my colleague; correct?

**MR. TINKER:**  It is pending approval by Judge Russell.  I might direct this question to the Deputy Attorney General.

**THE COURT:**  All right.  Let me admit it first.  I don't think I need to.  But Plaintiff's 20 is admitted.  Go ahead.

**MR. TINKER:**  Thank you, Your Honor.

**Q.   (BY MR. TINKER)**   Deputy Attorney General, is this agreement active as between the Nation and the city Of Tulsa at this time?

**A.**   Yes.

**Q.**   Under this agreement, has the City of Tulsa agreed to cease prosecuting Indian defendants within the reservation?

**A.**   Yes.

**Q.**   Does that mean that the Tulsa Police Department has to stop investigating and hand over the case immediately to Lighthorse if they determine that a case -- an investigation involves an Indian suspect?

**A.**   No.

**Q.**   Then how are investigations regarding Indian suspects handled between the City of Tulsa and Lighthorse?

MCN APPENDIX PAGE 341

**A.**     They work collaboratively.  They can work either if a Tulsa investigator has the case and investigates, we encourage them to reach out to the prosecutor's office to ask questions, to work on any kind of loose ends of the investigation, so that they may be able to present it directly to the prosecutor for further following up on the case.

**Q.**     And once the investigation has concluded, if it is a non-Indian suspect -- if it is an Indian suspect to be prosecuted, who does that prosecution?

**A.**     The prosecutors in the Attorney General's Office.

**Q.**     If the City of Tulsa wants to know whether the Nation is, in fact, prosecuting cases that are referred to it, do they have any means of doing so?

**A.**     They do.

        **MR. TINKER:**  Can we please look at paragraph 13b on this agreement?  I believe it may be page 6.

**Q.**     **(BY MR. TINKER)**  What can you tell us about paragraph 13b under this agreement?

**A.**     Paragraph 13b refers to the database called "FullCourt." FullCourt is used by the district court of the Muscogee (Creek) Nation to enter case information and give status update on those cases.

**Q.**     Is that system open to the public?

**A.**     It is.

**Q.**     And what sort of information can law enforcement or an

interested member of the public access through FullCourt?

**A.** They can look up a defendant's name. If they don't find it, then that would illustrate that charges had not been filed. But if they can find the defendant's name, they can find also the disposition of the case.

**Q.** And if a referring police agency or another party were curious about the process of a case and they're not able to find the information on FullCourt or they're not aware of how to access FullCourt, do they have any other options for understanding information about prosecutions by the Nation?

**A.** Yes, they do.

**Q.** What would that be?

**A.** They -- they are and continue to reach out to prosecutors. Our prosecutors regularly give out their cards, their cell phone numbers, their desk numbers in an effort to make ourselves accessible to those inquiries and also any kind of status update. Whatever the case may be, we want to make sure that prosecutors are available to investigators and to other officers.

**Q.** Thank you. And lower down on page 6, we have paragraph 15 within the settlement agreement. What can you tell us about paragraph 15, Deputy Attorney General?

**A.** This is referencing the cooperative law enforcement principles and plan.

**Q.** And what does -- what substantively is called for within

paragraph 15?

**A.**   The establishment of a working group to meet and discuss the public safety and law enforcement priorities.

**Q.**   Has that working group now been established?

**A.**   It has.

**Q.**   And meetings have been held?

**A.**   We have had a small handful of meetings and are scheduled for our next one, I believe, just next week.

**Q.**   So far who's attended these meetings on behalf of the Nation?

**A.**   On behalf of the Nation, there has been leadership. Principal Chief Hill has attended.  We've also had other leadership, as well as the chief of police and captains within the Lighthorse department, as well as prosecutors and myself.

**Q.**   On behalf of the City of Tulsa?

**A.**   I have seen Mayor Nichols attend; the public safety officer, Ms. Roberts; as well as the Tulsa liaison, Amanda Swope; and several higher-up law-enforcement officers who are in part of investigations or different separate parts of investigations have attended.

**Q.**   Forgive me if I missed this in your answer.  Has Mayor Nichols attended?

**A.**   Yes.

**Q.**   If, as District Attorney Kunzweiler expressed in the quote from the newspaper article that we referenced earlier,

if, as he has expressed, there are significant law enforcement problems that could emerge from the Nation and the city's efforts to implement the settlement agreement, would these meetings provide an opportunity for those problems to be expressed and addressed?

**A.**    Yes.

**Q.**    Has this series of meetings been an opportunity for any implementation questions and concerns to be addressed and expressed?

**A.**    Yes.

**Q.**    Can you think of any other prosecuting jurisdictions or law-enforcement agencies with which the Nation has developed a stronger working relationship since *McGirt*?

**A.**    Well, we have the City of Tulsa.

**Q.**    Certainly.

**A.**    Go ahead.

**Q.**    Apart from the City of Tulsa?

**A.**    I would say we have a good working relationship with Hughes County.

**Q.**    And does Hughes County refer all cases against Indian defendants to the Nation to prosecute?

**A.**    They do.

**Q.**    Both citizens and nonmember Indians?

**A.**    They do.

**Q.**    Are there any examples that you would like to relay

*Brian P. Neil, RMR-CRR*
*U.S. District Court - NDOK*

MCN APPENDIX PAGE 345

regarding successful partnerships or law enforcement activities with Hughes County?

**A.**     With Hughes County and their district attorney, Erik Johnson, not long -- actually before he was elected, he came to Okmulgee and met with me in my office.  After he was elected, we -- myself, I believe a prosecutor, and Lighthorse officials -- went to Holdenville and met with him trying to discuss how we can build the collaboration between the county and the tribe.  Also, he's trying to build a jail.

But there was one particular instance and I believe I was either visiting my father and it was on a weekend, maybe 7:00, 8:00 at night.  I got a phone call that Lighthorse had received information that an individual had barricaded himself into a home, the individual was native, and there was a juvenile at the home, that the Creek Nation Lighthorse SWAT had been deployed and they were giving me an update.  On situations like that, I will sometimes go out in case there is any kind of media and if there are other things that I may be able to assist on scene.

Once I arrived in Holdenville, I also was finding not only a small handful of Lighthorse officers, but the SWAT team, as well as our emergency management, which is a large RV that has our drone capabilities, but I also saw Holdenville city officers on hand.  I saw the district attorney's task force on hand.  There was also the Oklahoma Highway Patrol SWAT team on

hand.  Each one of them, regardless of badge, regardless of their uniforms were asking, Ma'am, how may I help?  Ma'am, what can I do?  They were asking each other how they could assist one another, regardless of the badge, regardless of the jurisdiction.

It was very clear that getting the juvenile out, which happened rather quickly, but making sure that everyone went home safely after the incident was of paramount concern.  Regardless of what uniform or what oath they had taken, that was the primary concern.  It was -- it was very heartening to watch all of them work together collaboratively because that is what I truly believe is a team collaborative effort.

And it did.  In the early-morning hours, the suspect turned himself in without accident, without harm to anyone, and everyone went home safely at the end of the day.

**Q.**    Does your office conduct any outreach to law-enforcement agencies within the reservation to help them navigate any confusion, any difficulties regarding implementation of the Nation's jurisdiction under --

**A.**    We do.

**Q.**    Could you please explain?

**A.**    I instituted what I call "field trip Friday."  Field trip Friday is where I -- we will do outreach during the week to different jurisdictions, most likely those who have expressed that they have questions or they have run into some problems.

MCN APPENDIX PAGE 347

court and testify, are there any accommodations that can be made for them?

**A.**   Yes.

**Q.**   Such as?

**A.**   We try to make video testimony available.  We recognize that there are a number of jurisdictions that are extremely small and having an officer out to testify would basically leave the jurisdiction without an officer being available.  So we try to be very accommodating of that and that is one of the ways that we can do so.

**Q.**   If the court were to enter judgment in the Nation's favor and enjoin the exercise of concurrent jurisdiction by Tulsa County, would that lead to state laws within the reservation within Tulsa County going unenforced?

**A.**   No.

**Q.**   Why not?

**A.**   Well, first of all, we want to make sure that safety and welfare, as well as the rule of law, be respected whether they are Indian or non-Indian.  We also have a robust set of laws that are -- that are enforced.  For those who are non-Indians, our cross-deputized officers will enforce state law upon non-natives.

**Q.**   So the Nation has its own comprehensive criminal code?

**A.**   Yes.

**Q.**   Is that code available online?

**A.**    It is.

**Q.**    Do you have the URL handy?

**A.**    It is Law.muscogeenation.com.

        **MR. TINKER:**  The Nation would ask that Your Honor can take judicial notice of Title 14 of the Nation's code which is the comprehensive criminal code.

        **THE COURT:**  It shall.

**Q.**    **(BY MR. TINKER)**   Does the Nation's code criminalize murder?

**A.**    Yes.

**Q.**    Assault and battery?

**A.**    Yes.

**Q.**    Domestic abuse and sexual assault?

**A.**    Absolutely.

**Q.**    Theft?

**A.**    I'm sorry?

**Q.**    Theft?

**A.**    Theft, yes.

**Q.**    Trespassing?

**A.**    Yes.

**Q.**    Possession or distribution of controlled substances?

**A.**    Yes.

**Q.**    DUI's?

**A.**    Yes.

**Q.**    Does the Nation have something called a "Supplemental

Crimes Act"?

**A.**    We do.

**Q.**    What is the Supplemental Crimes Act?

**A.**    The Supplemental Crimes Act was passed not long after the *McGirt* decision to be able to make sure that there were no gaps of laws between the state -- what is recognized by the state and by the Nation.

**Q.**    And how does it -- how does it achieve that goal?

**A.**    If there is not a criminal charge or criminal code within the Muscogee (Creek) Nation Title 14 for a criminal act, then we will be able to use state law to be able to enforce that, very similar to the federal Assimilative Crimes Act.

**Q.**    So looking both at the Nation's own comprehensive criminal code and the Supplemental Crimes Act, does that mean that substantially all of the same criminal laws are applicable within the Nation against Indian offenders as within the state against non-Indian offenders?

**A.**    Yes.

        **MR. TINKER:**  Now, we have a set of exhibits relating to five prosecutions by Tulsa County that are identified in the Nation's complaint.  In the interest of expediency, I might ask the court if we can waive -- if we can move those exhibits in, if there are no objections.  We can certainly address them one by one, if that's the preference.

        **THE COURT:**  Well, we've looked at them.  I think

they're all items that I can judicially notice; correct?
They're all matters of record?

MR. TINKER:  In terms of the OSCN dockets, I would say that is the case.  In terms of -- there's a companion set of exhibits which would be searches within the Nation's own case file, and that's relevant to whether those cases were referred to the Nation for their own prosecution.  So we can look at those exhibits if --

THE COURT:  Any objections to those documents that correspond to the five prosecutions?

MR. PEMBERTON:  No objection, Your Honor.

THE COURT:  If you'll identify those.

MR. TINKER:  Yes.  The exhibits in question would be MCN No. 64, 65, 66, 67, 68, 69, 72, 73, 74, 75.  And those numbers include the OSCN dockets as well.

THE COURT:  With no objection, those exhibits will be admitted.

MR. TINKER:  And then I would like to draw our attention to MCN Exhibit No. 77, which is a summary exhibit relating to those dockets that we just referenced.

THE COURT:  All right.  You seek to admit the document?

MR. TINKER:  No. 77.

THE COURT:  You seek to admit it?

MR. TINKER:  I do.

THE COURT:  All right.  Any objection?

MR. PEMBERTON:  No objection.

THE COURT:  Okay.  77 is admitted.

MR. TINKER:  Thank you, Your Honor.

Q.   (BY MR. TINKER)  And, Deputy Attorney General, can you tell us generally what this exhibit, this chart, represents?

A.   This is a summary chart showing the referral and charges of cases with Tulsa County and the Muscogee (Creek) Nation.

Q.   And so the five cases that are listed on the left-hand side, these are cases identified in the Nation's complaint?

A.   I'm sorry.  They are what?

Q.   These are cases that are identified in the Nation's complaint?

A.   Yes.

Q.   And these are prosecutions that were instituted against nonmember Indians by Tulsa County?

A.   Correct.

Q.   The second row -- the second column in this chart, would that be the offense that was charged for each individual?

A.   Yes.

Q.   The third column, does that represent the disposition of those cases in Tulsa County?

A.   In Tulsa County, yes.

Q.   On the second substantive row relating to Mr. Mason, it says here there's a guilty plea.  Do you recall from reviewing

MCN APPENDIX PAGE 352

the dockets what the conditions or stipulations within that plea were?

**A.**     I believe Mr. Mason was given a suspended sentence of 18 months, he was ordered to obtain an assessment, and he was also ordered court fines and costs.

**Q.**     And for the fourth substantive row relating to Ms. Neafus, there's a guilty plea there.  Did Ms. Neafus also receive a deferred sentence?

**A.**     For her guilty plea in Tulsa County, yes.

**Q.**     On the column relating to Tulsa County dispositions, did any of these individuals prosecuted by Tulsa County receive incarceration for their offenses?

**A.**     No.

**Q.**     The offenses I see listed here are bogus check, DUI, obstructing an officer, and larceny of merchandise from a retailer.  When the Nation is referred such cases, does the Nation prosecute them?

**A.**     Yes.

**Q.**     Was the Nation referred the case against Mr. Bohanan?

**A.**     We were not.

**Q.**     The case against Mr. Mason?

**A.**     No.

**Q.**     The case against Ms. Hess?

**A.**     We were given separate criminal charges and reports but not the same obstruction of an officer.

MCN APPENDIX PAGE 353

Q.    Who referred the cases against Ms. Hess to your office?

A.    That was referred by Lighthorse.

Q.    And the cases that were referred were charged?

A.    Yes, they were.

Q.    As to Ms. Neafus, were those charges referred to the Nation?

A.    Yes, they were.

Q.    What charges were referred to the Nation for Ms. Neafus?

A.    Larceny of merchandise and theft.

Q.    Were those the same charges that were prosecuted by Tulsa County or separate charges?

A.    Separate.

Q.    Were those charges filed by the Nation?

A.    They were.

Q.    As to Ms. Morris, were those charges referred to the Nation, the same charges prosecuted in Tulsa County?

A.    Not the same charges.

Q.    Are you sure?

A.    It was not the same incident.

Q.    Forgive me.  For the final row --

A.    For Ms. Morris.

Q.    -- Ms. Morris, were the charges prosecuted by Tulsa County referred to the Nation to prosecute?

A.    I'm sorry.  They were.

Q.    Who referred the charges against Ms. Morris to the

Nation?

**A.**    Tulsa PD.

**Q.**    And the Nation filed those charges?

**A.**    They did.

          **MR. TINKER:**  Exhibit 77 was admitted?

          **THE COURT:**  Yes.

          **MR. TINKER:**  Thank you, Your Honor.

**Q.**    **(BY MR. TINKER)**    And for our last set of questions, Deputy Attorney General, I'd like to turn to the issue of concurrent jurisdiction and whether the exercise of concurrent jurisdiction by Tulsa County over nonmember Indians, whether that can in any way interfere with the Nation's ability to exercise and implement its own criminal justice system.

          So I'd like to pose a question for you first: Supposing that the Nation has a prosecution where it determines that pretrial release with certain conditions would be the appropriate step in that individual's case, would this present any problems if a concurrent prosecution were being implemented by Tulsa County and they chose not to grant pretrial release?

**A.**    And they were still detained?

**Q.**    Presumably so, if Tulsa County has them in custody and has chosen not to release.

**A.**    That could cause problems.

**Q.**    What sort of problems?

**A.**    Well, if someone were released on a pretrial release,

there are often conditions that they have to do, they have to check in, and there may be other requirements.  However, if they're detained, they're not going to meet those requirements, and if we don't know anything about it, it looks as if they're failing to comply.

**Q.**    In a pretrial-release situation, might the Nation have any kind of services or assessments that it might offer the defendant that would be relevant to the continuation of the criminal procedures?

**A.**    Yes.

**Q.**    If the individual is incarcerated by Tulsa County, might that interfere with the Nation's ability to provide such services?

**A.**    Yes.

**Q.**    In cases where the Nation might believe that drug or mental health treatment should be part of a defendant's sentencing or the conditions of a plea, is there any potential for conflict there if that individual is undergoing a concurrent prosecution by Tulsa County?

**A.**    Yes.

**Q.**    In what way?

**A.**    Well, it's hard to get treatment and it's hard to submit yourself to any kind of rehabilitation services if you're incarcerated.

**Q.**    Let's consider the question then of prosecution and

MCN APPENDIX PAGE 356

**Q.** And, Mr. Kunzweiler, speaking to the media, that's part of your job responsibility?

**A.** It seems to be.

**Q.** You seem to do a fair bit of that?

**A.** If you were with me yesterday, you would have seen a heavy dose of that.

        **MR. KANJI:** Could we please pull up the Stites -- what I'm going to refer as the Stites article?

**Q.** **(BY MR. KANJI)** Mr. Kunzweiler, this is a News on 6 article that appeared on January 6, 2025. That date, as I'm sure -- I'm sure that date resinates with you as coming shortly after the OCCA decided the *O'Brien* case?

**A.** Okay.

**Q.** And you are quoted here, sir, as saying that you welcome the decision. You welcome the opportunity to exercise concurrent jurisdiction over certain crimes involving tribal members. You're quoted here as saying, "I'm trying to get back and restore justice for victims and restore order within my state and my county."

        That's an accurate quote?

**A.** That's my quote.

**Q.** You'll forgive me, sir, but that does not -- there's been a lot of talk about collaboration. That does not sound to my ears to be a particularly collaborative statement.

**A.** Well, in the context -- you may not have my experiences,

**Q.** And you were comfortable with that situation where you had jurisdiction and the Nation did not, even in situations where the Nation had an interest in the prosecution?

**A.** My focus was public safety. And just like we've heard from the Attorney General, they can prosecute murders, we could prosecute murders concurrently, and the federal government can actually prosecute murders. So, you know, my focus is always going to be on public safety.

**Q.** Thank you. Let's return to the subject of collaboration for a minute.

    **MR. KANJI:** If we could pull up the chart that is -- that's been admitted as Exhibit 77.

**Q.** **(BY MR. KANJI)** These are the five cases cited in our complaint that were cases that your office filed in your -- in your belief that you had concurrent jurisdiction over nonmembers. You agree with me, sir, that in none of those cases did you or your office consult with the Muscogee (Creek) Nation before filing those cases?

**A.** You know, to be honest with you, I can't speak to that. I just know those are cases that fit within what I believe to be concurrent jurisdictional authority of the State of Oklahoma. Oftentimes, how law enforcement makes a referral is the point of capture, I guess is what I would say.

        To my earlier point, when officers are asking the question out in the field, if they find somebody and that they

**MCN APPENDIX PAGE 358**

can ascertain that person's a member of a tribe, those cases generally won't even make it into my office, I don't get to see those cases.

Q.     So you are -- to be clear, though, you are not aware of any discussion about we, the county, is going to handle this case; or we, the Nation, is going to handle this case?  You didn't have that kind of discussion with the Nation?

A.     If the officer puts down on a criminal charge that this person's white, which is what the long history had been, you know, you weren't even having a recordation of Native American, you know, those cases would come to my office and we wouldn't know, unless that tribal citizen said, hey, hold on a second here, I shouldn't be in this state court or I shouldn't be in this jurisdiction.  So at the beginning.

Q.     Well, and to be clear, these were cases where the defendants were raising their Indian status?

A.     Yeah.  Ultimately, yes.  And at that point, you know, obviously we have the *O'Brien* decision and so that's the authority that I'm relying upon.

Q.     Still no discussion with the Nation about should you handle this case, should we handle this case, no discussion with the Nation about charges --

A.     You have to speak with some of my line prosecutors that may have had those inquiries or not.  I mean, I know we would be communicating and saying, is this a person a tribal citizen

MCN APPENDIX PAGE 359

or not?  But I can't speak to that specifically, sir.

Q.    You're not aware of any collaboration in that regard at all?

A.    I can just tell you anecdotally I've had conversations with Assistant Attorney General Matt Hall with the Muscogee Nation on a number of different cases --

Q.    I'm talking specifically about these cases.

A.    Yeah, I can't tell you, sir.

Q.    Thank you.  Let's talk a little bit more about collaboration or lack thereof.  You are on record -- and correct me if I'm wrong but I'm quite sure I'm not -- as opposing the settlement that the City of Tulsa has entered into with the Muscogee (Creek) Nation?

A.    According to the *O'Brien* decision, I believe I've got concurrent authority to prosecute those cases.  How the City of Tulsa chooses to direct its officers on where they refer that particular crime, in my opinion, doesn't prevent the State of Oklahoma from having an interest in holding a particular person accountable for violating Oklahoma law.

Q.    Well, concurrent jurisdiction, sir, to be clear, does not require you to exercise -- there's nothing in the *O'Brien* decision that requires you to exercise jurisdiction over any particular case; correct?

A.    Yeah, I would agree with that.  There's nothing that says I can't -- I'm forced to or not forced to.

MCN APPENDIX PAGE 360

work for me.

**Q.    (BY MR. KANJI)**    Finally, I want to move to one final subject, which is that of prosecutorial discretion.

**MR. KANJI:**    If we could pull up Exhibit 18, please.

**Q.    (BY MR. KANJI)**    This is your website and I just want to point you to a quote on page 2, the last sentence of the first paragraph.  It states there that "the decision to charge a suspect with a crime or decline prosecution, it's one of the most important functions performed by this office."

Do you agree with that statement?

**A.**    Yes, sir.

**Q.**    Mr. Kunzweiler, there are other district attorneys, I assume, in this state whose professional judgment you respect?

**A.**    They're elected to do the same job that I'm elected to do.

**Q.**    Are there others whose judgments you respect?

**A.**    I would -- just give me an example and I would tell you whether I agreed with it or not.  I mean, I'm very opinionated on certain things, but I would generally say I respect my fellow prosecutors.

**Q.**    But there -- I take it from your answer, there are situations in which you might disagree with their charging decisions or they might disagree with yours?

**A.**    I think that is just the nature of this job.

**Q.**    And if in one of your cases, in a Tulsa County case, if



**DAVID W. HILL**
PRINCIPAL CHIEF

**DEL BEAVER**
SECOND CHIEF

Muscogee (Creek) Nation Human Resources
P.O. Box 580 | Okmulgee, OK 74447
T. 918.732.7819
Email: mbible@muscogeenation.com

September 29, 2025

Via Email
Kevin W. Dellinger
MCN District Court
Kdellinger@mcndistrictcourt.com

Re:     Tribal District Court Employees

Dear Mr. Dellinger:

I am writing for the purpose of providing some general information on the number of judges and employees of Muscogee (Creek) Nation District Court prior to the *McGirt* decision (July 19, 2020) and the current number of judges and employees post-*McGirt*.  The numbers are as follows:

**July 2020:**

| Judges | Staffing Level |
|---|---|
| Criminal | 01 |
| Civil | 01 |
| Family | 01 |
| **Total Staff** | 03 |

| Employee Positions | Staffing Level |
|---|---|
| Court Clerk | 01 |
| Deputy Clerk(s) | 02 |
| Assistant Attorney General | 01 |
| Staff Attorney | 01 |
| **Total Staff** | 05 |



**Plaintiff's Exhibit**

**1**

25-cv-75-GKF-JFJ

THE MUSCOGEE (CREEK) NATION
918.732.7600 | 800.482.1979 | MuscogeeNation.com

**MCN.Ex.1.001**
**MCN APPENDIX PAGE 362**

**September 2025**:

| Judges | Staffing Level |
|---|---|
| Chief Judge | 01 |
| Criminal | 02 |
| Civil | 01 |
| Family/Juvenile/Protective Orders | 01 |
| Domestic Violence | 01 |
| Traffic | 01 |
| **Total Staff** | 07 |

| Employee Positions | Staffing Level |
|---|---|
| Court Administrator | 01 |
| Court Clerk(s) | 01 |
| Chief Deputy Court Clerk | 01 |
| Deputy Court Clerk(s) | 17 |
| Office Clerk(s) | 04 |
| Information Technology Technician | 01 |
| Probation Officer/Bailiff | 02 |
| Probation Officer | 03 |
| Security Officer | 03 |
| Social Worker | 01 |
| Case Manager | 02 |
| **Total Staff** | 36 |

Melissa Bible
Human Resource Benefits Manager





MCN APPENDIX PAGE 364

**Plaintiff's Exhibit**

**5**

25-cv-75-GKF-JFJ

**MCN.Ex.5.001**

MCN APPENDIX PAGE 365

## CALCULATIONS

### Tulsa County

Residents of Tulsa County: 669,279[1]

Judges in Criminal Division of Tulsa County District Court: 11[2]

Residents per judge: 68,844[3]

### Muscogee (Creek) Nation

Indian Residents within Muscogee (Creek) Nation (using expansive U.S. Census definition): 137,076[4]

MCN District Court Judges Handling Criminal Cases: 3[5]

Residents per judge: 45,692[6]

---

[1] MCN.Ex.3, *Tulsa County, OK, Census Bureau Profile*, available at https://data.census.gov/profile/Tulsa_County,_Oklahoma?g=050XX00US40143 (showing 2020 population of 669,279)

[2] MCN.Ex.2, *Tulsa County District Court, Criminal Division*, available at https://www.tulsacountydistrictcourt.org/criminal.html (showing 11 judges)

[3] 669,279/11 = 60,843.54

[4] MCN.Ex.4, Map titled "Population within Muscogee (Creek) Nation Identifying for Census as American Indian / Alaska Native (expansive)" (showing 137,076 individuals identified for 2020 Census as solely American Indian / Alaska Native or as mixed including American Indian / Alaska Native)

[5] MCN.Ex.1, Letter from Melissa Bible (MCN HR) to Kevin Dellinger, "Tribal District Court Employees" (Sept. 29, 2025) (2 judges handling criminal matters and 1 judge handling domestic violence criminal matters). Budget capacity exists for all three positions to be full-time and/or for additional positions to be created, though current dockets are not full-time.

[6] 137,076/3 = 45,692

**MCN.Ex.5.002**

MCN APPENDIX PAGE 366



**Plaintiff's Exhibit**

**6**

25-cv-75-GKF-JFJ

exhibitsticker.com

MCN.Ex.6.001

MCN APPENDIX PAGE 367



MCN.Ex.6.002

MCN APPENDIX PAGE 368



MCN.Ex.6.003



MCN APPENDIX PAGE 369

MCN.Ex.6.004



MCN APPENDIX PAGE 370

**MCN.Ex.6.005**

Appellate Case: 26-5013    Document: 25-2    Date Filed: 04/29/2026    Page: 87

# Muscogee (Creek) Nation

## Court Building - Design Development

November 15, 2024



Plaintiff's Exhibit

7

25-cv-75-GKF-JFJ

MCN.Ex.7.001



MCN.Ex.7.002



MCN.Ex.7.003

MUSCOGEE (CREEK)
NATION COURTHOUSE

MCN.Ex.7.004

Appellate Case: 26-5013 Document: 25-2 Date Filed: 04/29/2020 Page: 91

MCN APPENDIX PAGE 375

MCN.Ex.7.005

MCN.Ex.7.006

MCN.Ex.7.007

MCN APPENDIX PAGE 378

MCN.Ex.7.009



MCN.Ex.7.010



Findings on Felony Charges in MCN District Court

Plaintiff's Exhibit

12

25-cv-75-GKF-JFJ

exhibitsticker.com

MCN.Ex.12.001

MCN APPENDIX PAGE 382

## Findings on Felony Charges in MCN District Court

## 2019-2025

| Year | Total | Guilty | Deferred Sentence | Dismissed | Not Guilty | Initial |
|------|-------|--------|-------------------|-----------|------------|---------|
| **2019** | 86 | 66 | 11 | 5 | 0 | 4 |
| **2020** | 119 | 81 | 17 | 3 | 0 | 18 |
| **2021** | 344 | 250 | 26 | 42 | 0 | 26 |
| **2022** | 985 | 621 | 212 | 64 | 2 | 86 |
| **2023** | 1134 | 750 | 281 | 101 | 1 | 1 |
| **2024** | 1298 | 795 | 322 | 180 | 1 | 0 |
| 2025 (YTD)[1] | 1096 | 659 | 294 | 140 | 3 | 0 |
| **2025 (annualized)[2]** | 1471 | 884 | 395 | 188 | 4 | 0 |

Data source: MCN.Ex.8 (2019-2025 Reports on Findings for Felony Charges)

[1] Through September 29, 2025 (272 days of the year)
[2] 2025 YTD figure annualized by multiplying it by 365/272

**MCN.Ex.12.002**

MCN APPENDIX PAGE 383

**Findings on Misdemeanor Charges in Misdemeanor Cases in MCN District Court**

**2019-2025**

| Year | Total | Guilty | Deferred Sentence | Dismissed | Not Guilty | Initial | Default Guilty |
|---|---|---|---|---|---|---|---|
| **2019** | 48 | 26 | 18 | 1 | 0 | 3 | 0 |
| **2020** | 115 | 52 | 48 | 4 | 0 | 11 | 0 |
| **2021** | 191 | 132 | 40 | 14 | 0 | 5 | 0 |
| **2022** | 499 | 293 | 125 | 25 | 0 | 56 | 0 |
| **2023** | 482 | 297 | 151 | 32 | 2 | 0 | 0 |
| **2024** | 686 | 396 | 241 | 46 | 1 | 0 | 2 |
| 2025 (YTD)[3] | 584 | 323 | 228 | 27 | 1 | 4 | 1 |
| **2025 (annualized)[4]** | 782 | 433 | 306 | 36 | 1 | 5 | 1 |

Data source: MCN.Ex.9 (2019-2025 Reports on Findings for Misdemeanor Charges in Misdemeanor Cases)

---

[3] Through September 29, 2025 (272 days of the year)
[4] 2025 YTD figure annualized by multiplying it by 365/272

MCN.Ex.12.003

MCN APPENDIX PAGE 384

**Findings on Traffic Charges in MCN District Court**

**2019-2025**

| Year | Total | Guilty | Deferred Sentence | Dismissed | Not Guilty | Initial | Default Guilty |
|---|---|---|---|---|---|---|---|
| **2019** | 116 | 77 | 0 | 2 | 0 | 37 | 0 |
| **2020** | 188 | 57 | 0 | 5 | 0 | 125 | 1 |
| **2021** | 543 | 43 | 0 | 0 | 0 | 493 | 7 |
| **2022** | 798 | 32 | 11 | 16 | 0 | 719 | 20 |
| **2023** | 1069 | 85 | 26 | 94 | 0 | 789 | 75 |
| **2024** | 2281 | 42 | 3 | 157 | 0 | 1944 | 135 |
| **2025 (YTD)[5]** | 2025 | 104 | 7 | 242 | 0 | 1643 | 29 |
| **2025 (annualized)[6]** | 2718 | 140 | 9 | 325 | 0 | 2205 | 39 |

Data source: MCN.Ex.10 (2019-2025 Reports on Findings for Traffic Charges in Traffic Cases)

---

[5] Through September 29, 2025 (272 days of the year)
[6] 2025 YTD figure annualized by multiplying it by 365/272

**MCN.Ex.12.004**

MCN APPENDIX PAGE 385

## Types of DWI Charges in Muscogee (Creek) Nation District Court

## 2019-2025

| Year | Total | Felony | Misdemeanor | Traffic |
|---|---|---|---|---|
| **2019** | 2 | 0 | 2 | 0 |
| **2020** | 27 | 0 | 27 | 0 |
| **2021** | 92 | 16 | 76 | 0 |
| **2022** | 291 | 60 | 176 | 55 |
| **2023** | 318 | 81 | 95 | 142 |
| **2024** | 361 | 90 | 255 | 16 |
| 2025 (YTD)[7] | 301 | 73 | 222 | 6 |
| **2025 (annualized)[8]** | 404 | 98 | 298 | 8 |

Data source: MCN.Ex.11 (2019-2025 Reports on Findings for DWI Charges)

---

[7] Through September 29, 2025 (272 days of the year)

[8] 2025 YTD figure annualized by multiplying it by 365/272

**MCN.Ex.12.005**

Schedule A
FY 2026

**PROPOSED SALARY PLAN**
**FULL TIME**
DEPARTMENT: Justice          FUND #: 1100
DIRECTOR/MANAGER: Geri Wisner     PROG/SUB #: 170001-000

| GRADE | POSITION | SALARY RANGE FROM | SALARY RANGE TO | CURRENT SALARY | PROPOSED SALARY |
|---|---|---|---|---|---|
| | ATTORNEY GENERAL | | | | |
| | DEPUTY ATTORNEY GENERAL | | | | |
| | CHIEF CIVIL LITIGATOR (60%, 40%) | | | | |
| | DEPUTY CHIEF CIVIL LITIGATOR (60%, 40%) | | | | |
| | ASSISTANT CIVIL LITIGATOR (85%, 15%) | | | | |
| | ASSISTANT CIVIL LITIGATOR (85%, 15%) | | | | |
| | ASSISTANT CIVIL LITIGATOR (85%, 15%) | | | | |
| | CHIEF CRIMINAL PROSECUTOR (60%, 40%) | | | | |
| | DEPUTY CHIEF CRIMINAL PROSECUTOR. (60%, 40%) | | | | |
| | 1ST ASSISTANT CRIMINAL PROSECUTOR (73%, 27%) | | | | |
| | ASSISTANT PROSECUTOR | | | | |
| | ASSISTANT PROSECUTOR | | | | |
| | ASSISTANT PROSECUTOR | | | | |
| | ASSISTANT PROSECUTOR | | | | |
| | ASSISTANT PROSECUTOR | | | | |
| | ASSISTANT PROSECUTOR | | | | |
| | CHIEF FAMILY PROSECUTOR (60%, 40%) | | | | |
| | DEPUTY CHIEF FAMILY PROSECUTOR (60%, 40%) | | | | |
| | ASSISTANT FAMILY PROSECUTOR | | | | |
| | ASSISTANT FAMILY PROSECUTOR | | | | |
| | LEAD RECORDS CLERK | | | | |
| | DEPUTY LEAD RECORDS CLERK | | | | |
| | RECORDS CLERK | | | | |
| | RECORDS CLERK | | | | |
| | DEPUTY LEAD CLERK - CIVIL | | | | |
| | LEAD LEGAL CLERK - CRIMINAL | | | | |
| | DEPUTY LEGAL CLERK - CRIMINAL | | | | |
| | LEGAL CLERK - CRIMINAL | | | | |
| | LEGAL CLERK - CRIMINAL | | | | |
| | LEAD LEGAL CLERK - IPV | | | | |
| | LEGAL CLERK - IPV | | | | |
| | LEGAL CLERK - IPV | | | | |
| | LEGAL CLERK - IPV | | | | |
| | LEAD LEGAL CLERK - FAMILY | | | | |
| | DEPUTY LEAD LEGAL CLERK - FAMILY | | | | |
| | DEPUTY LEAD LEGAL CLERK - TRAFFIC | | | | |
| | LEGAL CLERK - TRAFFIC | | | | |
| | CRIMINAL INVESTIGATOR | | | | |
| | OFFICE MANAGER | | | | |
| | ADMINISTRATIVE ASSISTANT | | | | |
| | OFFICE CLERK | | | | |
| | RECEPTIONIST | | | | |
| | 26 PAY PERIODS | | | | |
| | 3 Additional Days for FY26 | | | | |
| | EVALUATION-BASED PAY RAISE | | | | |
| | | | TOTAL | | |
| | | | | | |
| | | FRINGE FULL-TIM | 54.00% | | |
| *NOTE: Reclassification should be indicated | | | TOTAL | | |

+ 1 Advocate - Grant funded

+1 Sausea - grant funded

**Plaintiff's Exhibit**

**16**

25-cv-75-GKF-JFJ

exhibitsticker.com

**MCN.Ex.16.001**
**MCN APPENDIX PAGE 386**

MCN APPENDIX PAGE 387



Tulsa County Residents per Attorney in Tulsa County DA Office
compared with
MCN Reservation Indian Residents per MCN Prosecutor

Plaintiff's Exhibit

19

25-cv-75-GKF-JFJ

exhibitsticker.com

MCN.Ex.19.001

MCN APPENDIX PAGE 388

## CALCULATIONS:

### Tulsa County

Residents of Tulsa County: 669,279[1]

Attorneys in Tulsa County District Attorney's Office: 50[2]

Residents per Attorney in Tulsa County District Attorney's Office: 13,386[3]

### Muscogee (Creek) Nation

Indian Residents within Muscogee (Creek) Nation (using expansive U.S. Census definition): 137,076[4]

Prosecutors in Muscogee (Creek) Nation Attorney General's Office: 13[5]

Indian Residents per Prosecutor in Muscogee (Creek) Nation Attorney General's Office: 10,544[6]

Conservative assumptions in comparison calculations: all attorneys in Tulsa County DA Office assumed to be prosecutors; all individuals identifying as being partially "American Indian / Alaska Native" assumed to be Indians in the sense of being enrolled members of federally recognized tribes subject to tribal court jurisdiction.

---

[1] MCN.Ex.3, *Tulsa County, OK, Census Bureau Profile*, available at https://data.census.gov/profile/Tulsa_County,_Oklahoma?g=050XX00US40143 (showing 2020 population of 669,279)

[2] MCN.Ex.17 at 3, *Tulsa County District Attorney*, available at https://da.tulsacounty.org/ ("Steve Kunzweiler is District Attorney for Tulsa County. Approximately 50 attorneys and 70 support staff work under his direction. … The Office of the Tulsa County District Attorney prosecutes criminals, advocates on behalf of victims, including deprived and neglected children, collects restitution for victims and business owners, supervises those on probation for misdemeanor and low-level crimes and promotes crime prevention. The Office of the District Attorney also represents Tulsa County's elected officials in civil legal matters.")

[3] 669,279/50 = 13,385.58

[4] MCN.Ex.4 at 7, Map titled "Population within Muscogee (Creek) Nation Identifying for Census as American Indian / Alaska Native (expansive)" (showing 137,076 individuals identified for 2020 Census as solely American Indian / Alaska Native or as mixed including American Indian / Alaska Native)

[5] MCN.Ex.16, Schedule A FY2026 Proposed Salary Plan (1 Chief Criminal Prosecutor, 1 Deputy Chief Criminal Prosecutor, 1 First Assistant Criminal Prosecutor, 6 Assistant Prosecutors, 1 Chief Family Prosecutor, 1 Deputy Chief Family Prosecutor, 2 Assistant Family Prosecutors)

[6] 137,076/13 = 10,544.3

MCN.Ex.19.002

Plaintiff's Exhibit

48

25-cv-75-GKF-JFJ

exhibitsticker.com

MCN APPENDIX PAGE 389



MCN District Court Annual Expenditures

Legend: ■ MCN Appropriation   ■ Self-Governance (fed.)

MCN.Ex.48.001

MCN APPENDIX PAGE 390

## MCN District Court Annual Expenditures

| Year | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 YTD (Oct. 1) |
|---|---|---|---|---|---|---|---|
| MCN Appropriation | 1,021,966 | 1,107,477 | 1,482,531 | 1,868,170 | 3,863,897 | 4,572,773 | 5,004,821 |
| Self-Governance (federal) Funding | 0 | 0 | 0 | 537,025 | 0 | 224,634 | 1,792,613 |

Data source: MCN.Ex.45 (District Court Budget Documents)

MCN.Ex.48.002

MCN APPENDIX PAGE 391

## MCN Attorney General Annual Expenditures

| Year | MCN Appropriation | Self-Governance (fed.) |
|---|---|---|
| 2019 | ~2,400,000.00 | — |
| 2020 | ~2,500,000.00 | ~small |
| 2021 | ~2,530,000.00 | ~400,000.00 |
| 2022 | ~3,250,000.00 | ~300,000.00 |
| 2023 | ~3,950,000.00 | ~small |
| 2024 | ~4,880,000.00 | ~1,560,000.00 |
| 2025 YTD | ~6,200,000.00 | ~850,000.00 |

Legend: ■ MCN Appropriation  ■ Self-Governance (fed.)

MCN.Ex.48.003

MCN APPENDIX PAGE 392

## MCN Attorney General Annual Expenditures

| Year | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 YTD (Sept. 30) |
|---|---|---|---|---|---|---|---|
| MCN Appropriation | 2,395,072 | 2,502,856 | 2,527,267 | 3,261,547 | 3,971,233 | 4,894,397 | 6,211,657 |
| Self-Governance (federal) Funding | 0 | 22,868 | 415,469 | 294,815 | 113,003 | 1,544,415 | 843,233 |

Data source: MCN.Ex.46 (Attorney General Budget Documents)

MCN.Ex.48.004

MCN APPENDIX PAGE 393

## Lighthorse Annual Expenditures

Legend: MCN Appropriation (blue), Self-Governance (fed.) (orange)

X-axis: 2019, 2020, 2021, 2022, 2023, 2024, 2025 YTD

Y-axis: 0, 5,000,000, 10,000,000, 15,000,000, 20,000,000, 25,000,000

MCN.Ex.48.005

MCN APPENDIX PAGE 394

## Lighthorse Annual Expenditures

| Year | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 YTD (0ct. 1) |
|---|---|---|---|---|---|---|---|
| MCN Appropriation | 4,087,281 | 4,937,224 | 8,436,672 | 12,724,298 | 15,182,931 | 18,733,497 | 19,413,431 |
| Self-Governance (federal) Funding | 536,487 | 700,841 | 691,190 | 643,506 | 1,402,327 | 4,774,200 | 2,057,982 |

Data source: MCN.Ex.47 (Lighthorse Budget Documents)

MCN.Ex.48.006

# *The Muscogee (Creek) Nation*
# *Citizenship Board*



*Director*
*Nathan Wilson*

*Manager*
*Allan Colbert Jr.*

*Board Members*
*Jason Nichols*
*Elizabeth Yahola*
*Clarence Johnson*
*Lea Ann Nix*
*Cecilia Wittman*

10/1/2025

To:         Attorney General Geri Wisner

From:      Muscogee (Creek) Nation Citizenship Office

RE:        Request for Tribal Citizenship Information

Attorney General Wisner,

You have asked us to provide you with certain information regarding tribal citizens enrollment numbers and residency. Based on the records maintained by the Muscogee (Creek) Nation Citizenship Office, as of October 1, 2025, we can confirm the following:

- The total number of enrolled Muscogee (Creek) Nation citizens is 104,480.
- The total number of enrolled Muscogee (Creek) Nation citizens between the ages of 5 and 18 years old is 23,290.
- The number of enrolled Muscogee (Creek) Nation citizens who live within the Reservation boundaries is 46,102.

Should you have any questions or need any further information, please feel free to contact our office.

Best Regards,

Andy Proctor

Data Analyst

Muscogee (Creek) Nation

Citizenship Office

**Plaintiff's Exhibit**

**60**

25-cv-75-GKF-JFJ

exhibitsticker.com

Muscogee (Creek) Nation ~ Citizenship Office ~ P.O. Box 580 ~ Okmulgee, OK 74447
You may contact our office at (918) 732-7941 option 5 or (918) 701-2611 option 5

**MCN.Ex.60.001**
**MCN APPENDIX PAGE 395**

**OKLAHOMA STATE COURTS NETWORK**

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

| | |
|---|---|
| State of Oklahoma v. Bohanan, Ky Wolf | **No. CM-2022-108**<br>**(Criminal Misdemeanor)**<br><br>Filed: 01/10/2022<br>Closed: 09/08/2025<br><br>Judge: Traffic Court Judge (General) |

**CASE MAY BE ELIGIBLE FOR ONLINE PAYMENTS**

## PARTIES

Bohanan,  Ky  Wolf, Defendant
STATE OF OKLAHOMA, Plaintiff
Tulsa County District Attorney, ARRESTING AGENCY

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| TULSA COUNTY PUBLIC DEFENDER | Bohanan,  Ky  Wolf |

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Tuesday, July 16, 2024 at 9:00 AM<br>ARRAIGNMENT | Bohanan,  Ky  Wolf | Arraignment Docket | |
| Tuesday, August 27, 2024 at 9:00 AM<br>ARRAIGNMENT | Bohanan,  Ky  Wolf | Arraignment Docket | |
| Tuesday, September 3, 2024 at 9:00 AM<br>ARRAIGNMENT | Bohanan,  Ky  Wolf | Arraignment Docket | |
| Monday, October 14, 2024 at 9:00 AM<br>ARRAIGNMENT LAST PASS | Bohanan,  Ky  Wolf | Arraignment Docket | |
| Friday, November 22, 2024 at 9:00 AM<br>JURY TRIAL SOUNDING DOCKET | Bohanan,  Ky  Wolf | Preliminary Hearing Docket | |

**Plaintiff's Exhibit**

**64**

25-cv-75-GKF-JFJ

MCN.Ex.64.001

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Friday, December 20, 2024 at 1:40 PM<br>HEARING ON JURISDICTION | Bohanan,  Ky  Wolf | Preliminary Hearing Docket | |
| Friday, January 31, 2025 at 1:40 PM<br>MCGIRT HEARING | Bohanan,  Ky  Wolf | Preliminary Hearing Docket | |
| Thursday, February 13, 2025 at 9:00 AM<br>JURY TRIAL SOUNDING DOCKET | Bohanan,  Ky  Wolf | Traffic Court Judge (General) | |
| Monday, February 24, 2025 at 8:30 AM<br>DRUG COURT INITIAL APPEARANCE | Bohanan,  Ky  Wolf | Drug Court Judge (General) | |
| Monday, April 14, 2025 at 9:00 AM<br>MDPOST1 | Bohanan,  Ky  Wolf | Drug Court Judge (General) | |
| Monday, May 12, 2025 at 9:00 AM<br>MDPOST1 | Bohanan,  Ky  Wolf | Drug Court Judge (General) | |
| Monday, June 9, 2025 at 9:00 AM<br>MDPOST1 | Bohanan,  Ky  Wolf | Drug Court Judge (General) | |
| Monday, July 14, 2025 at 9:00 AM<br>MDPOST1 | Bohanan,  Ky  Wolf | Drug Court Judge (General) | |
| Monday, August 11, 2025 at 9:00 AM<br>MDPOST1 | Bohanan,  Ky  Wolf | Drug Court Judge (General) | |
| Monday, September 8, 2025 at 9:45 AM<br>SENTENCING- MDPOST | Bohanan,  Ky  Wolf | Drug Court Judge (General) | |

# COUNTS

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

**Count # 1.**     Count as Filed: BC, BOGUS CHECK UNDER $1000, in violation of 21 O.S. 1541.1
Date of Offense: 01/15/2017

| Party Name | Disposition Information |
|---|---|
| Bohanan, Ky Wolf | **Disposed: DISMISSED, 09/08/2025. Dismissed- Request of the State**<br>Count as Disposed: BOGUS CHECK UNDER $1000(BC)<br>Violation of 21 O.S. 1541.1 |

# DOCKET

| Date | Code | Description | | |
|---|---|---|---|---|
| 01-10-2022 | [ TEXT ] | | Bohanan, Ky Wolf 👤 | #1 |
| | | CRIMINAL MISDEMEANOR INITIAL FILING.<br>Document Available at Court Clerk's Office | | |
| 01-10-2022 | [ INFORMATION ] | | Bohanan, Ky Wolf 👤 | #1 |
| | | DEFENDANT KY WOLF BOHANAN WAS CHARGED WITH COUNT #1, BOGUS CHECK UNDER $1000 IN VIOLATION OF 21 O.S. 1541.1 | | |

**01-10-2022  [ ◉ WAI$ ]**                                            Bohanan, Ky Wolf 👤              $ 50.00

WARRANT OF ARREST ISSUED, JUDGE: J. MILLER - BOND AMOUNT: $500.00

COUNT 1 - BOGUS CHECK UNDER $1000

---

**01-10-2022  [ OCISR ]**                                            Bohanan, Ky Wolf 👤              $ 25.00

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

---

**01-10-2022  [ AFPC ]**                                            Bohanan, Ky Wolf 👤

AFFIDAVIT FINDING OF PROBABLE CAUSE
Document Available at Court Clerk's Office

---

**01-10-2022  [ TEXT ]**

OCIS HAS AUTOMATICALLY ASSIGNED JUDGE TRAFFIC COURT JUDGE (GENERAL) TO THIS CASE.

---

**06-04-2024  [ ↺ RETWA ]**                                         Bohanan, Ky Wolf 👤

WARRANT RETURNED 6/4/2024, WARRANT ISSUED ON 1/10/2022
Document Available at Court Clerk's Office

---

**06-04-2024  [ CTFREE ]**                                          Bohanan, Ky Wolf 👤

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, IN CUSTODY. COURT DETERMINES ARREST IS
SUPPORTED BY P.C. SPECIAL APPOINTMENT OF THE PUBLIC DEFENDER FOR THE PURPOSE OF BOND
HEARING ONLY. STATE REPRESENTED. BOND HEARING HELD. ARRAIGNMENT PASSED TO 7/16/24 @ 9 AM
IN ROOM 173. PR BOND AUTHORIZED, RELEASE ISSUED.

---

**06-05-2024  [ PR ]**                                              Bohanan, Ky Wolf 👤              $ 10.00

RECOGNIZANCE BOND FOR BOHANAN, KY WOLF, POSTED 06/05/2024
Document Available (#1058916338) ▯TIFF    ▯PDF

---

**06-05-2024  [ BOJ ]**                                             Bohanan, Ky Wolf 👤              $ 25.00

BOND INITIAL FILING JAIL FUND FEE

---

**06-05-2024  [ CCADMIN25 ]**                                       Bohanan, Ky Wolf 👤              $ 2.50

COURT CLERK ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**06-05-2024  [ DCADMIN25 ]**                                       Bohanan, Ky Wolf 👤              $ 3.75

DISTRICT COURT ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**06-05-2024  [ TEXT ]**                                            Bohanan, Ky Wolf 👤

COURT'S FINDINGS FOR PURPOSES OF INITIAL BOND HEARING
Document Available (#1058739390) ▯TIFF    ▯PDF

---

**06-06-2024  [ RETRL ]**                                           Bohanan, Ky Wolf 👤

RETURN RELEASE
Document Available (#1058736977) ▯TIFF    ▯PDF

---

**07-16-2024  [ CTFREE ]**                                          Bohanan, Ky Wolf 👤

JUDGE SHANNON TAYLOR: DEFENDANT PRESENT, NOT IN CUSTODY, AND NOT REPRESENTED BY
COUNSEL. ARRAIGNMENT PASSED TO 8/27/24 @ 9AM IN ROOM 173. DEFENDANT RECOGNIZED BACK WITH
COUNSEL, BOND TO REMAIN.

---

**09-03-2024  [ CTFREE ]**                                          Bohanan, Ky Wolf 👤

JUDGE SHANNON TAYLOR : DEFENDANT PRESENT, NOT IN CUSTODY, NOT REPRESENTED BY COUNSEL.
ARRAIGNMENT PASSED TO 10/14/24 @9AM IN ROOM 173. DEFENDANT RECOGNIZED BACK WITH COUNSEL.
BOND TO REMAIN. LAST PASS

---

**09-04-2024  [ RETCO ]**                                                     Bohanan, Ky Wolf 👤

RETURN COMMITMENT

Document Available (#1059603954) 📄TIFF    📕PDF

---

**10-14-2024  [ CTFREE ]**                                                   Bohanan, Ky Wolf 👤

JUDGE RODNEY SPARKMAN: DEFENDANT PRESENT, NOT IN CUSTODY, AND APPOINTED PUBLIC DEFENDER AS COUNSEL OF RECORD. ARRAIGNMENT HELD. DEFENDANT WAIVES READING OF THE INFORMATION AND FURTHER TIME TO PLEAD. DEFENDANT ENTERS A PLEA OF NOT GUILTY. JURY TRIAL SOUNDING DOKCET SET FOR 11/22/24 @ 9AM IN ROOM 329. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK.
TRAILING CF-24-2606

---

**10-15-2024  [ PA ]**                                                       Bohanan, Ky Wolf 👤

PAUPER'S AFFIDAVIT

Document Available at Court Clerk's Office

---

**11-22-2024  [ CTFREE ]**                                                   Bohanan, Ky Wolf 👤

JUDGE LAVENDER: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY PIERRE ROBERTSON. STATE REPRESENTED BY JEFF NIESE. HEARING ON STATUS OF JURISDICTION PASSED TO 12/20/24 @ 1:30 PM IN ROOM 344 BOND TO REMAIN; DEFENDANT RECOGNIZED BACK.

---

**12-06-2024  [ MOD ]**                                                      Bohanan, Ky Wolf 👤

MOTION TO DISMISS FOR LACK OF JURISDICTION

Document Available (#1060379040) 📄TIFF    📕PDF

---

**12-18-2024  [ MOCON ]**                                                    Bohanan, Ky Wolf 👤

MOTION FOR CONTINUANCE

Document Available (#1060660925) 📄TIFF    📕PDF

---

**12-20-2024  [ CTFREE ]**                                                   Bohanan, Ky Wolf 👤

JUDGE LAVENDER: DEFEDNANT NOT PRESENT, NOT IN CUSTODY, AND REPRESENTED BY PIERRE ROBERTSON. STATE REPRESENTED BY MEGHAN HILBORN. CASE CALLED FOR MCGIRT HEARING. MCGIRT HEARING PASSED TO 1/31/25 @ 1:30PM IN ROOM 344. BOND TO REMAIN.

---

**01-27-2025  [ RESP ]**                                                     Bohanan, Ky Wolf 👤

STATE'S RESPONSE OBJECTING TO DEFENDANT'S MOTION TO QUASH

Document Available (#1060871666) 📄TIFF    📕PDF

---

**01-31-2025  [ TEXT ]**                                                     Bohanan, Ky Wolf 👤

DEFENDANT'S REPLY TO STATE'S RESPONSE OBJECTING TO DEFENDANT'S MOTION TO DISMISS

Document Available (#1060871814) 📄TIFF    📕PDF

---

**01-31-2025  [ CTFREE ]**                                                   Bohanan, Ky Wolf 👤

JUDGE APRIL SEIBERT: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY JANAY CLOUGHERTY PD. STATE REPRESENTED BY MEGHAN HILBORN. HEARING ON MOTION TO DISMISS BASED ON LACK OF JURISDICTION DENIED. CASE RESET FOR JURY TRIAL SOUNDING DOCKT TO 2-13-2025 @ 9 AM IN ROOM 158. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK

---

**02-13-2025  [ CTFREE ]**                                                   Bohanan, Ky Wolf 👤

JUDGE KASEY BALDWIN. DEFENDANT PRESENT. DEFENDANT NOT IN CUSTODY. DEFENDANT REPRESENTED BY PUBLIC DEFENDER, KIRBY. STATE REPRESENTED BY ALAN JAMESON. MISDEMEANOR DIVERSION PROGRAM SET 2-24-2025 @ 8:30 AM IN COURTROOM 160. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK. DEFENDANT WAIVES RIGHTS TO JURY TRIAL.

**02-24-2025   [ WAIJT ]**                                                Bohanan, Ky Wolf 👤

WAIVER OF TRIAL BY JURY

Document Available (#1061173843) 🗎TIFF     📄PDF

---

**02-24-2025   [ CTFREE ]**                                              Bohanan, Ky Wolf 👤

JUDGE HORTON: DEFENDANT PRESENT, NOT IN CUSTODY, AND REPRESENTED BY PD, STATE REPRESENTED BY LINDSEY ATCHLEY. COURT REPORTER WAIVED. DEFENDANT WAIVES JURISDICTION, JURY/NON JURY TRIAL, AND ENTERS A PLEA OF NO CONTEST. COURT ACCEPTS THE DEFENDANT'S NO CONTEST PLEA, AND WITHHOLDS A FINDING OF GUILT UNTIL 09-08-25@ 9:45AM IN ROOM 160 FOR THE DEFENDANT TO PARTICIPATE IN THE MISDEMEANOR DIVERSION PROGRAM. DEFENDANT TO BE UNDER MDP RULES AND CONDITIONS; WITH TREATMENT PROVIDED BY CTI. DEFENDANT RECOGNIZED BACK TO DATES ESTABLISHED IN WRITTEN ORDER TO APPEAR. PREVIOUS BOND EXONERATED; ORAL PR BOND ISSUED

---

**02-26-2025   [ TEXT ]**                                                Bohanan, Ky Wolf 👤

MISDEMEANOR DIVERSION PROGRAM PLEA AGREEMENT

Document Available (#1061172990) 🗎TIFF     📄PDF

---

**04-14-2025   [ CTFREE ]**                                              Bohanan, Ky Wolf 👤

JUDGE HORTON: DEFENDANT NOT PRESENT, AND NOT REQUIRED TO ATTEND COURT. REVIEW CONTINUED TO 05-12-25 @9AM IN ROOM 160. BOND TO REMAIN

---

**05-14-2025   [ CTFREE ]**                                              Bohanan, Ky Wolf 👤

JUDGE HORTON: DEFENDANT NOT PRESENT, AND NOT REQUIRED TO ATTEND COURT. REVIEW CONTINUED TO 06-09-25 @9AM IN ROOM 160. BOND TO REMAIN

---

**06-09-2025   [ CTFREE ]**                                              Bohanan, Ky Wolf 👤

JUDGE HORTON: DEFENDANT NOT PRESENT, AND NOT REQUIRED TO ATTEND COURT. REVIEW CONTINUED TO 07-14-2025 @9AM IN ROOM 160. BOND TO REMAIN

---

**07-14-2025   [ CTFREE ]**                                              Bohanan, Ky Wolf 👤

JUDGE HORTON: DEFENDANT NOT PRESENT, AND NOT REQUIRED TO ATTEND COURT. REVIEW CONTINUED TO 8-11-25 @9AM IN ROOM 160. BOND TO REMAIN

---

**08-11-2025   [ CTFREE ]**                                              Bohanan, Ky Wolf 👤

JUDGE HORTON: DEFENDANT NOT PRESENT, AND NOT REQUIRED TO ATTEND COURT. REVIEW CONTINUED TO 9/08/25 @9AM IN ROOM 160. BOND TO REMAIN.

---

**09-08-2025   [ DISMISSED ]**                               Bohanan, Ky Wolf 👤     #1

JUDGE HORTON : DEFENDANT PRESENT, NOT IN CUSTODY, AND REPRESENTED BY HARRIS YOUNGBLOOD, PD. STATE REPRESENTED BY MEGHAN BROBST. COURT REPORTER WAIVED. DEFENDANT SUCCESSFULLY COMPLETES ALL REQUIREMENTS OF MDP COURT. CASE CALLED FOR SENTENCING. ALL COUNTS ARE DISMISSED COST TO THE STATE AND ORDERED EXPUNGED. BOND EXONERATED

---

**09-22-2025   [ RULE8 ]**                                               Bohanan, Ky Wolf 👤

ORDER OF THE COURT - RULE 8 HEARING

Document Available (#1063289593) 🗎TIFF     📄PDF



**Person S** Q  Start typing          **Advanced search**          Brandee Beaver
                                                                     My View

| Name ↑ | Address | DOB | Pers |
|---|---|---|---|
| Bohanan, William B | ███████ | ████ | |
| Bohannan, Ronald Tyree | ██████ | ████ | |
| Bohanon, James W. (Tulsa Police Department) | | | |
| Bohanon, Mary E. (Tulsa Police Department) | | | |
| Bohl, Tristan (Kiefer Police Dept) | ████ | | |
| Bohn, Chance Lane | | ████ | |
| Bohnert, Kevin Leroy | ██████ | ████ | |
| Bohrer, David R. (Tulsa Police Department) | | | |

| Defendant Q | Witness | CoDefendant | Civil |
|---|---|---|---|

| Offense | Issued Date | Report# | OTN | File# ↓ | Court# | Charge |
|---|---|---|---|---|---|---|
| 07-10-2025 | 07-30-2025 | TULSA 622... | | 101-0030053 | TR-2025-1399 | Title 14, § 3-707 |

Exit                                                            Add Person

**Plaintiff's Exhibit**

**65**

25-cv-75-GKF-JFJ

MCN.Ex.65.001

https //okgov hostedbykarpel com/OKMuscogeeNation/app/#/party search result?ssn  &frompage  searchreferralInfo&fname  &mname  &lname  Boh&ssoc  &sex        1/1

MCN APPENDIX PAGE 401

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA,<br>　　　Plaintiff,<br>v.<br>CHARLES AARON MASON,<br>　　　Defendant. | **No. CM-2024-4510**<br>**(Criminal Misdemeanor)**<br><br>Filed: 11/27/2024<br>Closed: 03/05/2025<br><br>Judge: Traffic Court Judge (General) |

## PARTIES

MASON,  CHARLES  AARON, Defendant
STATE OF OKLAHOMA, Plaintiff
Tulsa Police Department, ARRESTING AGENCY

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| BEEN,  BRIAN  C (Bar #16474)<br>1861 E 15TH ST<br>TULSA, OK 74104 | MASON,   CHARLES  AARON |



**Plaintiff's Exhibit**

**66**

25-cv-75-GKF-JFJ

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Monday, December 30, 2024 at 9:00 AM<br>　JURY TRIAL SOUNDING DOCKET | MASON,  CHARLES  AARON | Traffic Court Judge (General) | |
| Friday, January 31, 2025 at 1:41 PM<br>　HEARING ON MOTION | MASON,  CHARLES  AARON | Preliminary Hearing Docket | |
| Monday, February 3, 2025 at 9:00 AM<br>　ALLEN (DISCOVERY) HEARING | MASON,  CHARLES  AARON | Traffic Court Judge (General) | |
| Wednesday, March 5, 2025 at 9:00 AM<br>　DISPOSITION (MISDEMEANOR) | MASON,  CHARLES  AARON | Traffic Court Judge (General) | |
| Friday, August 28, 2026 at 9:00 AM<br>　DEFERRED | MASON,  CHARLES  AARON | Traffic Court Judge (General) | |

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

**Count # 1.**     Count as Filed: DI1M, DUI ALCOHOL (MUNICIPAL ARREST), in violation of 47 O.S. 11-902(A)(2)
Date of Offense: 11/23/2024

| Party Name | Disposition Information |
|---|---|
| MASON, CHARLES AARON | **Disposed: DEFERRED, 03/05/2025. Guilty Plea**<br>Count as Disposed: DUI ALCOHOL (MUNICIPAL ARREST)(DI1M)<br>Violation of 47 O.S. 11-902(A)(2) |

# DOCKET

| Date | Code | Description | | | |
|---|---|---|---|---|---|
| 11-27-2024 | [ TEXT ] | | MASON, CHARLES AARON 👤 | #1 | |

CRIMINAL MISDEMEANOR INITIAL FILING.
Document Available at Court Clerk's Office

| 11-27-2024 | [ INFORMATION ] | | MASON, CHARLES AARON 👤 | #1 | |

DEFENDANT CHARLES AARON MASON WAS CHARGED WITH COUNT #1, DUI ALCOHOL (MUNICIPAL ARREST) IN VIOLATION OF 47 O.S. 11-902(A)(2)

| 11-27-2024 | [ AFPCA ] | | MASON, CHARLES AARON 👤 | | |

AFFIDAVIT & FINDING OF PROBABLE CAUSE T.R.A.C.I.S. (ARRESTED)
Document Available at Court Clerk's Office

| 11-27-2024 | [ TEXT ] | | | | |

OCIS HAS AUTOMATICALLY ASSIGNED JUDGE TRAFFIC COURT JUDGE (GENERAL) TO THIS CASE.

| 12-02-2024 | [ CTFREE ] | | MASON, CHARLES AARON 👤 | | |

JUDGE SHANNON TAYLOR: DEFENDANT NOT PRESENT, NOT IN CUSTODY, AND REPRESENTED BY BRIAN BEEN. ARRAIGNMENT HELD. DEFENDANT WAIVES READING OF THE INFORMATION AND FURTHER TIME TO PLEAD. DEFENDANT ENTERS A PLEA OF NOT GUILTY. JURY TRIAL SOUNDING DOCKET SET FOR 12/30/24 @ 9AM IN ROOM 158. BOND TO REMAIN. BENCH WARRANT UNDER ADVISEMENT.

| 12-03-2024 | [ BOTRF ] | | MASON, CHARLES AARON 👤 | #1 | $ 10.00 |

A BOND FROM CASE # NF-2024-7978 DATED 11/25/2024 HAS BEEN TRANSFERRED TO THIS CASE. THE INFORMATION ON THIS BOND IS AS FOLLOWS:
CASH BOND FOR MASON, CHARLES AARON POSTED BY MILLER, ANNALEA, COUNT NUMBER 1, IN THE AMOUNT OF $1,000.00, POSTED 11/25/2024
Document Available (#1060374368) 📄TIFF    📄PDF

| 12-03-2024 | [ BOJ ] | | MASON, CHARLES AARON 👤 | #1 | $ 25.00 |

BOND INITIAL FILING JAIL FUND FEE

| 12-03-2024 | [ CCADMIN25 ] | | MASON, CHARLES AARON 👤 | #1 | $ 2.50 |

COURT CLERK ADMINISTRATIVE FEE ON $25 COLLECTIONS

| 12-03-2024 | [ DCADMIN25 ] | | MASON, CHARLES AARON 👤 | #1 | $ 3.75 |

DISTRICT COURT ADMINISTRATIVE FEE ON $25 COLLECTIONS

**12-03-2024  [ ACCOUNT ]**        MASON, CHARLES AARON 👤

RECEIPT # 2024-4704489 ON 12/03/2024.
PAYOR: TOTAL AMOUNT PAID: $ 0.00.
LINE ITEMS:
CM-2024-4510: $1,000.00 ON TRANSFER TO AC90 CASH BONDS FOR MASON, CHARLES AARON.
NF-2024-7978: $-1,000.00 ON TRANSFER FROM AC90 CASH BONDS FOR MASON, CHARLES.

---

**12-20-2024  [ CTBWFTA ]**        MASON, CHARLES AARON 👤

JUDGE KASEY BALDWIN: DEFENDANT NOT PRESENT, AND NOT IN CUSTODY. DEFENDANT REPRESENTED BY BRIAN BEEN (NOT PRESENT). STATE REPRESENTED BY SYDNEY CASEBOLT. CASE PREVIOUSLY SET FOR JURY TRIAL SOUNDING DOCKET. BENCH WARRANT ORDERED. BOND ORDERED FORFEITED. BOND SET IN THE AMOUNT OF $3,000.00.

---

**12-31-2024  [ CTFREE ]**        MASON, CHARLES AARON 👤

JUDGE KASEY BALDWIN. DEFENDANT NOT PRESENT. DEFENDANT NOT IN CUSTODY. DEFENDANT REPRESENTED BY BRIAN BEEN (PRESENT). STATE REPRESENTED BY SYDNEY CASEBOLT. BENCH WARRANT NOT ISSUED. ALLEN DISCOVERY HEARING SET 2-3-2025 @ 9:00 AM IN COURTROOM 158. BOND TO REMAIN. BENCH WARRANT UNDER ADVISEMENT.

---

**01-09-2025  [ MOD ]**        MASON, CHARLES AARON 👤

MOTION TO DISMISS BASED ON LACK OF JURISDICTION
Document Available (#1060664951) 🗎TIFF    📕PDF

---

**01-13-2025  [ CTFREE ]**        MASON, CHARLES AARON 👤

JUDGE KASEY BALDWIN: ORDER SETTING HEARING SIGNED BY THE COURT. HEARING ON MOTION TO DISMISS FOR LACK OF JURISDICTION SET 1-31-25 @ 1:30PM IN ROOM #344.

---

**01-15-2025  [ OSH ]**        MASON, CHARLES AARON 👤

ORDER SETTING HEARING
Document Available (#1060772186) 🗎TIFF    📕PDF

---

**01-27-2025  [ RESP ]**        MASON, CHARLES AARON 👤

STATE'S RESPONSE OBJECTING TO DEFENDANT'S MOTION TO DISMISS
Document Available (#1060871654) 🗎TIFF    📕PDF

---

**01-31-2025  [ CTFREE ]**        MASON, CHARLES AARON 👤

JUDGE APRIL SEIBERT: DEFENDANT NOT PRESENT, NOT IN CUSTODY AND REPRESENTED BY BRIAN BEEN. STATE REPRESENTED BY MEGHAN HILBORN. MOTION TO DISMISS BASED ON LACK OF JURISDICTION IS DENIED. FUTURE COURT DATE TO REMAIN.

---

**02-03-2025  [ CTPASS ]**        MASON, CHARLES AARON 👤

JUDGE KASEY BALDWIN: DEFENDANT NOT PRESENT, NOT IN CUSTODY AND REPRESENTED BY BRIAN BEEN. STATE REPRESENTED SYDNEY CASEBOLT DISPOSITION PASSED TO 3-5-25 @ 9:00 AM IN ROOM 158. BOND TO REMAIN. BENCH WARRANT UNDER ADVISMENT

---

**03-05-2025  [ CCDUI ]**     MASON, CHARLES AARON 👤    **#1**    $ 166.50

COURT COSTS ON DUI (MUNICIPAL ARREST)

---

**03-05-2025  [ DPSFEE ]**     MASON, CHARLES AARON 👤    **#1**    $ 155.00

DPS PATROL VEHICLE FUND FEE ASSESSMENT

---

**03-05-2025  [ TCARF ]**     MASON, CHARLES AARON 👤    **#1**    $ 100.00

TRAUMA CARE ASSISTANCE REVOLVING FUND

---

**03-05-2025  [ DACPAD ]**     MASON, CHARLES AARON 👤    **#1**    $ 83.25

DA COUNCIL PROSECUTION ASSESSMENT FOR MUNICIPAL DUI

| 03-05-2025 | [ MUNI ] | MASON, CHARLES AARON | #1 | $ 83.25 |
|---|---|---|---|---|
| COSTS TO ARRESTING AGENCY (MUNICIPALITY) ON DUI | | | | |

| 03-05-2025 | [ DACPAM ] | MASON, CHARLES AARON | #1 | $ 30.00 |
|---|---|---|---|---|
| DA COUNCIL PROSECUTION ASSESSMENT FOR MISDEMEANOR | | | | |

| 03-05-2025 | [ OCISR ] | MASON, CHARLES AARON | #1 | $ 25.00 |
|---|---|---|---|---|
| OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | | | |

| 03-05-2025 | [ IDEA ] | MASON, CHARLES AARON | #1 | $ 15.00 |
|---|---|---|---|---|
| DPS IMPAIRED DRIVER DATABASE FEE | | | | |

| 03-05-2025 | [ SSFCHS ] | MASON, CHARLES AARON | #1 | $ 10.00 |
|---|---|---|---|---|
| SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY | | | | |

| 03-05-2025 | [ CLEET ] | MASON, CHARLES AARON | #1 | $ 10.00 |
|---|---|---|---|---|
| CLEET PENALTY ASSESSMENT | | | | |

| 03-05-2025 | [ FOREN ] | MASON, CHARLES AARON | #1 | $ 10.00 |
|---|---|---|---|---|
| FORENSIC SCIENCE IMPROVEMENT ASSESSMENT | | | | |

| 03-05-2025 | [ AFIS ] | MASON, CHARLES AARON | #1 | $ 10.00 |
|---|---|---|---|---|
| AFIS FEE | | | | |

| 03-05-2025 | [ MELRF ] | MASON, CHARLES AARON | #1 | $ 10.00 |
|---|---|---|---|---|
| MEDICAL EXPENSE LIABILITY REVOLVING FUND | | | | |

| 03-05-2025 | [ PFE7 ] | MASON, CHARLES AARON | #1 | $ 6.00 |
|---|---|---|---|---|
| LAW LIBRARY FEE | | | | |

| 03-05-2025 | [ SSF ] | MASON, CHARLES AARON | #1 | $ 5.00 |
|---|---|---|---|---|
| SHERIFF'S SERVICE FEE ON ARRESTS | | | | |

| 03-05-2025 | [ CHAB ] | MASON, CHARLES AARON | #1 | $ 3.00 |
|---|---|---|---|---|
| C.H.A.B. STATUTORY FEE | | | | |

| 03-05-2025 | [ AGVSU ] | MASON, CHARLES AARON | #1 | $ 3.00 |
|---|---|---|---|---|
| ATTORNEY GENERAL VICTIM SERVICES UNIT | | | | |

| 03-05-2025 | [ CTFD ] | MASON, CHARLES AARON | #1 | $ 300.00 |
|---|---|---|---|---|
| COURT FUND ASSESSMENT <..ENTER AMOUNT..> | | | | |

| 03-05-2025 | [ VCA ] | MASON, CHARLES AARON | #1 | $ 150.00 |
|---|---|---|---|---|
| VICTIMS COMPENSATION ASSESSMENT (AC12) | | | | |

| 03-05-2025 | [ CCADMIN ] | MASON, CHARLES AARON | #1 | $ 35.60 |
|---|---|---|---|---|
| COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | | | | |

| 03-05-2025 | [ DCADMIN ] | MASON, CHARLES AARON | #1 | $ 53.40 |
|---|---|---|---|---|
| DISTRICT COURT ADMINISTRATIVE FEE | | | | |

| 03-05-2025 | [ NPPA ] | MASON, CHARLES AARON | | |
|---|---|---|---|---|
| COST ADMINISTRATION PAYMENT PLAN AGREEMENT SET AT $80.00, ONCE A MONTH, BEGINNING 4/5/2025 - PP-TU-2025-865 | | | | |
| Document Available (#1060433267) TIFF    PDF | | | | |

| 03-06-2025 | [ RULE8 ] | MASON, CHARLES AARON | | |
|---|---|---|---|---|
| ORDER OF THE COURT - RULE 8 HEARING | | | | |
| Document Available (#1060433299) TIFF    PDF | | | | |

**03-06-2025  [ PGSF ]**                                     MASON, CHARLES AARON 👤

PLEA OF GUILTY - SUMMARY OF FACTS

Document Available (#1061288973) ⬜TIFF    📕PDF

---

**03-31-2025  [ ADJUST ]**                              MASON, CHARLES AARON 👤                        $ 2.50

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

---

**03-31-2025  [ ACCOUNT ]**                             MASON, CHARLES AARON 👤                       $ -2.50

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING
AMOUNTS:

CM-2024-4510: AC01 CLERK FEES -$2.50

---

**03-31-2025  [ ACCOUNT ]**                             MASON, CHARLES AARON 👤

RECEIPT # 2025-4750743 ON 03/31/2025.

PAYOR: CHARLES MASON TOTAL AMOUNT PAID: $ 100.00.

LINE ITEMS:

CM-2024-4510: $97.50 ON AC01 CLERK FEES FOR MASON, CHARLES AARON.

CM-2024-4510: $2.50 ON AC09 CARD ALLOCATIONS FOR MASON, CHARLES AARON.

---

**05-02-2025  [ ADJUST ]**                              MASON, CHARLES AARON 👤                       $ 30.14

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

---

**05-02-2025  [ ACCOUNT ]**                             MASON, CHARLES AARON 👤                      $ -30.14

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING
AMOUNTS:

CM-2024-4510: AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY -$0.25

CM-2024-4510: AC80 JAIL FUND (BOND FEE) SHERIFF OR PRIVATE JAIL -$0.63

CM-2024-4510: AC79 OCIS REVOLVING FUND -$0.63

CM-2024-4510: AC78 OKLAHOMA DEPARTMENT OF HEALTH/TRAUMA CARE FUND -$2.50

CM-2024-4510: AC77 DA COUNCIL PROSECUTION ASSESSMENT FEE -$2.84

CM-2024-4510: AC76 MEDICAL EXPENSE LIABILITY REVOLVING FUND -$0.25

CM-2024-4510: AC75 FORENSIC SCIENCE IMPROVEMENT ASSESSMENTS -$0.25

CM-2024-4510: AC71 DPS PATROL VEHICLE REVOLVING FUND -$3.88

CM-2024-4510: AC69 CHILD ABUSE MULTIDISCIPLINARY FEE -$0.08

CM-2024-4510: AC67 DISTRICT COURT REVOLVING FUND -$1.43

CM-2024-4510: AC66 OKLAHOMA IMPAIRED DRIVER DATABASE REVOLVING FUND -$0.38

CM-2024-4510: AC31 COURT CLERK REVOLVING FUND -$0.96

CM-2024-4510: AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL -$0.15

CM-2024-4510: AC22 SHERIFF'S SERVICE & INCARCERATION FEE -$0.13

CM-2024-4510: AC21 AFIS FUND -$0.25

CM-2024-4510: AC12 VICTIM'S COMPENSATION ASSESSMENT (VCA) -$3.75

CM-2024-4510: AC11 CLEET PENALTY ASSESSMENT -$0.25

CM-2024-4510: AC07 ATTORNEY GENERAL VICTIM SERVICES UNIT -$0.08

CM-2024-4510: AC02 MUNICIPAL COURT COSTS -$2.09

CM-2024-4510: AC01 CLERK FEES -$9.36

**05-02-2025  [ ACCOUNT ]**                                   MASON, CHARLES AARON 👤

RECEIPT # 2025-4765425 ON 05/02/2025.

PAYOR: CHARLES MASON TOTAL AMOUNT PAID: $ 1,205.25.

LINE ITEMS:

CM-2024-4510: $367.14 ON AC01 CLERK FEES FOR MASON, CHARLES AARON.

CM-2024-4510: $81.16 ON AC02 MUNICIPAL COURT COSTS FOR MASON, CHARLES AARON.

CM-2024-4510: $2.92 ON AC07 ATTORNEY GENERAL VICTIM SERVICES UNIT FOR MASON, CHARLES AARON.

CM-2024-4510: $30.14 ON AC09 CARD ALLOCATIONS FOR MASON, CHARLES AARON.

CM-2024-4510: $9.75 ON AC11 CLEET PENALTY ASSESSMENT FOR MASON, CHARLES AARON.

CM-2024-4510: $146.25 ON AC12 VICTIM'S COMPENSATION ASSESSMENT (VCA) FOR MASON, CHARLES AARON.

CM-2024-4510: $9.75 ON AC21 AFIS FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $4.87 ON AC22 SHERIFF'S SERVICE & INCARCERATION FEE FOR MASON, CHARLES AARON.

CM-2024-4510: $5.85 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL FOR MASON, CHARLES AARON.

CM-2024-4510: $37.14 ON AC31 COURT CLERK REVOLVING FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $14.62 ON AC66 OKLAHOMA IMPAIRED DRIVER DATABASE REVOLVING FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $55.72 ON AC67 DISTRICT COURT REVOLVING FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $2.92 ON AC69 CHILD ABUSE MULTIDISCIPLINARY FEE FOR MASON, CHARLES AARON.

CM-2024-4510: $151.12 ON AC71 DPS PATROL VEHICLE REVOLVING FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $9.75 ON AC75 FORENSIC SCIENCE IMPROVEMENT ASSESSMENTS FOR MASON, CHARLES AARON.

CM-2024-4510: $9.75 ON AC76 MEDICAL EXPENSE LIABILITY REVOLVING FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $110.41 ON AC77 DA COUNCIL PROSECUTION ASSESSMENT FEE FOR MASON, CHARLES AARON.

CM-2024-4510: $97.50 ON AC78 OKLAHOMA DEPARTMENT OF HEALTH/TRAUMA CARE FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $24.37 ON AC79 OCIS REVOLVING FUND FOR MASON, CHARLES AARON.

CM-2024-4510: $24.37 ON AC80 JAIL FUND (BOND FEE) SHERIFF OR PRIVATE JAIL FOR MASON, CHARLES AARON.

CM-2024-4510: $9.75 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY FOR MASON, CHARLES AARON.

---

**05-15-2025  [ ACCOUNT ]**                                   MASON, CHARLES AARON 👤

REQUESTED VOUCHER IN AMOUNT OF 1,000.00 TO MILLER, ANNALEA FROM ACCOUNT AC90. DISBURSEMENT NUMBER 18032344.

---

**05-16-2025  [ DISBURSED ]**                                 MASON, CHARLES AARON 👤

VOUCHER# 521712 PRINTED TO MILLER, ANNALEA, WHICH INCLUDES $ 1,000.00 FROM THIS CASE FOR AC90 - CASH BONDS. TOTAL AMOUNT OF VOUCHER: $ 1,000.00.

---

**08-06-2025  [ RETRL ]**                                     MASON, CHARLES AARON 👤

RETURN RELEASE

Document Available (#1062695818) 📄TIFF    📄PDF



MCN APPENDIX PAGE 408

**Person Search Results** Page info (?)   Start typing   **Advanced search**   Brandee Beaver / My View

| Name ↑ | Address | DOB | Person Type | Race | G |
|---|---|---|---|---|---|
| Mason Public Schools, | | | | | |
| Mason, Aidan A | ███ | ███ | | I | M |
| Mason, Alicia Dushane | ███ | ███ | | | F |
| Mason, Allen | | ███ | | W | M |
| Mason, Brinley | ███ | 1███ | | I | F |
| Mason, Bryan | | | | | |
| Mason, Dasia Samone | ███ | ███ | | I | F |
| Mason, Donald Ernest II | ███ | ███ | | I | M |
| Mason, Ethan C | ███ | ███ | | I | M |
| Mason, J'Shon S | ███ | ███ | | B | M |
| Mason, Jalissa Ray | ███ | ███ | | B | F |
| Mason, Jawane Deshane | ███ | ███ | | I | M |

Defendant 🔍   Witness   CoDefendant   Civil

| Offense | Issued Date | Report# | OTN | File# ↓ | Court# | Charge | Jurisdiction |
|---|---|---|---|---|---|---|---|

Exit

**Plaintiff's Exhibit**

**67**

25-cv-75-GKF-JFJ

exhibitsticker.com

Add Person

MCN.Ex.67.001

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

| | |
|---|---|
| State of Oklahoma v. Hess, Jessica Diane | No. CM-2024-2951 (Criminal Misdemeanor)<br><br>Filed: 08/08/2024<br>Closed: 05/02/2025<br><br>Judge: Traffic Court Judge (General) |

## PARTIES

Hess,  Jessica  Diane, Defendant
STATE OF OKLAHOMA, Plaintiff
Tulsa Police Department, ARRESTING AGENCY

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| TULSA COUNTY PUBLIC DEFENDER | Hess,   Jessica  Diane |



Plaintiff's Exhibit

68

25-cv-75-GKF-JFJ

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Monday, September 23, 2024 at 9:00 AM ARRAIGNMENT | Hess,  Jessica  Diane | Arraignment Docket | |
| Monday, October 21, 2024 at 9:00 AM ARRAIGNMENT | Hess,  Jessica  Diane | Arraignment Docket | |
| Friday, October 25, 2024 at 9:00 AM ARRAIGNMENT (DATE ON BOND) | Hess,  Jessica  Diane | Arraignment Docket | |
| Thursday, November 21, 2024 at 9:00 AM JURY TRIAL SOUNDING DOCKET | Hess,  Jessica  Diane | Traffic Court Judge (General) | |
| Friday, December 27, 2024 at 1:40 PM HEARING ON MCGIRT | Hess,  Jessica  Diane | Preliminary Hearing Docket | |

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Thursday, January 2, 2025 at 9:00 AM<br>ALLEN (DISCOVERY) HEARING | Hess, Jessica Diane | Traffic Court Judge (General) | |
| Friday, January 31, 2025 at 1:40 PM<br>MOTION TO DISMISS - MCGIRT | Hess, Jessica Diane | Preliminary Hearing Docket | |
| Thursday, February 13, 2025 at 9:00 AM<br>JURY TRIAL SOUNDING DOCKET | Hess, Jessica Diane | Traffic Court Judge (General) | |
| Monday, April 28, 2025 at 9:00 AM<br>JURY TRIAL (ISSUE) | Hess, Jessica Diane | Traffic Court Judge (General) | |
| Friday, May 2, 2025 at 9:00 AM<br>NON JURY TRIAL (ISSUE) | Hess, Jessica Diane | Traffic Court Judge (General) | |

# COUNTS

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

**Count # 1.**     Count as Filed: OBS, OBSTRUCTING AN OFFICER, in violation of 21 O.S. 540
Date of Offense: 07/03/2024

| Party Name | Disposition Information |
|---|---|
| Hess, Jessica Diane | **Disposed: DISMISSED, 05/02/2025. Non-Jury Trial**<br>Count as Disposed: OBSTRUCTING AN OFFICER(OBS)<br>Violation of 21 O.S. 540 |

# DOCKET

| Date | Code | Description | | |
|---|---|---|---|---|
| 08-08-2024 | [ TEXT ] | | Hess, Jessica Diane 👤 | #1 |

CRIMINAL MISDEMEANOR INITIAL FILING.
Document Available at Court Clerk's Office

| 08-08-2024 | [ INFORMATION ] | | Hess, Jessica Diane 👤 | #1 |
|---|---|---|---|---|

DEFENDANT JESSICA DIANE HESS WAS CHARGED WITH COUNT #1, OBSTRUCTING AN OFFICER IN VIOLATION OF 21 O.S. 540

| 08-08-2024 | [ TEXT ] | | | |
|---|---|---|---|---|

OCIS HAS AUTOMATICALLY ASSIGNED JUDGE TRAFFIC COURT JUDGE (GENERAL) TO THIS CASE.

| 08-09-2024 | [ AFPCA ] | | Hess, Jessica Diane 👤 | |
|---|---|---|---|---|

AFFIDAVIT & FINDING OF PROBABLE CAUSE T.R.A.C.I.S. (ARRESTED)
Document Available at Court Clerk's Office

| 08-12-2024 | [ CTFREE ] | | Hess, Jessica Diane 👤 | |
|---|---|---|---|---|

JUDGE SHANNON TAYLOR : DEFENDANT PRESENT, NOT IN CUSTODY, NOT REPRESENTED BY COUNSEL. ARRAIGNMENT PASSED TO 9/23/24 @9AM IN ROOM 173. DEFENDANT RECOGNIZED BACK WITH COUNSEL. BOND TO REMAIN.

**08-13-2024  [ BOTRF ]**                                      Hess, Jessica Diane &#128100;    **#1**          $ 10.00

A BOND FROM CASE # NF-2024-4517 DATED 07/05/2024 HAS BEEN TRANSFERRED TO THIS CASE. THE
INFORMATION ON THIS BOND IS AS FOLLOWS:
PROFESSIONAL BOND FOR HESS, JESSICA DIANE POSTED BY ABBOTT, KRISTINA NICOLE (MULTICOUNTY
AGENT:AGUILAR, ROBERTA DAMPF) (POWERNUMBER:ABB-24-82651), COUNT NUMBER 1, IN THE AMOUNT
OF $500.00, POSTED 07/05/2024
Document Available (#1059547133) TIFF    PDF

---

**08-13-2024  [ BOJ ]**                                        Hess, Jessica Diane &#128100;          $ 25.00

BOND INITIAL FILING JAIL FUND FEE

---

**08-13-2024  [ CCADMIN25 ]**                                  Hess, Jessica Diane &#128100;          $ 2.50

COURT CLERK ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**08-13-2024  [ DCADMIN25 ]**                                  Hess, Jessica Diane &#128100;          $ 3.75

DISTRICT COURT ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**09-23-2024  [ CTFREE ]**                                     Hess, Jessica Diane &#128100;

JUDGE RODNEY SPARKMAN: DEFENDANT PRESENT, NOT IN CUSTODY, AND NOT REPRESENTED BY
COUNSEL. ARRAIGNMENT PASSED TO 10/21/24 @ 9AM IN ROOM 173. DEFENDANT RECOGNIZED BACK
WITH COUNSEL, BOND TO REMAIN. DEFENDANT GIVEN PAUPERS TO COMPLETE AND RETURN BY NEXT
COURT DATE. LAST PASS.

---

**10-21-2024  [ CTBWFTA ]**                                    Hess, Jessica Diane &#128100;

JUDGE RODNEY SPARKMAN: DEFENDANT NOT PRESENT, AND NOT REPRESENTED BY COUNSEL. CASE
PREVIOUSLY SET FOR ARRAIGNMENT. BENCH WARRANT ORDERED AT 9:50AM. BOND ORDERED
FORFEITED. BOND SET IN THE AMOUNT OF $1500.

---

**10-21-2024  [ BDFOR ]**                                      Hess, Jessica Diane &#128100;    **#1**

THE STATUS OF THE BOND ENTRY DETAILED IN DOCKET SERIAL #126171852 ABOVE HAS CHANGED TO
READ AS FOLLOWS:
PROFESSIONAL BOND FOR HESS, JESSICA DIANE POSTED BY ABBOTT, KRISTINA NICOLE (MULTICOUNTY
AGENT:AGUILAR, ROBERTA DAMPF ) (POWER NUMBER:ABB-24-82651 ), COUNT NUMBER 1, IN THE AMOUNT
OF $500.00, POSTED 07/05/2024, FORFEITED 10/21/2024

---

**10-22-2024  [ &#128065; BWIFA ]**                            Hess, Jessica Diane &#128100;          $ 50.00

BENCH WARRANT ISSUED FAILED TO APPEAR, JUDGE: ARRAIGNMENT DOCKET - BOND AMOUNT: $1,500.00

COUNT 1 - OBSTRUCTING AN OFFICER
WARRANT FEES REMOVED AND INCLUDED IN SHERIFFS RETURN FILED ON 10-25-24

---

**10-22-2024  [ OCISR ]**                                      Hess, Jessica Diane &#128100;          $ 25.00

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

---

**10-22-2024  [ O&J ]**                                        Hess, Jessica Diane &#128100;

ORDER & JUDGMENT OF FORFEITURE- CERTIFIED COPY BY CERTIFIED MAIL TO: KRISTINA ABBOTT;
ROBERTA AGUILAR
Document Available (#1059548558) TIFF    PDF

---

**10-22-2024  [ REC02 ]**                                      Hess, Jessica Diane &#128100;          $ 23.00

RECEIPTS (2) FOR CERTIFIED MAIL

---

**10-25-2024  [ BO ]**                                    Hess, Jessica Diane 👤    **#1**         $ 10.00

PROFESSIONAL BOND FOR HESS, JESSICA DIANE POSTED BY COX, GARRETT JAMES (MULTICOUNTY AGENT:AGUILAR, ROBERTA DAMPF ) (POWER NUMBER:ABB-24-84870 ), COUNT NUMBER 1, IN THE AMOUNT OF $1,500.00, POSTED 10/25/2024

Document Available (#1060012515) 📄TIFF    📄PDF

---

**10-25-2024  [ BOJ ]**                                  Hess, Jessica Diane 👤    **#1**         $ 25.00

BOND INITIAL FILING JAIL FUND FEE

---

**10-25-2024  [ CCADMIN25 ]**                            Hess, Jessica Diane 👤    **#1**         $ 2.50

COURT CLERK ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**10-25-2024  [ DCADMIN25 ]**                            Hess, Jessica Diane 👤    **#1**         $ 3.75

DISTRICT COURT ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**10-25-2024  [ ↺ RETBW ]**                              Hess, Jessica Diane 👤

WARRANT RETURNED 10/25/2024, WARRANT ISSUED ON 10/22/2024
Document Available at Court Clerk's Office

---

**10-25-2024  [ SORET ]**                                Hess, Jessica Diane 👤                   $ 73.85

SHERIFF'S RETURN TRANSPORTATION COSTS FROM ROGERS COUNTY, CLAREMORE, OKLAHOMA
Document Available (#1060006920) 📄TIFF    📄PDF

---

**10-25-2024  [ OCISR ]**                                Hess, Jessica Diane 👤                   $ 25.00

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

---

**10-25-2024  [ BDXON ]**                                Hess, Jessica Diane 👤    **#1**

THE STATUS OF THE BOND ENTRY DETAILED IN DOCKET SERIAL #126171852 ABOVE HAS CHANGED TO READ AS FOLLOWS:
PROFESSIONAL BOND FOR HESS, JESSICA DIANE POSTED BY ABBOTT, KRISTINA NICOLE (MULTICOUNTY AGENT:AGUILAR, ROBERTA DAMPF ) (POWER NUMBER:ABB-24-82651 ), COUNT NUMBER 1, IN THE AMOUNT OF $500.00, POSTED 07/05/2024, FORFEITED 10/21/2024, EXONERATED 10/25/2024

---

**10-25-2024  [ CTFREE ]**                               Hess, Jessica Diane 👤

JUDGE RODNEY SPARKMAN: DEFENDANT PRESENT, NOT IN CUSTODY, AND PUBLIC DEFENDER APPOINTED AS COUNSEL OF RECORD. ARRAIGNMENT HELD. DEFENDANT WAIVES READING OF THE INFORMATION AND FURTHER TIME TO PLEAD. DEFENDANT ENTERS A PLEA OF NOT GUILTY. JURY TRIAL SOUNDING DOCKET SET FOR 11/21/24 @ 9AM IN ROOM 158. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK.

---

**10-28-2024  [ RETCM ]**                                Hess, Jessica Diane 👤

RETURN RECEIPT CERT. MAIL DELIVERED TO ROBERTA AGUILAR; 10/24/24
Document Available (#1059548711) 📄TIFF    📄PDF

---

**10-29-2024  [ PA ]**                                   Hess, Jessica Diane 👤

PAUPER'S AFFIDAVIT
Document Available at Court Clerk's Office

---

**10-29-2024  [ RETRL ]**                                Hess, Jessica Diane 👤

RETURN RELEASE
Document Available (#1060008123) 📄TIFF    📄PDF

---

**11-12-2024  [ RETCM ]**                                Hess, Jessica Diane 👤

RETURN RECEIPT CERT. MAIL DELIVERED TO KRISTINA ABBOTT; 11/7/24
Document Available (#1060259413) 📄TIFF    📄PDF

**MCN.Ex.68.004**
**MCN APPENDIX PAGE 412**

**11-21-2024  [ CTFREE ]**

Hess, Jessica Diane 👤

JUDGE KASEY BALDWIN: ORDER SETTING HEARING ON MOTION TO DISMISS SIGNED BY THE COURT. HEARING SET 12- 27-24 @ 1:30PM IN ROOM #344.

---

**11-21-2024  [ CTFREE ]**                                Hess, Jessica Diane 👤

JUDGE KASEY BALDWIN. DEFENDANT PRESENT. DEFENDANT NOT IN CUSTODY. DEFENDANT REPRESENTED BY PUBLIC DEFENDER, T. KIRBY (PRESENT). STATE REPRESENTED BY SYDNEY CASEBOLT. ALLEN DISCOVERY HEARING SET 1-2-2025 @ 9:00 AM IN COURTROOM 158. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK.

---

**11-22-2024  [ MOD ]**                                Hess, Jessica Diane 👤

MOTION TO DISMISS FOR LACK OF JURISDICTION
Document Available (#1060380848) 📄TIFF    📄PDF

---

**11-25-2024  [ OSH ]**                                Hess, Jessica Diane 👤

ORDER SETTING HEARING
Document Available (#1060017149) 📄TIFF    📄PDF

---

**12-20-2024  [ MOCON ]**                                Hess, Jessica Diane 👤

MOTION FOR CONTINUANCE
Document Available (#1060661045) 📄TIFF    📄PDF

---

**12-27-2024  [ CTPASS ]**                                Hess, Jessica Diane 👤

JUDGE GREG LAVENDER: DEFENDANT NOT PRESENT, NOT IN CUSTODY AND REPRESENTED BY TREY KIRBY. STATE REPRESENTED BY MEGHAN HILBORN. CASE CALLED FOR HEARING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION. COURT GRANTS THE STATE'S MOTION FOR CONTINUANCE OVER DEFENSE OBJECTION. MCGIRT HEARING PASSED TO 1/31/25 AT 1:30PM IN ROOM 344. BOND TO REMAIN. COURT AUTHORIZES BENCH WARRANT UNDER ADVISEMENT UNTIL 1/02/25.

---

**01-02-2025  [ CTFREE ]**                                Hess, Jessica Diane 👤

JUDGE KASEY BALDWIN. DEFENDANT PRESENT. DEFENDANT NOT IN CUSTODY. DEFENDANT REPRESENTED BY PUBLIC DEFENDER, H. YOUNGBLOOD (PRESENT). STATE REPRESENTED BY DANNY ANSON. DEFENDANT RECOGNIZED BACK TO JANUARY 31ST DATE.

---

**01-27-2025  [ RESP ]**                                Hess, Jessica Diane 👤

STATE'S RESPONSE OBJECTING TO DEFENDANT'S MOTION TO DISMISS
Document Available (#1060871662) 📄TIFF    📄PDF

---

**01-31-2025  [ TEXT ]**                                Hess, Jessica Diane 👤

DEFENDANT'S REPLY TO STATE'S RESPONSE OBJECTING TO DEFENDANT'S MOTION TO DISMISS
Document Available (#1060871810) 📄TIFF    📄PDF

---

**01-31-2025  [ CTFREE ]**                                Hess, Jessica Diane 👤

JUDGE APRIL SEIBERT: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY JANAY CLOUGHERTY PD. STATE REPRESENTED BY MEGHAN HILBORN. HEARING ON MOTION TO DISMISS BASED ON LACK OF JURISDICTION DENIED. CASE RESET FOR JURY TRIAL SOUNDING DOCKT TO 2-13-2025 @ 9 AM IN ROOM 158. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK

---

**02-13-2025  [ CTFREE ]**                                Hess, Jessica Diane 👤

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY PUBLIC DEFENDER, T. KIRBY. STATE REPRESENTED BY ALAN JAMIESON. JURY TRIAL PASSED TO 4-28-2025 @ 9:00 AM IN ROOM 158. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK.

**MCN.Ex.68.005**

**MCN APPENDIX PAGE 413**

**03-10-2025  [ MO ]**                                                          Hess, Jessica Diane 👤

MOTION TO ENDORSE ADDITIONAL WITNESS

Document Available (#1061345493) 📄TIFF     📄PDF

---

**03-10-2025  [ DISRQ ]**                                                      Hess, Jessica Diane 👤

DISCOVERY REQUEST AND MOTION TO PRODUCE

Document Available (#1061345501) 📄TIFF     📄PDF

---

**03-10-2025  [ CTFREE ]**                                                     Hess, Jessica Diane 👤

JUDGE KASEY BALDWIN: ORDER FOR ENDORSMENT OF WITNESS SIGNED BY THE COURT.

---

**03-12-2025  [ O ]**                                                          Hess, Jessica Diane 👤

ORDER FOR ENDORESMENT OF WITNESS

Document Available (#1061289214) 📄TIFF     📄PDF

---

**03-19-2025  [ MO ]**                                                         Hess, Jessica Diane 👤

MOTION FOR JURY TO ASSESS PUNISHMENT

Document Available (#1061345334) 📄TIFF     📄PDF

---

**03-19-2025  [ DIS ]**                                                        Hess, Jessica Diane 👤

DISCOVERY COMPLIANCE AND NOTICE

Document Available (#1061345286) 📄TIFF     📄PDF

---

**03-19-2025  [ MFD ]**                                                        Hess, Jessica Diane 👤

MOTION FOR DISCOVERY

Document Available (#1061345325) 📄TIFF     📄PDF

---

**04-11-2025  [ RTSUB$ ]**                                    Hess, Jessica Diane 👤        $ 50.00

RETURN SUBPOENA

Document Available (#1061462751) 📄TIFF     📄PDF

---

**04-11-2025  [ OCISR ]**                                     Hess, Jessica Diane 👤        $ 25.00

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

---

**04-28-2025  [ MOD ]**                                                        Hess, Jessica Diane 👤

DEFENDANT'S MOTION TO DISMISS OR SUPPRESS DUE TO 5TH AMENDMENT VIOLATION WITH BRIEF IN
SUPPORT

Document Available (#1061820957) 📄TIFF     📄PDF

---

**04-28-2025  [ CTPASS ]**                                                     Hess, Jessica Diane 👤

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY PUBLIC
DEFENDER, PRESENT. STATE REPRESENTED BY SYDNEY CASEBOLT. NON JURY TRIAL SET TO 5/2/25 @
9:00 AM IN ROOM 158. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK.WAIVE RIGHT TO JURY TRIAL

---

**04-29-2025  [ WAIJT ]**                                                      Hess, Jessica Diane 👤

WAIVER OF TRIAL BY JURY

Document Available (#1061588755) 📄TIFF     📄PDF

---

**05-02-2025  [ DISMISSED ]**                                       Hess, Jessica Diane 👤      #1

JUDGE GREG LAVENDER: DEFENDANT PRESENT, NOT IN CUSTODY, REPRESENTED BY TREY KIRBY PD.
STATE REPRESENTED BY DANNY ANSON. AUDIO RECORDER USED. DEFENDANT WITHDRAW MOTION TO
SUPPRES AND MAINTAINS MOTION TO DISMISS, COURT DENIED MOTION. NON JURY TRIAL HELD, 1
WITNESS SWORN. DEFENDANT DEMURS, DEMURRER GRANTED, CASE DISMISSED COST TO STATE. BOND
EXONERATED.



MCN APPENDIX PAGE 1415

Appellate Case: 26-5013   Document: 25-2   Date Filed: 04/29/202...1

Plaintiff's Exhibit

**69**

25-cv-75-GKF-JFJ

MCN.Ex.69.001

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

|  |  |
|---|---|
| State of Oklahoma v. NEAFUS, LEIGH MARIE | **No. CM-2024-1222**<br>**(Criminal Misdemeanor)**<br><br>Filed: 04/03/2024<br>Closed: 05/05/2025<br><br>Judge: Traffic Court Judge (General) |

### CASE MAY BE ELIGIBLE FOR ONLINE PAYMENTS

## PARTIES

NEAFUS,  LEIGH  MARIE, Defendant
STATE OF OKLAHOMA, Plaintiff
Tulsa Police Department, ARRESTING AGENCY

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| ARBOGAST,  OLIVER  W (Bar #10719)<br>PO BOX 8417<br>TULSA, OK 74101 | NEAFUS,   LEIGH  MARIE |

**Plaintiff's Exhibit**

**72**

25-cv-75-GKF-JFJ

exhibitsticker.com

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Monday, July 8, 2024 at 9:00 AM<br>   ARRAIGNMENT | NEAFUS,  LEIGH  MARIE | Arraignment Docket | |
| Monday, August 19, 2024 at 9:00 AM<br>   ARRAIGNMENT | NEAFUS,  LEIGH  MARIE | Arraignment Docket | |
| Monday, September 30, 2024 at 9:00 AM<br>   ARRAIGNMENT *LAST PASS* | NEAFUS,  LEIGH  MARIE | Arraignment Docket | |
| Tuesday, November 5, 2024 at 9:01 AM<br>   JURY TRIAL SOUNDING DOCKET | NEAFUS,  LEIGH  MARIE | Preliminary Hearing Docket | |

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Friday, November 22, 2024 at 1:41 PM<br>MOTION TO DISMISS - MCGIRT | NEAFUS, LEIGH MARIE | Preliminary Hearing Docket | |
| Friday, December 27, 2024 at 1:41 PM<br>MOTION TO DISMISS - MCGIRT | NEAFUS, LEIGH MARIE | Preliminary Hearing Docket | |
| Friday, January 31, 2025 at 1:41 PM<br>MOTION TO DISMISS - MCGIRT | NEAFUS, LEIGH MARIE | Preliminary Hearing Docket | |
| Tuesday, February 25, 2025 at 9:01 AM<br>STATUS CONFERENCE | NEAFUS, LEIGH MARIE | Preliminary Hearing Docket | |
| Monday, May 5, 2025 at 9:00 AM<br>JURY TRIAL (ISSUE) | NEAFUS, LEIGH MARIE | Traffic Court Judge (General) | |

# COUNTS

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

**Count # 1.**   Count as Filed: LMFR, LARCENY OF MERCHANDISE FROM RETAILER, in violation of 21 O.S. 1731
Date of Offense: 12/07/2023

| Party Name | Disposition Information |
|---|---|
| NEAFUS, LEIGH MARIE | **Disposed: CONVICTION, 05/05/2025. Guilty Plea**<br>Count as Disposed: LARCENY OF MERCHANDISE FROM RETAILER(LMFR)<br>Violation of 21 O.S. 1731 |

# DOCKET

| Date | Code | Description | | |
|---|---|---|---|---|
| 04-03-2024 | [ TEXT ] | | NEAFUS, LEIGH MARIE 👤 | #1 |
| | | CRIMINAL MISDEMEANOR INITIAL FILING.<br>Document Available at Court Clerk's Office | | |
| 04-03-2024 | [ INFORMATION ] | | NEAFUS, LEIGH MARIE 👤 | #1 |
| | | DEFENDANT LEIGH MARIE NEAFUS WAS CHARGED WITH COUNT #1, LARCENY OF MERCHANDISE FROM RETAILER IN VIOLATION OF 21 O.S. 1731 | | |
| 04-03-2024 | [ AFPC ] | | NEAFUS, LEIGH MARIE 👤 | |
| | | AFFIDAVIT FINDING OF PROBABLE CAUSE<br>Document Available at Court Clerk's Office | | |
| 04-03-2024 | [ 👁 WAI$ ] | | NEAFUS, LEIGH MARIE 👤 | $ 50.00 |
| | | WARRANT OF ARREST ISSUED, JUDGE: KASEY BALDWIN - BOND AMOUNT: $750.00<br><br>COUNT 1 - LARCENY OF MERCHANDISE FROM RETAILER | | |
| 04-03-2024 | [ OCISR ] | | NEAFUS, LEIGH MARIE 👤 | $ 25.00 |
| | | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | |
| 04-03-2024 | [ INFORMATION ] | | NEAFUS, LEIGH MARIE 👤 | #1 |
| | | DEFENDANT LEIGH MARIE NEAFUS WAS CHARGED WITH COUNT #1, LARCENY OF MERCHANDISE FROM RETAILER IN VIOLATION OF 21 O.S. 1731 | | |

**MCN.72.002**
MCN APPENDIX PAGE 417

**04-03-2024 [ TEXT ]**

OCIS HAS AUTOMATICALLY ASSIGNED JUDGE TRAFFIC COURT JUDGE (GENERAL) TO THIS CASE.

---

**06-28-2024 [ CTFREE ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE TRAVIS HORTON : DEFENDANT PRESENT, IN CUSTODY. COURT DETERMINES ARREST IS SUPPORTED BY P.C. SPECIAL APPOINTMENT OF THE PUBLIC DEFENDER FOR THE PURPOSE OF BOND HEARING ONLY AND STATE REPRESENTED . BOND HEARING HELD. ARRAIGNMENT PASSED TO 7/8/24 @ 9 AM IN ROOM 173. DEFENDANT REMANDED TO CUSTODY. BOND SET AT $750 WITH GPS UPON RELEASE

---

**07-01-2024 [ ↺ RETWA ]**                                    NEAFUS, LEIGH MARIE 👤

WARRANT RETURNED 7/1/2024, WARRANT ISSUED ON 4/3/2024
Document Available at Court Clerk's Office

---

**07-05-2024 [ BO ]**                                    NEAFUS, LEIGH MARIE 👤              $ 10.00

SURETY BOND FOR NEAFUS, LEIGH MARIE POSTED BY LEHMAN, VICTORIA L (SURETY:ALLEGHENY CASUALTY COMPANY ) (POWER NUMBER:AS1K-642553 ), IN THE AMOUNT OF $750.00, POSTED 07/05/2024
Document Available (#1059072760) 🗎TIFF    📄PDF

---

**07-05-2024 [ BOJ ]**                                    NEAFUS, LEIGH MARIE 👤              $ 25.00

BOND INITIAL FILING JAIL FUND FEE

---

**07-05-2024 [ CCADMIN25 ]**                                    NEAFUS, LEIGH MARIE 👤              $ 2.50

COURT CLERK ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**07-05-2024 [ DCADMIN25 ]**                                    NEAFUS, LEIGH MARIE 👤              $ 3.75

DISTRICT COURT ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**07-05-2024 [ TEXT ]**                                    NEAFUS, LEIGH MARIE 👤

COURT'S FINDINGS FOR PURPOSES OF INITIAL BOND HEARING
Document Available (#1059071067) 🗎TIFF    📄PDF

---

**07-08-2024 [ CTFREE ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE SHANNON TAYLOR: DEFENDANT PRESENT, NOT IN CUSTODY, AND NOT REPRESENTED BY COUNSEL. ARRAIGNMENT PASSED TO 8/19/24 @ 9AM IN ROOM 173. DEFENDANT RECOGNIZED BACK WITH COUNSEL, BOND TO REMAIN.

---

**07-09-2024 [ RETRL ]**                                    NEAFUS, LEIGH MARIE 👤

RETURN RELEASE
Document Available (#1058919563) 🗎TIFF    📄PDF

---

**07-09-2024 [ ELECTM ]**                                    NEAFUS, LEIGH MARIE 👤

ELECTRONIC MONITORING PROGRAM RULES & CONDITIONS
Document Available (#1059074186) 🗎TIFF    📄PDF

---

**08-19-2024 [ CTFREE ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE SHANNON TAYLOR: DEFENDANT PRESENT, NOT IN CUSTODY, AND NOT REPRESENTED BY COUNSEL. ARRAIGNMENT PASSED TO 9/30/24 @ 9AM IN ROOM 173. DEFENDANT RECOGNIZED BACK WITH COUNSEL, BOND TO REMAIN. LAST PASS.

---

**09-30-2024 [ CTFREE ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE RODNEY SPARKMAN: DEFENDANT WAS PRESENT, NOT IN CUSTODY, AND REPRESENTED BY OLIVER ARBOGAST. ARRAIGNMENT HELD. DEFENDANT WAIVES READING OF THE INFORMATION AND FURTHER TIME TO PLEAD. DEFENDANT ENTERS A PLEA OF NOT GUILTY. JURY TRIAL SOUNDING DOCKET SET FOR 11/5/24 @ 9AM IN ROOM 347. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK. TRAILING CF-24-2435

**MCN.72.003**

**11-05-2024** **[ CTPASS ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE APRIL SEIBERT: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY OLIVER ARBOGAST. STATE REPRESENTED BY ELISSA ANDREWS. CASE CALLED FOR JURY TRIAL SOUNDING DOCKET. COURT SIGNS ORDER SETTING HEARING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION. HEARING SET FOR 11/22/24 AT 1:30PM IN ROOM 344. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK.

---

**11-05-2024** **[ OSH ]**                                    NEAFUS, LEIGH MARIE 👤

ORDER SETTING HEARING
Document Available (#1060256029) 📄TIFF      📄PDF

---

**11-05-2024** **[ MOD ]**                                    NEAFUS, LEIGH MARIE 👤

MOTION TO DISMISS
Document Available (#1060256030) 📄TIFF      📄PDF

---

**11-22-2024** **[ CTPASS ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE APRIL SEIBERT: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY OLIVER ARBOGAST. STATE REPRESENTED BY ERIK GRAYLESS. HEARING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION PASSED TO 12/27/24 AT 1:30PM IN ROOM 344. ALL DISCOVERY ON THE ISSUE OF MCGIRT TO BE COMPLETED BY 12/20/24. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK.

---

**12-20-2024** **[ MOCON ]**                                    NEAFUS, LEIGH MARIE 👤

MOTION FOR CONTINUANCE
Document Available (#1060661037) 📄TIFF      📄PDF

---

**12-27-2024** **[ CTPASS ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE GREG LAVENDER: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY OLIVER ARBOGAST. STATE REPRESENTED BY MEGHAN HILBORN. CASE CALLED FOR HEARING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION. COURT GRANTS THE STATE'S MOTION FOR CONTINUANCE WITHOUT OBJECTION. MCGIRT HEARING PASSED TO 1/31/25 AT 1:30PM IN ROOM 344. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK.

---

**01-27-2025** **[ RESP ]**                                    NEAFUS, LEIGH MARIE 👤

STATE'S RESPONSE OBJECTING TO DEFENDANT'S MOTION TO DISMISS
Document Available (#1060871638) 📄TIFF      📄PDF

---

**01-31-2025** **[ CTFREE ]**                                    NEAFUS, LEIGH MARIE 👤

JUDGE APRIL SEIBERT: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY OLIVER ARBOGAST. STATE REPRESENTED BY MEGHAN HILBORN. HEARING ON MOTION TO DISMISS BASED ON LACK OF JURISDICTION IS DENIED. CASE SET FOR STATUS CONFERENCE TO 2-25-2025 @ 9 AM IN ROOM 347. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK.

---

**02-06-2025** **[ MO ]**                                    NEAFUS, LEIGH MARIE 👤

MOTION TO REMOVE ANKLE MONITOR
Document Available (#1060859327) 📄TIFF      📄PDF

---

**02-07-2025** **[ O ]**                                    NEAFUS, LEIGH MARIE 👤

ORDER GRANTING MOTION TO REMOVE ANKLE MONITOR
Document Available (#1060861528) 📄TIFF      📄PDF

---

**02-10-2025** **[ EMF ]**                          NEAFUS, LEIGH MARIE 👤          $ 1,085.00

ELECTRONIC MONITORING DEVICE SUPERVISION FEE

---

**02-10-2025** **[ CCADMIN0 ]**                                    NEAFUS, LEIGH MARIE 👤

COURT CLERK ADMINISTRATION FEE ON COLLECTIONS

**MCN.72.004**

MCN APPENDIX PAGE 419

**02-10-2025  [ DCADMIN00 ]**                                        NEAFUS, LEIGH MARIE 👤

DISTRICT COURT ADMINISTRATIVE FEE ON COLLECTIONS

---

**02-11-2025  [ TEXT ]**                                        NEAFUS, LEIGH MARIE 👤

COURT SERVICES ELECTRONIC MONITORING FEES ASSESSMENT

Document Available (#1060858399) 📄TIFF   📄PDF

---

**02-25-2025  [ CTPASS ]**                                        NEAFUS, LEIGH MARIE 👤

JUDGE APRIL SEIBERT: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY OLIVER ARBOGAST. STATE REPRESENTED BY ELISSA ANDREWS. DEFENDANT APPEARED OVER AN HOUR LATE FOR COURT. JURY TRIAL ISSUE SET FOR 5/05/25 AT 9AM IN ROOM 158. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK.

---

**04-25-2025  [ DISRQ ]**                                        NEAFUS, LEIGH MARIE 👤

STATE'S DISCOVERY REQUEST AND MOTION TO PRODUCE

Document Available (#1061820893) 📄TIFF   📄PDF

---

**05-05-2025  [ CONVICTED ]**                          NEAFUS, LEIGH MARIE 👤   #1

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, REPRESENTED BY OLIVER ARBOGAST. STATE REPRESENTED BY SYDNEY CASEBOLT. COURT REPORTER WAIVED, INTERPRETER WAIVED. DEFENDANT SWORN IN OPEN COURT, DEFENDANT ENTERS A PLEA OF GUILTY AND WAIVES RIGHTS TO JURY, NON JURY TRIAL. COURT ACCEPTS PLEA, COURT FINDS DEFENDANT GUILTY, DEFENDANT SENTENCED TO:

COUNT 1) THIRTY DAYS IN TULSA COUNTY JAIL SUSPENDED. DEFENDANT UNDER THE SUPERVISION OF THE TULSA COUNTY DISTRICT ATTORNEY'S OFFICE. DEFENDANT TO PAY $300 FINE, $150 TO VCA. $728 IN RESTITUTION. PLUS COSTS. DEFENDANT TO HAVE NO CONTACT WITH SEPHORA.

DEFENDANT ADVISED OF APPEAL RIGHTS, RULE 8 ISSUED, JUDGEMENT AND SENTENCE ISSUED. BOND EXONERATED.

---

**05-05-2025  [ COSTM ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 83.00

COURT COSTS ON MISDEMEANOR

---

**05-05-2025  [ DACPAM ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 30.00

DA COUNCIL PROSECUTION ASSESSMENT FOR MISDEMEANOR

---

**05-05-2025  [ OCISR ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 25.00

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

---

**05-05-2025  [ SSFCHS ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 10.00

SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY

---

**05-05-2025  [ MELRF ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 10.00

MEDICAL EXPENSE LIABILITY REVOLVING FUND

---

**05-05-2025  [ TCARF ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 10.00

TRAUMA CARE ASSISTANCE REVOLVING FUND

---

**05-05-2025  [ CLEET ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 10.00

CLEET PENALTY ASSESSMENT

---

**05-05-2025  [ FOREN ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 10.00

FORENSIC SCIENCE IMPROVEMENT ASSESSMENT

---

**05-05-2025  [ AFIS ]**                          NEAFUS, LEIGH MARIE 👤   #1        $ 10.00

AFIS FEE

**MCN.72.005**

05-05-2025   [ PFE7 ]                                    NEAFUS, LEIGH MARIE 👤      #1              $ 6.00

LAW LIBRARY FEE

---

05-05-2025   [ SSF ]                                     NEAFUS, LEIGH MARIE 👤      #1              $ 5.00

SHERIFF'S SERVICE FEE ON ARRESTS

---

05-05-2025   [ CHAB ]                                    NEAFUS, LEIGH MARIE 👤      #1              $ 3.00

C.H.A.B. STATUTORY FEE

---

05-05-2025   [ AGVSU ]                                   NEAFUS, LEIGH MARIE 👤      #1              $ 3.00

ATTORNEY GENERAL VICTIM SERVICES UNIT

---

05-05-2025   [ VCA ]                                     NEAFUS, LEIGH MARIE 👤      #1            $ 150.00

VICTIMS COMPENSATION ASSESSMENT (AC12)

---

05-05-2025   [ FINE ]                                    NEAFUS, LEIGH MARIE 👤      #1            $ 300.00

FINES PAYABLE TO COUNTY

---

05-05-2025   [ CCADMIN ]                                 NEAFUS, LEIGH MARIE 👤      #1              $ 9.60

COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS

---

05-05-2025   [ DCADMIN ]                                 NEAFUS, LEIGH MARIE 👤      #1             $ 14.40

DISTRICT COURT ADMINISTRATIVE FEE

---

05-06-2025   [ REST ]                                    NEAFUS, LEIGH MARIE 👤

RESTITUTION SCHEDULE

Document Available at Court Clerk's Office

---

05-06-2025   [ TEXT ]                                    NEAFUS, LEIGH MARIE 👤

METHAMPHETAMINE OFFENDER REGISTRATION

Document Available (#1061828217) 📄TIFF    📕PDF

---

05-06-2025   [ PGSF ]                                    NEAFUS, LEIGH MARIE 👤

PLEA OF GUILTY - SUMMARY OF FACTS

Document Available (#1061828245) 📄TIFF    📕PDF

---

06-10-2025   [ J&S ]                                     NEAFUS, LEIGH MARIE 👤

JUDGMENT AND SENTENCE

Document Available (#1061931410) 📄TIFF    📕PDF

**MCN APPENDIX PAGE 421**

MCN APPENDIX PAGE 422

Appellate Case: 26-5013    Document: 25-2    Date Filed: 04/29/20 138

FullCourt Enterpris...    All Bookmarks

**Neafus, Leigha Marie** Page info (?)    Start typing    Advanced search    **Brandee Beaver** My View

| | | | | | |
|---|---|---|---|---|---|
| Entity | Neafus , Leigha Marie | Name | | DOB | 38.29 Age | SSN | **Statewide** |
| Int. | | Address 1 | American In Race | Female Sex | 5'04" Height | 125 Weight | Roll Number | Criminal Hist |
| Brady | | Address 2 | Hair | Blue Eye | Sac & Fox Tribal Affiliation | | State ID | Contact Info |
| Unavailable | Sperry City | OK State | 74073 Zip | State-License# | | Lis#/Cls/Exp | Federal ID | Deceased   Death |
| | | Employer | DLM~David L. Moss (Tulsa County Jail) 02-07-2025 09:00 AM | Defendant Status | | Inmate ID | |

Person Type    Relations    Notes    User Field

Add Case    Authorized    Schools    Alias

**Defendant**    Witness    CoDefendant    Documents    Rest/Div    Civil    Text    Police

| Jurisdiction | Off... ↑ | Issued D... | Report # | File # | Court# | Charge | Seve... | Status | Stage |
|---|---|---|---|---|---|---|---|---|---|
| Muscogee (Cre... | 03-03-2024 | 03-06-2024 | BAPD 2024-01575 | 101-0012777 | CM-2024-0222 | Title 14, § 2-417 - THEFT - M - E916177 | M | OPEN | WARR |

**Plaintiff's Exhibit**

**73**

25-cv-75-GKF-JFJ

exhibitsticker.com

Exit    Payments    Victim Services    Reminders    Court    Person Display    Upload Mugshot    Delete    Update

Last update by Brandee Beaver on 02-10-2025 at 09:24 AM

MCN.Ex.73.001

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA,<br>　　　Plaintiff,<br>v.<br>MEGAN MARIE MORRIS,<br>A/K/A MEGAN MARIE WEBB,<br>　　　Defendant. | **No. CM-2024-4494**<br>**(Criminal Misdemeanor)**<br><br>Filed: 11/26/2024<br>Closed: 06/25/2025<br><br>Judge: Traffic Court Judge (General) |

## PARTIES

Morris,  Megan  Marie, Defendant
STATE OF OKLAHOMA, Plaintiff
Tulsa Police Department, ARRESTING AGENCY

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| THOMPSON,  G  GENE (Bar #31243)<br>STINNETT LAW<br>404 E DEWEY AVER., SUITE 202<br>SAPULPA, OK 74066 | Morris,   Megan  Marie |



Plaintiff's Exhibit

**74**

25-cv-75-GKF-JFJ

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Friday, December 20, 2024 at 1:41 PM<br>　MOTION TO DISMISS - MCGIRT **ACTIVE WARRANT OF ARREST** | Morris,  Megan Marie | Preliminary Hearing Docket | |
| Friday, January 31, 2025 at 1:41 PM<br>　MCGIRT HEARING | Morris,  Megan Marie | Preliminary Hearing Docket | |
| Friday, March 28, 2025 at 1:41 PM<br>　CONTINUANCE OF HEARING ON MOTION TO DISMISS (MCGIRT) | Morris,  Megan Marie | Preliminary Hearing Docket | |
| Wednesday, April 30, 2025 at 9:00 AM<br>　JURY TRIAL SOUNDING DOCKET | Morris,  Megan Marie | Traffic Court Judge (General) | |

MCN.Ex.74.001

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Wednesday, May 28, 2025 at 9:00 AM<br>ALLEN (DISCOVERY) HEARING | Morris, Megan Marie | Traffic Court Judge (General) | |
| Wednesday, June 25, 2025 at 9:00 AM<br>DISPOSITION (MISDEMEANOR) | Morris, Megan Marie | Traffic Court Judge (General) | |
| Friday, August 22, 2025 at 9:00 AM<br>DEFERRED | Morris, Megan Marie | Traffic Court Judge (General) | |

# COUNTS

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

**Count # 1.**     Count as Filed: LMFR, LARCENY OF MERCHANDISE FROM RETAILER, in violation of 21 O.S. 1731
Date of Offense: 07/16/2024

| Party Name | Disposition Information |
|---|---|
| Morris, Megan Marie | **Disposed: DEFERRED, 06/25/2025. Guilty Plea**<br>Count as Disposed: LARCENY OF MERCHANDISE FROM RETAILER(LMFR)<br>Violation of 21 O.S. 1731 |

# DOCKET

| Date | Code | Description | | |
|---|---|---|---|---|
| 11-26-2024 | [ TEXT ] | | Morris, Megan Marie 👤 | #1 |
| | | CRIMINAL MISDEMEANOR INITIAL FILING.<br>Document Available at Court Clerk's Office | | |
| 11-26-2024 | [ INFORMATION ] | | Morris, Megan Marie 👤 | #1 |
| | | DEFENDANT MEGAN MARIE MORRIS WAS CHARGED WITH COUNT #1, LARCENY OF MERCHANDISE FROM RETAILER IN VIOLATION OF 21 O.S. 1731 | | |
| 11-26-2024 | [ AFPC ] | | Morris, Megan Marie 👤 | |
| | | AFFIDAVIT FINDING OF PROBABLE CAUSE<br>Document Available (SEALED DOCUMENT) | | |
| 11-26-2024 | [ 👁 WAI$ ] | | Morris, Megan Marie 👤 | $ 50.00 |
| | | WARRANT OF ARREST ISSUED, JUDGE: KASEY BALDWIN - BOND AMOUNT: $500.00<br><br>COUNT 1 - LARCENY OF MERCHANDISE FROM RETAILER<br><br>WARRANT RECALLED 1/31/2025, WARRANT ISSUED ON 11/26/2024 | | |
| 11-26-2024 | [ OCISR ] | | Morris, Megan Marie 👤 | $ 25.00 |
| | | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | |
| 11-26-2024 | [ TEXT ] | | | |
| | | OCIS HAS AUTOMATICALLY ASSIGNED JUDGE TRAFFIC COURT JUDGE (GENERAL) TO THIS CASE. | | |
| 12-03-2024 | [ EAA ] | | Morris, Megan Marie 👤 | |
| | | ENTRY OF APPEARANCE<br>Document Available (#1060378679) 🗎TIFF   📄PDF | | |

**MCN APPENDIX PAGE 424**

**MCN.Ex.74.002**

**12-03-2024  [ MOD ]**                                      Morris, Megan Marie 👤

MOTION TO DISMISS

Document Available (#1060378683) 📄TIFF    📄PDF

---

**12-04-2024  [ CTFREE ]**                                  Morris, Megan Marie 👤

JUDGE GREG LAVENDER: COURT SIGNS ORDER SETTING HEARING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION. HEARING SET FOR 12/20/24 AT 1:30PM IN ROOM 344.

---

**12-09-2024  [ OSH ]**                                     Morris, Megan Marie 👤

ORDER SETTING HEARING

Document Available (#1060372758) 📄TIFF    📄PDF

---

**12-18-2024  [ MOCON ]**                                   Morris, Megan Marie 👤

MOTION FOR CONTINUANCE

Document Available (#1060660929) 📄TIFF    📄PDF

---

**12-20-2024  [ CTFREE ]**                                  Morris, Megan Marie 👤

JUDGE LAVENDER: DEFENDANT NOT PRESENT, APPEARANCE WAIVED, NOT IN CUSTODY AND REPRESENTED BY GENE THOMPSON - NOT PRESENT. THE STATE IS REPRESENTED BY MEGHAN HILBORN. CASE CALLED FOR HEARING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION. HEARING ON MOTION TO DISMISS FOR LACK OF JURISDICTION PASSED TO 1/31/25 @ 1:30PM IN ROOM 344. BOND TO REMAIN. ATTORNEY NOTIFIED OF NEW COURT DATE. ATTORNEY NOTIFIED THEY MUST BE PRESENT WITH DEFENDANT AT NEXT COURT DATE.

---

**01-27-2025  [ RESP ]**                                    Morris, Megan Marie 👤

STATE'S RESPONSE OBJECTING TO DEFENDANT'S MOTION TO DISMISS

Document Available (#1060871658) 📄TIFF    📄PDF

---

**01-31-2025  [ CRFD ]**                                    Morris, Megan Marie 👤          $ 20.00

COURT REPORTER FEE ON DISPOSITION

---

**01-31-2025  [ WRCI ]**                                    Morris, Megan Marie 👤

WARRANT RECALL CANCELLATION ISSUED

---

**01-31-2025  [ CTPASS ]**                                  Morris, Megan Marie 👤

JUDGE APRIL SEIBERT: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY GENE THOMPSON. STATE REPRESENTED BY MEGHAN HILBORN. COURT REPORTER CHRISTY SMITH. HEARING ON MOTION TO DISMISS BASED ON LACK OF JURISDICTION HELD. COURT HEARS ARGUMENTS OF ATTORNEY, MATTER CONTINUED FOR DEFENDANT TO REPLY BY 2-28-2025, STATE MAY SUR-REPLY WITH 15 DAYS. CASE RESET TO 3-28-2025 @ 1:30 PM IN ROOM 344. PR BOND AUTHORIZED, WARRANT RECALLED. DEFENDANT RECOGNIZED BACK.

---

**01-31-2025  [ ↺ WR ]**                                    Morris, Megan Marie 👤

WARRANT RECALLED, WARRANT ISSUED ON 11/26/2024

---

**01-31-2025  [ PR ]**                                      Morris, Megan Marie 👤    #1    $ 10.00

RECOGNIZANCE BOND FOR MORRIS, MEGAN MARIE, COUNT NUMBER 1, POSTED 02/03/2025

Document Available (#1060866297) 📄TIFF    📄PDF

---

**01-31-2025  [ BOJ ]**                                     Morris, Megan Marie 👤    #1    $ 25.00

BOND INITIAL FILING JAIL FUND FEE

---

**01-31-2025  [ CCADMIN25 ]**                               Morris, Megan Marie 👤    #1    $ 2.50

COURT CLERK ADMINISTRATIVE FEE ON $25 COLLECTIONS

| 01-31-2025  [ DCADMIN25 ] | Morris, Megan Marie 👤  #1 | $ 3.75 |

DISTRICT COURT ADMINISTRATIVE FEE ON $25 COLLECTIONS

---

**01-31-2025  [ ADJUST ]**                                    Morris, Megan Marie 👤                    $ 0.50

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

---

**01-31-2025  [ ACCOUNT ]**                                   Morris, Megan Marie 👤                    $ -0.50

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING
AMOUNTS:
CM-2024-4494: AC01 CLERK FEES -$0.50

---

**01-31-2025  [ ACCOUNT ]**                                   Morris, Megan Marie 👤

RECEIPT # 2025-4725777 ON 01/31/2025.
PAYOR: THOMPSON/G GENE TOTAL AMOUNT PAID: $ 20.00.
LINE ITEMS:
CM-2024-4494: $19.50 ON AC01 CLERK FEES FOR MORRIS, MEGAN MARIE.
CM-2024-4494: $0.50 ON AC09 CARD ALLOCATIONS FOR MORRIS, MEGAN MARIE.

---

**02-03-2025  [ WRCR ]**                                      Morris, Megan Marie 👤

WARRANT RECALL CANCELLATION RETURNED
Document Available at Court Clerk's Office

---

**02-03-2025  [ ↺ RETWA ]**                                   Morris, Megan Marie 👤

WARRANT RETURNED 2/3/2025, WARRANT ISSUED ON 11/26/2024
Document Available at Court Clerk's Office

---

**02-28-2025  [ TEXT ]**                                      Morris, Megan Marie 👤

REPLY BRIEF OF DEFENDANT HEREIN RESPONSE OF THE STATE OF OKLAHOMA TO DEFENDANT'S
MOTION TO DISMISS
Document Available (#1061171355) 📄TIFF    📄PDF

---

**03-28-2025  [ REQCR ]**                                     Morris, Megan Marie 👤                    $ 20.00

COURT REPORTER FEE AT TRIAL (JURY/NON-JURY/PRELIMINARY)

---

**03-28-2025  [ OCISR ]**                                     Morris, Megan Marie 👤                    $ 25.00

OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND

---

**03-28-2025  [ CTFREE ]**                                    Morris, Megan Marie 👤

JUDGE GREG LAVENDER: DEFENDANT PRESENT, NOT IN CUSTODY, AND REPRESENTED BY GENE
THOMPSON. STATE REPRESENTED BY MEGHAN HILBORN. CASE CALLED FOR CONTINUED HEARING ON
DEFENDANTS MOTION TO DISMISS FOR LACK OF JURISDICTION. MOTION DENIED. JURY TRIAL SOUNDING
DOCKET SET TO 4/30/25 AT 9AM IN ROOM 158. BOND TO REMAIN; DEFENDANT RECOGNIZED BACK.

---

**03-28-2025  [ ACCOUNT ]**                                   Morris, Megan Marie 👤

RECEIPT # 2025-4750471 ON 03/28/2025.
PAYOR: CREEK COUNTY LAW TOTAL AMOUNT PAID: $ 45.00.
LINE ITEMS:
CM-2024-4494: $45.00 ON AC79 OCIS REVOLVING FUND FOR MORRIS, MEGAN MARIE.

---

**04-30-2025  [ CTFREE ]**                                    Morris, Megan Marie 👤

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY GENE
THOMPSON, PRESENT. STATE REPRESENTED BY ALAN JAMIESON. ALLEN DISCOVERY HEARING SET TO 5-
28-2025 @ 9:00 AM IN ROOM 158. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK.

MCN.Ex.74.004

**05-28-2025  [ CTPASS ]**                                    Morris, Megan Marie 👤

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY GENE THOMPSON. STATE REPRESENTED BY DANNY ANSON. DISPOSITION SET TO 6-25-25 @ 9:00 AM IN ROOM 158. BOND TO REMAIN. DEFENDANT RECOGNIZED BACK.

| | | | |
|---|---|---|---|
| **06-25-2025  [ COSTM ]** | Morris, Megan Marie 👤 | #1 | $ 83.00 |
| COURT COSTS ON MISDEMEANOR | | | |
| **06-25-2025  [ DACPAM ]** | Morris, Megan Marie 👤 | #1 | $ 30.00 |
| DA COUNCIL PROSECUTION ASSESSMENT FOR MISDEMEANOR | | | |
| **06-25-2025  [ OCISR ]** | Morris, Megan Marie 👤 | #1 | $ 25.00 |
| OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | | |
| **06-25-2025  [ SSFCHS ]** | Morris, Megan Marie 👤 | #1 | $ 10.00 |
| SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY | | | |
| **06-25-2025  [ MELRF ]** | Morris, Megan Marie 👤 | #1 | $ 10.00 |
| MEDICAL EXPENSE LIABILITY REVOLVING FUND | | | |
| **06-25-2025  [ TCARF ]** | Morris, Megan Marie 👤 | #1 | $ 10.00 |
| TRAUMA CARE ASSISTANCE REVOLVING FUND | | | |
| **06-25-2025  [ CLEET ]** | Morris, Megan Marie 👤 | #1 | $ 10.00 |
| CLEET PENALTY ASSESSMENT | | | |
| **06-25-2025  [ FOREN ]** | Morris, Megan Marie 👤 | #1 | $ 10.00 |
| FORENSIC SCIENCE IMPROVEMENT ASSESSMENT | | | |
| **06-25-2025  [ AFIS ]** | Morris, Megan Marie 👤 | #1 | $ 10.00 |
| AFIS FEE | | | |
| **06-25-2025  [ PFE7 ]** | Morris, Megan Marie 👤 | #1 | $ 6.00 |
| LAW LIBRARY FEE | | | |
| **06-25-2025  [ SSF ]** | Morris, Megan Marie 👤 | #1 | $ 5.00 |
| SHERIFF'S SERVICE FEE ON ARRESTS | | | |
| **06-25-2025  [ CHAB ]** | Morris, Megan Marie 👤 | #1 | $ 3.00 |
| C.H.A.B. STATUTORY FEE | | | |
| **06-25-2025  [ AGVSU ]** | Morris, Megan Marie 👤 | #1 | $ 3.00 |
| ATTORNEY GENERAL VICTIM SERVICES UNIT | | | |
| **06-25-2025  [ CTFD ]** | Morris, Megan Marie 👤 | #1 | $ 100.00 |
| COURT FUND ASSESSMENT <..ENTER AMOUNT..> | | | |
| **06-25-2025  [ VCA ]** | Morris, Megan Marie 👤 | #1 | $ 100.00 |
| VICTIMS COMPENSATION ASSESSMENT (AC12) | | | |
| **06-25-2025  [ CCADMIN ]** | Morris, Megan Marie 👤 | #1 | $ 9.60 |
| COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | | | |
| **06-25-2025  [ DCADMIN ]** | Morris, Megan Marie 👤 | #1 | $ 14.40 |
| DISTRICT COURT ADMINISTRATIVE FEE | | | |

**06-25-2025  [ DEFERRED ]**                                        Morris, Megan Marie 👤     #1

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, REPRESENTED BY GENE THOMPSON. STATE
REPRESENTED BY SYDNEY CASEBOLT. COURT REPORTER WAIVED. INTERPRETER: DEFENDANT SWORN
IN OPEN COURT. DEFENDANT ENTERS A PLEA OF GUILTY AND WAIVES RIGHTS TO JURY, NON JURY TRIAL.
COURT ACCEPTS PLEA, DEFENDANT SENTENCED TO:

COUNT 1) COURT WITHHOLDS A FINDING OF GUILTY AND DEFERS FOR SIXTY DAYS UNTIL 8-22-25 @ 9:00
AM IN ROOM 158. DEFENDANT UNDER NO FORMAL SUPERVISION DEFENDANT TO PAY $100 TO COURT
FUND, $100 TO VCA, PLUS COSTS

DEFENDANT ADVISED OF APPEAL RIGHTS, RULE 8 ISSUED, ORDER OF DEFERRED SENTENCE ISSUED.
BOND EXONERATED.

---

**06-26-2025  [ RPLEA ]**                                          Morris, Megan Marie 👤

RECORD OF PLEA
Document Available (#1062290717) 📄TIFF     📄PDF

---

**06-26-2025  [ RULE8 ]**                                          Morris, Megan Marie 👤

ORDER OF THE COURT - RULE 8 HEARING
Document Available at Court Clerk's Office

---

**08-15-2025  [ ADJUST ]**                                         Morris, Megan Marie 👤          $ 13.89

ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

---

**08-15-2025  [ ACCOUNT ]**                                        Morris, Megan Marie 👤          $ -13.89

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING
AMOUNTS:
CM-2024-4494: AC67 DISTRICT COURT REVOLVING FUND -$0.46
CM-2024-4494: AC07 ATTORNEY GENERAL VICTIM SERVICES UNIT -$0.08
CM-2024-4494: AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY -$0.25
CM-2024-4494: AC80 JAIL FUND (BOND FEE) SHERIFF OR PRIVATE JAIL -$0.63
CM-2024-4494: AC79 OCIS REVOLVING FUND -$1.25
CM-2024-4494: AC78 OKLAHOMA DEPARTMENT OF HEALTH/TRAUMA CARE FUND -$0.25
CM-2024-4494: AC77 DA COUNCIL PROSECUTION ASSESSMENT FEE -$0.75
CM-2024-4494: AC76 MEDICAL EXPENSE LIABILITY REVOLVING FUND -$0.25
CM-2024-4494: AC75 FORENSIC SCIENCE IMPROVEMENT ASSESSMENTS -$0.25
CM-2024-4494: AC69 CHILD ABUSE MULTIDISCIPLINARY FEE -$0.08
CM-2024-4494: AC31 COURT CLERK REVOLVING FUND -$0.31
CM-2024-4494: AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL -$0.15
CM-2024-4494: AC22 SHERIFF'S SERVICE & INCARCERATION FEE -$0.13
CM-2024-4494: AC21 AFIS FUND -$0.25
CM-2024-4494: AC12 VICTIM'S COMPENSATION ASSESSMENT (VCA) -$2.50
CM-2024-4494: AC11 CLEET PENALTY ASSESSMENT -$0.25
CM-2024-4494: AC08 SHERIFF FEES -$1.25
CM-2024-4494: AC01 CLERK FEES -$4.80

MCN.Ex.74.006

**08-15-2025  [ ACCOUNT ]**                                      Morris, Megan Marie 👤

RECEIPT # 2025-4809952 ON 08/15/2025.

PAYOR: MEGAN MORRIS TOTAL AMOUNT PAID: $ 555.25.

LINE ITEMS:

CM-2024-4494: $188.20 ON AC01 CLERK FEES FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $2.92 ON AC07 ATTORNEY GENERAL VICTIM SERVICES UNIT FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $48.75 ON AC08 SHERIFF FEES FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $13.89 ON AC09 CARD ALLOCATIONS FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $9.75 ON AC11 CLEET PENALTY ASSESSMENT FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $97.50 ON AC12 VICTIM'S COMPENSATION ASSESSMENT (VCA) FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $9.75 ON AC21 AFIS FUND FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $4.87 ON AC22 SHERIFF'S SERVICE & INCARCERATION FEE FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $5.85 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $11.79 ON AC31 COURT CLERK REVOLVING FUND FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $17.69 ON AC67 DISTRICT COURT REVOLVING FUND FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $2.92 ON AC69 CHILD ABUSE MULTIDISCIPLINARY FEE FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $9.75 ON AC75 FORENSIC SCIENCE IMPROVEMENT ASSESSMENTS FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $9.75 ON AC76 MEDICAL EXPENSE LIABILITY REVOLVING FUND FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $29.25 ON AC77 DA COUNCIL PROSECUTION ASSESSMENT FEE FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $9.75 ON AC78 OKLAHOMA DEPARTMENT OF HEALTH/TRAUMA CARE FUND FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $48.75 ON AC79 OCIS REVOLVING FUND FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $24.37 ON AC80 JAIL FUND (BOND FEE) SHERIFF OR PRIVATE JAIL FOR MORRIS, MEGAN MARIE.

CM-2024-4494: $9.75 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY FOR MORRIS, MEGAN MARIE.

---

**08-22-2025  [ CTPASS ]**                                      Morris, Megan Marie 👤

JUDGE KASEY BALDWIN: DEFENDANT PRESENT, AND REPRESENTED BY GENE THOMPSON, PRESENT. STATE REPRESENTED BY JIN-HYUNG LYOUDEFENDANT ALLOWED TO WITHDRAW PREVIOUS PLEA OF GUILTY AND ENTERS A PLEA OF NOT GUILTY. COURT ORDERS CASE DISMISSED AND RECORD EXPUNGED AS PER ORDER ISSUED.

---

**08-26-2025  [ OEX ]**                                      Morris, Megan Marie 👤

ORDER OF EXPUNGEMENT

Document Available (#1062895337) 📄TIFF    📄PDF

---

**08-27-2025  [ ODEF ]**                                      Morris, Megan Marie 👤

ORDER OF DEFERRED SENTENCE

Document Available (#1062888142) 📄TIFF    📄PDF

**MCN APPENDIX PAGE 429**                          **MCN.Ex.74.007**



MCN APPENDIX PAGE 430

Appellate Case: 16-5013   Document: 25-2   Date Filed: 04/29/2026   Page: 146

Plaintiff's Exhibit

**75**

25-cv-75-GKF-JFJ

MCN.Ex.75.001

**Summary Chart Showing Referral and Charging Status of Tulsa County Prosecutions of Non-Member Indians Identified in Paragraph 23 of Nation's Complaint**

| Name | Charge/Date of Offense | Tulsa County Disposition | Status of Case at MCN |
|---|---|---|---|
| Bohanan[1] | Bogus Check 1/15/2017 | Charges Dismissed and Expunged | No Referral To MCN |
| Mason[2] | DUI 1/21/2024 | Guilty Plea | No Referral To MCN |
| Hess[3] | Obstructing an Officer 7/3/24 | Demurrer Granted, Charges Dismissed | Separate Traffic Charges Referred to MCN by Lighthorse PD.<br><br>Charges filed and resolved via plea agreement. |
| Neafus[4] | Larceny of Merchandise from Retailer 12/7/23 | Guilty Plea | Separate Theft Charges Referred to MCN by Broken Arrow.<br><br>Charges Filed and Pending. |
| Morris[5] | Larceny of Merchandise from Retailer 7/16/24 | Sentence Deferred and Case Expunged | Case Referred by City of Tulsa Police Department<br><br>Charges Filed and Defendant Sentenced to Probation |

---

[1] MCN Ex. 64, 65.
[2] MCN Ex. 66, 67.
[3] MCN Ex. 68, 69
[4] MCN Ex. 72, 73
[5] MCN Ex. 74, 75



Plaintiff's Exhibit

**77**

25-cv-75-GKF-JFJ

**MCN.Ex.77.001**

MCN APPENDIX PAGE 431